1

2

3              **UNITED STATES DISTRICT COURT**

4             **NORTHERN DISTRICT OF CALIFORNIA**

5                    **SAN JOSE DIVISION**

6

7  THEODORE BROOMFIELD, ET AL.,        Case No.  17-cv-01027-BLF

8                Plaintiffs,

9        v.                           **ORDER GRANTING IN PART AND
                                      DENYING IN PART DEFENDANT'S**
10 CRAFT BREW ALLIANCE, INC., et al.,  **MOTION TO DISMISS**

11                Defendants.          [Re:  ECF 16]

12

13        Hawaii is a state as well as a state of mind.  When adults want to escape the mainland, they

14 can go to their local grocery store, purchase a package of Kona Brewing Company beer, and feel

15 as though they are transported to the beaches of Hawaii.  This case is about the importance of

16 where that beer actually is brewed.  Plaintiffs Theodore Broomfield, Sara Cilloni, and Simone

17 Zimmer (collectively, "Plaintiffs") allege on behalf of themselves and three putative classes of

18 consumers, that Defendant Craft Brew Alliance, Inc. ("CBA"), doing business as Kona Brewing

19 Company, intentionally misleads consumers into believing that Kona Brewing Company beer

20 ("Kona beer") is exclusively brewed in Hawaii.

21        Before the Court is CBA's Motion to Dismiss Plaintiffs' Consolidated Class Action

22 Complaint.  Motion to Dismiss ("Mot."), ECF 16; Consolidated Complaint ("Compl."), ECF 15.

23 Plaintiffs filed an opposition to CBA's motion to dismiss on May 26, 2017. ("Opp'n"), ECF 21.

24 CBA filed a reply on June 9, 2017. ("Reply"), ECF 23.  The Court heard oral argument on August

25 3, 2017 and thereafter took the matter under submission.  The Court has reviewed the parties'

26 briefing, the oral argument of counsel, and the robust legal authority involving food and drink

27 labeling.  For the reasons below, the Court GRANTS IN PART and DENIES IN PART CBA's

28 Motion to Dismiss.

*United States District Court
Northern District of California*

## I.       BACKGROUND

Defendant Craft Brew Alliance, Inc. ("CBA") is a publicly traded conglomerate that acquired Kona Brewing Company ("Kona") in 2010. Compl. ¶ 18.  Prior to its acquisition by CBA, Kona had been brewing its beer in Hawaii since the company started in 1994. *Id.* ¶ 17.  The Kona brand includes a variety of beer that references Kona's Hawaiian origins, including "Longboard Island Lager," "Big Wave Golden Ale," "Fire Rock Pale Ale," "Wailua Wheat Ale," "Hanalei Island IPA," "Castaway IPA," "Lavaman Red Ale," "Lemongrass Luau," "Koko Brown," and "Pipeline Porter." *Id.* ¶ 22.

Although Kona has a Hawaiian brewery that makes its draft beer sold in Hawaii, all of its bottled and canned beer, as well as its draft beer sold outside of Hawaii, are brewed in the states of Oregon, Washington, New Hampshire, and Tennessee.  *Id.* ¶¶ 1, 19.  Plaintiffs allege that Kona beer is packaged and marketed in a manner that is intended to mislead reasonable consumers seeking to purchase a Hawaiian-made beer. *See, e.g., Id.* ¶¶ 23-25 ("In essence, Defendants intentionally mislead consumers into believing that a small brewery in Hawaii – which it owns and operates – brews all of the Kona Brewing Co. Beers that Defendants sell on the mainland.").

Plaintiffs take issue with a number of representations on the packaging of Kona beer.  The Consolidated Complaint contains various images of the packaging for six-packs and twelve-packs of beer to support Plaintiffs' arguments that CBA intended to create the impression that Kona beer is brewed in Hawaii and exported to the continental United States.  *See generally*, Compl.  For example, on the top of the box for twelve-packs of Kona beer there is an image of a map of Hawaii which marks the location of the Kona Brewing Co. Brewery on the Big Island. *Id.* ¶¶ 26, 32.  The packaging of the twelve-packs also includes the statement: "We invite you to visit our brewery and pubs whenever you are in Hawaii." *Id.*  As for the bottles of Kona beer themselves, an image of the Hawaiian island chain and the phrase "Liquid Aloha" are embossed on the front of each bottle. *Id.*

The packaging for each variety of beer is further adorned with its own Hawaiian-related images, including orchid flowers, volcanoes, palm trees, surfers, canoes, waterfalls, and hula dancers to match the theme of whichever beer is being marketed and sold. *Id.* ¶¶ 28-73.  Each

2

United States District Court
Northern District of California

type of beer has its own slogan printed on the handle of the six-pack, such as "Thirst's Up!" on the package for Longboard Island Lager, "Catch a Wave!" for Big Wave Golden Ale, and "Crack Open Aloha!" for Koko Brown. *Id*. ¶¶ 30, 35, 70. Depending on the type of beer, the bottom of the package for the six-pack includes the image of a Hawaiian island, such as Oahu, the Big Island, or Molokai, next to a narrative and a description of the specific beer. *Id*. ¶¶ 31, 36, 41, 46, 51, 56. Plaintiffs allege that the only address listed on the packaging is "75-5629 Kuakini Highway, Kailua-Kona, Hawaii 96740." *Id*. ¶¶ 32, 37, 42, 47, 52, 57, 60, 64, 67; *but see* CBA's Request for Judicial Notice ("RJN"), ECF 17, Exhibit E (Island Hopper Variety twelve-pack includes list of five brewing locations next to address in Kona, Hawaii). Plaintiffs assert that these "prominent references to and images of Hawaiian landmarks, traditions, history, and culture, taken in isolation and as a whole, are clearly designed to create the false impression that the Kona Brewing Co. Beers are brewed in Hawaii." *Id*. ¶ 73.

Separate and apart from the representations on the beer packaging, Plaintiffs allege throughout the Complaint that CBA misrepresents Kona beer as "craft beer" when it is not. *See, e.g.*, *id*. ¶¶ 115, 116, 133. Plaintiffs base their assertion on statements made by a CBA executive on an earnings call in 2016 that discussed how "the Kona brand plays like a craft brand imported from Hawaii." *Id*. ¶ 75. Moreover, CBA's 10-K filing with the Securities and Exchange Commission ("SEC") states that "Kona Brewing is one of the most distinctive craft brewers with a broad portfolio of beers that reflect a uniquely Hawaiian flavor profile, a recognized track record in sustainable business practices, and deep ties to its local community as Hawaii's oldest and largest craft brewery." *Id*. ¶¶ 78, 79. None of the Plaintiffs alleges that they relied on these "craft brew" representations.

Specifically, Plaintiff Theodore Broomfield alleges that he purchased a twelve-pack of Kona's Longboard Island Lager from Walgreens in San Francisco. *Id*. ¶ 12. Plaintiff Sara Cilloni alleges that she regularly purchased Longboard Island Lager, most recently purchasing a six-pack in San Jose. *Id*. ¶ 13. Plaintiff Simone Zimmer alleges that she regularly purchased packages of Kona beer, including the Island Hopper Variety twelve-pack, which includes a selection of Kona beer. *Id*. ¶ 14. All three Plaintiffs allege that they saw and relied on the representations on the

packaging of Kona beer, which varied based on the type of beer they purchased.  *Id.* ¶¶ 12, 13, 14.
Specifically, Plaintiffs allege they relied on the image of the map of the Hawaiian Islands which
marks the location of the Kona Brewing Company Brewery on the Big Island. *Id.*  Plaintiffs allege
they believed the beer was brewed in Hawaii, and they would not have purchased Kona beer (or
would have paid significantly less for it) had they known the beer was actually brewed in the
continental United States. *Id.*

Plaintiffs allege that CBA has intentionally capitalized on consumers' willingness to pay
more for goods that are from Hawaii. *See id.*  ¶ 82.  These allegedly unfair and deceptive practices
have harmed Plaintiffs and the purported classes of purchasers of Kona beer by causing them to
pay a "premium" for Kona beer they bought under the mistaken belief that it was brewed in
Hawaii.  *Id.* ¶ 96.  Plaintiffs seek to enjoin CBA from continuing to deceptively package Kona
beer, and sue for damages. *Id.*  ¶ 97.

