UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THEORDORE BROOMFIELD, *et al.*, individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>     v.<br><br>CRAFT BREW ALLIANCE, INC.,<br><br>          Defendant | Case No. 5:17-CV-01027-BLF |

# DECLARATION AND EXPERT REPORT OF

# J. MICHAEL DENNIS, PH.D.

# MARCH 29, 2018

I, J. Michael Dennis, Ph.D., declare as follows:

1. I have been retained by counsel for the plaintiffs in the matter of *Broomfield*, *et al. v. Craft Brew Alliance, Inc.*, Case No. 5:17-CV-01027-BLF (N.D. Cal.). If called upon to testify, I would and could testify competently to all such subject matter in this Declaration.

2. I am currently a Senior Vice President at NORC in Chicago, IL. I lead the online panel survey research business for NORC. NORC is one of the premier survey research organizations in the United States. Affiliated with the University of Chicago, NORC has conducted research for Federal, foundation, and academic clients for 75 years, and is responsible for some of the most prestigious survey projects in the U.S, including the General Social Survey and the Survey of Consumer Finance. Prior to joining NORC in December 2014, I was a Managing Director at GfK (which acquired my employer Knowledge Networks in 2012). GfK is the fifth largest market research firm worldwide, offering research services

in 90 countries.  I have worked as a survey research expert for more than 20 years, authoring more than 60 articles, conference and seminar papers, or book chapters.  I am recognized as an expert in survey research methods.  I am a frequent speaker at the annual meetings of the American Association for Public Opinion Research ("AAPOR") and the American Statistical Association.  In recognition of my expertise in online surveys, I was appointed to be a member of the AAPOR Task Force on Online Panels that published recommendations for researchers regarding online surveys.

3. I have been personally involved in the design and conduct of hundreds of statistical surveys using the internet mode of data collection over the last 17 years, including the kind of consumer surveys that are described in this report.

4. Designing and conducting surveys about the opinions, perceptions, attitudes, preferences, and values of consumers, voters, members of associations, and citizens is a service that I have provided for my customers for more than 20 years.  I have designed and conducted consumer surveys that have been accepted by courts in the following cases:

- *Price [Miles] v. Philip Morris*. In the Circuit Court, Third Judicial Court, Madison County, Illinois. Case No. 00 L 0112.

- *Zill v. Sprint*. County of Alameda, Superior Court of the State of California. Case No. RG03114147.  Collectively the "cellphone unlocking cases."

- *Ebin v. Kangadis Food Inc.* U.S. District Court for the Southern District of New York. Case No. 1:13-cv-02311.

- *Sachs and Alden v. Toyota Motor Corporation*.   Superior Court of the State of California, County of Los Angeles.  Case No. BC443701.

- *Avram v. Samsung Electronics America, Inc. and Lowe's Home Centers*.   United States District Court for the District Of New Jersey. Civil Action No. 2:11-cv-6973 (KM) (SCM).

- *Geanacopoulos v. Philip Morris, USA*. Commonwealth of Massachusetts Superior Court. Civil Action No. 98-6002-BLSI.

- *Scotts EZ Seed Litigation*. U.S. District Court for the Southern District of New York. Case No. 12-CV-4727 (VB) (PED).

2

- *Dzielak v Whirlpool.* U.S. District Court District of New Jersey. Case No. 12-cv-00090 (D.N.J.).

- *Pettit v. Procter & Gamble [RE: Flushable Wipes].* U.S. District Court for the Northern District of California. CASE NO. 3:15-CV-02150-RS.

5. In addition, I have designed and conducted consumer perception surveys in *Price v. Philip Morris, Zill v. Sprint, Otto v. Abbott Laboratories, Ebin v. Kangadis, Scotts EZ Seed Litigation, Pettit v. Procter & Gamble [RE: Flushable Wipes].* Designing and conducting surveys about the perceptions and opinions of consumers, voters, members of associations, and citizens is a routine service that I have provided for my customers for more than 20 years.

6. I have testified on more than twenty occasions as an expert witness, both in deposition and at trial.

7. During the period 2000 to 2013, I managed all the online panel research conducted by Knowledge Networks (acquired by GfK in January 2012) on behalf of federally funded principal investigators who conduct health, economic, social, and political research. When I began at Knowledge Networks as the Vice President of Operations and Survey Research in 2000, I was responsible for leading survey research for the company and for developing the probability-based KnowledgePanel, which was the core company asset for Knowledge Networks. As part of the start-up of Knowledge Networks, I also designed and implemented approximately 20 internally funded surveys in the areas of health, finance, public policy, and consumer research, and oversaw the scientific direction and operational management of the construction of KnowledgePanel.

