**FARUQI & FARUQI, LLP**
Benjamin Heikali (SBN 307466)
Joshua Nassir (SBN 318344)
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: (424) 256-2884
Facsimile: (424) 256-2885
E-mail:  bheikali@faruqilaw.com
          jnassir@faruqilaw.com

Timothy J. Peter (admitted *pro hac vice*)
101 Greenwood Avenue, Suite 600
Jenkintown, Pennsylvania 19046
Telephone: (215) 277-5770
Facsimile: (215) 277-5771
E-mail:  tpeter@faruqilaw.com

**THE WAND LAW FIRM, P.C.**
Aubry Wand (SBN 281207)
400 Corporate Pointe, Suite 300
Culver City, California 90230
Telephone: (310) 590-4503
Facsimile: (310) 590-4596
E-mail: awand@wandlawfirm.com

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| THEODORE BROOMFIELD, *et al.*, | CASE NO.: 5:17-cv-01027-BLF |
| Plaintiffs, | [Hon. Beth Labson Freeman] |
| v. | **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION** |
| CRAFT BREW ALLIANCE, INC., *et al.*, | |
| Defendants. | Date: September 6, 2018 |
| | Time: 9:00 a.m. |
| | Courtroom: 3 – 5th Floor |
| | Operative Complaint Filed: December 15, 2017 |

# TABLE OF CONTENTS

I.      ARGUMENT.................................................................................................. 1

  A.   Plaintiffs Have Established Adequacy and Typicality ............................... 1

  B.   Questions of Materiality and Reliance Predominate ................................. 2

  C.   Damages Can Be Proven on a Classwide Basis ....................................... 6

    1.   The Court Should Not Strike Boedeker's Supplemental Declaration .................. 6

    2.   The Price Premium is Not Measured Against CBA's Gain ................................ 8

  D.   Plaintiffs' CBC Model Accounts for the Supply Side in the Beer Market ............. 11

  E.   A Class Action is the Superior Method of Adjudication......................................... 14

  F.   The Court May Certify an Injunctive Relief Class Under Rule 23(b)(2)............... 15

# TABLE OF AUTHORITIES

**Cases**                                                                                                           **Page(s)**

*Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*,
   568 U.S. 455 (2013) ................................................................................................ 2

*In re Arris Cable Modem Consumer Litig.*,
   No. 17-CV-01834-LHK, 2018 WL 3820619 (N.D. Cal. Aug. 10, 2018) ..................... 10

*In re Asbestos Prods. Liab. Litig.*,
   289 F.R.D. 424 (E.D. Penn. 2013) ................................................................................ 7

*Brazil v. Dole Packaged Foods, LLC*,
   660 F. App'x 531 (9th Cir. 2016) .................................................................................. 8

*Brazil v. Dole Packaged Foods, LLC*,
   No. 12-CV-01831-LHK, 2014 WL 5794873 (N.D. Cal. Nov. 6, 2014) ....................... 13

*Brickman v. Fitbit, Inc.*,
   No. 15-CV-02077-JD, 2016 WL 3844327 (N.D. Cal. July 15, 2016) ........................... 6

*Briseno v. ConAgra Foods, Inc.*,
   844 F.3d 1121 (9th Cir. 2017) ..................................................................................... 14

*Brown v. Hain Celestial Grp., Inc.*,
   No. C 11-03082 LB, 2014 WL 6483216 (N.D. Cal. Nov. 18, 2014) ............................. 8

*Claiborne v. Church & Dwight Co.*,
   No. 3:17-CV-00746-L-JLB, 2017 WL 5256752 (S.D. Cal. Nov. 13, 2017) ................ 15

*Classic Foods Int'l Corp. v. Kettle Foods, Inc.*,
   No. SACV 04-725 CJC (Ex), 2006 WL 5187497, (C.D. Cal. Mar. 2, 2006) ................ 9

*Colgan v. Leatherman Tool Grp.*,
   135 Cal.App.4th 663 (2006) .......................................................................................... 8

*Davidson v. Apple, Inc.*,
   No. 16-cv-04942-LHK, 2018 WL 2325426 (N.D. Cal. May 7, 2018), ................. 11, 12

*Davidson v. Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018) ....................................................................................... 15

*In re Dial Complete Mktg. & Sales Practices Litig.*,
   320 F.R.D. 326 (D.N.H. 2017) .................................................................................... 11

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp.*,
   No. 17-cv-00564 NC, 2018 WL 3126385 (N.D. Cal. June 26, 2018), ................. 11, 13

-ii-

*Free Range Content, Inc. v. Google, Inc.*,
  No. 5:14-cv-02329-BLF, slip op. (N.D. Cal. July 13, 2017) ............................................ 2

*Guido v. L'Oreal, USA, Inc.*,
  No. 2:11-CV-01067-CAS, 2014 WL 6603730 (C.D. Cal. July 24, 2014) ...................... 9

*Hadley v. Kellogg Sales Co.*,
  No. 16-CV-04955-LHK, 2018 WL 3954587 (N.D. Cal. Aug. 17, 2018) ................. 5, 12

*In Re High-Tech Emp. Antitrust Litig.*,
  No. 11-cv-02509-LHK, 2014 WL 1351040 (N.D. Cal. Apr. 4, 2014) ........................... 7

*Hinojos v. Kohl's Corp.*,
  718 F.3d 1098 (9th Cir. 2013).................................................................................. 3, 4

*Johnson v. Gen. Mills, Inc.*,
  275 F.R.D. 282 (C.D. Cal. 2011) .................................................................................. 5

*In re Lenovo Adware Litig.*,
  No. 15-MD-02624-RMW, 2016 WL 6277245 (N.D. Cal. Oct. 27, 2016) .................... 12

*Matthew Enter., Inc. v. Chrysler Grp. LLC*,
  No. 13-cv-04236-BLF, 2016 WL 4272430 (N.D. Cal. Aug. 15, 2016) ......................... 7