 The putative class action is brought pursuant to Rule 23 of the Federal Rules of Civil
Procedure and consists of three classes: (1) a Nationwide Class of "[a]ll persons in the United
States who purchased any of the Kona Brewing Co. Beers within the relevant statute of limitations
periods," (2) a California Subclass of "[a]ll persons, who are California residents who purchased
any of the Kona Brewing Co. Beers, or who purchased any of the Kona Brewing Co. Beers within
the State of California, during the relevant statute of limitations periods," and (3) a California
Consumer Subclass of "[a]ll persons, who are California residents who purchased any of the Kona
Brewing Co. Beers, or who purchased any of the Kona Brewing Co. Beers within the State of
California, for personal, family, or household purposes during the relevant statute of limitations
periods." *Id.*  ¶ 99.  Plaintiffs assert nine causes of action against CBA arising from its marketing
and sale of Kona beer.  Specifically, Plaintiffs seek to represent the California consumer
subclasses against CBA for the following causes of action ("COA"): violation of California's
Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.* (First COA); unlawful,
unfair, and fraudulent business practices in violation of California's Unfair Competition Law
("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.* (Second COA); false and misleading advertising
in violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et*

4

United States District Court
Northern District of California

*seq.* (Third COA); breach of express warranty (Fourth COA); and breach of implied warranty (Fifth COA).  Plaintiffs also seek to represent the California subclasses as well as the broader nationwide class of consumers on claims for the following causes of action: common law fraud (Sixth COA); intentional misrepresentation (Seventh COA); negligent misrepresentation (Eighth COA); and restitution based on quasi-contract/unjust enrichment (Ninth COA).  *See generally* Compl.  This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) and (d).

## II.     LEGAL STANDARD

### A.     Rule 12(b)(6)

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).  When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff.  *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).  However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted).  While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

On a motion to dismiss, the Court's review is limited to the face of the complaint and matters judicially noticeable.  *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  However, under the "incorporation by reference" doctrine, the Court also may consider documents which are referenced extensively in the complaint and which are accepted by all parties as authentic. *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999), *abrogated on other grounds*

1    *by S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008).

2    **B.    Leave to Amend**

3    In deciding whether to grant leave to amend, the Court must consider the factors set forth

4    by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), and discussed at length by the

5    Ninth Circuit in *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2009).  A district

6    court ordinarily must grant leave to amend unless one or more of the *Foman* factors is present: (1)

7    undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by

8    amendment, (4) undue prejudice to the opposing party, and (5) futility of amendment.  *Eminence*

9    *Capital*, 316 F.3d at 1052.  "[I]t is the consideration of prejudice to the opposing party that carries

10   the greatest weight."  *Id.*  However a strong showing with respect to one of the other factors may

11   warrant denial of leave to amend.  *Id.*

12   **III.    REQUEST FOR JUDICIAL NOTICE**

13   Before turning to CBA's motion to dismiss the Consolidated Complaint, the Court

14   addresses CBA's Request for Judicial Notice ("RJN"), ECF 17.  CBA requests the Court to take

15   judicial notice of the earlier-filed complaints in each action that were eventually consolidated into

16   the instant case. ECF 17, Exhibits A, B.  Plaintiffs oppose this request and argue that the

17   Consolidated Class Action Complaint is the operative complaint which "supersedes" the earlier

18   complaints. ECF 22.  CBA also requests judicial notice of images of the packaging for five

19   varieties of Kona beer. ECF 17, Exhibits C-G.  Plaintiffs do not oppose CBA's request for judicial

20   notice of the product packaging.

21   First, Exhibits C through G are properly subject to judicial notice because they are

22   incorporated by reference into the Consolidated Complaint.  *See Knievel v. ESPN*, 393 F.3d 1068,

23   1076 (2005).  As for Exhibits A and B, though the Court may take judicial notice of public

24   records, the original Broomfield and Cilloni complaints will not be noticed "for the truth of the

25   matter asserted therein."  *In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1067 (N.D.

26   Cal. 2010); *see also M/V Am. Queen v. San Diego Marine Const. Corp.*, 708 F.2d 1483, 1491 (9th

27   Cir. 1983).  The Court does not take judicial notice of the legal reasoning or disputed facts

28   contained in publicly filed court records, but rather considers only the existence of such

*United States District Court*
*Northern District of California*

allegations and arguments.  *See, e.g., Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (permitting a court to take judicial notice of another court's opinion, but not the truth of the facts recited therein).

CBA argues that the Court should take judicial notice of the original Broomfield and Cilloni complaints for more than their existence. *See generally* RJN Reply, ECF 24.  CBA asks the Court to compare the "conflicting reliance allegations" made in the Consolidated Complaint with the allegations in the original complaints. *Id*. 3.  In fact, throughout its motion to dismiss, CBA repeatedly relies on allegations in the original Broomfield and Cilloni complaints that are not present in the Consolidated Complaint. *See, e.g.*, Mot. 5-6 ("Plaintiffs' Consolidated Complaint conspicuously deletes all references to and images of Kona labels…along with references to Kona's website.").  This is improper.  CBA contends that the Court need not "blindly accept the allegations in the pleadings as true if [the] allegations are contradicted by uncontested facts set forth in…facts that are included in materials that can be judicially noticed." RJN 3 (citing *Yang v. Dar Al-Handash* Consultants, 250 Fed. App'x 771, 772 (9th Cir. 2007)).  However, none of the cases cited by CBA involves a court taking judicial notice of conflicting allegations in a complaint that was subsequently amended or superseded by an operative complaint.  This is because the Ninth Circuit recognizes the "well-established doctrine that an amended pleading supersedes the original pleading." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992), *as amended* (May 22, 1992); *see also Loux v. Rhay,* 375 F.2d 55, 57 (9th Cir. 1967) ("The amended complaint supersedes the original, the latter being treated thereafter as nonexistent.") (citing cases), *overruled in part by Lacey v. Maricopa County,* 693 F.3d 896, 928 (9th Cir. 2012).  This doctrine prevents the Court from comparing the allegations in Plaintiffs' original complaints to those in the operative Consolidated Complaint in deciding CBA's motion to dismiss. *See Williams v. Cty. of Alameda*, 26 F. Supp. 3d 925, 936 (N.D. Cal. 2014) ("[T]he Court will not consider any facts in the first amended complaint ("FAC") that are not pled in the SAC.")

The issue CBA raises regarding the conflicting allegations in Plaintiffs' earlier complaints could certainly become relevant as evidence against Plaintiffs, but it is not proper for the Court to consider the truth or weigh the credibility of such evidence in connection with a motion to dismiss.

United States District Court
Northern District of California

*Id*. ("While prior pleadings may be *admissible in evidence* against the pleader, the Court is bound to accept as true allegations in the operative pleading on a motion to dismiss and generally cannot consider evidence outside the pleadings without converting a motion to dismiss into a motion for summary judgment.") (internal citations omitted).  At this stage, the Court takes judicial notice of the original complaints for their existence only, including the figures and images of Kona beer product labels referenced in the original complaints.  Plaintiffs are incorrect that the Court cannot take judicial notice of the images of the Kona beer labels in the original complaints, which are a matter of public record and not subject to reasonable dispute. Opp'n 3.  However, the Court will not consider Plaintiffs' allegations of reliance on such labels in the original complaints.

For the foregoing reasons, CBA's request for judicial notice is GRANTED.