8. In 2001, I founded the client-facing business unit "Government & Academic Research" for Knowledge Networks. In the role of Managing Director, I oversaw a staff of more than 50 researchers. I advised clients on the design of all phases of their survey research projects, including sample design, questionnaire design, quality control procedures, and data analysis. The research I conducted has had to meet the high-quality standards maintained by federal sponsors of statistical surveys funded by agencies such as the U.S. Centers for Disease Control and Prevention, the Environmental Protection Agency, and the National Science Foundation. I have been the principal investigator for studies funded by the U.S. National

Science Foundation.  My opinions have been quoted in The Wall Street Journal, The New York Times, Crain's Chicago Business, and Business Week.

9.  Before joining Knowledge Networks, I was a Senior Scientist at Abt Associates, where I managed the data collection for the largest random digit dialing telephone survey in the United States, the National Immunization Survey, which was funded by the U.S. Centers for Disease Control and Prevention with management support from the National Center for Health Statistics.  I also led other survey studies funded by the National Institute on Alcohol Abuse and Alcoholism, the National Cancer Institute, the Social Security Administration, and the White House Office of National Drug Control Policy.

10. Prior to my work at Abt Associates, I was a recognized expert in medical ethics and government regulation of the organ transplantation field and served on government-funded committees providing guidelines on practices related to organ donation and the equitable allocation of cadaveric organs to patients.

11. The cases in which I have testified as an expert, either at deposition or trial, during the last four years are:

A. May 21, 2014.  Expert Deposition. *Skold v Intel*.  Superior Court of the State of California, County of Santa Clara. Case No. 1-05-CV-039231.

B. June 24-June 25, 2014. Expert Testimony at Trial.  *NCAA Student-Athlete Name and Likeness Licensing Litigation*.  U.S. District Court for Northern District of California. Case No. 4:09-cv-01967-CW.

C. July 3, 2014.  Expert Deposition.  *Socratic Technologies, Inc. v Young Ko et al*. Superior Court of the State of California, City and County of San Francisco. Case No. CGC-13-530955.

D. July 31, 2014. Expert Deposition.  *Jeffrey Sachs and James Alden v. Toyota Motor Corporation*.  Superior Court of the State of California, County of Los Angeles. Case No. BC443701.

E. October 7, 2014.  Expert Deposition.  *Ebin v. Kangadis Food Inc*. U.S. District Court for the Southern District of New York. Case No. 1:13-cv-02311.

F. November 24, 2014. Expert Deposition.  *Thomas Geanacopoulos v. Philip Morris, USA*. Commonwealth Of Massachusetts Superior Court. Civil Action No. 98-6002-BLSI.

G. June 10, 2015. Expert Deposition.  *Michael J. Otto v. Abbot Laboratories*.  United States District Court, Central District of California. Case No. 5:12-CV-01411-SVW-DTB.

H. August 21, 2015.  Expert Deposition.  *Lynne Avram v. Samsung Electronics America, Inc. and Lowe's Home Centers*.  In the United States District Court for the District Of New Jersey. Civil Action No. 2:11-cv-6973 (KM) (SCM).

I. September 18, 2015.  Expert Deposition. *Scott Miller v. Fuhu, Inc. and Fuhu Holdings, Inc*. In the United States District Court of California, Western Division.  Case No. 14-cv-6119 CAS-AS.

J.  November 9-10, 2015.  Expert Testimony at Trial.  *Thomas Geanacopoulos v. Philip Morris, USA*. Commonwealth Of Massachusetts Superior Court. Civil Action No. 98-6002-BLSI.

K.  February 5, 2016.  Expert Deposition.  *Miner v Philip Morris Companies, Inc. and Philip Morris, Incorporated*.  In the Circuit Court of Pulaski County, Arkansas Sixth Division Case No. 60CV03-4661.

L.  February 12, 2016.  Expert Deposition.  *Scotts EZ Seed Litigation*.  Case No. 12-CV-4727 (VB) (PED) (S.D.N.Y.).

M.  March 8, 2016. Expert Deposition.  *Dzielak v Whirlpool*.  Case No. 12-cv-00090 (D.N.J.).

N.  March 18, 2016.  Expert Deposition.  *Darisse v. Nest Labs, Inc*. Case No. 5:14-cv-01363. U.S. District Court of Northern California.

O.  March 22. 2016.  Expert Testimony at Trial.  *Larsen (formerly Craft) v. Philip Morris*, Missouri Circuit Court, Twenty-Second Judicial Court.  Case No. 002-00406-02.

P.  May 5, 2016.  Expert Deposition.  *Miner v Philip Morris Companies, Inc. and Philip Morris, Incorporated*.  In the Circuit Court of Pulaski County, Arkansas Sixth Division Case No. 60CV03-4661.

Q.  August 29, 2017. Expert Deposition. *Jones et al. v. Nutiva*. Case No. 3-16-cv-00711-HSG. United States District Court for the Northern District of California.

R.  October 17, 2017. Expert Deposition.  *Brenner v The Procter & Gamble Co*. Case No.: 8:16-1093-JLS-JCG. United States District Court for the Central District of California.