*Mazza v. Am. Honda Motor Co.*,
  666 F.3d 581 (9th Cir. 2012)......................................................................................... 5

*McCrary v. Elations Co.*,
  No. EDCV 13-00242 JGB (OPx), 2014 WL 1779243 (C.D. Cal. Jan. 13, 2014) ................... 5

*In re MyFord Touch Consumer Litig.*,
  291 F.Supp.3d 936 (N.D. Cal. 2018) ........................................................................... 11

*In re NCAA Student-Athlete Name & Likeness Licensing Litig.*,
  No. C 09-1967 CW, 2013 WL 5979327 (N.D. Cal. Nov. 8, 2013) ............................... 15

*In re NJOY, Inc. Consumer Class Action Litig.*,
  120 F. Supp. 3d 1050 (C.D. Cal. 2015) ................................................................... 4, 12

*Ohio Six Ltd. v. Motel 6 Operating L.P.*,
  No. CV 11-08102-MMM (Ex), 2013 WL 12125747 (C.D. Cal. Aug. 7,
  2013) ............................................................................................................................. 7

*In re POM Wonderful LLC*,
  No. ML 10-02199 DDP RZx, 2014 WL 1225184, (C.D. Cal. Mar. 25, 2014) ...................... 13

*Saavedra v. Eli Lilly & Co.*,
      No. 2:12-cv-9366-SVW, 2014 WL 7338930 (C.D. Cal. Dec. 18, 2014) ..................... 12

*Torres v. Mercer Canyons Inc.*,
      835 F.3d 1125 (9th Cir. 2016)......................................................................... 10

*Townsend v. Monster Beverage Corp.*,
      303 F. Supp. 3d 1010 (C.D. Cal. 2018) ............................................................ 9

*Weiner v. Snapple Beverages Corp.*,
      2010 WL 3119452 (S.D.N.Y. Aug. 5, 2010) ................................................... 13

*Wiener v. Dannon Co.*,
      255 F.R.D. 658 (C.D. Cal. 2009) ................................................................ 2, 5

*Williams v. Gerber Prods. Co.*,
      552 F.3d 934 (9th Cir. 2008)........................................................................ 4

*Zakaria v. Gerber Prods. Co.*,
      No. LA CV15-00200 JAK (Ex), 2017 WL 9512587 (C.D. Cal. Aug. 9, 2017)....................... 8

**Statutes**

Fed. R. Civ. P. 26(e)(2)........................................................................... 6, 7

Rule 23 ....................................................................................... 3, 14, 15

Rule 26(a)(3)...................................................................................... 6,7

# I.     ARGUMENT

## A.     Plaintiffs Have Established Adequacy and Typicality

CBA asserts Plaintiffs are atypical because they saw the Kona Beer labels, rehashing an argument this Court already rejected in its Order on CBA's Motion to Dismiss ("Order"), ECF No. 44: "The Consolidated Complaint rests solely on the outer packaging for the six- and twelve-packs of Kona beer, not the labels for the beer cans or bottles themselves." Order at 13. As a factual matter, CBA mischaracterizes Plaintiffs' testimony when it states they "admit that they saw Kona's labels in addition to the packaging, and each of the Kona labels included the locations of the breweries during the class period." CBA's Opposition to Motion for Class Certification ("Opp.") at 7. CBA does not (and cannot) claim that Plaintiffs saw the brewing locations on the labels. Mr. Broomfield was unable to, and therefore did not, view the bottles' labels until after he purchased the beer. Theodore Broomfield Deposition Transcript ("Broomfield Dep. Tr.") at 150:9-14; 155:9-10, ECF No. 83-8. Even after purchasing the beer, Mr. Broomfield did not read the brewery locations on the label. *Id*. at 166:21-24. Similarly, when Ms. Zimmer first purchased Kona Beer, the packaging led her to believe the beers were brewed in Hawaii and she had no reason to look at the label "to see if it was being made anywhere else[.]" Simone Zimmer Deposition Transcript ("Zimmer Dep. Tr.") at 110:13-20, ECF No. 83-9. As is evident by this testimony, CBA incorrectly states that Plaintiffs provided inconsistent allegations as to the Kona Beer labels. Opp. at 8, n. 4. Plaintiffs have never alleged they read the purported disclaimer on the labels.

Moreover, Plaintiffs' testimony is consistent with typical consumer behavior, and as a matter of law, consumers are not expected to open a product's packaging to determine whether representations made on the package itself are accurate. This Court has already recognized as much: "[P]lacement and language of the disclaimer [on the labels] [is] not dispositive" because "the list of Kona's brewing locations on the beer label, which is obstructed by the packaging . . . was not visible to the consumer at the time of purchase." Order at 13. And even if consumers were to read the fine print on the labels, listing "Kona, HI" along with the other mainland brewery locations is not informative because "the list of brewery locations does not 'alert a reasonable consumer as to the location where [Kona beer] is brewed.'" *Id.* at 14 (citing *Marty v. Anheuser-Busch Companies, LLC*,

43 F.Supp.3d 1333, 1341 (S.D. Florida 2014)). Regardless, because CBA apparently intends to raise this defense as to at least a large number of the putative class members, the contention that Plaintiffs are atypical is not only meritless, but suggests the opposite. *See Free Range Content, Inc. v. Google, Inc.*, Case No. 5:14-cv-02329-BLF, slip op. at 15 (N.D. Cal. July 13, 2017) (typicality is not defeated when defendant "is likely to raise the same purported defense as against at least a vast number of the putative class members, if not all of them.") (citation omitted). Declaration of Aubry Wand ISO Reply ("Wand Decl."), ¶ 3, Ex. A. Therefore, Plaintiffs are adequate and typical Class representatives.