**IV.    DISCUSSION**

CBA moves to dismiss the Consolidated Complaint on multiple grounds.  First, CBA argues that Plaintiffs' claims are not plausibly alleged because the representations on the packaging for Kona beer are, at most, non-actionable puffery or are qualified by a clear disclaimer.  Mot. 9-11.  Specifically as to the claims under California's consumer protection statutes, CBA argues the claims are not plausible because no reasonable consumer would be misled by the packaging. *See* Mot. 11-14.  Second, CBA contends that Plaintiffs have failed adequately to allege claims for common law fraud, intentional misrepresentation, and negligent misrepresentation.  *See* id. 14-16.  Third, CBA argues that Plaintiffs' breach of express and implied warranty causes of action must fail because Plaintiffs do not allege facts to establish a promise that Kona beer was brewed exclusively in Hawaii. *See* id. 16-18.  Fourth, CBA argues that Plaintiffs lack standing to pursue injunctive relief under California's consumer protection statutes. *See* id. 18-20.  Fifth, CBA challenges Plaintiffs' ability to obtain equitable relief when an adequate remedy at law is available. *See* id 20-21.  Finally, CBA takes aim at the putative nationwide class and asserts that Plaintiffs lack standing to bring claims on behalf of out-of-state consumers for violations of their state laws, and that claims by out-of-state consumers likewise fail for lack of personal jurisdiction over CBA. *See* id. 21-24.  The Court addresses CBA's motion to dismiss with respect to each category of Plaintiffs' claims in turn below.

8

### A. Actionable Misrepresentations and the Reasonable Consumer Test

At the outset, CBA argues that all of Plaintiffs' claims must be dismissed because the images and statements on the packaging for Kona beer are at most "mere puffery" and are not actionable misrepresentations. Mot 9. CBA goes on to argue that all of Plaintiffs' claims are based on the same "defective premise" that a reasonable consumer would be misled into believing that the Kona beer he or she purchased was brewed exclusively in Hawaii. *Id*. CBA's argument that no reasonable consumer would be misled by the beer packaging is appropriately directed toward Plaintiffs' first three causes of action for violations of California's consumer protection statutes. For the reasons below, the Court finds that Plaintiffs have adequately alleged that certain representations on the six- and twelve-pack packaging of Kona beer are actionable misrepresentations that are likely to deceive a reasonable consumer into thinking that the beer was brewed in Kona, Hawaii. Therefore, CBA's motion to dismiss on the grounds that Plaintiffs have not alleged actionable misrepresentations and that no reasonable consumer would be misled by the packaging is DENIED.

Plaintiffs' first three causes of action in the Consolidated Complaint are for violations of California consumer protection statutes: the CLRA, UCL and FAL. *See generally* Compl. The CLRA prohibits unfair methods of competition and unfair or deceptive acts or practices; the UCL prohibits unlawful, unfair or fraudulent business acts or practices; and the FAL prohibits unfair, deceptive, untrue, or misleading advertising. *Williams v. Gerber Prods. Co.,* 552 F.3d 934, 938 (9th Cir.2008) (citing Cal. Civ.Code § 1770, Cal. Bus. & Prof.Code §§ 17200 and 17500). Claims under the CLRA, UCL and FAL are governed by the "reasonable consumer" test, under which a plaintiff must show that "members of the public are likely to be deceived." *Williams,* 552 F.3d at 938; *Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1360 (2003). CBA separates their position into two parts: (1) the representations on the packaging of Kona beer are not actionable because they are either puffery or are objectively true; and (2) no reasonable

consumer would be misled by the representations.  These arguments are interrelated under the applicable reasonable consumer test.  As such, the Court considers them together.[1]

Under the reasonable consumer standard, Plaintiffs must allege facts to show that the alleged misrepresentations are "likely to deceive" reasonable consumers.  *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995); *see also Lavie v. Procter  Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003).  Because the "reasonable consumer" inquiry is an objective standard, claims may be dismissed as a matter of law where an alleged statement amounts to "mere puffery" or "in the context, is such that no reasonable consumer could be misled" in the manner claimed by the plaintiff.  *Haskell v. Time, Inc.*, 857 F. Supp. 1392, 1399 (E.D. Cal. 1994) (citing *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 245 (9th Cir. 1990)).

Courts have recognized that the deceptive nature of a business practice under California's consumer protection statutes is usually a question of fact that is inappropriate for decision on demurrer or a motion to dismiss. *See Dumas v. Diageo PLC*, No. 15-cv-1681, 2016 WL 1367511, at *3 (S.D. Cal. April 6, 2016) (citing *Williams*, 552 F.3d at 938); *see also Linear Technology Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 134-35 (2007) ("Whether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires 'consideration and weighing of evidence from both sides' and which usually cannot be made on demurrer.") (internal citations and quotation omitted).  Courts granting motions to dismiss under the reasonable consumer test are upheld in "rare situations." *Williams*, 552 F.3d at 938.

Here, CBA argues that the representations allegedly relied on by Plaintiffs are not actionable misrepresentations, and are at most "mere puffery" on which a reasonable consumer could not rely. Mot. 9.  According to CBA, no reasonable consumer could have interpreted the packaging for Kona beer as Plaintiffs purportedly did, and the California statutory violations must therefore be dismissed. Mot. 9-14.  Under the reasonable consumer test, "[g]eneralized, vague, and unspecified assertions constitute 'mere puffery' upon which a reasonable consumer could not rely,

---

[1] To be clear, CBA argues that the lack of an actionable misrepresentation on the packaging is potentially dispositive of all of Plaintiffs' claims, not only the consumer protection claims. However, the reasonable consumer test applies only to Plaintiffs' CLRA, UCL and FAL claims.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   and hence are not actionable." *Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1139 (C.D. Cal.

2   2005) (citing *Glen Holly Entm't, Inc. v. Tektronix Inc.*, 343 F.3d 1000, 1005 (9th Cir. 2003)).  To

3   be actionable, a statement must be "specific and measurable" and capable of being proven true or

4   false or of being reasonably interpreted as a statement of objective fact.  *Southland Sod Farms v.*

5   *Stover Seed Co.*, 108 F.3d 1135, 1145 (9th Cir. 1997).

6           Plaintiffs allege to have relied on the "packaging" of certain varieties of Kona beer before

7   making their purchases. Compl. ¶¶ 12-14.  CBA contends that the Hawaiian imagery on the

8   packages for each variety of Kona beer, as well as the statement "Liquid Aloha" and the invitation

9   to visit Kona's brewery and pubs in Hawaii, are not affirmative misrepresentations but are, at

10  most, "textbook" examples of non-actionable puffery. Mot 9-10.  According to CBA, none of

11  these references to Hawaii is a specific and measurable factual statement about where the beer is

12  made. *Id.* 9-10.  In support of its argument, CBA points to the "explicit identification of all

13  brewing locations on every product label," that would dispel any notion that the products were

14  brewed exclusively in Hawaii. Mot. 10; RJN Ex. A ¶ 64.  Since the labels disclose five locations

15  where the beer is brewed, only one of which is Hawaii, CBA argues that the representations on the

16  six- and twelve-pack packaging cannot amount to actionable misrepresentations. Mot. 9.[2]  The list

17  of Kona's five brewing locations also appears on the bottom of the Island Hopper Variety twelve-

18  pack allegedly purchased by Plaintiff Zimmer. Mot. 7; RJN Ex. E.

19          In response, Plaintiffs argue that the Consolidated Complaint alleges the following

20  "specific and non-ambiguous" representations on the six- and twelve-pack packaging that are

21  actionable and likely to deceive reasonable consumers into believing that the beer was brewed

22  exclusively in Hawaii: (1) the only listed address on the outer packaging is "75-5629 Kuakini

23  Highway, Kailua-Kona, Hawaii, 96740"; (2) the image of the map of Hawaii identifies Kona

24

25  _____

    [2] CBA also challenges Plaintiffs' allegations that CBA misrepresents Kona beer as "craft brew"

26  because no plaintiff is alleged to have relied on the statements. Mot. 10-11.  Plaintiffs concede that
    the "craft brew" allegations are not included in the Consolidated Complaint as misrepresentations

27  that consumers relied on in purchasing Kona beer, but rather the statements are "evidence of
    Defendants *intent* to deceive consumers." Opp'n 9 (emphasis added).  Plaintiffs further

28  represented at the hearing on the motion to dismiss that they do not seek leave to amend to allege
    misrepresentations based on the "craft brew" allegations.