S.  October 23, 2017. Expert Deposition.  *Dean et al v Colgate-Palmolive Co*. Case No. 5:15-CV-00107. United States District Court for the Central District of California.

T.  November 13, 2017.  Expert Deposition. *Joann Martinelli et al v. Johnson & Johnson and McNeil Nutritionals, LLC*. Case No. 2:15-cv-01733-JAM-DAD.  United States District Court, Eastern District of California.

U.  November 21, 2017. Expert Deposition. *Strumlauf et al v. Starbucks Corporation*.  Case No. 4:16-cv-1306-YGR.  United States District Court, Northern District of California.

V.  December 11, 2017.  Expert Deposition.  *In re: AMLA LITIGTATION*.  Civil Action No. 1:16-cv-06593 (JSR). United States District Court, Southern District of New York.

W.  January 19, 2018.  Expert Deposition. *Williams-Sonoma Song-Beverly Act Cases*. Superior Court of the State of California, County of San Francisco. Case No. JCCP 4611.

12. My current *curriculum vitae* is attached as Attachment A.

13. Plaintiffs' counsel has retained my services at the hourly rate of $400.  My compensation is not contingent on the results of my work or any outcome of the litigation.

## SCOPE OF MY EXPERT REPORT

14. I understand Plaintiffs allege that Defendant's Kona beer product packaging is misleading to consumers because the product packaging communicates a message to the consumers that the Kona beer is brewed in Hawaii when in fact it is not.[1]  In short, Plaintiffs allege that Kona consumers were misled by the product packaging.  Consequently, consumers understood the Kona product packaging to communicate the brewing location of the beer to be Hawaii – and consumers' purchasing decisions were materially influenced by the same misleading communications.

15. I was asked by Plaintiffs' counsel to design, conduct, and report on a reliable consumer survey to address issues relevant to the litigation.  I understood my scope to involve two measurements.   First, I was asked to measure the extent to which (if any) that craft beer consumers understand Kona product packaging to communicate where Kona beer is brewed – the state of Hawaii.  Second, I was asked to measure the extent to which (if any) Kona product packaging is material to the purchasing decisions of craft beer consumers by communicating the brewing location as the state of Hawaii.  My survey does not attempt to quantify the price premium paid by consumers, if any, that is solely attributable to the challenged product packaging.

16. In this Declaration, when I use "craft beer consumers" and "craft beer respondents," I am referring to U.S. residents age 21 and over who have purchased Kona beer or a beer brewed from one or more of its competitors: ██████████████████████ ████████████████████

---

[1] Plaintiffs maintain that the draft beer sold in Hawaii is actually brewed in Hawaii. "Kona Brewing Co.'s draft beers sold in Hawaii are brewed in Hawaii."   First Amended Consolidated Complaint, ¶ 1.

[2] I derived the list of Kona's competitors from a review of Defendant's market research. CBAKONA00011621, CBAKONA00009413-9416.

6

## OVERVIEW OF WORK PERFORMED

17. Based on my knowledge and expertise in the fields of survey research and consumer market research, I designed and conducted a consumer survey in a number of sequential steps explained below.  First, I created a sampling plan designed to survey respondents whose responses would project to the study's target population of California consumers of beers during the class period.  Second, I designed the consumer survey based on my research of the Defendant's product packaging and market research, among other things.  Third, I tested the consumer survey through cognitive interviews and pretesting with research subjects.  Fourth, I retained a survey vendor to program and execute the survey, as well as administer the survey to consumers of craft beer.  Fifth, I compiled the data from the completed interviews, reviewed the data to assess the quality of the survey data, and analyzed the interviews.  Sixth and finally, I wrote this declaration and expert report.

18. I designed and conducted the consumer survey in conformance with best practices for litigation surveys documented by Professor Diamond in her "Reference Guide on Survey Research."[3] My consumer survey employs a sound methodology, in light of the considerations documented by Robert Groves *et al.* in their survey research textbook, Survey Methodology (Second Edition), and by Peter Marsden and James Wright in the Handbook of Survey Research (Second Edition), among others.

19. In the paragraphs below, I first provide the findings from the consumer survey, and then I document the steps that I took to design and implement the consumer survey.

## FINDINGS FROM THE CONSUMER SURVEY OF CRAFT BEER CONSUMERS

20. My survey found that a substantial majority – 71.0% – of California craft beer consumers understand the Kona product packaging to mean that the Kona beer is brewed in the state of Hawaii.  Of the 451 California craft beer consumers that I surveyed and showed the Kona product packaging, 320 stated that the beer was brewed in Hawaii.  The sampling margin of

---

[3] Shari Seidman Diamond, 2011, "Reference Guide on Survey Research," Reference Manual on Scientific Evidence (Third Edition).

error for the 71.0% survey result is +/- 4.2 percentage points (95% confidence) for the interviewed sample size of 451 California craft beer consumers.  I conclude from this finding that approximately seven out of ten California craft beer consumers interpret the Kona product packaging to communicate that the Kona beer was brewed in Hawaii. My survey corroborates findings by the Defendant's own market research, ██████████████████ ████████████████████████████████████████████