## B.    Questions of Materiality and Reliance Predominate

Plaintiffs can prove materiality, and thereby reliance, on a classwide basis through Dennis' expert report, in addition to CBA's admissions and internal documents demonstrating its knowledge of materiality and reliance. Motion for Class Certification ("Motion") at 7-8, 18; *Wiener v. Dannon Co.*, 255 F.R.D. 658, 669 (C.D. Cal. 2009) (holding that, for UCL, CLRA, and express warranty claims, an "inference of reliance arises as to the entire class" when "the material misrepresentations were made to all class members."). In any event, CBA's arguments go to the merits and therefore are premature. *See Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*, 568 U.S. 455, 482-83 (2013) (evidence offered to rebut the presumption of reliance based on materiality should only be considered on summary judgment or at the trial on the merits, not at class certification).

First, CBA fails to rebut Plaintiffs' position that they have established materiality through CBA's knowledge and intent, other than to summarily assert Plaintiffs have cherry-picked documents without explaining how Plaintiffs have done so. Indeed, Plaintiffs selected documents that show CBA considered several Nielsen studies finding that the packaging of Kona Beers is important to purchase decisions and that consumers associate Kona Beers with Hawaii based on the packaging. *See* Motion, Ex. 38 (Nielsen study demonstrating that packaging design makes strongest impression on consumers and is seen by all shoppers); *Id.*, Ex. 34 (Nielsen study where the top-of-mind, free association response to Big Wave packaging is Hawaii). CBA was well-aware of these studies, but persisted with its deceptive packaging. Nick Mallory Deposition Transcript ("Mallory Dep. Tr.") at 105:18-106:1-19, Ex. E to Wand Decl.; Cindy Wang Deposition Transcript ("Wang

Dep. Tr.") at 60:10-62:1-20, Ex. F to Wand Decl. Further, CBA trumpets that the Kona brand is unique because it *originates* from Hawaii. Wang Dep. Tr. 126:13-19. As a result, CBA uses the diamond call-outs for the Hawaii brewpub and brewery on the packaging to convey this message to consumers. Mallory Dep. Tr. at 82:19-83:1-3; Wang Dep. Tr. at 94:24-95:1-7. CBA also uses its existing Kona Brewery as a justification for making this deceptive representation and it is building an expanded brewery in Kona in part to respond to concern that Kona Beers are not brewed in Hawaii. *Id.* at 136:4-9. Moreover, CBA has spent considerable sums of money on the Dear Mainland and other media campaigns during the class period, which revolve around Hawaii. *See* Declaration of Edwin Smith, ECF No. 85-18, ¶ 6 (describing CBA's advertising spend); Mallory Dep. Tr. at 168:13-169:1-5. CBA is aware of this campaign's effectiveness. Mallory Dep. Tr. at 250:5-19 (acknowledging 35% of respondents believed Kona Beers come from Hawaii after seeing Dear Mainland commercial). In the words of its own expert, CBA would not "engage in costly marketing" if CBA did not believe it would impact "consumers' prospective purchase decisions." Declaration of Andrew Lemon ("Lemon Decl."), ¶ 105, ECF No. 85-4. Indeed, CBA's own extensive marketing and packaging demonstrates the materiality of the belief Kona Beers are brewed in Hawaii. *See Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013).

Second, CBA's challenges to Dennis' report are meritless.[1] CBA argues that materiality is not subject to common proof because Dennis' survey only "indicates that some consumers would prefer Kona beer brewed in Hawaii and says nothing about whether the statements and images on the Kona beer packaging were material to their purchases." Opp. at 13. However, as CBA concedes, Dennis not only demonstrated that 77.2% of consumers prefer to purchase a Kona Beer brewed in Hawaii, but that consumers reach this belief from the packaging. Declaration of J. Michael Dennis ISO Motion for Class Certification ("Dennis Decl."), ECF No. 83-20, at ¶¶ 20-21 (71% of California craft beer consumers believe the Kona Beers are brewed in Hawaii *based on the products' packaging*). Therefore, CBA's assertion that Dennis did not probe the materiality of the packaging

---

[1] CBA does not argue that the opinions of either of Plaintiffs' experts are inadmissible, and thus, challenges to their opinions are grounded in Rule 23 predominance.

is belied by the evidence. *See In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1112–13 (C.D. Cal. 2015) (50% deception rate more than sufficient for establishing materiality).

CBA incorrectly argues that because consumers are not only deceived by the sides of the Kona Beer packaging but are equally deceived when they see the top-flap of the packaging, the top-flap's "representations are irrelevant to consumers' expectations and perceptions of Kona beer." Opp. at 13. First, this argument conflates materiality and deception because whether consumers value a Kona Beer brewed in Hawaii more than a Kona Beer brewed on the mainland (i.e., materiality), is an independent inquiry from whether they are deceived by the products' packaging (i.e., deception). Moreover, CBA misconstrues Dennis' finding: the results demonstrate that consumers are deceived into believing the Kona Beers are brewed in Hawaii from the sides of their packaging, and this belief is reconfirmed when consumers view the top-flap. Dennis Decl., ¶ 48 (compare 68.9% deception rate when respondents are shown the sides only with 73.1% deception rate when respondents are shown the sides and top-flap). In short, Dennis' survey shows that the packaging of Kona Beers uniformly leads to consumer deception, which is consistent with Plaintiffs' liability theory, controlling Ninth Circuit case law, and this Court's Order. *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (relevant question is not whether the statements on the package are objectively true, but rather whether the statements, taken as a whole, are likely to deceive members of the public); Order at 12-13 (recognizing that the challenged statements and images must be considered together in context).