1   Brewing Company's brewery on the Big Island; and (3) the statement "[w]e invite you to visit our

2   brewery and pubs whenever you are in Hawaii." Opp'n 4, 7.  In its reply, CBA counters that those

3   representations in particular are objectively true because "a Kona brew pub actually exists at that

4   location." Reply 2.

5        If the Consolidated Complaint solely alleged pictures of surfboards and the vague phrase

6   "Liquid Aloha" on the beer packaging, the case would end there.  However, the Court finds that

7   the Hawaiian address, the map of Hawaii identifying Kona's brewery on the Big Island, and the

8   statement "visit our brewery and pubs whenever you are in Hawaii," are not mere puffery but are

9   specific and measurable representations of fact that could deceive a reasonable consumer into

10  believing that the six- and twelve-packs of Kona beer were brewed in Hawaii.  These

11  representations are distinguishable from those on the packaging of Red Stripe Beer in *Dumas v.*

12  *Diageo PLC*, No. 15-cv-1681, 2016 WL 1367511, at *6 (S.D. Cal. Apr. 16, 2016), a case on

13  which CBA heavily relies in its motion. Mot. 10, 13.  The *Dumas* court granted defendant's

14  motion to dismiss a complaint alleging that Red Stripe Beer engaged in unfair and deceptive

15  practices by misleading consumers into overpaying for Red Stripe under the mistaken impression

16  that the beer was made in Jamaica. 2016 WL 1367511, at *6.  The Court agrees with CBA that

17  many of the representations challenged by Plaintiffs in the Consolidated Complaint are non-

18  actionable along the lines of those found to be "vague and meaningless" in *Dumas*. *Id*.  For

19  example, the phrase "Liquid Aloha" on every package of Kona beer is akin to the slogan "The

20  Taste of Jamaica" on the packaging for Red Stripe.  In addition, merely referencing Hawaii and its

21  culture on the packaging is not enough on its own to confuse a reasonable consumer regarding the

22  origin of the beer.  *See Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241, 253 (3d

23  Cir. 2011) (reference to "Havana Club" on bottle of rum not misleading when bottle clearly stated

24  the product was "Puerto Rican Rum.")

25       However, there is no equivalent in *Dumas* to Plaintiffs' allegations regarding the Hawaiian

26  address, the map of Hawaii that identifies the Kona brewery, and the invitation to "visit our

27  brewery" in Kona.  These representations go beyond those held to be non-actionable in *Dumas*,

28  and they do more than evoke the "spirit" of Hawaii or indicate that the beer is "Hawaiian-style."

United States District Court
Northern District of California

12

United States District Court
Northern District of California

Considered together in context, these statements and images amount to specific and measurable representations that could deceive consumers into believing that they were purchasing beer made in Kona, Hawaii at the specific brewery location listed and depicted on the package.[3]

CBA argues that the disclaimer on the labels of Kona beer is enough to contradict the representations on the outer packaging.  Even if the Court considers the Kona beer labels themselves, which are included in CBA's request for judicial notice, the placement and language of the disclaimer are not dispositive in this case.  The Consolidated Complaint rests solely on the outer packaging for the six- and twelve-packs of Kona beer, not the labels for the beer cans or bottles themselves. Compl. ¶¶ 12-14; Opp'n 10.  Reasonable consumers are "not required to open a carton or remove a product from its outer packaging in order to ascertain whether representations made on the face of the packaging are misleading." *Marty v. Anheuser-Busch Companies, LLC*, 43 F.Supp.3d 1333, 1341 (S.D. Florida 2014); *see also Williams*, 552 F.3d at 939 (holding that reasonable consumers are not "expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box.").

CBA concedes that there is no disclaimer identifying Kona's brewing locations on the packaging for the six-pack or twelve-packs at issue, with the exception of the Island Hopper Variety twelve-pack. Mot. 7 n.5.  Thus, the list of Kona's brewing locations on the beer label, which is obstructed by the packaging, does not inform the Court's inquiry regarding the allegedly deceptive representations because the disclaimer was not visible to the consumer at the time of purchase.  CBA cites to cases where courts granted motions to dismiss under the "reasonable consumer" standard, but the disclaimers on the beer labels in those cases were not obscured and did not require consumers to remove the beer from the packaging.  *See Bowring v. Sapporo*

---

[3] The Court recognizes, and Plaintiffs concede, that Kona Brewing Company operates an actual brewery at that location in Kona, Hawaii.  However, the relevant question is not whether the statements on the package are objectively true, but rather whether the statements, taken as a whole, are likely to deceive members of the public. *Williams*, 552 F.3d at 938.  True representations can still support liability under the reasonable consumer standard if the representations are actually misleading or have the "capacity, likelihood or tendency to deceive or confuse members of the public." *Anderson v. The Hain Celestial Grp., Inc.*, 87 F.Supp.3d 1226, 1236 (N.D. Cal. 2015) (internal citations omitted).

United States District Court
Northern District of California

*U.S.A., Inc.*, No. 16-cv-1858, 2017 WL 902151 (E.D.N.Y. Feb. 10, 2017); *Nelson v. MillerCoors, LLC*, 15-cv-7082, 2017 WL 1403343 (E.D.N.Y. March 31, 2017).  In *Bowring*, the plaintiffs challenged representations on Sapporo's beer labels, not the outer packaging for six- and twelve-packs. 2017 WL 902151, at *1.  The Sapporo labels included a disclaimer that appeared "in darker contrasting font on the front label for bottles and on the side or back of cans." *Id*.  Considering the context of the disclaimer placed right next to the allegedly deceptive representations, the court held that references to Sapporo's historic roots in Japan were "eclipsed by the accurate disclosure statement" on the label and were thus not misleading. 2017 WL 902151, at *4.  The court analyzing a disclaimer in *Nelson* also made clear in its reasonable consumer analysis that "Foster's Beer utilizes no exterior packaging that would obstruct the disclaimer." 2017 WL 1403343, at *6. In contrast, Plaintiffs have solely alleged reliance on misrepresentations on the outer packaging for six- and twelve-packs of Kona beer, which obscures the labels that contain the list of brewing locations.

Plaintiffs raise a further issue with the language of the disclaimer that the Court finds persuasive.  The disclaimer on the Kona beer label lists five locations, including "Kona, HI, Portland, OR, Woodinville, WA, Portsmouth, NH, and Memphis, TN" which encompass "all locations where the beers are brewed." Mot. 12, RJN Ex. A ¶ 64.  A list of multiple locations on a product label does not amount to an explicit statement that the beer is brewed and packaged at a particular location.  In fact, there is no way to tell from the label which brewery made the beer being purchased by consumers.  From the vantage point of the reasonable consumer reading the label with the disclaimer, the beer is just as likely to be brewed in Kona, Hawaii as it is to be brewed in Memphis, Tennessee.  Particularly the inclusion of Kona, Hawaii on the list mitigates the disclaimer's effectiveness, since Plaintiffs allege that no bottled or canned beer bearing the Kona label is actually brewed in Kona, Hawaii.  Therefore, even if the Court was to consider the label in the context of the packaging, a reasonable consumer could still be deceived because the list of brewery locations does not "alert a reasonable consumer as to the location where [Kona beer] is brewed." *Marty*, 43 F.Supp.3d at 1341.