21. I also found that the Kona product packaging communicating the Hawaii brewing location is material to the purchasing decisions of California craft beer consumers.  After showing the California craft beer respondents the product packaging, the survey gave the respondents a choice between a Kona beer brewed in Hawaii or a Kona beer not brewed in Hawaii but instead brewed in the continental United States.  I call this the referendum question.   When given the choice in a referendum, 77.2% of the California craft beer consumers selected for purchase the Kona beer brewed in Hawaii, while only 12.6% purchased the beer not made in Hawaii, and the remaining 10.2% did not make a choice.   The sampling margin of error for the 77.2% survey result is +/- 3.9 percentage points (95% confidence) for the interviewed sample size of 451 California craft beer consumers.   I conclude from this finding that the Kona product packaging communicating that the beer is brewed in Hawaii is material to California craft beer consumers.

22. I also surveyed a representative sample of US craft beer consumers residing outside California.  This non-California sample shows that California craft beer consumers are similar to the rest of the country on the litigated issues covered in the scope of my report.  I surveyed 461 non-California US residents who are craft beer consumers.  Of these 461 respondents, 333 (72.2%) reported that they thought the Kona beer was brewed in Hawaii based on the product packaging.  This finding is statistically indistinguishable from the 71.0% statistic for the California craft beer consumers.  On the referendum question giving the craft beer respondents a choice between the Kona beer made in Hawaii or the Kona beer not made in Hawaii (but made instead in the continental U.S.), the non-California craft beer consumers voted for the Kona beer made in Hawaii by a margin of 69.6% to 18.9%,

---

[4] *See* the Nielsen reports CBAKONA00011457, CBAKONA00011550.

compared to 77.2% to 12.6% for the California sample.  When taking into account sampling margin of error, the difference is not statistically significant ($p > 0.05$).

23.  In summary, my survey consists of mutually reinforcing findings.  First, the substantial majority of craft beer consumers perceive the Kona product packaging to communicate the message that the beer is brewed in Hawaii.  Second, this perception is material to these consumers – i.e., it influences their decision to purchase the Kona product.  A substantial majority of craft beer consumers prefer to purchase a Kona beer product that is made in Hawaii over a Kona beer not made in Hawaii.  Third, the survey found that California and non-California craft beer consumers are statistically indistinguishable on these two measures, namely, a perception that the Kona product packaging communicates that the beer is brewed in Hawaii and a preference to purchase a Kona beer made in Hawaii over a beer not made in Hawaii.  Whether residing in California or elsewhere in the US, craft beer consumers overwhelmingly understood the Kona packaging to mean that the beer was brewed in Hawaii, and furthermore, the craft beer consumers prefer to purchase the Kona beer product brewed in Hawaii over a Kona beer not brewed in Hawaii.  The Kona packaging produces similar perceptions of the product regardless of where the craft beer consumer resides in the U.S.

## METHODOLOGICAL CONSIDERATIONS FOR
## THE CONSUMER SURVEY

24.  **Study Target Population**.  The study target population for the survey consisted of the non-institutionalized adults age 21 and over residing in the 50 states and the District of Colombia.  To qualify for the consumer survey, respondents must answer a series of screening survey questions.  The screening questions are mapped to the definition of the study target population.  To qualify for the survey and be a study participant, the respondents must answer a series of questions whereby their responses meet all of the following conditions: be at least age 21; did not take a survey about food and beverages in the past 30 days; and purchased a Kona beer or a beer competitive with Kona for personal use in the past 12

months.[5]  While all the respondents purchased craft beers (Kona or a Kona competitor beer) in the past year, 84% of the California craft beer respondents began purchasing craft beer one or more years ago, and 73% started purchasing craft beers three or more years ago.

25. Therefore, my sampling approach is based on surveying adult consumers who are actual craft beer consumers. I restricted the sample to craft beer consumers from the past year because these consumers would be more reliable respondents with recent purchase experiences of craft beers.

26. In addition to relying on the Defendant's own market research in designing the sample, I considered my experience as an expert in using product category sampling in my past surveys accepted by the courts.   I used product category sampling in this survey by sampling consumers of craft beers that compete with the Defendant's Kona beer.  Product category sampling is common in market research because of a recognition that consumers of one product in the subcategory (e.g., Colas) are representative of consumers of the overall category (e.g., Carbonated Soft Drinks).[6]  Use of the product category concept in market research has its parallels in the actual marketplace.  Retailers rely on the product category concept by grouping like products near each other on shelving in brick-and-mortar stores (such as hair shampoo or hair conditioners).