Next, CBA erroneously asserts that Dennis' survey does not measure materiality because his referendum question measured *consumer preference* for a Kona Beer from Hawaii, not *consumer preference to purchase* a Kona Beer from Hawaii. Opp. at 13.[2] The record shows otherwise. Dennis Decl., ¶ 46 (referendum question presenting Kona Beer brewed in the mainland versus Hawaii and asking: "Please select the beer you would *purchase*.") (emphasis added). In response, a substantial majority (77.2%) of California survey respondents stated they would prefer to purchase a Kona Beer

---

[2] Even if Dennis' survey only measured consumer preference, it would still be sufficient to establish materiality. *See Hinojos*, 718 F.3d at 1107 (a "representation is 'material,'…if a reasonable consumer would attach importance to it[.]") (citation omitted).

brewed in Hawaii. *Id.*, ¶ 21. CBA also contends that Dennis did not consider "additional reasons" consumers consider when purchasing beer (e.g., taste, price, and budget). Opp. at 14. This argument falls flat, as "under California law, Plaintiff is not required to prove that the challenged [representations] were 'the sole or even the predominant or decisive factor influencing' the class members' decisions to buy the challenged products." *Hadley v. Kellogg Sales Co.*, No. 16-CV-04955-LHK, 2018 WL 3954587, at *22 (N.D. Cal. Aug. 17, 2018) (rejecting argument that predominance is defeated by individual preferences of "taste, price, [etc.]"). Similarly, Dennis was tasked only with measuring perception and materiality in accordance with Plaintiffs' theory of liability (the brewing location), not all other conceivable factors that could influence a consumer's purchasing decision or defenses that CBA could raise.

CBA's argument that proof of reliance requires individual analysis is redundant. As set forth above, if Plaintiffs establish materiality, which they have, reliance is presumed. *See Wiener*, 255 F.R.D. at 669. Class members were necessarily exposed to the uniform product packaging on *all* Kona Beers. *See McCrary v. Elations Co.*, LLC, No. EDCV 13-00242 JGB (OPx), 2014 WL 1779243, at *13 (C.D. Cal. Jan. 13, 2014) (distinguishing *Mazza* because "a presumption of exposure is inferred where, as here, the alleged misrepresentations were on the outside of the packaging of every unit for an extended period."); *cf. Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 596 (9th Cir. 2012) ("[T]he limited scope of that advertising makes it unreasonable to assume that all class members viewed it."). Nor does the argument that there are minor stylistic differences (e.g., the scenes) between the Kona brands' packaging alter the message that the beers are brewed in Hawaii. *See Johnson v. Gen. Mills, Inc.*, 275 F.R.D. 282, 289 (C.D. Cal. 2011) (rejecting argument that "individual issues predominate" when consumers were "exposed to different mixes of packages" because "the common issue that predominates is whether [defendant]'s packaging and marketing communicated a persistent and material message..."). Here, CBA also effectuated a persistent and material message across the Kona Brands. Indeed, as Dennis established, there is no statistically significant difference in deception among the varieties of Kona Beer presented to the survey respondents. Dennis Decl. ¶ 49; J. Michael Dennis Deposition Transcript ("Dennis Dep. Tr.') at 60:2-61:1-3, Ex. C to Wand Decl.

Finally, CBA makes a series of arguments on issues wholly outside the Classes Plaintiffs seek to certify. For example, CBA criticizes Dennis for not considering the Island Hopper Variety Pack in his survey even though Plaintiffs are not seeking to certify a class of these purchasers. CBA also asserts that Dennis failed to probe consumers' perceptions regarding the Kona Beer labels and their disclosures, despite this Court ruling that the "placement and language of the disclaimer [on the labels] is not dispositive . . . ." Order at 13. CBA's assertion that various sources of information – such as its website, tours, bar staff, retailers, and sales of Kona Beers in single bottles – reveal the truth of the Kona Beers' brewing location, eliminating the possibility that "all" class members relied on the same representation, is pure conjecture. Further, Plaintiffs are only seeking to certify classes of 6- and 12-pack purchasers, necessarily excluding direct sales by CBA and consumers who purchase Kona Beers at bars. This argument is also at odds with Ninth Circuit precedent. *See Brickman v. Fitbit, Inc.*, No. 15-CV-02077-JD, 2016 WL 3844327, at *3 (N.D. Cal. July 15, 2016) ("[E]ven if" sources of information may cure a misrepresentation, "plaintiffs' claims arise out of [defendant]'s representations on [the] product packaging" and "[c]onsumers are not expected to do research 'beyond misleading representations on the front of the box.'") (citing *Williams*, 552 F.3d at 939)). In sum, Plaintiffs can prove materiality and reliance on a classwide basis.

**C.    Damages Can Be Proven on a Classwide Basis**

1.    The Court Should Not Strike Boedeker's Supplemental Declaration

CBA moves to strike the June 29, 2018 Declaration of Stefan Boedeker ("Supplemental Boedeker Declaration") on the ground that it was untimely and that CBA will suffer prejudice because it was produced four days after the close of expert discovery. Wand Decl., ¶ 9. But under Fed. R. Civ. P. 26(e)(2), a party has an affirmative duty to supplement an "incomplete or incorrect" expert report, and the time to supplement an expert report extends past any court set deadline for expert disclosures, up until the "the time the party's pretrial disclosures under Rule 26(a)(3) are due." As soon as Plaintiffs realized that Boedeker's initial declaration was "incomplete" because it did not set forth a price premium specific to California, Boedeker supplemented it, which simply involved applying a "line of computer code that filters out the survey data for California survey respondents only" based on application of the same methodology to the same data contained in his