Given the vague nature of the disclaimer, CBA cannot avail itself of the decisions involving Sapporo and Foster's beer which dealt with sufficiently descriptive disclaimers and did not require consumers to "make inferences as to the beer's place of origin." *Nelson*, 2017 WL 1403343, at *6; *Bowring*, 2017 WL 902151 at *1 (Sapporo disclaimer stated "Brewed and Bottled [or Canned] by Sapporo Brewing Company, La Cross, WI for Sapporo U.S.A., New York NY.") Therefore, even if a reasonable consumer could conceivably remove the beer from the packaging to view the label before purchase, a non-descriptive list of five brewing locations that includes Kona, Hawaii, does not warrant dismissal of Plaintiffs' claims under the reasonable consumer test.

For the foregoing reasons, the Court finds that the Consolidated Complaint alleges actionable misrepresentations, and the Court cannot conclude as a matter of law that the misrepresentations would not mislead a reasonable consumer.[4] Accordingly, CBA's motion to dismiss Plaintiffs' claims on these grounds is DENIED.

### B.   Common Law Fraud and Misrepresentation Claims

Next, CBA moves to dismiss Plaintiffs' causes of action for common law fraud, intentional misrepresentation, and negligent misrepresentation. Mot. 14.  Under California law, to state a claim for fraud a party must plead facts to sufficiently allege five elements: (1) a misrepresentation (false representation, concealment, or nondisclosure); (2) the speaker's knowledge of falsity (scienter); (3) the intent to defraud or to induce reliance; (4) justifiable reliance; and (5) resulting damage. *See, e.g.*, *Lazar v. Superior Court*, 12 Cal.4th 631, 638 (1996).  As explained above, the Court concludes that the Consolidated Complaint adequately alleges actionable misrepresentations indicating that Kona beer is brewed in Hawaii.  However, CBA further argues that Plaintiffs have not alleged the required elements of CBA's intent to mislead, or justifiable reliance on the alleged misrepresentations by Plaintiffs. Mot. 14-16.

---

[4] CBA attempts to knock out the CLRA claim for failure to allege an "affirmative" misrepresentation. Mot. 14.  The Court finds no support for CBA's argument that an affirmative representation must be "false," and finds that the Consolidated Complaint adequately alleges affirmative representations under the CLRA.  Moreover, the CLRA permits claims based on fraudulent omissions so long as the omission is "contrary to a representation actually made by the defendant."  *Daugherty v. American Honda Motor Co., Inc.,* 144 Cal.App.4th 824, 835, 51 Cal.Rptr.3d 118 (2006).  Here, Plaintiffs allege that CBA's omission of the location where Kona beer is brewed is contrary to CBA's representations that the beer is brewed in Hawaii. Opp'n 15.

United States District Court
Northern District of California

1    Contrary to CBA's assertions, the Court finds that Plaintiffs have alleged more than

2    conclusory allegations to support the element of intent to defraud or induce reliance.  The

3    Consolidated Complaint contains numerous statements by CBA executives that evidence CBA's

4    intent to defraud consumers into believing that Kona beer is brewed in Hawaii. Compl. ¶¶ 74-78.

5    For example, Plaintiffs allege that CBA's Chief Marketing Officer stated in an earnings call that

6    "the Kona brand plays like a craft brand imported from Hawaii." *Id*. ¶ 4.  Plaintiffs also argue that

7    CBA's statements that Kona is a "craft brewer" is evidence of CBA's intent to mislead consumers,

8    even though these allegations are not themselves actionable misrepresentations. *Id*. ¶¶ 79-81.

9    These references to CBA's public statements and SEC filings provide a sufficient factual context

10   to satisfy the element of intent to defraud at the motion to dismiss stage.  Moreover, the Federal

11   Rules of Civil Procedure make clear that "[m]alice, intent, knowledge, and other conditions of a

12   person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).

13   CBA's argument that Plaintiffs do not allege justifiable reliance on the packaging because

14   "the labels indicate otherwise and specifically identify where the products are brewed" is similarly

15   not persuasive.  As discussed above, the label does not identify where the specific product being

16   purchased was actually brewed.  Rather, the label lists five cities including Kona, Hawaii, a

17   location where Plaintiffs allege the bottled and canned beer is decidedly *not* brewed.  The

18   Consolidated Complaint also contains allegations that Plaintiffs relied on the packaging, not on the

19   beer label containing the various brewery locations.[5]  Plaintiffs have thus alleged justifiable

20   reliance on the allegedly false representations on the package.

21   The parties also dispute whether the economic loss doctrine bars Plaintiffs' negligent

22   misrepresentation claim.  Indeed, even district courts in the Ninth Circuit are split on this issue.

23   *Compare Zakaria v. Gerber Prod. Co.*, 2015 WL 3827654, at *11 (C.D. Cal. June 18, 2015) *with*

24   *Minkler v. Apple Inc.*, 65 F. Supp. 3d 810 (N.D. Cal. 2014).  The confusion in the case law arises

25   from courts' differing interpretations of the decision in *Robinson Helicopter Co. v. Dana Corp.*,

26

27   [5] The Court does not consider the truth of the allegations in the original complaints filed in this
action for purposes of the motion to dismiss.  The Court defers the issue of whether certain named
28   plaintiffs relied on the labels until class certification when the Court considers the adequacy of the
class representatives.

1    which left open various exceptions to the economic loss rule as applied to a claim for negligent

2    misrepresentation claim. 34 Cal. 4th 979, 988 (2004).  In *Robinson*, the California Supreme Court

3    made clear that "[t]he economic loss rule requires a purchaser to recover in contract for purely

4    economic loss due to disappointed expectations, unless he can demonstrate harm above and

5    beyond a broken contractual promise." *Id.*  However, *Robinson* left open various exceptions and

6    explained that the doctrine "hinges on a distinction drawn between transactions involving the sale

7    of goods for commercial purposes where economic expectations are protected by commercial and

8    contract law, and those involving the sale of defective products to individual consumers who are

9    injured in a manner which has traditionally been remedied by resort to the law of torts." *Id.*

10   Furthermore, claims of fraud and intentional misrepresentation that are independent of a breach of

11   contract are not subject to the economic loss rule. *Id.* at 991 ("The economic loss rule is designed

12   to limit liability in commercial activities that negligently or inadvertently go awry, not to reward

13   malefactors who affirmatively misrepresent and put people at risk.")  *Robinson*'s exception to the

14   economic loss rule for fraud claims generated uncertainty regarding its application because

15   California includes negligent misrepresentation within the definition of fraud. *Boyd v. Travelers*

16   *Indem. Co.*, 46 F.3d 1138 (9th Cir. 1995).

17          CBA urges the Court to apply the economic loss rule to Plaintiffs' claim for negligent

18   misrepresentation. Mot. 16.  Plaintiffs argue that the economic loss rule does not apply because

19   under California law, negligent misrepresentation is a species of fraud for which economic loss is

20   recoverable.  The Court recognizes that reasonable minds can and do disagree on the applicability

21   of the economic loss rule to negligent representation claims, and this issue is ripe to be revisited

22   by the California Supreme Court.  However, binding Ninth Circuit precedent supports Plaintiffs'

23   position in this case. *See Kalitta Air, L.L.C. v. Cent. Texas Airborne Sys., Inc.*, 315 F. App'x 603,

24   607 (9th Cir. 2008) ("We hold that California law classifies negligent misrepresentation as a

25   species of fraud for which economic loss is recoverable.") (internal citations and quotations

26   omitted).

27          For these reasons, CBA's motion to dismiss Plaintiffs' causes of action for common law

28   fraud, intentional misrepresentation and negligent misrepresentation is DENIED.

C.     **Express and Implied Warranty Claims**

With respect to Plaintiffs' warranty claims, CBA argues that Plaintiffs have not adequately alleged either a breach of express or implied warranty. Mot. 16-18.  Although the Court finds above that a reasonable consumer could be misled by the representations on the packaging for Kona beer, the representations do not amount to an unequivocal statement or promise to the consumer that Kona beer is brewed exclusively in Hawaii.