27. **Cognitive Interviews**.  On March 4, 2018, I conducted six cognitive interviews with craft beer consumers.  The typical interview lasted 20 to 35 minutes.  The purpose of the cognitive interviews is to collect feedback from test respondents to determine if the questionnaire is clear and understandable to the respondents.  I showed the respondents the online survey questionnaire from my computer by sharing my computer screen with the respondents, while talking with them over the phone or through their computers (i.e., voice over IP).  Respondents provided me feedback on the survey as I showed them each online screen.  Based on feedback from the respondents, I made some modest changes to the survey as evidenced by a comparison of Attachment B (questionnaire for the cognitive interviews) and

---

[5] Consistent with the Defendant's interpretation of its competitors, I defined the competitor set to consist of these craft or import beer brands: ███████████████████████ CBAKONA00011621, CBAKONA00009413-9416.

[6] *See* Scott M. Smith and Gerald S. Albaum, An Introduction to Marketing Research, 2010, p. 124.

Attachment C (questionnaire for the pretest survey and main study).  Those changes are noted below.

    a.  In the referendum question, I simplified the language about the choice between a beer brewed "in the state of Hawaii" and a beer brewed "in the contiguous US states, not in Hawaii.  Only the draft beer sold in Hawaii is made in Hawaii."  Respondents found this construction confusing.  I simplified the choice to brewed "in Hawaii" versus "in the continental US states, not in Hawaii."

    b.  The appropriate changes were then made for other parts of the referendum section of the survey that contrast the "in Hawaii" versus "in the continental US states, not in Hawaii."

28. **Pretest Survey**.  I conducted a pretest to test the consumer survey with a representative sample of members of the study target population.  The pretest survey is, in a sense, a dress rehearsal for the data collection.  The pretest was conducted online using the same sampling and data collection procedures that I subsequently employed for the full data collection.  I conducted the pretest for the following purposes: (i) for quality control and quality assurance testing of the survey instrument, (ii) to validate that the survey questionnaire was programmed correctly to my specifications, (iii) to identify any survey questions that were unclear to respondents, and (iv) to analyze the data to identify any problems, such as unexpected missing data.  On March 6, 2018, I completed 52 interviews with pretest respondents.  I paused the data collection on March 6th so that I could review the collected survey interviews.

29. Based on my review of the pretest data on March 6th and 7th, I concluded that the survey was reliable.  I reviewed the preliminary data from the pretest and ultimately determined that no questionnaire wording changes were warranted.  I did not make any survey question wording changes to the survey questionnaire based on the pretest or prior to conducting the full study.  Therefore, since the pretest survey and main study questionnaires are identical, I included the pretest survey interviews in the data set on which I rely for my analysis and reporting of findings. This is a customary practice in the survey research industry.

30. **Main Study Data Collection Schedule**.  After the pretest, I resumed the data collection on March 7, 2018.  The data collection was completed on March 12, 2018.

31. **Details on Sample Performance**.  There were 4,286 consumers that answered the first survey question about state of residence.  Of these consumers, 931 qualified for the survey by meeting the definition of the study target population of past-12-month consumers of craft beer.  Of these, there were 912 craft beer respondents that completed my survey.  Of these, 451 of the craft beer respondents were from California and 461 were from the rest of the United States.

32. **Survey Questionnaire Programming and Survey Data Collection**.  I retained Research Now Survey Sampling Inc. to provide me with the online survey vendor services for programming the questionnaire, providing the respondent sample, and for collecting the survey data.  Based on my experience in the industry (as described above), the Research Now SSI online panel sample is regarded as the most credible and reliable non-probability online panel having the necessary scale for this study, which involves collecting a substantial number of interviews on a relatively low-incidence consumer segment.  Research Now SSI programmed my survey questionnaire into an online survey under my active supervision.  The actual survey data were collected using survey software and servers operated by Research Now Survey Sampling Inc.

33. **Use of Product Packaging Images to Add Credibility to the Survey.**  I made extensive use of images from the actual 12-pack boxes and six-packs of Kona beer.  Because some respondents might be using smaller screens such as smartphones, respondents were provided a magnifier to enable the respondents to view the details on the product packaging.  As explained further below, a random 50% of the respondents were shown not only the front and side panels of the 6-pack bottle package and the front of the 12-pack box, but also shown the top of the 12-pack box.  All respondents were shown the front and side of the Kona beer packaging to which they were assigned (Longboard, Big Wave, or Castaway).  The front and back of the packaging are the same, as are the two side panels.  Therefore, respondents were shown the imaging of all four sides of the Kona beer six-pack carton.  For each Kona sub-brand (e.g., Longboard, Big Wave, and Castaway), the product packaging is consistent across the various Kona products:  the 12-ounce bottle, the six-pack carton, the 12-pack box, and the 24-pack box.  To summarize, the craft beer respondents were shown the product images that a craft beer consumer would be presented when purchasing an individual bottle, the six-pack carton, the 12-pack box, or the 24-pack box.