initial declaration.[3] Supp. Boedeker Decl., ¶¶ 1-4, 6, ECF No. 83-16. To that end, the Supplemental Boedeker Declaration does not alter any of Boedeker's initial theories or strengthen any of his prior opinions. *Id.*, ¶¶ 16-18; Boedeker Dep. Tr. at 320:19-25, 312:1-25, 322:1-4. Thus, it is an appropriate supplemental report pursuant to Rule 26(e)(2) and is timely under Rule 26(a)(3)(B). Even if the Court disagrees, CBA bears the burden of demonstrating prejudice that will result from considering the Supplemental Boedeker Declaration. *See In Re High-Tech Emp. Antitrust Litig.*, No. 11-cv-02509-LHK, 2014 WL 1351040, at * 3 (N.D. Cal. Apr. 4, 2014). But CBA will suffer no such prejudice and none of the cases on which CBA relies support the severe sanction it requests. For example, in *In re Asbestos Prods. Liab. Litig.*, 289 F.R.D. 424, 425 (E.D. Penn. 2013), the expert report was served at least two and a half to nine months after the deadline had passed, and the court also found substantial prejudice would result apart from this delay. CBA's reliance on *Matthew Enter., Inc. v. Chrysler Grp. LLC*, No. 13-cv-04236-BLF, 2016 WL 4272430 (N.D. Cal. Aug. 15, 2016) is also misplaced because there, this Court addressed the scope of a permissible rebuttal report, a different issue. If the Supplemental Boedeker Declaration is construed as a rebuttal report, courts even permit parties to submit additional damages theories on reply provided it is not based on new evidence. *See Ohio Six Ltd. v. Motel 6 Operating L.P.*, No. CV 11-08102-MMM (Ex), 2013 WL 12125747, at *16-17 (C.D. Cal. Aug. 7, 2013). To be clear, the Supplemental Boedeker Declaration does not provide an additional damages theory, nor is it based on any new evidence.

Nor has CBA been "sandbagged" because it was not "deprived of an opportunity to depose Boedeker regarding his new opinions or to have its own expert review Boedeker's new economic analysis for California." Opp. at 17. Plaintiffs offered to make Boedeker immediately available for deposition, but CBA declined this offer. Wand Decl., ¶ 10. Moreover, CBA's own expert admitted he would offer no additional opinions based on the California price premium. Andrew Lemon Deposition Transcript ("Lemon Dep. Tr.") at 189:15-190:1-2; 192:19-193:1-23; 194:5-13, Ex. D to the Wand Decl. Finally, the Court need not even reach this issue because the nationwide price premium set forth in Boedeker's initial declaration is sufficient for purposes of class certification.

---

[3] Boedeker's data set included a representative sample of California survey respondents. Stefan Boedeker Deposition Transcript ("Boedeker Dep. Tr.") at 178:11-23, Ex. B to the Wand Decl.

March 29th, 2018 Boedeker Declaration ISO Motion for Class Certification ("Boedeker Decl.") ¶ 150, ECF No. 83-14; Boedeker Dep. Tr. at 84:11-20; *see also Brown v. Hain Celestial Grp., Inc*., No. C 11-03082 LB, 2014 WL 6483216, at *19 (N.D. Cal. Nov. 18, 2014) ("At class certification, plaintiff must present a likely method for determining class damages, though it is not necessary to show that his method will work with certainty at this time.") (citation omitted). This is also borne out in the results: the 12.8% nationwide price premium and the 11.7% California price premium are not statistically significantly different. Boedeker Decl., ¶ 144 n. 57; Supp. Boedeker Decl., ¶ 15-17.

### 2.     The Price Premium is Not Measured Against CBA's Gain

The correct measurement of a price premium in a consumer product false advertising class action is "the difference between the prices customers paid and the value of the [Kona Beers] they bought—in other words, the 'price premium' attributable to" the alleged misstatements and omissions. *See Brazil v. Dole Packaged Foods, LLC*, 660 F. App'x 531, 534 (9th Cir. 2016). Thus, CBA is incorrect when it argues that the price premium must account for both the amount consumers overpaid *and* the amount unjustly received by the defendant. CBA erroneously relies on *Zakaria v. Gerber Prods. Co.*, No. LA CV15-00200 JAK (Ex), 2017 WL 9512587 (C.D. Cal. Aug. 9, 2017). There, the court only held that a price premium for restitution and damages under the CLRA needs to account for the actual market price, but if it fails to do so, an alternative measurement of restitution could be calculated based on the amount consumers would have paid *and* the corresponding value received by the defendant. *Id.* at *19. Alternatively, and only if the Court does not believe Plaintiffs' conjoint model accounts for the market price (discussed in detail below), Plaintiffs could seek restitution measured by CBA's ill-gotten gains. *Id.* at *20 ("a trial court 'could, when assessing damages under the CLRA, apply standards different from those the trial court might use when ordering restitution under the [FAL] or [UCL].'") (citation omitted); *Colgan v. Leatherman Tool Grp.,* 135 Cal.App.4th 663, 699 (2006); *see also* Boedeker Decl., ¶ 49.

### 3.     Plaintiffs' Damages Model Comports with their Theory of Harm

Plaintiffs' damages model is tethered directly to their liability case because it measures the difference between the price paid and value received vis-à-vis a Kona Beer brewed in Hawaii and one that is not. As explained below, CBA's arguments to the contrary are flawed, and to the extent

they carry any weight, they present merits issues relating to the accuracy of Boedeker's economic model, not a *Comcast* predominance issue.

First, in arguing that Boedeker's conjoint analysis is flawed because it does not measure the effect of the packaging, CBA ignores Plaintiffs' two-pronged damages model, which uses choice-based conjoint analysis ("CBC") to isolate the price premium attributable solely to the belief Kona Beer is brewed in Hawaii, but only after establishing this predicate belief based on the packaging through Dennis' empirical survey. Boedeker Dep. Tr. at 148:4-13. This matches squarely with Plaintiffs' liability case as required by *Comcast*. "Plaintiffs' theory of liability and damages is that consumers paid excess money, i.e., a price premium, for Kona Beers under the mistaken belief that the beers were brewed in Hawaii." Motion at 19; Boedeker Decl., ¶ 148. It also accounts for the distinction between measuring the effect of a product's packaging and the misperception resulting from the product's packaging. *See Townsend v. Monster Beverage Corp.*, 303 F. Supp. 3d 1010, 1051 (C.D. Cal. 2018) ("Plaintiffs here would have to show that consumers paid a price premium for a drink they *believe* contained electrolytes in order for it to align with their theory of liability[.]") (emphasis added). In sum, Plaintiffs first established that, based on the packaging, consumers believe the Kona Beers are from Hawaii, and after doing so, they utilized CBC, a well-established scientific method for calculating a price premium attributable to a specific attribute. *See Guido v. L'Oreal, USA, Inc.*, No. 2:11-CV-01067-CAS, 2014 WL 6603730, at *8 (C.D. Cal. July 24, 2014).