Plaintiffs' express warranty claim is based on California Commercial Code section 2313, which states, in relevant part, that express warranties are created by a seller as follows:

> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

Cal. Com. Code § 2313(1)(a), (b).  To prevail on a breach of express warranty claim, Plaintiffs must prove that: (1) "the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached." *Weinstat v. Dentsply Int'l, Inc.,* 180 Cal.App.4th 1213, 1227, 103 Cal.Rptr.3d 614 (2010) (internal quotation marks and citation omitted).

Plaintiffs argue that the six- and twelve-packs of Kona expressly warrant that the beer is brewed in Hawaii. Opp'n 18-19. CBA points out that the representations on the packaging are true statements, and argues that they cannot be considered unequivocal statements or guarantees that Kona beer is exclusively brewed in Hawaii.  The Court agrees with CBA that the representations on the packaging do not amount to an "affirmation of fact or promise" that the beer is made in Hawaii.  Plaintiffs do not cite to any authority that requires the Court to consider the "totality" of the packaging as Plaintiffs suggest.  Moreover, the fact that each representation is a truthful statement makes it difficult for Plaintiffs to prevail on an express warranty claim in this case.  Here, the mailing address in Kona, Hawaii, the map of Hawaii, and the invitation to visit the brewery are each true statements that identify a real brewery in Kona, Hawaii.  Although taken together under the reasonable consumer analysis they may lead consumers to draw inferences that the beer is made in Hawaii, none of the representations constitutes an express promise that formed

United States District Court
Northern District of California

1   the basis of the bargain between the parties. Cal. Com. Code § 2313(1)(b).  Accordingly, CBA's

2   motion to dismiss Plaintiffs' express warranty claim is GRANTED WITH LEAVE TO AMEND.

3          Plaintiffs' implied warranty cause of action is premised on similar grounds to their express

4   warranty claim, and it fares no better.  Plaintiffs make clear that their implied warranty of

5   merchantability claim is predicated on California Commercial Code § 2314(2)(f), which provides

6   that in order for goods to be merchantable they must "[c]onform to the promises or affirmations of

7   fact made on the container or label if any." Cal. Com. Code § 2314(2)(f); Opp'n 19.  Plaintiffs

8   argue that CBA "misconstrued the pleadings" by focusing its argument on a separate prong of

9   implied warranty which provides that an implied warranty of merchantability can only exist if the

10  product is not fit for its ordinary purpose and the product "did not possess even the most basic

11  degree of fitness for ordinary use." *Mocek v. Alfa Leisure, Inc.*, 114 Cal.App.4th 402, 406, 7

12  Cal.Rptr.3d 546 (2003).  In its motion, CBA does not address Plaintiffs' actual basis for finding a

13  breach of the implied warranty, which is non-conformance with "promises or affirmations" on the

14  packaging for Kona beer.

15         At the hearing on the motion to dismiss, CBA argued that the implied warranty theory is

16  indistinguishable from the express warranty claim, and without an affirmative misrepresentation,

17  both must fail.  The Court agrees that Plaintiffs' implied warranty of merchantability claim, which

18  is based solely on whether the product in dispute "conforms to the promises or affirmations of

19  fact" on the product packaging, rises and falls with the express warranty claim. *See Hadley v.*

20  *Kellogg Sales Co.*, No. 16-CV-04955-LHK, 2017 WL 1065293, at *21 (N.D. Cal. Mar. 21, 2017);

21  *Hendricks v. StarKist Co.*, 30 F.Supp.3d 917, 933 (N.D. Cal. 2014).  Because the Court finds that

22  the Hawaiian address, map and brewery invitation on the Kona beer packaging does not establish a

23  promise sufficient to establish an express warranty, the Court also finds that the implied warranty

24  of merchantability claim is insufficiently pled.

25         For these reasons, the Court GRANTS CBA's motion to dismiss Plaintiffs' express and

26  implied warranty causes of action WITH LEAVE TO AMEND.

27         **D.      Plaintiffs' Standing to Pursue Injunctive Relief**

28         In addition to other forms of relief, Plaintiffs seek injunctive relief under the CLRA, UCL

*United States District Court*
*Northern District of California*

19

and FAL. Compl. ¶¶ 121, 135, 142 (requesting the Court "to enjoin Defendants from violating the [CLRA, UCL, FAL] or violating it in the same fashion in the future as discussed herein.")  In order for the Court to grant injunctive relief, Plaintiffs must establish standing that satisfies Article III of the United States Constitution.  CBA argues that Plaintiffs lack standing to pursue injunctive relief because they cannot demonstrate "redressability – a likelihood that the requested relief will redress the alleged injury." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998); Mot. 18.  For the reasons below, the Court finds that Plaintiffs lack standing to seek injunctive relief.

In general, "[p]ast exposure to harmful or illegal conduct does not necessarily confer standing to seek injunctive relief if the plaintiff does not continue to suffer adverse effects." *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010).  Article III requires plaintiffs to show that they face a "real or immediate threat . . . that [they] will again be wronged in a similar way" in order to obtain injunctive relief.  *Id.* (quoting *City of Los Angeles v. Lyons*, 465 U.S. 95, 111 (1983)).  In the context of a class action, "[u]nless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking that relief."  *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999).

Here, Plaintiffs have alleged that each representative purchased a variety of Kona beer and relied on the representations on the packaging. Compl. ¶¶ 12-14.  Plaintiffs believed they were "purchasing a beer brewed in Hawaii." *Id.*  None of the plaintiffs was aware that Kona beer was actually brewed in the continental United States, and the Consolidated Complaint alleges that Plaintiffs "would not have purchased the [Kona beer] or would have paid significantly less for it had [they] known that it was brewed in the continental United States." *Id.*  Now that Plaintiffs clearly are aware that the six- and twelve-packs of Kona beer they purchased were not brewed in Hawaii, it is unlikely, based upon their own allegations, that Plaintiffs would suffer the same harm again.

Plaintiffs attempt to salvage their injunctive relief claims by hanging on their single allegation that "[d]espite being misled by Defendants, Plaintiffs would likely purchase the Kona Brewing Co. Beers in the future if the Kona Brewing Co. Beers were in fact brewed in Hawaii." *Id.* ¶ 98; Opp'n 20.  This argument falls flat.  Based on Plaintiffs' alleged injury, the Court's

United States District Court
Northern District of California

authority extends only to enjoining CBA from using deceptive references to Hawaii on its packaging.  The Court cannot issue a mandatory injunction forcing CBA to alter its production process so as to brew Kona beer in Hawaii and export it to the United States.  The Consolidated Complaint therefore fails to demonstrate redressability because Plaintiffs have not alleged that they would purchase Kona beer in the future in its current form.

Even if Plaintiffs were to allege that they would purchase Kona beer again at its current price as it is currently brewed, such an allegation is inconsistent with their allegations that they would not have bought the beer, or would have paid significantly less for it, had they known it was not brewed in Hawaii.  Plaintiffs now have knowledge that the beer is not in fact brewed in Hawaii, so they cannot show that "they will be injured by [CBA] again in a similar way and that the future injury can be redressed by injunctive relief." *Luman v. Theismann*, 647 Fed. App'x 804, 807 (9th Cir. 2016)(citing *Bates v. United Parcel Servs., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007).  Now that Plaintiffs are aware of the reality of Kona's production process, there is simply no likelihood that Plaintiffs will be deceived into purchasing Kona beer again under the assumption that it is imported from Hawaii.  *See, e.g.*, *Anderson v. The Hain Celestial Grp., Inc.*, ---F. Supp. 3d---, No. 5:14-CV-03895-EJD, 2015 WL 1744279, at *5-6 (N.D. Cal. Apr. 8, 2015); *Garrison v. Whole Foods Mkt. Grp., Inc.*, No. 13-CV-05222-VC, 2014 WL 2451290, at *5 (N.D. Cal. June 2, 2014).