34. **Steps Taken to Disguise Survey Objectives from the Respondents**.   I took certain steps to avoid a potential risk for the reliability of the study that would result from respondents answering the survey questions strategically to either help or hurt Defendant's interests.   I camouflaged the survey objectives to address the risk of strategic responses.  First, with respect to the screening section of the survey, my first screening question included a wide variety of beverage product types.  Second, I included in the survey a broad assortment of craft and non-craft beer brands.  By casting a wide net for the types of beer and other beverages, I disguised the research objectives from the respondents.  Most importantly, I started the substantive part of the survey with a battery of questions about consumers' perceptions of the Kona product packaging with respect to "fun," "refreshing," and "bold taste."  I did not use the data from these three questions for analysis.  Their purpose was to disguise the research objectives from the respondents.   From my cognitive interviews with respondents, I understand that these questions effectively disguised the survey objectives.  Respondents perceived that the survey was part of a market research study.

35. **Randomizations in the Survey to Control for Potential Order Effects.**   I made extensive use of randomizations in the survey questionnaire to control for the potential impact on survey responses that could result from the order in which respondents are asked to answer certain questions or exposed to stimuli (images) in my survey.   The randomizations are documented in Attachment C where I show the questionnaire logic.  Randomizations include, but are not limited to, the following, survey questions and batteries of survey questions.

    a.  RE: Item PAST_SURVEY.  The survey response list is randomized.

    b.  RE: Item S2.  The survey response list for types of beverages is randomized.

    c.  RE:  Experimental design for the substantive survey question.  Respondents eligible for the survey are randomly assigned to one of six conditions.  The six conditions are shown below.

**Randomly Assigned Conditions for the Respondents[7]**

| Condition | Beer Name | Images Shown Respondents |
|---|---|---|
| 1A | Kona Longboard Island Lager | 6 Pack, Front and Top of 12-Pack Box |
| 1B | Kona Longboard Island Lager | 6 Pack, Front of 12-Pack Box |
| 2A | Kona Big Wave Golden Ale | 6 Pack, Front and Top of 12-Pack Box |
| 2B | Kona Big Wave Golden Ale | 6 Pack, Front of 12-Pack Box |
| 3A | Kona Castaway IPA | 6 Pack, Front and Top of 12-Pack Box |
| 3B | Kona Castaway IPA | 6 Pack, Front of 12-Pack Box |

One-third of the respondents were randomly assigned to one of the three Kona beer brands: Longboard Island Lager, Big Wave Golden Ale, and Castaway IPA.  (I used three of the prominent Kona brands (instead of just one) to assure the generalizability of my findings across the Kona brands.) Then the respondents were randomly assigned to be shown either (i) the images of the six-pack of Kona bottle packaging and the front of the 12-pack box, or (ii) those two same sets of images plus the top of the 12-pack box.  By randomly assigning respondents to one of these two conditions (i.e., either shown or not shown the top flap of the box), the survey is able to measure the extent to which, if any, additional exposure to the Defendant's challenged representations has an impact on consumers' perceptions of Kona's packaging and its materiality to purchase decisions.

d.  RE:  Randomization of the descriptions for "Beer A" and "Beer B" for the referendum question.  Respondents were randomly assigned to Beer A that is either brewed "in Hawaii" or "in the continental U.S.," while Beer B would, of course be the other description.  The goal is to control for the possibility that respondents might perceive that Beer "A" is somehow more valuable than "B."

## DESCRIPTION OF THE SUBSTANTIVE SURVEY QUESTIONNAIRE

36. The question wording and survey logic are documented in Attachment C, while Attachment

---

[7] This table is provided to document the experimental presentation of the "top flap" for a random half of the craft beer respondents.  Prior to this experimental presentation, all of the craft beer respondents were presented with the front and side panels of the six-pack packaging.  Therefore, since the front and back panels are identical and since the side panels are identical all respondents were presented all four sides of the six-pack product packaging.

D shows the actual images from the online survey that the respondents completed. Below I provide additional information on the considerations in designing each of the survey questions. This part of the survey was administered to respondents that qualified for the survey as members of the study target population.

37. As mentioned, I randomly assigned the respondents to six questionnaire conditions, which correspond to the three major Kona brands, and by whether I showed the respondents the top flap of the 12-pack package. For illustration purposes, below I display the questionnaire for the Longboard condition where the respondents viewed the top flap (i.e., condition 1A). As a reminder, a random half of the respondents were shown the top flap and the other half was not.

38. The first online screen in the survey explained the survey will be asking about expectations based on the packaging, while showing the six-pack image of the product. Therefore, as noted above, all respondents were shown the front, back, and side panels of the six-pack packaging. Since the front and back of the packaging are identical, as are the two side panels, the craft beer respondents were shown all four sides of the six-pack packaging.



39. Because the survey is measuring consumers' understanding and preferences with respect to

15

the product packaging, I next showed the respondents an image of the front of the packaging. I gave the respondents a magnifying glass.



40.  As explained above, a random half of the respondents were given the opportunity to view the top of the 12-pack and 24-pack packaging.  The screen shot is below.