Second, CBA takes issue with the fact that the conjoint survey compared Kona, Hawaii with Memphis, Tennessee, when there are other mainland brewery locations. Based on 25 years of experience focusing on application of economic, statistical, and financial models, Boedeker used Memphis instead of another specific mainland brewing location, and he did not employ the term "the mainland" because that would be inconsistent with the nomenclature for the conjoint attributes. Boedeker Dep. Tr. 261:20-262:1-3. Because there is no such thing as "a perfect survey," this was a reasonable judgment call. *See Classic Foods Int'l Corp. v. Kettle Foods, Inc.*, No. SACV 04-725 CJC (Ex), 2006 WL 5187497, at * 3 (C.D. Cal. Mar. 2, 2006). It is all the more reasonable in light of the fact that CBA could not even identify the specific mainland breweries where Kona Beers are brewed. Mallory Dep. Tr. at 61:20-62:1-6. Underscoring this point is CBA's failure to offer any

-9-

1   evidence there is a difference in consumer preference between Memphis and the other mainland

2   brewing locations. *See* Lemon Dep. Tr. at 195:6-23; 196:4-197:1-9.

3          Third, CBA takes issue with the fact that Boedeker did not measure the value of other

4   attributes of beer but does not articulate why this is problematic. Indeed, CBC holds constant product

5   features that are not included in the survey. Rebuttal Declaration of Stefan Boedeker ISO Motion

6   for Class Certification ("Boedeker Rebuttal Decl.") ¶¶ 58-61, ECF No. 83-15. To the extent CBA's

7   argument can be construed as criticizing Boedeker's survey for "over-weighting" the brewing

8   location by using distractor attributes that are not adequately important, Boedeker did use important

9   attributes, including price, type of beer, alcohol content, carbohydrates and calories, and brewing

10  location. Boedeker Decl., ¶ 107. Further, CBA should be estopped from making this argument

11  because CBA refused to answer what attributes consumers value in beer. *See* Mallory Dep. Tr. at

12  207:6-13, 22-23; 208:1-13; Wang Dep. Tr. 141:6-142:1-22.

13         Fourth, the argument that around 30% of respondents were not deceived, and 23% of

14  respondents were not damaged, is a red herring as these figures pertain to Dennis' perception and

15  materiality survey only. This argument fundamentally misunderstands the results of Boedeker's

16  study, which shows that 100% of the Class suffered economic injury because every consumer paid

17  more. Thus, the misrepresentation that Kona Beers are brewed in Hawaii allows the market to

18  command a higher price paid by *all* consumers – even those who do not care about the beers'

19  geographical origin. Boedeker Rebuttal Decl., ¶¶ 7-20, 44-51; Boedeker Dep. Tr. 316:2-316:1-14.

20  Finally, even if some Class members were not financially injured (which again is not supported by

21  Boedeker's model), this would merely raise a damages calculation that poses no bar to class

22  certification. *See In re Arris Cable Modem Consumer Litig.*, No. 17-CV-01834-LHK, 2018 WL

23  3820619, at *7 (N.D. Cal. Aug. 10, 2018) ("To the extent that some [product] buyers may be owed

24  $0 in restitution, that is a matter of damage calculations, and the Ninth Circuit has held that 'damage

25  calculations alone cannot defeat certification.'") (citations omitted). *See also Torres v. Mercer*

26  *Canyons Inc.*, 835 F.3d 1125, 1136 (9th Cir. 2016) ("[T]he possibility that an injurious course of

27  conduct may sometimes fail to cause injury to certain class members" does not defeat

28  predominance).

**D.    Plaintiffs' CBC Model Accounts for the Supply Side in the Beer Market**

In advancing this argument, CBA conveniently ignores several sections of Boedeker's Declaration that explain how his economic damages model accounts for supply-side factors. In short, Boedeker explains that "units of the product that were sold with the false claim are identical" (e.g., the number of units sold in the actual world and but for world are the same). Boedeker Decl., ¶ 57; Boedeker Dep. Tr. at 70:5-71:1-25. This model accounts for the supply side because all of the factors that affected CBA's willingness to sell (i.e., supply) are reflected in the number of units sold and prices that were extant in the market. In other words, the supply is fixed. As a result, economic loss (i.e., the price premium) can be calculated by comparing the difference in the equilibrium price – where consumer demand and supply in the market clears – in the actual world and the but-for world. Boedeker Decl. ¶ 36-58; Boedeker Dep. Tr. at 57:11-17; 59:18-25; 60:1-61:1-19. Put simply, CBC can be used to measure price premium by subtracting the value of the Kona Beers at the time of purchase from the price paid.