Plaintiffs rely heavily on *Ries v. Arizona Beverages USA LLC* to demonstrate that some courts in this district have conferred standing on plaintiffs to seek class-wide injunctive relief under California's consumer protection statutes for false labeling claims so long as the plaintiffs stated an intent to purchase the challenged product in the future. 287 F.R.D. 523, 534 (N.D. Cal. 2012); Opp'n 20.  First, as explained above, Plaintiffs here do not state that they would purchase Kona beer in the future.  They allege only that they would purchase hypothetical Kona beer that was brewed in Kona, Hawaii.  Therefore, *Ries* is inapposite since the court there dealt with the plaintiff's stated intention to purchase the actual iced tea product at issue in the future.

Moreover, the Court does not find the reasoning in *Ries* or related cases persuasive on the issue of injunctive relief in this context. 287 F.R.D. at 534; *see also Henderson v. Gruma Corp.*,

United States District Court
Northern District of California

1   No. 10-04173, 2011 WL 1362188 at *7-8 (C.D. Cal. Apr. 11, 2011).  The courts that have found

2   plaintiffs to have standing to pursue injunctive relief in such cases do so in order to fulfill the

3   purpose of California's consumer protection statutes.  This Court finds itself among the other

4   federal district courts that recognize the "realities inherent in the false labeling factual scenario"

5   and dismiss claims for injunctive relief because the representative plaintiff's alleged injury will

6   not be repeated.  "[I]n other words, having become aware of the mislabeling, there is no danger

7   that [Plaintiffs] will be misled in the future." *Anderson v. The Hain Celestial Grp., Inc.*, 87 F.

8   Supp. 3d 1226, 1234 (N.D. Cal. 2015) (quoting *Garrison v. Whole Foods Mkt. Grp., Inc.,* No. 13–

9   cv–05222–VC, 2014 U.S. Dist. LEXIS 75271, at *20, 2014 WL 2451290, at *5 (N.D. Cal. June 2,

10  2014)).  In contrast to federal courts, California state courts are not bound by the limitations of

11  Article III standing and may choose to enforce their consumer protection laws by granting

12  injunctive relief to a plaintiff in the false-labeling context.  However, the Court agrees with the

13  reasoning in *Anderson* that "any provisions for injunctive relief enacted by the California

14  legislature are not sufficient to confer standing under the Constitution," and thus an interest in

15  preserving an underlying statutory scheme "can never overcome a constitutional standing

16  prerequisite." 87 F. Supp.3d at 1234. *See also Bird v. First Alert, Inc.*, No. 14-3585, 2014 WL

17  7248734, at *5 (N.D. Cal. Dec. 19, 2014) ("[A] public policy exception to the standing

18  requirement—which plaintiff seems to be attempting to argue here—does not comport with

19  Article III's mandate.") (internal citations and quotations omitted).

20      In light of the foregoing analysis, the Court requires Plaintiffs to demonstrate constitutional

21  standing as a prerequisite to pursuing injunctive relief.  Because Plaintiffs do not allege that they

22  would purchase Kona beer as it is currently made in the future, and because Plaintiffs are now

23  aware that Kona beer is not actually brewed in Hawaii, Plaintiffs have not and cannot establish "a

24  real and immediate threat of repeated injury."  *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974,

25  985 (9th Cir. 2007); *Anderson*, 2015 WL 1744279, at *6.  As such, amending the allegations in the

26  Consolidated Complaint would be futile.  *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

27  This outcome is without prejudice to Plaintiffs pursuing parallel relief in a state court of competent

28  jurisdiction, but Plaintiffs are unable to plead facts in this context to confer standing in federal

United States District Court
Northern District of California

22

United States District Court
Northern District of California

1  court for injunctive relief. *See Anderson*, 2015 WL 1744279, at \*6.

2    For these reasons, CBA's motion to dismiss is GRANTED WITHOUT LEAVE TO

3  AMEND with respect to Plaintiffs' request for injunctive relief.

4     **E.**  **Equitable Relief**

5    In addition to injunctive relief, Plaintiffs seek equitable relief in the form of restitution

6  under their CLRA, UCL, and FAL claims as well as pursuant to their ninth cause of action for

7  unjust enrichment. Compl. ¶¶ 121, 135, 142, 189.  CBA argues that "it is doubtful whether there is

8  a viable cause of action for unjust enrichment under California law." Mot. 20.  Therefore, CBA

9  argues that Plaintiffs cannot pursue restitution based upon a theory of unjust enrichment/quasi-

10  contract because the claim for equitable relief is duplicative of their statutory state law claims. *Id.*

11    Defendants seek dismissal of Plaintiffs' unjust enrichment claims under California law on

12  the ground that California does not recognize such a claim.  This Court has previously addressed

13  the issue of pleading unjust enrichment.  *See Los Gatos Mercantile, Inc v. E.I. DuPont De*

14  *Nemours & Co.*, No. 13-CV-01180, 2015 WL 4755335, at \*30 (N.D. Cal. Aug. 11, 2015); *Romero*

15  *v. Flowers Bakeries, LLC,* 2015 WL 2125004, at \*9 (N.D.Cal. May 6, 2015).  The Court follows

16  recent Ninth Circuit precedent, which holds that "in California, there is not a standalone cause of

17  action for 'unjust enrichment,' which is synonymous with 'restitution.'" *Astiana v. Hain Celestial*

18  *Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015).  However, because restitution is a recognized

19  "theory underlying a claim that a defendant has been unjustly conferred a benefit 'through

20  mistake, fraud, coercion, or request,'" *id.* (quoting 55 Cal. Jur. 3d Restitution § 2), the remedy for

21  which is "typically sought in a quasi-contract cause of action," *id.*, "a court may 'construe the

22  cause of action [for unjust enrichment] as a quasi-contract claim seeking restitution,'" *id.* (quoting

23  *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014)).  Moreover, that

24  an unjust enrichment claim may be "nonsensical because it was duplicative of or superfluous to" a

25  plaintiff's other claims is not grounds for dismiss[al]. *Id.* (citing and quoting Fed. R. Civ. P.

26  8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or

27  hypothetically, either in a single count or defense or in separate ones.")).

28

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiffs' ninth cause of action is for "Quasi-Contract/Unjust Enrichment/Restitution," wherein they allege that CBA was "unjustly enriched" from the misleading representations on the packaging for Kona beer which induced consumers to pay (or pay more) for beer that they would not have purchased had they not been deceived. Compl. ¶¶ 183-89.  These allegations are sufficient to state a quasi-contract cause of action under California law. *Astiana*, 783 F.3d at 762. CBA's argument that the unjust enrichment claim must fail since there is an adequate remedy of law under claims for violation of the consumer protection statutes is not grounds for dismissal. *Id.* at 763; *see also* Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones.")

Accordingly, the Court DENIES CBA's motion to dismiss Plaintiffs' unjust enrichment claims under California law.[6]

### F.    The Nationwide Class

CBA's motion to dismiss also challenges Plaintiffs' attempt to bring claims on behalf of a nationwide class.[7]  CBA argues that the named plaintiffs in this action lack standing to bring claims on behalf of out-of-state consumers, and that claims by out-of-state consumers likewise fail for lack of personal jurisdiction over CBA in California. *See* id. 21-24.  In regard to the standing issue, Plaintiffs argue that a motion to dismiss is not the appropriate time to challenge class allegations. Opp'n 22.  CBA argues that standing should be addressed at the pleading stage when a representative plaintiff in a class action seeks to bring claims based on the laws of states in which no named plaintiff resides. Mot. 21 (citing *Morales v. Unilever U.S., Inc.*, No. 13-2213, 2014 WL 1389613, at *4-5 (E.D. Cal. Apr. 9, 2014).  Under controlling Ninth Circuit precedent, the Court agrees with CBA that it should address standing prior to class certification. *See Easter v. Am. W.*

---

[6] In its reply, CBA argues for the first time that the unjust enrichment claim must fail along with Plaintiffs' claims for breach of express and implied warranty because Plaintiffs have not identified a false representation upon which an unjust enrichment claim can be based. Reply 5 (citing *McKinnis v. Sunny Delight Beverages Co.*, No. 07-2521, 2007 WL 4766525, at *5-6 (C.D. Cal. Sept. 4, 2007)).  The Court "need not consider arguments raised for the first time in a reply brief," and refuses to consider CBA's argument on that ground. *Zamani v. Carnes*, 491 F.3d 1039, 1048 (9th Cir. 2003).
[7] As stated above, the Consolidated Complaint alleges causes of action for fraud, intentional misrepresentation, negligent misrepresentation and quasi contract/unjust enrichment/restitution on behalf of the putative nationwide class. Compl. ¶¶ 160, 168, 176, 184.