41. I then explain to the craft beer respondents that I had three questions about their expectations for the Kona beer based on the packaging.  In fact, I did not need these survey questions for

16

the analysis.  Their only purpose was to distract the respondent from discerning my research objectives.  The first of the three questions is shown below as an illustration. The other two questions are documented in Attachment C and Attachment D.



42. After the distraction questions, I then proceeded to administer the two questions needed to measure consumers' understanding of where the beer was brewed based on the packaging. The first question ascertained whether respondents perceived the brewing location to be in the United States or not.  For those who answered U.S., there was a follow-up question where the respondent picked from a drop-down list of all U.S. States and the District of Columbia.



43. Below is how the drop-down menu appeared for the respondents who were asked the follow-up question about where in the U.S. the respondent believes the Kona beer is brewed.

**Where** in the United States do you think the Kona Longboard Island Lager was brewed?

**Please use the magnifying glass if needed.**

Please select one from the list.



| Please select your answer |
|---|
| Alabama |
| Alaska |
| Arizona |
| Arkansas |
| California |
| Colorado |
| Connecticut |
| Delaware |
| Washington D.C. |
| Florida |
| Georgia |
| Hawaii |
| Idaho |
| Illinois |
| Indiana |
| Iowa |
| Kansas |
| Kentucky |
| Louisiana |
| Maine |
| Maryland |
| Massachusetts |
| Michigan |
| Minnesota |
| Mississippi |
| Missouri |
| Montana |
| Nebraska |
| Nevada |

Click <u>HERE</u> to see more of the packaging

>

© Powered by SSI

19

44. The survey then transitioned all the craft beer respondents to the "referendum" section of the survey, including those respondents that did not believe that Kona beer is brewed in Hawaii. This question is designed to measure the materiality of the Kona packaging which the Plaintiffs contend is misleading.  The referendum survey question is based on the prestigious scientific tradition memorialized in the Nobel Prize Winner Kenneth Arrow's report, prepared with other esteemed economists, called the Report of the NOAA Report on Contingent Valuation.[8]

45. The referendum question in my survey provides results regarding materiality that are generalizable for all Kona beer purchases since the product packaging is the same across the individual bottles, six-pack cartons, and the 12- and 24-pack boxes.

46. The key survey question in this section of the survey is the referendum question which measures consumers' preference for either the Kona beer that is brewed in Hawaii or the Kona beer that is brewed in the continental United States, with all product features being held constant. To avoid any doubt by what I mean in referring to the "referendum question," below is the actual question in my survey. After the respondents are informed that Beer A and Beer B are the same except for the brewing location, the respondents are asked to state a preference for one of the two beers.  Respondents had the option to select "Don't Know."  As mentioned earlier in my report, a substantial majority of craft beer consumers state a preference to purchase a Kona beer brewed in Hawaii based on the product packaging.

---

[8] Arrow, K., R. Solow, P. R. Portney, E. E. Leamer, R. Radner, and H. Schuman. 1993. "Report of the NOAA Panel on Contingent Valuation," Federal Register, January 15, vol. 58, no. 10, pp. 4601-4614.



**SURVEY DATA QUALITY MEASUREMENT**

47. **Respondent Engagement.**  Respondents to the consumer survey were engaged and in general took their time in answering, as indicated by the amount of time spent answering the survey questions.  By the standard of consumer surveys, the survey here was very short and did not require substantial respondent burden.  Respondents are asked only six substantive survey question about their expectations and preferences.   Consequently, the median length of time spent answering the survey questions is only six minutes for the 451 California respondents completing the survey.  The substantive survey results are not sensitive to the amount of time spent by the respondents on the consumer survey, as demonstrated in the table below.  California respondents spending less than the overall median length of time on the consumer survey had statistically indistinguishable results for the key survey questions.

21

The table below shows the survey results broken out by whether the respondent took less than the median length of time to take the survey or took the median length or longer. The differences are trivial and statistically not significant, indicating that the length of time spent on the survey was not a factor in determining responses.

**Survey Results by Length of Time Respondent Spent on the Survey:
California Respondents**

| Survey Measure | Length of Time Spent by Respondent on the Survey | |
| --- | --- | --- |
| | Less than Median Length | Median Length or More |
| Respondents indicating Kona beer is brewed in Hawaii | 68.9% | 73.0% |
| Respondents preferring to purchase the Kona beer brewed "in Hawaii" | 76.9% | 77.0% |

48. **Respondent Insensitivity to Exposure to the Image of the Top Flap of the Packaging.** Respondents' answers to the brewing location questions were not sensitive to whether or not they were shown the image of the top of the packaging which displayed the map of Hawaii. For the California craft beer respondents shown the top of the packaging, 73.1% of the respondents selected Hawaii as the brewing location, while 68.9% of those not shown the top of the packaging selected Hawaii. This is not a statistically significant difference, indicating that consumers seeing only the front and side of the packaging have statistically the same perceptions of the packaging as those who also saw the top of the packaging. The craft beer consumers' perceptions of the front and side panels of the six-pack packaging (which are the same as the front and side panels for the 12 and 24 packs), in my expert opinion, are durable and not sensitive to the provision of additional stimuli in the form or variations on the Defendant's alleged misrepresentations.