For this reason, to Plaintiffs' knowledge *no* court has ever held that Boedeker's CBC methodology does not account for the supply side of the equation, while at least three courts have held that the CBC model that Boedeker proposes using here sufficiently accounts for supply side factors. *See In re Dial Complete Mktg. & Sales Practices Litig.*, 320 F.R.D. 326, 334 (D.N.H. 2017) (Boedeker's CBC methodology "account[ed] for the supply side" because "the supply element of the supply and demand price function is fixed" in the analysis "and is set, or included, in the [market] price[s] paid for" the product at issue.); *In re MyFord Touch Consumer Litig.*, 291 F.Supp.3d 936, 970 (N.D. Cal. 2018) (Boedeker's CBC methodology accounted for supply-side factors "by assuming that the supply—the quantity—was fixed."); *Davidson v. Apple, Inc.*, No. 16-cv-04942-LHK, 2018 WL 2325426, at *22 (N.D. Cal. May 7, 2018), *appeal docketed*, No. 18-80060 (9th Cir. May 23, 2018) (Boedeker's CBC methodology "account[ed] for the supply side of the equation" by holding supply (and therefore quantity) constant). Similarly, two courts have recently relied on the *In re Dial* court's analysis of Boedeker's methodology in holding that CBC accounts for the supply-side of the equation for this very reason. *See Fitzhenry-Russell v. Dr. Pepper Snapple Grp.*, No. 17-

cv-00564 NC, 2018 WL 3126385, at *8-9 (N.D. Cal. June 26, 2018), *appeal docketed*, No. 18-80081 (9th Cir. July 11, 2018) ; *Hadley*, 2018 WL 3954587, at *12-13.

Moreover, CBA's argument that Boedeker failed to use actual sales data is inaccurate. Boedeker utilized real world sales for Kona Beers and competitor beers to design the price range in his conjoint survey to be both below and above the price points in the market, in order to measure the demand curve. Boedeker Decl., ¶ 108. CBA's sole criticism is that Boedeker did not look at all sales prices in the market, but this argument fails for several reasons. First, CBA provides no evidence that the price range Boedeker used is incorrect, rendering the argument speculative. Second, in order to account for real-world market prices, CBC does not need to examine every sale price in the market; it need only encompass the range of real-world prices. Empirical support can be found in Dr. Lemon's report, which shows that the aggregated price points for 12-packs of Kona Longboard and Kona Big Wave fall squarely within Boedeker's price range of $10.99 to $16.99. Lemon Decl., ¶¶ 78-84, Exs. 4(A) and 4(b); 5(A) and 5(B); 6(A) and 6(B). Boedeker also took the additional step of validating the price points used in his conjoint survey with Nielsen sales data and determined that the price points he used were appropriate. Boedeker Dep. Tr. at 156:7-22; 276:24-277:1-5. Finally, this argument is unavailing because Boedeker's damages model can be mechanically applied to actual sales figures. *Davidson*, 2018 WL 2325426, at *22 ("Boedeker also expressed economic loss as a percentage of a phone's cost, and Apple does not explain why this could not easily be applied to the actual price a given consumer paid for an iPhone."); *see also* Boedeker Decl., ¶ 149; Boedeker Dep. Tr. at 72:1-10. Given that Boedeker's damages model accounts for a fixed number of Kona Beers based on real-world pricing data, the model sufficiently considers the supply-side of the market. *See In re Lenovo Adware Litig.*, No. 15-MD-02624-RMW, 2016 WL 6277245, at *21 (N.D. Cal. Oct. 27, 2016). And for this reason, *Saavedra v. Eli Lilly & Co.*, No. 2:12-cv-9366-SVW (MANx), 2014 WL 7338930 (C.D. Cal. Dec. 18, 2014) and *In re NJOY, Inc. Consumer Class Action Litig.*, 120 F.Supp.3d 1050 (C.D. Cal. 2015) – the two cases CBA cites in support – are distinguishable. *See*, *e.g.*, *Davidson*, 2018 WL 2325426, at *22.[4]

---

[4] The unique markets in *Saavedra* (highly regulated, inefficient prescription drug market) and *In re NJOY* (nascent e-cigarette market) were also distinguishing factors not present here.

In an attempt to fit a square peg into a round hole, CBA advances two contradictory, self-serving characterizations of the beer market, arguing on the one hand that its purported practice of "line pricing" suggests there is no price premium, while arguing that the beer market is "unstable" on the other hand. Line pricing is CBA's practice of matching the wholesale price of Kona Beers with the "prices retailers charge for the leading national craft beer in the region." Lemon Decl., ¶ 74. As an initial matter, line pricing generally concerns parity pricing within the same brand, not other brands. More importantly, CBA provides no competent evidence that it line prices at all.[5] Mallory Dep. 29:13-30:1-15, 21-25. CBA's unarticulated reliance on *Weiner v. Snapple Beverages Corp.*, 2010 WL 3119452, at *12 (S.D.N.Y. Aug. 5, 2010) to assert that line pricing suggests a lack of a price premium is misplaced as there, the line pricing applied between Snapple products with and without the challenged claim, whereas here, all of Kona Beers contain the misrepresentations. Also, *Weiner* says is silent on whether line pricing itself implicates harm to consumers because Snapple used "line prices" with wholesalers. *Brazil v. Dole Packaged Foods, LLC*, No. 12-CV-01831-LHK, 2014 WL 5794873, at *10–11 (N.D. Cal. Nov. 6, 2014). The same disconnect is present here, as CBA fatally admits that its line pricing practice (as a result of the three-tier system) has no impact on retail pricing. Mallory Dep. 42:14-19. Here, all the Kona Beers contain the Hawaiian misrepresentations.

Moreover, CBA purportedly line prices an entire Kona Beer line (e.g., Longboard) with the top-selling craft beers in each California market *and* with import beers (including Mexican imports and Heineken). Because these other competitor beers possess many different attributes, whether a Kona Beer is line priced with a competitor is irrelevant.[6] As in *In re POM Wonderful LLC*, No. ML 10-02199 DDP RZx, 2014 WL 1225184, at *5 (C.D. Cal. Mar. 25, 2014), it is improper to calculate damages (or lack thereof) by simply comparing prices among different products because doing so does not control for the different attributes they possess. This is precisely why Plaintiffs propose using CBC here. Finally, to the extent line pricing is relevant at all, it *would* suggest that CBA has

---

[5] CBA only began line pricing in 2017 (a limited portion of the class period). Opp. at 3.