*Fin.,* 381 F.3d 948, 962 (9th Cir.2004).  Moreover, when a plaintiff's lack of standing is "plain enough from the pleadings," it can form appropriate grounds for dismissal even if it overlaps with issues regarding whether the named plaintiffs are adequate representatives under Rule 23. *Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 160 (1982); *see also Morales*, 2014 WL 1389613, at *5.

However, in this case, the Consolidated Complaint does not allege claims on behalf of out-of-state plaintiffs based on violations of non-California laws.  Therefore, the parties' arguments on this point are moot.  At the hearing on the motion to dismiss, the Court made clear to Plaintiffs that they have not alleged claims under consumer protection statutes in 49 other states.  As written, the Consolidated Complaint's allegations are made on behalf of three putative classes: a nationwide class and two California subclasses. Compl. ¶ 99.  Plaintiffs clarified at the hearing that the nationwide class brings its claims under the federal common law.  The Court need not decide whether the named plaintiffs in this case, all of whom are California residents, have standing to bring claims on behalf of out-of-state members of the nationwide class for violations of their states' laws since such claims are simply not alleged in the Consolidated Complaint.[8]

For a different reason, the Court also need not address the parties' arguments regarding personal jurisdiction over CBA as to claims by out-of-state consumers at this stage of the case.  Recognizing that there are two types of personal jurisdiction, general and specific, the parties do not dispute whether CBA is subject to general jurisdiction in California.  Rather, Plaintiffs only allege that CBA is subject to specific jurisdiction in California. Opp'n 22.  Likewise, CBA concedes that there exists specific jurisdiction over CBA as to claims brought by California residents who allegedly bought Kona beer in California. Mot. 23.  However, CBA argues that there is no specific personal jurisdiction over CBA with regard to the claims brought by non-resident nationwide class members who did not purchase Kona beer in California. *Id.*  Plaintiffs argue in response that the Court can exercise pendent personal jurisdiction over CBA as to claims

---

[8] To the extent Plaintiffs desire to add allegations for violations of the laws of states other than California, Plaintiffs are required to seek leave to amend the complaint.  The Court has already made clear to Plaintiffs that such a drastic amendment would significantly delay this case and would require a named plaintiff from each of the states whose laws are alleged to be violated.

United States District Court
Northern District of California

1    brought by out-of-state consumers because their claims arise from the "same nucleus of operative

2    facts as claimed by [the California] Plaintiffs." Opp'n 23.

3         After the parties finished briefing the instant motion to dismiss, the Supreme Court handed

4    down *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct.

5    1773 (2017) ("*Bristol-Myers*").  CBA filed a statement of recent decision regarding *Bristol-Myers*

6    and argued that the case supports its contention that CBA is not subject to specific jurisdiction in

7    California as to out-of-state claims. ECF 25.  In *Bristol-Myers*, in the context of a mass tort action

8    in state court, the U.S. Supreme Court reversed the California Supreme Court and held that

9    California could not exercise specific jurisdiction over Bristol-Myers Squibb with respect to

10   claims by non-residents of California who did not claim to have suffered harm in California. 137

11   S. Ct. at 1782.  Justice Alito wrote for the 8-1 majority and explained that the case against Bristol-

12   Myers Squibb regarding the effects of its drug Plavix was missing "a connection between the

13   forum and the specific claims at issue." *Id*. at 1781.  "When no such connection exists, specific

14   jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State."

15   *Id*.

16        At first blush, *Bristol-Myers* appears to support CBA's argument that the Court cannot

17   exercise specific personal jurisdiction over CBA as to claims by out-of-state plaintiffs who were

18   not injured in California.  Indeed, the implication of the decision appears to be that mass actions in

19   state courts can only proceed where the defendant is subject to general jurisdiction, which for a

20   corporation would be the state of incorporation or its principal place of business.  Regardless of

21   the temptation by defendants across the country to apply the rationale of *Bristol-Myers* to a class

22   action in federal court, its applicability to such cases was expressly left open by the Supreme

23   Court and has yet to be considered by lower federal courts.[9]  Indeed, this Court may be among the

24   _____

25   [9] The *Bristol-Myers* majority made clear that "since this decision concerns the due process limits
     on the exercise of specific jurisdiction by a State, the question remains open whether the Fifth
26   Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal
     court." 137 S.Ct. at 1784.  Moreover, in her dissent, Justice Sotomayor explained that the majority
27   left open the question of the decision's applicability to class actions. 137 S. Ct. at 1789 n.4 ("The
     Court today does not confront the question whether its opinion here would also apply to a class
28   action in which a plaintiff injured in the forum State seeks to represent a nationwide class of
     plaintiffs, not all of whom were injured there.")

first to rule on the implications of the decision for nationwide class actions.  However, given the timing, the parties to this putative class action have not yet briefed the implications of *Bristol-Myers* or its applicability to the facts of this case.  In light of these considerations, the Court defers consideration of CBA's specific personal jurisdiction arguments until class certification, when the parties will be able to brief their positions, including whether *Bristol-Myers* should apply to this case and whether it overrules other cases on which the parties rely in their motion to dismiss briefing.[10]

Therefore, CBA's motion to dismiss Plaintiffs' claims on behalf of out-of-state members of the nationwide class is DENIED without prejudice to CBA raising these issues again at class certification.

## V.     ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that CBA's Motion to Dismiss is GRANTED IN PART and DENIED IN PART:

1.     CBA's motion to dismiss all of Plaintiffs' causes of action on the ground that Plaintiffs fail to allege actionable misrepresentations on the packaging for Kona beer is DENIED.

2.     CBA's motion to dismiss Plaintiffs' CLRA, UCL and FAL causes of action is DENIED.

3.     CBA's motion to dismiss Plaintiffs' causes of action for common law fraud, intentional misrepresentation, and negligent misrepresentation is DENIED.

4.     CBA's motion to dismiss Plaintiffs' causes of action for breach of express warranty and breach of implied warranty is GRANTED.  These claims are DISMISSED WITH LEAVE TO AMEND in a manner consistent with this Order.

---

[10] As discussed at the motion to dismiss hearing, the Court finds that the prejudice to CBA in deferring a ruling on personal jurisdiction over CBA as to out-of-state plaintiffs at this stage is slight.  The implications for discovery are minimal because the parties do not dispute personal jurisdiction over CBA as to the named plaintiffs and the California subclasses, and the nationwide class does not assert any claims that the California subclasses do not also assert.

United States District Court
Northern District of California

5.    CBA's motion to dismiss Plaintiffs' request for injunctive relief is GRANTED WITHOUT LEAVE TO AMEND.

6.    CBA's motion to dismiss Plaintiffs' unjust enrichment cause of action is DENIED.

7.    CBA's motion to dismiss Plaintiffs' claims on behalf of out-of-state members of the alleged nationwide class for lack of standing is DENIED AS MOOT because the Consolidated Complaint does not allege violations of state law other than California.

8.    CBA's motion to dismiss Plaintiffs' claims on behalf of out-of-state members of the alleged nationwide class for lack of personal jurisdiction is DENIED without prejudice to CBA raising the issue again at class certification.

Any amended pleading to cure deficiencies identified in this Order shall be filed **no later than 21 days from the date of this Order.**

Dated:  September 1, 2017

BETH LABSON FREEMAN
United States District Judge