49. **Consumers Have Similar Perceptions Regarding the Kona Brands**. As a reminder, the respondents were randomly assigned to one of three Kona brands for viewing the product packaging and answering the survey questions. The California craft beer respondents have similar interpretations of the brewing location based on the product packaging. The shares selecting Hawaii for the brewing location are: 75.9% for Kona Longboard, 72.6% for Kona Big Wave, and 64.4% for Kona Castaway IPA. The differences in the results are not

statistically significant.  With respect to stating a preference for the Kona beer brewed in
Hawaii based on the packaging, the results are also statistically indistinguishable for the three
Kona brands:  78.6% for Kona Longboard, 79.0% for Kona Big Wave, and 73.2% for Kona
Castaway IPA.

50. **Sample Representativeness**.   My analysis confirms that the interviewed sample is
representative of the proposed class of California consumers and for U.S. craft beer
consumers overall.  For the respondents starting the survey, I used population benchmarks
from the US Census Bureau to assure that the respondents starting the survey matched the
US population by age (21 and over) and gender.[9]  This representative sample then answered
my screening questions to identify craft beer consumers.  Consequently, my interviewed
sample is representative of consumers of interest for my survey.  58% of the interviewed
California respondents are male, and 46.6% are age 21 to 39.  The age-by-gender distribution
of the California respondents is shown below.

---

[9] U.S. Bureau of the Census, 7/1/2016, National Population Estimates.

**Distribution of California Respondents by Age and Gender**

| | | | Gender | | |
| --- | --- | --- | --- | --- | --- |
| | | | Male | Female | Total |
| Age | 21-29 | Count | 50 | 40 | 90 |
| | | % of Total | 11.1% | 8.9% | 20.0% |
| | 30-39 | Count | 72 | 48 | 120 |
| | | % of Total | 16.0% | 10.6% | 26.6% |
| | 40-49 | Count | 59 | 44 | 103 |
| | | % of Total | 13.1% | 9.8% | 22.8% |
| | 50-59 | Count | 41 | 28 | 69 |
| | | % of Total | 9.1% | 6.2% | 15.3% |
| | 60-69 | Count | 25 | 21 | 46 |
| | | % of Total | 5.5% | 4.7% | 10.2% |
| | 70 or more | Count | 16 | 7 | 23 |
| | | % of Total | 3.5% | 1.6% | 5.1% |
| Total | | Count | 263 | 188 | 451 |
| | | % of Total | 58.3% | 41.7% | 100.0% |

## CONCLUSION

51. I drew on my 18 years in designing and conducting online surveys and my 25 years of experience in survey research to design and produce a reliable consumer survey. I followed a rigorous protocol for developing the survey questionnaire using cognitive interviews and pretesting. I carried out a series of quality control and quality assurance measures to confirm that the respondents understood the survey questions. I designed the survey sample to identify US adult consumers who had purchased Kona beers or beers competitive with Kona in California and throughout the U.S. I processed, analyzed, and reported on the survey data based on my experience and expert judgment.

52. In my expert opinion, my consumer survey provides a reliable and accurate measurement of the extent to which (i) craft beer consumers understand the Kona product packaging to communicate that the Kona product brewing location is the state of Hawaii and (ii) the Kona product packaging is material to the purchasing decisions of beer consumers by communicating the brewing location as the state of Hawaii.

24

53. My survey found that approximately 7 in 10 craft beer consumers in California and craft beer consumers throughout the U.S. understand the Kona beer packaging to mean that Kona beer is brewed in Hawaii.

54. My survey also found that 69.6% of craft beer consumers in California prefer to purchase a Kona beer made in Hawaii (as opposed to a Kona beer made in the continental U.S.), and 77.2% of non-California craft beer consumers feel the same.

55. In short, a large majority of craft beer consumers – in California and throughout the U.S. – interpret the Kona packaging to communicate that the beer is brewed in Hawaii and also prefer to purchase a Kona beer made in Hawaii as opposed to a Kona beer made in the continental U.S.

56. The facts and data that I considered for developing the surveys and my opinions in this report are cited herein and listed in my attached reliance list.

---

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.  Executed in Redwood City, California on March 29, 2018.

J. MICHAEL DENNIS, PH. D

MARCH 29, 2018

DATE

## List of Attachments

A        Curriculum Vitae of J. Michael Dennis, Ph.D.

B        Survey Questionnaire for the Cognitive Interviews

C        Survey Questionnaire for the Pretest Survey and Main Study

D        Online Screen Captures for the Questionnaire

E        Marginal Frequency Distributions for the Survey Data

F        Raw Survey Data

G        Codebook for the Raw Survey Data

H        List of Considered Materials