[6] Even if comparable, parity-priced products were being compared, it still would not necessarily negate the existence of a price premium. *See Fitzhenry-Russell*, 2018 WL 3126385, at *7.

been able to inflate the price of entire lines of Kona Beer. Specifically, Kona Beers are in the category of domestic premium plus. Wang Dep. 87:8-25. But CBA line prices Kona Beers up to craft and import beers – the highest priced beers in the market. Mallory Dep. 44:17-45:1-5; 47:16-48:1-49:1-21; Wang Dep. 77:23-78:1-17; Motion, Ex. 41.

Out of whole cloth, CBA also asserts that the beer market is "unstable" because of numerous promotional discounts in the craft beer market. Lemon Decl., ¶ 105. However, the beer market is a mature market that is relatively consolidated and subject to normal competitive forces. Boedeker Decl., ¶¶ 19-26. Further, Lemon offers no opinion that frequent promotional pricing renders the beer market so "unstable" as to make CBC unworkable, and in fact, the pricing data referenced in his declaration show relative stability (though not full parity) in pricing. Lemon Decl., ¶¶ 78-84. Lemon also concedes that companies differentiate their products in order to maximize profits, which can manifest in higher prices. *Id.*, ¶ 105; Lemon Dep. Tr. 110:10-111:1; 113:6-114:1-1. Brewing location is one way for a brewer to differentiate itself. *Id.*, at 114:3-20. Moreover, because these purported discounts apply to *all* craft beers in a competitive market, it does not bear on any price premium specific to Kona Beers. Rather, this merely suggests the beer market is a competitive market for which CBC is well suited to measure a price premium. Boedeker Rebuttal Decl., ¶¶ 62-66.

### E.    A Class Action is the Superior Method of Adjudication

CBA's assertion that this Court is required to consider administrative feasibility or ascertainability issues under Rule 23's superiority requirement is belied by the case law it relies on. Opp. at 24 (citing to *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017)). In *Briseno*, the Ninth Circuit made clear that "Rule 23 does not impose a freestanding administrative feasibility prerequisite to class certification," noting that such a requirement would conflict with the "'well-settled presumption that courts should not refuse to certify a class merely on the basis of manageability concerns.'" *Id.* at 1126, 1128 (citation omitted). The Ninth Circuit further noted that "we have not" adopted any ascertainability requirement under Rule 23. *Id.* at 1124 n.4. Thus, concerns regarding the identification of class members are not an obstacle to certification. Regardless, Plaintiffs did testify as to which Kona Beers they purchased.

**F.    The Court May Certify an Injunctive Relief Class Under Rule 23(b)(2)**

Contrary to CBA's assertion, Plaintiffs are not seeking both injunctive and monetary relief under Rule 23(b)(2). Rather, Plaintiffs seek monetary relief pursuant to Rule 23(b)(3) while seeking to certify an injunctive relief class under Rule 23(b)(2). In *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, No. C 09-1967 CW, 2013 WL 5979327, at *7 (N.D. Cal. Nov. 8, 2013), the court held this is permissible: "Plaintiffs seek to certify one class under Rule 23(b)(2) to pursue declaratory and injunctive relief and another class under Rule 23(b)(3) to pursue monetary relief. Nothing in the federal rules or existing case law prevents them from seeking certification under both of these provisions." Next, CBA asserts that Plaintiffs "lack standing to pursue injunctive relief" because they alleged they would only purchase a Kona beer brewed in Hawaii. Opp. at 25. However, CBA ignores the "threat of future harm" when a consumer plausibly "purchase[s] the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969–70 (9th Cir. 2018). Here, Plaintiffs cannot rely with confidence on CBA's representations regarding the Kona Beers' brewing location. Broomfield Decl., ¶ 3, ECF No. 83-19; Zimmer Decl., ¶ 3, ECF No. 83-18. This uncertainty is compounded by the fact that CBA is building an expansive new brewery in Kona that may sell Kona Beers brewed in Hawaii to the mainland in the future. For this reason, Plaintiffs have "standing to pursue an injunction prohibiting continued false advertising because such relief could restore [their] trust, thus aiding [them] in making informed purchasing decisions in the future." *Claiborne v. Church & Dwight Co.*, No. 3:17-CV-00746-L-JLB, 2017 WL 5256752, at *3 (S.D. Cal. Nov. 13, 2017). Finally, CBA incorrectly asserts that Plaintiffs seek an injunction to require CBA to brew the Kona Beers in Hawaii. Opp. at 25. Not true. Here, Plaintiffs seek, and the Court can require, CBA to place a disclosure on the packaging of the Kona Beers notifying consumers of the brewing location.

## II.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request the Court grant their Motion for Class Certification.

1   DATED: August 24, 2018                Respectfully submitted,

2

3                                         By: */s/ Timothy J. Peter*
                                              Timothy J. Peter

4
                                              **FARUQI & FARUQI, LLP**
5                                             101 Greenwood Avenue, Suite 600
                                              Jenkintown, Pennsylvania 19046
6                                             Telephone: (215) 277-5770
                                              Facsimile: (215) 277-5771
7                                             E-mail:  tpeter@faruqilaw.com

8                                             Benjamin Heikali (SBN 307466)
9                                             Joshua Nassir (SBN 318344)
                                              10866 Wilshire Boulevard, Suite 1470
10                                            Los Angeles, CA 90024
                                              Telephone: (424) 256-2884
11                                            Facsimile: (424) 256-2885
                                              E-mail:  bheikali@faruqilaw.com
12                                                      jnassir@faruqilaw.com

13

14                                            **THE WAND LAW FIRM, P.C.**
                                              Aubry Wand (SBN 281207)
15                                            400 Corporate Pointe, Suite 300
                                              Culver City, California 90230
16                                            Telephone: (310) 590-4503
                                              Facsimile: (310) 590-4596
17                                            E-mail: awand@wandlawfirm.com

18                                            *Attorneys for Plaintiffs and the Putative Classes*
19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' REPLY TO MOTION FOR CLASS CERTIFICATION; CASE NO. 5:17-CV-01027-BLF