**FARUQI & FARUQI, LLP**
Benjamin Heikali (SBN 307466)
Joshua Nassir (SBN 318344)
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: (424) 256-2884
Facsimile: (424) 256-2885
E-mail: bheikali@faruqilaw.com
          jnassir@faruqilaw.com

**FARUQI & FARUQI, LLP**
Timothy J. Peter (admitted *pro hac vice*)
1617 JFK Boulevard, Suite 1550
Philadelphia, PA 19103
Telephone: (215) 277-5770
Facsimile: (215) 277-5771
E-mail: tpeter@faruqilaw.com

*Attorneys for Plaintiffs and the Classes*

**THE WAND LAW FIRM, P.C.**
Aubry Wand (SBN 281207)
400 Corporate Pointe, Suite 300
Culver City, California 90230
Telephone: (310) 590-4503
Facsimile: (310) 590-4596
E-mail: awand@wandlawfirm.com

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| THEODORE BROOMFIELD, *et al.*,<br><br>                    Plaintiffs,<br><br>          v.<br><br>CRAFT BREW ALLIANCE, INC., *et al.*,<br><br>                    Defendants. | CASE NO.: 5:17-cv-01027-BLF<br><br>**PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date: June 13, 2019<br>Time: 1:30 p.m.<br>Courtroom: 3 – 5th Floor<br>Judge: Hon. Beth Labson Freeman |

1    **TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

2        **PLEASE TAKE NOTICE** that on June 13, 2019, at 1:30 pm, in Courtroom 3 of the above-

3    captioned Court, Plaintiffs will and hereby do move this Court, pursuant to Fed. R. Civ. P. 23(e),

4    this District's Civil Local Rules, this Court's Standing Orders, and this District's Procedural

5    Guidance For Class Action Settlements, for an entry of an Order: (1) preliminarily approving the

6    terms of the proposed Settlement Agreement; (2) provisionally certifying the Class for settlement

7    purposes only; (3) provisionally appointing Faruqi & Faruqi, LLP and the Wand Law Firm, P.C. as

8    Class Counsel, and Plaintiffs as Class Representatives, for settlement purposes only; (4) appointing

9    CPT Group, Inc. as the Settlement Administrator; (5) approving the proposed Notice Plan and

10   authorizing dissemination of notice to the Class; and (6) scheduling a Final Approval Hearing.

11       This Motion is unopposed and is based on this Notice of Motion, the below Memorandum

12   of Points and Authorities in support, the Declarations of Timothy J. Peter, Aubry Wand, Bruce A.

13   Edwards, and Julie N. Green, the Settlement Agreement and exhibits thereto, the complete files and

14   records in this action, on such further oral and documentary evidence that may be submitted, and

15   any further evidence as the Court may receive.

16

17   DATED: May 23, 2019                    **FARUQI & FARUQI LLP**

18

19                                          By: */s/ Timothy J. Peter*
                                               Timothy J. Peter
20                                             Benjamin Heikali

21                                          **THE WAND LAW FIRM, P.C.**
22                                          Aubry Wand

23                                          *Attorneys for Plaintiffs and the Classes*

24

25

26

27

28

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT; CASE NO. 17-CV-01027-BLF

**TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................... 1

II.     RELEVANT PROCEDURAL BACKGROUND ......................................... 2

III.    THE SETTLEMENT TERMS .................................................................... 3

    A.   The Settlement Class ........................................................................... 3

    B.   Monetary Benefit For The Settlement Class ...................................... 4

    C.   Injunctive Relief For The Settlement Class ........................................ 5

    D.   Release Of Settlement Class Members' Claims .................................. 5

IV.     THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT
        BECAUSE IT IS FAIR, REASONABLE, AND ADEQUATE ..................... 6

    A.   Plaintiffs And Class Counsel Have Adequately Represented The Settlement Class ..... 8

    B.   The Settlement Was Reached After Informed, Arm's Length Bargaining ................... 8

        1.   Class Counsel Negotiated This Settlement Based On Sufficient Information ............. 8

        2.   The Settlement Was Negotiated At Arm's Length With An Experienced Neutral
             Mediator ...................................................................................... 9

        3.   Attorneys' Fees Were Negotiated After Relief to the Class Was Agreed Upon ........... 10

    C.   The Settlement Provides Substantial Benefit To The Settlement Class ....................... 10

        1.   The Benefit To The Settlement Class Is Substantial, Particularly When  Compared
             To What Class Members Could Have Recovered At Trial ............................................. 10

        2.   The Recovery For The Settlement Class Is Reasonable In Comparison To Comparable
             Settlements .................................................................................... 12

        3.   The Costs, Risks, And Delay Of Trial ........................................................ 13

        4.   Effectiveness Of The Proposed Distribution Method ........................................ 14

        5.   Terms Of Attorneys' Fees ..................................................................... 14

        6.   There Are No Supplemental Agreements ...................................................... 16

    D.   Settlement Class Members Are Treated Equitably Under The Settlement ................. 16

    E.   Additional Ninth Circuit Factors Favor Approval ............................ 17

        1.   Class Counsels' Experience And Views ...................................................... 17

V.      THE CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES .......... 17

    A.   The Court Can Certify A Settlement Class That Is Broader Than The  Certified
        California Litigation Classes ............................................................. 17

    B.   The Claims To Be Released Are Not Broader Than The Claims That Would  Be
        Released Under the Previously Certified California Litigation Classes ..................... 19

| | | |
|---|---|---|
| **C.** | **The Requirements Of Rule 23(a) Are Satisfied** | 20 |
| | 1. The Numerosity Requirement Is Satisfied | 21 |
| | 2. The Commonality Requirement Is Satisfied | 21 |
| | 3. The Typicality Requirement Is Satisfied | 21 |
| | 4. The Adequacy Requirement Is Satisfied | 22 |
| **D.** | **The Requirements Of Rule 23(b)(3) Are Satisfied** | 22 |
| | 1. Common Questions Predominate Over Individual Issues | 23 |
| | 2. A Class Is The Superior Method To Resolve This Controversy | 26 |
| **VI.** | **THE PROPOSED CLASS NOTICE PLAN SHOULD BE APPROVED** | 27 |
| **A.** | **The Settlement Administrator And Settlement Administration Costs** | 27 |
| **B.** | **The Method Of Providing Notice To The Class** | 28 |
| **C.** | **Class Notice Documents** | 30 |
| **D.** | **Submission Of Claim Forms And Estimated Claims Rate** | 31 |
| | 1. Submission of Claim Forms | 31 |
| | 2. Estimated Claims Rate | 31 |
| **E.** | **Objections And Exclusions** | 32 |
| | 1. Objections | 32 |
| | 2. Exclusions | 33 |
| **VII.** | **PROPOSED SETTLEMENT IMPLEMENTATION DATES** | 33 |
| **VIII.** | **CONCLUSION** | 33 |

**TABLE OF AUTHORITIES**

**Cases**                                                                                                      **Page(s)**

*In re Abbott Labs. Norvir Anti-Trust Litig.*,
   No. C 04-1511 CW, 2007 WL 1689899 (N.D. Cal. June 11, 2007) ...................................... 25

*Adams v. Inter-Con Sec. Sys., Inc.*,
   No. C-06-5428 MHP, 2007 WL 3225466 (N.D. Cal. Oct. 30, 2007) ..................................... 9

*Allied Fire Prot. v. Diede Constr., Inc.*,
   127 Cal. App. 4th 150 (2005) ......................................................................................... 20

*In re Anthem, Inc. Data Breach Litig.*,
   327 F.R.D. 299 (N.D. Cal. 2018) *appeals dismissed voluntarily*, 18-16826,
   2018 WL 7858371 (9th Cir. Oct. 17, 2018) 18-16866, 2018 WL 7890391 (9th
   Cir. Oct. 15, 2018) ............................................................................................... 20, 25

*Calvert v. Red Robin Int'l, Inc.*,
   No. C 11–03026, 2012 WL 1668980 (N.D. Cal. May 11, 2012) ........................................ 22

*In re Checking Account Overdraft Litig.*,
   307 F.R.D. 630 (S.D. Fla. 2015) ................................................................................... 25

*In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices, & Prods. Liab. Litig.*,
   No. 17-md-02777, 2019 WL 536661 (N.D. Cal. Feb. 11, 2019) ...................................... 26

*Churchill Vill., L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ................................................................................. 7, 17, 30

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ................................................................................... 6, 13

*Cotter v. Lyft, Inc.*,
   193 F. Supp. 3d 1030 (N.D. Cal. 2016) .............................................................................. 6

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011) ........................................................................................ 22

*Gergetz v. Telenav, Inc.*,
   No. 16-CV-04261-BLF, 2018 WL 4691169 (N.D. Cal. Sept. 27, 2018) ........................... 15

*Grays Harbor Adventist Christian School v. Carrier Corp.*,
   2008 WL 1901988 (W.D. Wash. April 24, 2008) ........................................................... 15

*Hahn v. Massage Envy Franchising LLC*,
   No. 3:12-cv-00153-DMS-BGS,
   2015 WL 2164981 (S.D. Cal. Mar. 6, 2015) ................................................................... 19

iii

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) .................................................................................*passim*

*In re Hyundai & Kia Fuel Economy Litigation*,
    881 F.3d 679 (9th Cir. 2018), *reh'g en banc granted*, 897 F.3d 1003 (9th Cir.
    2018) ....................................................................................................................... 24, 25, 26

*Jordan v. Cty. of L.A.*,
    669 F.2d 1311 (9th Cir. 1982), *rev'd on other grounds*, 713 F.2d 503 (9th Cir.
    1983) ...................................................................................................................................... 21

*Koller v. Med Foods, Inc.*,
    Case No. 14-cv- 2400-RS (N.D. Cal.) ................................................................................ 25

*Kumar v. Salov N. Am. Corp.*,
    No. 14-CV-2411-YGR, 2017 WL 2902898 (N.D. Cal. July 7, 2017), *aff'd*, 737
    F. App'x 341 (9th Cir. 2018), *and appeal dismissed*, No. 17-16621, 2017 WL
    5502713 (9th Cir. Sept. 21, 2017) ...................................................................................... 20

*Louie v. Kaiser Found. Health Plan, Inc.*,
    No. 08-cv-0795, 2008 WL 4473183 (S.D. Cal. Oct. 6, 2008) ............................................ 9

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) ............................................................................................. 21

*In re Mercury Interactive Corp. Sec. Litig.*,
    618 F.3d 988 (9th Cir. 2010) ............................................................................................. 16

*Moyle v. Liberty Mut. Ret. Benefit Plan*,
    No. 10CV2179-GPC (MDD), 2018 WL 1141499 (S.D. Cal. Mar. 2, 2018) ...................... 17

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) .................................................................................... 9, 11

*In Re Nexus 6P Products Liability Litigation*,
    No. 5:17-cv-02185-BLF (N.D. Cal. May 3, 2019) ............................................................. 26

*In Re Nucoa Real Margarine Litig.*,
    No. CV 10-00927 MMM, 2012 WL 12854896 (C.D. Cal. June 12, 2012) .......................... 11

*O'Connor v. Uber Techs., Inc.*,
    201 F. Supp. 3d 1110 (N.D. Cal. 2016) .............................................................................. 6

*Officers for Justice v. Civil Serv. Comm'n of S.F.*,
    688 F.2d 615 (9th Cir. 1982), *cert denied*, 459 U.S. 1217 (1983) ........................................ 14

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) .............................................................................. 17

iv

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ............................................................................................. 29

*Reed v. 1–800 Contacts, Inc.*,
    2014 WL 29011 (S.D. Cal. Jan. 2, 2014) ............................................................ 11

*Rodriguez v. West Publ'g Corp.*,
    563 F. 3d 948 (9th Cir. 2009)............................................................................. 17

*Sadowska v. Volkswagen Grp. of Am., Inc.*,
    No. CV 11-00665, 2013 WL 9600948 (C.D. Cal. Sept. 25, 2013) ........................ 10

*Schaffer v. Litton Loan Servicing, LP*,
    No. CV 05–07673, 2012 WL10274679 (C.D. Cal. Nov. 13, 2012)....................... 13

*Sheikh v. Tesla, Inc.*,
    No. 17-CV-02193-BLF, 2018 WL 5794532 (N.D. Cal. Nov. 2, 2018) ................... 26

*Spann v. J.C. Penney Corp.*,
    314 F.R.D. 312 (C.D. Cal. 2016) ....................................................................... 19

*Tait v. BSH Home Appliances Corp.*,
    289 F.R.D 466 (C.D. Cal. 2012) ........................................................................ 23

*Terry v. Hoovestol, Inc.*,
    No. 16-CV-05183-JST, 2019 WL 2061105 (N.D. Cal. May 9, 2019).................... 17

*Tijero v. Aaron Bros., Inc.*,
    No. C 10-01089, 2013 WL 60464 (N.D. Cal. Jan.2, 2013) ..................................... 6

*In re Toys R Us–Del., Inc.– Fair & Accurate Credit Transactions Act (FACTA)
    Litig.*,
    295 F.R.D. 438 (C.D. Cal.2014) ....................................................................... 11

*In re TRS Recovery Servs., Inc. & Telecheck Servs., Inc., Fair Debt Collection
    Practices Act (FDCPA) Litig.*,
    Civ. No. 2:13-MD-2426-DBH, 2016 WL 543137 (D. Me. Feb. 10, 2016) ........... 19

*Valentino v. Carter-Wallace, Inc.*,
    97 F.3d 1227 (9th Cir. 1996)............................................................................. 26

*Vathana v. Everbank*,
    No. 09-CV-02338-RS, 2016 WL 3951334 (N.D. Cal. July 20, 2016)................... 13

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002)........................................................................... 15

*Vizcaino v. United States Dist. Crt. for W. Dist. Wash.*,
    173 F.3d 713 (9th Cir. 1999)............................................................................. 18

v

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig*,
    895 F.3d 597 (9th Cir. 2018),.............................................................................. 26

*Williams v. Gerber Prods. Co.*,
    552 F.3d 934 (9th Cir. 2008) ............................................................................ 23

*Zinser v. Accufix Research Inst., Inc.*,
    253 F.3d. 1180 (9th Cir. 2001) ......................................................................... 26

**Statutes**

C. C. P. § 1021.5 ......................................................................................................... 15

Cal. Civ. Code § 1542 .................................................................................................. 6

Cal. Civ. Code § 1750 ............................................................................................ 2, 15

Cal. Civ. Code § 1781 ................................................................................................ 30

Cal. Bus. & Prof. Code § 17500, *et seq.* ..................................................................... 2

Cal. Bus. & Prof. Code § 17200, *et seq.* ..................................................................... 2

**Other Authorities**

Fed. R. Civ. P. 23(a)........................................................................................... *passim*

Fed. R. Civ. P. 23(b)........................................................................................... *passim*

Fed. R. Civ. P. 23(c)(1)(C)........................................................................................ 18

Fed. R. Civ. P. 23(e)........................................................................................... *passim*

Fed. R. Civ. P. 23(f) ........................................................................................... 2, 3, 9

Fed. R. Civ. P. 23(g)(1) and (4) ................................................................................. 8

**ISSUE TO BE DECIDED**

Whether the Court should grant preliminary of the proposed Settlement.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

In this class action, Plaintiffs Theodore Broomfield and Simone Zimmer ("Plaintiffs") allege that Defendant Craft Brew Alliance, Inc. ("CBA") violated California consumer protection laws and common law by packaging and advertising Kona Brewing Company Beers ("Kona Beers") as brewed in Hawaii when they are actually brewed in the continental U.S.

After over two years of hard-fought litigation, Plaintiffs are pleased to present this Settlement to the Court for preliminary approval. The Settlement represents an outstanding result for the proposed nationwide Settlement Class in that it fully achieves the two central goals of this litigation. First, the Settlement affords Class Members the opportunity to recover more than what they would likely receive if this case proceeded to trial. Second, the Settlement provides for meaningful changes to the packaging of Kona Beers that will mitigate the likelihood of consumer confusion that they are exclusively brewed in Hawaii. As such, the proposed Settlement is fair, adequate and reasonable, and should be preliminarily approved under Fed. R. Civ. P. 23(e), Ninth Circuit case law, and this District's Procedural Guidance for Class Action Settlements.

Further, the proposed robust Notice Plan is designed to reach over 90 percent of the Class and it will adequately advise Class Members of the terms of this Settlement and their rights thereunder, in compliance with due process and all other applicable laws and rules. In addition, the proposed nationwide Settlement Class should be certified for settlement purposes because all of the requirements of Fed. R. Civ. P. 23(a) and (b)(3) are satisfied.

Accordingly, Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement, provisionally certify the Settlement Class, provisionally appoint Faruqi & Faruqi, LLP and the Wand Law Firm, P.C. as Class Counsel and Plaintiffs as Class Representatives, appoint CPT Group, Inc. as the administrator for the Settlement, approve the Notice Plan and authorize dissemination of notice to the Class, and schedule a Final Approval Hearing.

## II.     RELEVANT PROCEDURAL BACKGROUND[1]

Before commencing this action, Class Counsel conducted a thorough pre-suit investigation. Declaration of Timothy J. Peter ("Peter Decl.") at ¶¶ 3-4; Declaration of Aubry Wand ("Wand Decl."). at ¶ 6.  On April 7, 2017, Plaintiffs filed a Consolidated Class Action Complaint against CBA, challenging CBA's packaging and marketing of the Kona Beers as being brewed in Hawaii when they are brewed in the continental U.S.  ECF No. 15.  After the Court denied in part and granted in part CBA's Motion to Dismiss (ECF No. 44), on December 15, 2017, Plaintiffs filed a First Amended Consolidated Class Action Complaint ("FAC"), which is the operative complaint in this action. ECF No. 65. The FAC asserts the following causes of action: (1) violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*, (2) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*, (3) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*, (4) common law fraud, (5) intentional misrepresentation, (6) negligent misrepresentation, and (7) unjust enrichment.  *Id.*  On December 29, 2017, CBA filed an Answer to the FAC.  ECF No. 66.

On September 25, 2018, the Court granted Plaintiffs' Motion for Class Certification, certifying: (1) a damages Class of California purchasers of six- and twelve-packs of Kona Beers pursuant to Rule 23(b)(3), and (2) an injunctive relief Class of California purchasers of six- and twelve-packs of Kona Beers pursuant to Rule 23(b)(2). ECF No. 94 ("Class Certification Order"). The law firms of Faruqi & Faruqi, LLP and the Wand Law Firm, P.C. were appointed as Class Counsel, and Plaintiffs were appointed as Class Representatives.  *Id.*

On October 22, 2018, CBA filed a Rule 23(f) petition for interlocutory appeal of the Court's Class Certification Order, which Plaintiffs timely opposed.  Peter Decl., ¶ 6.  On February 1, 2019, the Ninth Circuit Court of Appeals denied CBA's Rule 23(f) petition. ECF No. 104.  *Id.*  On February 15, 2019, CBA filed a Petition for Rehearing en banc of the Ninth Circuit's denial of CBA's Rule 23(f) petition.  *Id.*

---

[1] This is a non-exhaustive summary of the litigation. Paragraphs 1-26 of the Settlement Agreement sets forth a more detailed record of the litigation.

On January 24, 2019, the Parties participated in a full day mediation session with Bruce A. Edwards, an experienced mediator at JAMS in San Francisco, California. *Id*. at ¶ 7. The Parties did not reach settlement during this mediation but continued to engage in settlement discussions. *Id*. On March 6, 2019, the Parties participated in a second mediation session with Mr. Edwards, at the conclusion of which the Parties were able to reach a settlement in principle. *Id*. at ¶ 8. Notably, the Parties negotiated Class Counsel's attorneys' fees and costs and the class representative service awards only after reaching agreement on the monetary and injunctive relief for the Class. *Id.*; *see also* Declaration of Bruce A. Edwards ("Edwards Decl."), ¶ 5. In the subsequent weeks, the Parties continued to negotiate and finalize all terms of this Settlement Agreement, and executed the final form on May 23, 2019, attached to the Peter Decl. at ¶ 9 as **Ex. A** ("Settlement Agreement").

In light of the proposed Settlement, the Parties have filed a request to stay all appellate proceedings, including CBA's Petition for Rehearing *en banc*. Peter Decl. at ¶ 11. All proceedings before this Court, other than those relating to the settlement approval process, have been vacated. ECF No. 111.

## III.   THE SETTLEMENT TERMS

### A.   The Settlement Class

The Settlement Class is comprised of and Settlement Class Members are defined as:

> All Persons who purchased any four-pack, six-pack, twelve-pack or twenty-four pack of Kona Beers in the United States, its territories, or at any Untied States military facility, during the Class Period.[2] For the purposes of this definition, individuals living in the same household shall be deemed to be a single Class Member.

Settlement Agreement, ¶ 74.

Excluded from the Settlement Class are: (a) CBA's and any of its parents', affiliates', or subsidiaries' employees, officers and directors, (b) distributors, retailers or re-sellers of Kona Beers, (c) governmental entities, (d) Persons who timely and properly exclude themselves from the Settlement Class as provided herein, (e) the Court, the Court's immediate family, and Court staff, and (f) counsel of record for the Parties, and their respective law firms. *Id*.

---

[2] The Class Period is from February 28, 2013 through the date of Preliminary Approval. Settlement Agreement, ¶ 40.

3

Kona Beers are defined as: all 4-pack, 6-pack, 12-pack, or 24-packs of Longboard Island Lager, Hanalei IPA, Castaway IPA, Big Wave Golden Ale, Lemongrass Luau, Wailua Wheat, Fire Rock Pale Ale, Pipeline Porter, Lavaman Red Ale, Koko Brown Ale, Kua Bay IPA, Gold Cliff IPA, Kanaha Blonde Ale, Liquid Aloha Variety Pack, Island Hopper Variety Pack, Happy Mahalo Variety Pack, Wave Rider Tandem Pack. Excluded from the definition is all Kona beer that is sold without packaging (i.e., loose bottles, loose cans, and draft beer).  Settlement Agreement, ¶ 53.

**B.    Monetary Benefit For The Settlement Class**

Each Settlement Class Member who submits a timely and valid Claim Form will receive a monetary payment, based on the number and type of eligible purchases made during the Class Period, as follows:

| Type of Unit Purchased | Amount Per Unit |
| --- | --- |
| 4-pack Kona Beers | $1.25 |
| 6-pack Kona Beers | $1.25 |
| 12-pack Kona Beers | $2.00 |
| 24-pack Kona Beers | $2.75 |

*Id.* ¶ 77(a).

Based on the foregoing per unit values, Settlement Class Members will be eligible to recover up to a maximum of $20 per household (i.e., the same mailing address) if they submit Proof of Purchase up to $10 per household without submitting any Proof of Purchase, provided they were 21 years or older at the time of the purchase.  *Id.* ¶ 77(b), (c).

There is no cap on the number of claims CBA must pay out and no pro-rata reduction. However, given that claims may be submitted without Proof of Purchase, CBA has the option to terminate the Settlement if there are more than 1 million claims (regardless of the dollar amount of such claims).  *Id.* ¶ 77(d).  While the precise number of claims cannot be stated with certainty at this juncture, the proposed Settlement Administrator, CPT Group, Inc. ("CPT"), estimates that there are roughly 7,800,000 Class Members.  Declaration of Julie N. Green on Behalf of CPT ("Green Decl."), ¶ 11.  Both the CPT and Class Counsel believe that it is highly unlikely that more than 1

4

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; CASE NO. 17-CV-01027-BLF

1   million Claims will be submitted.[3]  *Id.* at ¶ 29; Peter Decl., 12; Wand Decl. ¶ 18.  Therefore, the

2   submission of more than 1 million claims – in conjunction with the fact that no proof of purchase is

3   required – may suggest fraud.  Peter Decl., ¶ 13.  Preventing fraud is the principal purpose of

4   affording CBA the *option* to terminate the Settlement if there more than 1 million Claims.  *Id.*

5           **C.      Injunctive Relief For The Settlement Class**

6           No later than March 2020 or thirty calendar days after the Effective Date, whichever is later,

7   CBA shall make the following changes to its business practices:

8           To the extent permitted by law and/or regulation, CBA shall include a conspicuous statement

9   on all consumer-facing Kona Beer packaging on a panel other than the bottom of the package that

10  lists each location where the Kona Beers are brewed or lists the location or locations at which a

11  particular Kona Beer is brewed, for a minimum of four years after the Effective Date.  Settlement

12  Agreement, ¶ 78(a).  An exemplar mock-up of the new packaging is attached Settlement Agreement

13  as Exhibit 7.  *Id.*  In addition, for a minimum of four years after the Effective Date, CBA's General

14  Counsel or his or her designee shall conduct annual meetings with CBA's marketing department to

15  review and comply with the injunctive terms of this Settlement.  *Id.* ¶ 78(b).

16          **D.      Release Of Settlement Class Members' Claims**

17          The Parties have negotiated a class-wide release that is tailored to the allegations in this

18  Action.  Upon the Effective Date of the Settlement, Plaintiffs, as well as any Settlement Class

19  Member who does not submit a valid and timely Request for Exclusion (i.e., opt-out of the

20  settlement) shall release the following claims against CBA and the other Released Parties:

21          Any claim, cross-claim, liability, right, demand, suit, matter, obligation, damage,
            restitution, disgorgement, loss or cost, attorneys' fee, cost or expense, action or
22          cause of action, of every kind and description that the Releasing Party had or has,
            including assigned claims, whether in arbitration, administrative, or judicial
23          proceedings, whether as individual claims or as claims asserted on a class basis or
            on behalf of the general public, whether known or unknown, asserted or unasserted,
24          suspected or unsuspected, latent or patent, that is, has been, could reasonably have
            been or in the future might reasonably be asserted by the Releasing Party in the
25          Action against any of the Released Parties arising out of the allegations in the
            complaints filed in the Action ("Released Claims") Excluded from the Released
26

27

28  _____
    [3] The estimated claims rate is described in more detail below at Section VI.D.2 below.

1

2

> Claims is any claim for alleged bodily injuries arising after the Effective Date of this Settlement Agreement.

3

Settlement Agreement, ¶ 66.

4

This release includes a waiver of Section 1542 of the California Civil Code and any law of

5

any state or territory of the United States, federal law or principle of common law, or of international

6

or foreign law, that is similar, comparable or equivalent to Section 1542 of the California Civil

7

Code. *Id.*, ¶¶ 124-26.

8

9

**IV.    THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT BECAUSE IT IS FAIR, REASONABLE, AND ADEQUATE**

10

As an initial matter, in the Ninth Circuit, there is a "strong judicial policy that favors

11

settlements, particularly where complex class action litigation is concerned." *Class Plaintiffs v. City*

12

*of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

13

Approval of a class action settlement requires a two-step process – a preliminary approval

14

followed by a later final approval. *See Tijero v. Aaron Bros., Inc.*, No. C 10-01089, 2013 WL 60464,

15

at *6 (N.D. Cal. Jan.2, 2013). "Although the Ninth Circuit has not specified what standard should

16

apply at the preliminary approval stage, 'district courts often state or imply that scrutiny should be

17

more lax.'" *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1122 (N.D. Cal. 2016). Under

18

this more lax standard, courts examine whether the settlement "'falls within the range of possible

19

approval' or 'within the range of reasonableness,' looking at factors such as whether the settlement

20

is the product of non-collusive negotiations, has no obvious deficiencies, does not improperly grant

21

preferential treatment to class representatives or segments of the class, and falls within the range of

22

possible approval." *Id.* (internal quotation marks omitted). However, given practical

23

considerations, such as the cost of providing notice to the class, some courts apply a more exacting

24

standard at the preliminary approval stage. *See*, *e.g.*, *Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1037

25

(N.D. Cal. 2016).

26

Here, preliminary approval of the Settlement is appropriate under the more exacting final

27

approval standard because it is fair, reasonable, and adequate under the Federal Rule of Civil

28

Procedure 23(e), Ninth Circuit case law, and the applicable Northern District's Procedural Guidance

6

for Class Action Settlements ("Settlement Guidelines"). Under Rule 23(e)(2), the Court may approve a proposed settlement only after finding that the settlement is "fair, reasonable, and adequate." The recent amendments to Rule 23, effective December 1, 2018, require a court, in making a determination about the adequacy of a proposed settlement, to consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> > (i) the costs, risks, and delay of trial and appeal;
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> > (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

The Advisory Committee recognizes that circuits have developed their own lists of factors for courts to consider when assessing the fairness of a proposed class action settlement. The 2018 amendments were not intended to "displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e)(2) Advisory Comm. Note to 2018 Amendment. The Ninth Circuit has often used the "*Churchill* factors" when determining whether to approve a class action settlement:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).[4]  As detailed below, the Settlement passes both procedural and substantive muster under the Rule 23 and *Churchill* factors, and merits preliminary approval.

---

[4] The "*Churchill* factors" are also known as the "*Hanlon* factors." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

**A.     Plaintiffs And Class Counsel Have Adequately Represented The Settlement Class**

Under Rule 23(e)(2)(A), the Court should consider whether "the class representatives and class counsel have adequately represented the class." In granting class certification, the Court concluded that Class Counsel are adequate.  ECF No. 94 at 36 ("Plaintiffs have retained highly capable counsel with extensive experience in successfully prosecuting consumer class actions".) Accordingly, and without any opposition, the Court finds that Faruqi & Faruqi, LLP and the Wand Law Firm, P.C. are adequate under Rule 23(g)(1) and (4)."). The Court also concluded that Plaintiffs are adequate and appointed them as representatives of the Class.  *Id.* at 12-13, 37.  This remains true for the purposes of seeking approval of this Settlement, as after obtaining class certification, Plaintiffs and Class Counsel have, and will continue to, zealously represent the Class.[5] Peter Decl. ¶¶ 5-6; Wand Decl. ¶¶ 7-8.

**B.     The Settlement Was Reached After Informed, Arm's Length Bargaining**

Under Rule 23(e)(2)(B), the Court should consider whether "the [proposed settlement] was negotiated at arm's length[.]" As discussed below, this "procedural" factor weighs in support of preliminary approval.

1.     <u>Class Counsel Negotiated This Settlement Based On Sufficient Information</u>

Class Counsel conducted extensive investigative work prior to bringing a lawsuit.  Peter Decl., ¶¶ 3-4; Wand Decl., ¶ 6.  After commencing this action, the Parties engaged in extensive motion practice and discovery before participating in any settlement discussions. Plaintiffs' counsel, among other things, took multiple Rule 30(b)(6) depositions relating to CBA's advertising and sales practices, served and responded to several rounds of written discovery, reviewed tens of thousands of pages of documents, and retained well-qualified experts in the fields of consumer surveys and statistics and economics to proffer opinions on threshold issues of deception, materiality, and damages.  Peter Decl., ¶ 5.

---

[5] Adequacy of Plaintiffs and Class Counsel is further discussed in Section V.C.4 below.

Moreover, while Plaintiffs ultimately obtained class certification, it was vigorously contested by CBA, as evidenced by the three depositions taken of the parties' respective experts, CBA's deposition of the two Plaintiffs, CBA's thorough opposition brief, and CBA's post-certification motion for reconsideration and Rule 23(f) petition to appeal, all of which occurred before the parties reached this Settlement. *Id.* ¶¶ 5-6. Even after the parties began settlement negotiations, they continued to exchange documents and information regarding their respective positions. *Id.* ¶ 7. Thus, Plaintiffs and Class Counsel were well-apprised of the salient legal and factual issues before reaching the decision to settle this matter. *Id.* ¶ 10; *see also Louie v. Kaiser Found. Health Plan, Inc.*, No. 08-cv-0795, 2008 WL 4473183, at *6 (S.D. Cal. Oct. 6, 2008) ("Class counsels' extensive investigation, discovery, and research weighs in favor of preliminary settlement approval."); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) ("A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case.") .

2.   The Settlement Was Negotiated At Arm's Length With An Experienced Neutral Mediator

The close involvement of Bruce A. Edwards, Esq. of JAMS, a highly experienced class action mediator, throughout the settlement negotiation process underscores the procedural fairness of the Settlement. *See Adams v. Inter-Con Sec. Sys., Inc.*, No. C-06-5428 MHP, 2007 WL 3225466, at *3 (N.D. Cal. Oct. 30, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.").  Here, the settlement negotiations were at arm's length and, although conducted in a professional manner, were adversarial.  Edwards Decl., ¶ 6. The Parties first participated in a full-day mediation session with Mr. Edwards on January 24, 2019, but were unable to reach a settlement.  *Id.,* ¶ 4.  After several rounds of conference calls with Mr. Edwards, the Parties agreed to participate in a second mediation session on March 6, 2019. After negotiating for approximately 12 hours at the second mediation session, the Parties were finally able to reach agreement regarding the principle terms of this Settlement.  *Id.*

9

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3.      Attorneys' Fees Were Negotiated After Relief to the Class Was Agreed Upon

The Parties negotiated Class Counsel's attorneys' fees and costs and the class representative service awards only after reaching agreement on the monetary and injunctive relief for the Class. Edwards Decl. ¶ 5.  Moreover, this Settlement is not contingent on the award of attorneys' fees and costs or the class representative service awards, Settlement Agreement, ¶¶ 109, 113, which is indicative of a fair and arm's-length settlement process.  *See* Fed. R. Civ. P. 23 Advisory Comm. Note to 2018 Amendment (courts may look at "the treatment of any award of attorneys' fees, with respect to both the manner of negotiating the fee award and its terms."); *Sadowska v. Volkswagen Grp. of Am., Inc.*, No. CV 11-00665, 2013 WL 9600948, at *8 (C.D. Cal. Sept. 25, 2013) (approving settlement and finding agreement on fees and expenses reasonable where "[o]nly after agreeing upon proposed relief for the Class Members, did the parties discuss attorneys' fees, expenses, and costs").[6]

**C.      The Settlement Provides Substantial Benefit To The Settlement Class**

Rule 23(e)(2)(C) "focus[es] on what might be called a 'substantive' review of the terms of the proposed settlement."  Fed. R. Civ. P. 23 Advisory Comm. Note to 2018 Amendment.   In determining whether "the relief provided for the class is adequate," the Court should consider "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)[.]"  Fed. R. Civ. P. 23(e)(2)(C).  As discussed below, all of these substantive considerations are satisfied here.

1.      The Benefit To The Settlement Class Is Substantial, Particularly When Compared To What Class Members Could Have Recovered At Trial

Under the Settlement, Class Members who file timely and valid claims will receive compensation ranging from $1.25-$2.75 per product, and up to a total maximum of $10 or $20 per household, depending on whether the Settlement Class Member has Proof of Purchase. This relief

---

[6] The substantive terms of the attorneys' fees and costs provisions are detailed below in Section IV.C.5.

1   is clearly reasonable when weighed against the damages recoverable if Plaintiffs were to prevail at

2   trial on their claims.  Notably, the compensation per-product negotiated on behalf of the Settlement

3   Class ($1.25-$2.75) is **more than** the damages per-product that Class members likely could have

4   received at trial.[7]  Peter Decl., ¶ 14.   In support of their Motion for Class Certification, Plaintiffs'

5   statistics and economics expert, Stefan Boedeker, conducted a conjoint analysis, and calculated a

6   12.7% nationwide price premium based on the mistaken belief that Kona Beers are brewed in

7   Hawaii.  ECF No. 79-14, ¶ 144.  Based on the sales and financial data produced in the litigation,

8   Class Counsel determined that the per-product recovery afforded to Class Members under this

9   Settlement represents more than the 12.7% price premium per-product that could be recovered if

10  Plaintiffs were to prevail at trial.  Peter Decl., ¶ 14.  This is an excellent result for the Class.  *See In*

11  *Re Nucoa Real Margarine Litig*., No. CV 10-00927 MMM (AJWx), 2012 WL 12854896, at *13

12  (C.D. Cal. June 12, 2012) ("Even though class members will receive slightly less than the full

13  purchase price, and recover for a limited number of purchases, therefore, their recovery from the

14  settlement might well be significantly more than they would receive if they prevailed at trial.").[8]

15       The injunctive component of the Settlement also provides substantial benefit to the

16  Settlement Class. CBA has agreed to include a conspicuous statement on all consumer-facing Kona

17  Beer packaging that lists each location where the Kona Beers are brewed or lists the location or

18  locations at which a particular Kona Beer is brewed.  Settlement Agreement, ¶ 78(a), Ex. 7.  This

19  statement will mitigate any potential consumer confusion that the Kona Beers are brewed

20  exclusively in Hawaii – the issue at the very heart of this case.  Peter Decl., ¶ 15.  Indeed, courts in

21  other false advertising beer origin cases have recognized significant value derived from substantially

22

23  _____

[7] Up to an aggregate amount of $10 without proof of purchase and $20 with proof of purchase.

24
[8] Moreover, "it is well-settled law that a proposed settlement may be acceptable even though it
25  amounts to only a fraction of the potential recovery that might be available to the class members at
    trial."  *DIRECTV*, 221 F.R.D. at 527, citing *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242
26  (9th Cir. 1998). *See also In re Toys R Us–Del., Inc.– Fair & Accurate Credit Transactions Act
    (FACTA) Litig.*, 295 F.R.D. 438, 453–54 (C.D. Cal.2014) (granting final approval of a settlement
27  providing for payment reflecting 3% of possible recovery); *Reed v. 1–800 Contacts, Inc.*, 2014 WL
    29011, *6 (S.D. Cal. Jan. 2, 2014) (granting final approval where settlement represented 1.7% of
28  possible recovery).

similar injunctive relief.  *See Marty v. Anheuser-Busch Cos., LLC*, No. 13-cv-23656, ECF No. 171 – Order Overruling Objections at 7 (holding that "injunctive changes such as label modifications represent a benefit to the class and should be considered when approving a class settlement[,]" and collecting cases in accord) (decision attached as **Ex. D** to the Peter Decl. ¶ 20); *Suarez v. Anheuser-Busch Companies, LLC*, No. 13-033620-CA-01, (Final Order and Judgment) (approving settlement agreement in Japanese beer-mislabeling class action, requiring labeling changes clarifying that the beer was not brewed in Japan) (decision attached as **Ex. F** to the Peter Decl. ¶ 22); *Shalikar v. Asahi Beer, U.S.A., Inc.*, No. BC702360, Order Granting Preliminary Approval (same) (decision attached as **Ex. B** to the Peter Decl. ¶ 17).

> 2. <u>The Recovery For The Settlement Class Is Reasonable In Comparison To Comparable Settlements</u>

Settlements in similar false advertising beer cases also serve as a useful benchmark to assess the reasonableness of this Settlement.  *See* Fed. R. Civ. P. 23 Advisory Comm. Note to 2018 Amendment ("the nature and amount of discovery in this or other cases, or the actual outcomes of other cases . . . may indicate whether counsel negotiating on behalf of the class had an adequate information base.").  This Settlement is comparable to or exceeds the class-wide benefits in similar false geographic origin beer settlements. For example, in *Marty*, a class action challenging the origin of Beck's beer, the court approved a class-wide settlement which included: (1) monetary benefits ranging from $.10 to $1.75 per unit depending on which beer size was purchased; and (2) injunctive relief in the form of label changes that inform consumers where Beck's beer is brewed.  Peter Decl., ¶ 20.  Notably, the plaintiffs' expert in *Marty* had calculated that the monetary benefit was approximately 33% to 50% of the recovery plaintiffs could have achieved at trial.  *Id.* at ¶ 21, **Ex. E**.  Here, in addition to similar injunctive relief, the monetary relief, as discussed above, is greater than the amount Class Members could have recovered a trial on a per-product basis. Moreover, in accordance with the Settlement Guidelines, ¶ 11, this Settlement is also comparable to the settlement reached by Class Counsel in *Shalikar v. Asahi Beer USA, Inc.*, No. BC702360 and *In re Scotts EZ Seed Litigation*, No. 12-cv-4727, both consumer class actions settled on a claims-made basis.  *See* Peter Decl., ¶ 17-19, **Ex. B** and **C** for further detail.

12

1              3.        The Costs, Risks, And Delay Of Trial

2          Consistent with Fed. R. Civ. P. 23(e)(2)(C)(i), courts in this circuit evaluate "the strength of

3    the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; [and] the

4    risk of maintaining class action status throughout the trial[.]"  *Hanlon v. Chrysler Corp.*, 150 F.3d

5    1011, 1026 (9th Cir. 1998).   Thus, the recovery obtained for Settlement Class should also be

6    balanced against the time, expense, and risk associated with extensive litigation and trial. Generally,

7    the principal risks to be assessed are the difficulties and complexities of proving liability and

8    damages.  *See Class Plaintiffs*, 955 F.2d at 1292 (approving settlement based on uncertainty of

9    claims and avoidance of summary judgment).

10         Here, in considering whether to enter into the Settlement, Plaintiffs and Class Counsel

11   considered the significant risks of proceeding with the litigation, including the risks of maintaining

12   class certification, establishing liability, proving damages at trial, and the likely duration of post-

13   trial motions and appeals.  Peter Decl., ¶ 24; *see also Schaffer v. Litton Loan Servicing, LP*, No. CV

14   05–07673, 2012 WL10274679, at *11 (C.D. Cal. Nov. 13, 2012) ("Estimates of what constitutes a

15   fair settlement figure are tempered by factors such as the risk of losing at trial, the expense of

16   litigating the case, and the expected delay in recovery (often measured in years).");  *see also Vathana*

17   *v. Everbank*, No. 09-CV-02338-RS, 2016 WL 3951334, at *2 (N.D. Cal. July 20, 2016) ("All in all,

18   the risk at trial would have been great, and while the total recovery for some plaintiffs may seem

19   modest, it is far better than $0 that might have resulted.").

20         More specifically, CBA contests liability, as well as the propriety of certification, and is

21   prepared to vigorously defend against Plaintiffs' claims if the action is not settled. This is evidenced

22   by the extensive record in this case, including an en banc petition on file (but stayed pending this

23   Settlement) in the Ninth Circuit filed by CBA. And even if the Ninth Circuit were to deny CBA's

24   en banc petition, CBA would likely file a motion for summary judgment and *Daubert* motions as to

25   Plaintiffs' experts, all before Plaintiffs could even present this case for trial. Finally, even if

26   Plaintiffs prevailed at trial, and any appeals were resolved in Plaintiffs' favor, payment to Class

27   members would likely be delayed for several years.  Peter Decl. ¶ 24; *see also Officers for Justice*

28   *v. Civil Serv. Comm'n of S.F.*, 688 F.2d 615, 629 (9th Cir. 1982), *cert denied*, 459 U.S. 1217 (1983)

13

(approving settlement based in part on the possibility that a judgment after a trial, when discounted, might not reward class members for their patience and the likely delay reflected in the "track record" for large class actions).  In sum, when the risks of further litigation, the uncertainties involved in maintaining class certification, the burdens of proof necessary to establish liability, the probability of appeal of a favorable judgment, and the likely delay in any payments to the Class, are balanced against the fact that Settlement Class Members will be receiving more monetary recovery on a per unit basis than they could have received at trial, it is clear that the Settlement amount is fair, adequate, and reasonable.  Peter Decl., ¶ 25; Wand Decl., ¶ 3.

### 4.    Effectiveness Of The Proposed Distribution Method

Under Rule 23(e)(2)(C)(ii), the Court should consider "the effectiveness of [the] proposed method of distributing relief to the class." Here, Settlement Class Members who seek benefits under the Settlement must only submit a Claim Form with basic questions about class membership and their purchases of Kona Beer.[9]  Settlement Agreement, ¶ 36, Ex. 1.  All payments to Settlement Class Members will be in the form of a check or via electronic payment, whichever option the Settlement Class Member so chooses.  Settlement Agreement, ¶ 91; *see also* Settlement Guidelines, ¶ 3 (Class Counsel should consider "distributions to class members via direct deposit.").  This procedure is claimant-friendly, efficient, cost-effective, proportional and reasonable.

### 5.    Terms Of Attorneys' Fees

Under Rule 23(e)(2)(C)(iii), the Court should consider "the terms of any proposed award of attorney's fees, including timing of payment." Here, Plaintiffs will request the payment of attorneys' fees and expenses in the amount of $2,900,000, which is to be paid by CBA separate and apart from the money made available to the Class for purposes of payments of Claims and notice and administration expenses.  Peter Decl. ¶ 26.

Under Ninth Circuit law, in cases such as this where monetary relief is made on a claims-made basis (no common fund) and there is a fee-shifting statute (here, California Civil Code § 1750 and California Code of Civil Procedure § 1021.5), it is appropriate for a District Court to analyze

---

[9] Further detail about the Notice Plan is described in Section VI.B below.

14

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; CASE NO. 17-CV-01027-BLF

an attorneys' fee request and issue an award based on the "lodestar" method. *Hanlon*, 150 F.3d at 1029 (affirming choice of lodestar method where calculation of value of common fund was uncertain); *Grays Harbor Adventist Christian School v. Carrier Corp.*, 2008 WL 1901988 (W.D. Wash. April 24, 2008) (holding that where "[s]ettlement relief will be paid on a claims-made basis with no cap to the relief available, consideration of attorneys' fees lends itself more readily to the lodestar method"). The $2,900,000 in attorneys' fees and costs is fair and reasonable based on Class Counsel's litigation costs and current lodestar, and any other method of review, which may be discussed in a fee application should the Court grant this Motion.

Class Counsel estimates their current litigation costs are approximately $324,593. Peter Decl., ¶ 27; Wand Decl., ¶ 19. Thus, after subtracting these litigation costs (which will continue to increase through the settlement approval process) from the $2,900,000 figure, Class Counsel will be seeking an award of attorneys' fees of approximately $2,575,407. To date, Class Counsel's total current lodestar is $1,713,295 based on the hours expended at each attorney's customary hourly rates for this District. Peter Decl., ¶ 27; Wand Decl., ¶ 20. Class Counsel's lodestar will continue to increase based on the substantial time and effort they will need to expend through the settlement administration and approval process. Peter Decl., ¶ 28. Thus, the $2,575,407 in attorneys' fees that Class Counsel intends to seek reflects a modest multiplier of 1.50 or less on their current lodestar. The Ninth Circuit has approved multipliers in similar cases. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 n.6 (9th Cir. 2002) (affirming lode star cross-check that resulted in a multiplier of 3.65 and recognizing that multipliers of 1 to 4 are commonly found to be appropriate in common fund cases). This Court has also approved similar multipliers. *See*, *e.g.*, *Gergetz v. Telenav, Inc.*, No. 16-CV-04261-BLF, 2018 WL 4691169, at *7 (N.D. Cal. Sept. 27, 2018) (Freeman, J.) (approving 2.625 multiplier in consumer class action settlement).

At least 35 days prior to the deadline by which Class members must submit claims, requests for exclusions, or objections, Plaintiffs will file a fee application that will include detailed briefing regarding the facts and law in support of the appropriateness of their request for attorneys' fees and costs. Settlement Agreement, ¶¶ 35, 48, 60. This will afford Class Members a full opportunity to consider this issue before deciding how to proceed under the Settlement. *See In re Mercury*

15

*Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993 (9th Cir. 2010); *see also* Settlement Guidelines, ¶ 9 (advising that class members should have at least 35 days after fee application is filed to opt out or object).

6.    There Are No Supplemental Agreements

Rule 23(e)(2)(C)(iv) and 23(e)(3) require identification of all agreements. There are no agreements between Plaintiffs and CBA other than this Settlement Agreement. Peter Decl., ¶ 30.

**D.    Settlement Class Members Are Treated Equitably Under The Settlement**

The Court must also consider whether "the [settlement] proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). This factor is intended to ensure that a proposed settlement does not include "inequitable treatment of some Class Members vis-a-vis others." Fed. R. Civ. P. 23 Advisory Comm. Note to 2018 Amendment. Here, the Settlement Agreement provides equal relief to all Class Members, as each Class Member will be eligible to recover the same relief. The injunctive relief also equally benefits each member of the Settlement Class.

The Settlement does provide class representative service awards to Plaintiffs in an amount of up to $5,000 each. Settlement Agreement, ¶ 112. But this modest payment is for the extensive risk and services undertaken by Plaintiffs, as well as the substantial benefit conferred on the Class as a result of Plaintiffs' efforts. Peter Decl., ¶ 29. As will be detailed further in the forthcoming Fee Application, Plaintiffs have been actively involved in all material aspects of this case. *Id.* The Ninth Circuit has also recognized that service awards to named plaintiffs in a class action are permissible and do not render a settlement unfair or unreasonable. *See Rodriguez v. West Publ'g Corp.*, 563 F. 3d 948, 958-69 (9th Cir. 2009) (finding that the payment of a service award is "fairly typical in class action[s][.]"). "Many courts in this Circuit have held that a $5,000 service award is 'presumptively reasonable.'" *Terry v. Hoovestol, Inc.*, No. 16-CV-05183-JST, 2019 WL 2061105, at *7 (N.D. Cal. May 9, 2019) (citing cases).

//

//

//

**E.     Additional Ninth Circuit Factors Favor Approval**

      1.     <u>Class Counsels' Experience And Views</u>[10]

Although not articulated as a separate factor in Rule 23(e), in deciding whether to approve a proposed settlement of a class action, the Court should consider the experience and views of counsel. *Churchill Vill.*, 361 F.3d at 575. Here, Class Counsel are experienced in litigating consumer class actions, and have a nuanced understanding of the legal and factual issues involved in this case. Class Counsel fully endorse the Settlement as fair, adequate, and reasonable. Peter Decl. ¶ 23; Wand Decl., ¶ 3. The fact that qualified and well-informed counsel endorse the settlement as being fair, reasonable, and adequate weighs in favor of preliminarily approval. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) ("The recommendations of plaintiffs' counsel should be given a presumption of reasonableness."); *Moyle v. Liberty Mut. Ret. Benefit Plan*, No. 10CV2179-GPC (MDD), 2018 WL 1141499, at *6 (S.D. Cal. Mar. 2, 2018) (because voluntary settlements are highly favored by the law, courts should be deferential to the good faith negotiations of experienced counsel whenever possible).

**V.     <u>THE CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES</u>**

The proposed Settlement Class should be certified because the requirements of Rule 23(a) and Rule 23(b)(3) are satisfied, as explained below. CBA does not oppose certification of the Settlement Class for settlement purposes. Settlement Agreement, ¶¶ 118-19. CBA takes no position on the availability or advisability of class certification outside the context of this settlement, and does not concede that the requirements of Rule 23(a) and (b)(3) could be met in any other context.

**A.     The Court Can Certify A Settlement Class That Is Broader Than The Certified California Litigation Classes**

The Court can amend or alter the class definition at any time before a decision on the merits. *See* Fed. R. Civ. P. 23(c)(1)(C); *see also Vizcaino v. United States Dist. Crt. for W. Dist. Wash.*, 173 F.3d 713, 721 (9th Cir. 1999).

---

[10] The *Churchill* Factors also include the presence of a governmental participant and the reaction of the class to the settlement. These factors are not applicable at this stage, but can and will be addressed at final approval.

The Court has already certified two California classes:

<u>Six-Pack Class</u>

All persons who purchased any six-pack bottles of the Kona Beers in California at any time beginning four (4) years prior to the filing of this action on February 28, 2017 until the present ("Class Period").

<u>Twelve-Pack Class</u>

All persons who purchased any twelve-pack bottles of the Kona Beers in California at any time beginning four (4) years prior to the filing of this action on February 28, 2017 until the present ("Class Period").

ECF No. 94 at 5.

The "Kona Beers" included in the foregoing class definitions were the following eight products: Longboard Island Lager, Hanalei IPA, Castaway IPA, Big Wave Golden Ale, Lemongrass Luau, Wailua Wheat, Fire Rock Pale Ale, and Pipeline Porter. *Id.*

The proposed nationwide Settlement Class is broader than the certified California litigation classes in the following three respects: (1) it includes a nationwide class of consumers (as opposed to a California class of consumers); (2) it includes the following additional product varieties within the definition of Kona Beers: Lavaman Red Ale, Koko Brown Ale, Kua Bay IPA, Gold Cliff IPA, Kanaha Blonde Ale, Liquid Aloha Variety Pack, Island Hopper Variety Pack, Happy Mahalo Variety Pack, Wave Rider Tandem Pack; and (3) it includes 4-packs and 24-packs of Kona Beers (as opposed to just 6-packs and 12-packs).

Here, certifying a proposed Settlement Class including the additional Kona Beer varieties is appropriate because the representations with a disclaimer challenged by Plaintiffs at class certification are on the packaging of 4-packs, 6-packs, 12-packs, and 24-packs of all the Kona Beers, including the additional Kona Beer varieties.  Peter Decl. at ¶ 16; *see also* Settlement Guidelines, ¶ 1(b).  Furthermore, the Settlement provides substantial benefits to all Settlement Class Members equally, as the monetary compensation afforded to California Class Members will be the same as the monetary compensation afforded to Class Members in all other states. Similarly, the injunctive

18

relief will equally benefit all Class Members nationwide because the packaging for all Kona Beers sold nationwide will be modified in the same manner under the Settlement.[11]

Moreover, the Court can certify a settlement class that is broader than a previously certified litigation class. Courts routinely alter or expand previously-certified classes for purposes of certifying a settlement class. *See*, *e.g.*, *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 320 (C.D. Cal. 2016) (adding additional time period and removing exclusion for class members who used coupons to previously certified class definition for purposes of settlement); *In re TRS Recovery Servs., Inc. & Telecheck Servs., Inc., Fair Debt Collection Practices Act (FDCPA) Litig.*, Civ. No. 2:13-MD-2426-DBH, 2016 WL 543137, at *2 (D. Me. Feb. 10, 2016) (certifying a settlement class that has been "merged and expanded by agreement" to cover not only the previously certified class of Maine residents, but also residents nationwide); *Hahn v. Massage Envy Franchising LLC*, No. 3:12-cv-00153-DMS-BGS, 2015 WL 2164981, at *1 (S.D. Cal. Mar. 6, 2015) (granting preliminary approval of class action settlement that expanded the certified class to encompass former and current members of Defendant's clinics or spas nationwide, rather than only former members in California).

Accordingly, Plaintiffs respectfully request that the Court modify its September 25, 2018 Class Certification Order and certify the proposed nationwide Settlement Class, defined in Section III.A above.

**B.     The Claims To Be Released Are Not Broader Than The Claims That Would Be Released Under the Previously Certified California Litigation Classes**

The Court should also consider any differences between the claims to be released and the claims certified for class treatment and an explanation as to why the differences are appropriate in the instant case.  Settlement Guidelines, ¶ 1(d).  Here, other than the broader Settlement Class definition described above, the legal claims being released are not broader than a res judicata release that would be obtained after trial. It releases only claims that were or could have been asserted regarding the advertising of the geographic origin of the Kona Beers – the very issue in suit.  *See*

---

[11] The appropriateness of certifying the proposed nationwide Settlement Class is discussed in more detail in Section V.D below in the context of the predominance requirement of Rule 23(b)(3).

1  *Allied Fire Prot. v. Diede Constr., Inc.*, 127 Cal. App. 4th 150, 155 (2005) ("Res judicata serves as

2  a bar to all causes of action that were litigated or that could have been litigated in the first action.");

3  *see also In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 327 (N.D. Cal. 2018) *appeals*

4  *dismissed voluntarily*, 18-16826, 2018 WL 7858371, (9th Cir. Oct. 17, 2018) 18-16866, 2018 WL

5  7890391 (9th Cir. Oct. 15, 2018) ("the Ninth Circuit allows federal courts to release not only those

6  claims alleged in the complaint, but also claims 'based on the identical factual predicate as that

7  underlying the claims in the settled class action.'") (quoting *Hesse v. Sprint Corp.*, 598 F.3d 581,

8  590 (9th Cir. 2010)).  Claims relating to "alleged bodily injuries" are specifically excluded from the

9  release.  Settlement Agreement, ¶ 66.  In short, the release is limited to the claims at issue in this

10  case and is appropriate.

11       **C.       The Requirements Of Rule 23(a) Are Satisfied**

12       When presented with a proposed settlement, the Court must ascertain whether the proposed

13  settlement class satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.  *See*

14  *Hanlon*, 150 F.3d at 1019-22.  Rule 23(a) enumerates four prerequisites for class certification: (1)

15  numerosity; (2) commonality; (3) typicality; and (4) adequacy.  Fed. R. Civ. P. 23(a).

16       While the propriety of certification of the nationwide Settlement Class should not be

17  presumed based on the Court's earlier certification of the California classes, because CBA has

18  engaged in uniform challenged conduct in all states nationwide, the Court's class certification order

19  should nevertheless guide the analysis of the Rule 23(a) and (b)(3) requirements here. As the Court

20  recognized in its Class Certification Order, the conduct challenged on the Kona Beer packaging is

21  "consistent on a state-by-state basis, including on the packages sold in California."  ECF No. 94 at

22  3 (citing deposition transcript of Nick Mallory at 129:20-23; 154:20-23); *see also Kumar v. Salov*

23  *N. Am. Corp.*, No. 14-CV-2411-YGR, 2017 WL 2902898, at *4 (N.D. Cal. July 7, 2017), *aff'd*, 737

24  F. App'x 341 (9th Cir. 2018), *and appeal dismissed*, No. 17-16621, 2017 WL 5502713 (9th Cir.

25  Sept. 21, 2017) ("Here, the settlement agreement was negotiated after the Court heard and decided

26  the class certification motion. The Court undertook a thorough analysis of the evidence and claims

27  in the context of the class certification motion. The nature of the claims and class certification factors

28

20

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT; CASE NO. 17-CV-01027-BLF

does not differ significantly as between the California Class certified and the Nationwide Class in the settlement.").

### 1.    The Numerosity Requirement Is Satisfied

A class must be so numerous that joinder of all members individually is "impracticable." Fed. R. Civ. P. 23(a)(1).  The Court has already found that the certified California classes satisfy the numerosity requirement.  ECF No. 94 at 8.  The nationwide class consists of approximately 7,800,000 Class Members.  Green Decl., ¶ 11.  Thus, joinder impracticable, and numerosity is satisfied for the nationwide Settlement Class.  *See Jordan v. Cty. of L.A.*, 669 F.2d 1311, 1319-20 (9th Cir. 1982), *rev'd on other grounds*, 713 F.2d 503 (9th Cir. 1983).

### 2.    The Commonality Requirement Is Satisfied

Rule 23(a)(2) only requires that there be at least one issue of law or fact common to the class. "[C]ommonality only requires a single significant question of law or fact." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012) (citing *Wal-Mart Stores, Inc. v. Dukes, et al.*, 564 U.S. 338, 358 (2011)).  As the Court previously found, the commonality requirement is satisfied because all Class Members were exposed to the same challenged misrepresentations on the packaging of Kona Beers, raising the common question of whether the packaging would mislead a reasonable consumer.  ECF No. 94 at 8-9.  If this case was to proceed to trial, this same question of law and fact can be resolved in one fell swoop. Thus, the commonality requirement is satisfied.

### 3.    The Typicality Requirement Is Satisfied

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class[.]"  Fed. R. Civ. P. 23(a)(3).  "Typicality does not mean that the claims of the class representative[s] must be identical or substantially identical to those of the absent class members."  *Staton*, 327 F.3d at 957 (internal quotation mark omitted).  Rather, they only need to be "reasonably co-extensive with those of absent class members[.]"  *Hanlon*, 150 F.3d at 1020.  Again, the Court has already determined that the typicality requirement is satisfied as to the California litigation classes and the same holds true for the proposed Settlement Class. The typicality requirement is satisfied here because "Plaintiffs' claims and those of the proposed class members arise out of CBA's allegedly false representations on its packaging that Kona Beers are

21

brewed in Hawaii. Plaintiffs have demonstrated that their claims are representative of the claims of the class." ECF No. 94 at 10.  Moreover, as class representatives, Plaintiffs are the only class members that must prove actual reliance, and Plaintiffs have demonstrated that they relied on the challenged representations on the packaging of the Kona Beers. *See id.* at 11.  In short, Plaintiffs share an injury with the Class that "is not unique to" them and which occurred out of the same "course of [deceptive] conduct[.]" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011).  Thus, the typicality requirement is met.

### 4.   The Adequacy Requirement Is Satisfied

A class representative must be able to "fairly and adequately" protect the interests of all members in the class. Fed. R. Civ. P. 23(a)(4). Adequacy involves analysis of two inquiries: (1) whether the named plaintiff and his or her counsel have any conflicts of interest with other class members and (2) whether the named plaintiff and his or her counsel will act vigorously on behalf of the class.  *Calvert v. Red Robin Int'l, Inc.*, No. C 11–03026, 2012 WL 1668980, at *2 (N.D. Cal. May 11, 2012) (citing *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)). Again, the Court has already determined that the adequacy requirement is satisfied as to the certified California litigation classes. ECF No. 94 at 12-13.  Here, Plaintiffs have the same types of interests and have suffered the same types of injury as all other Class members. There is also no conflict between Plaintiffs and the Class and Plaintiffs are prepared to represent the interests of the Class throughout the litigation.  Zimmer Declaration, ECF No. 79-18, ¶¶ 5-6, Broomfield Declaration, ECF No. 79-19, ¶¶ 6-7.  In addition, Plaintiffs have provided significant, valuable assistance in the prosecution of this matter, and helped to bring about the Settlement now before this Court.  Peter Decl., ¶ 29.  Class Counsel is also "adequate" because they have extensive experience in class action litigation, have diligently litigated this case, and will continue to do so through the settlement approval process.  Peter Decl., ¶¶ 31-33, **Ex. G**; Wand Decl., ¶¶ 7-18.  Accordingly, the adequacy requirement is satisfied.

### D.   The Requirements Of Rule 23(b)(3) Are Satisfied

"To qualify for certification under [Rule 23(b)(3)], a class must satisfy two conditions in addition to the Rule 23(a) prerequisites: common questions must 'predominate over any questions

22

affecting only individual members,' and class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy.'"   *Hanlon*, 150 F.3d at 1022 (quoting Fed. R. Civ. P. 23(b)(3)).  Both conditions are met here.

### 1.   Common Questions Predominate Over Individual Issues

Plaintiffs assert claims for violations of the FAL, CLRA, and UCL and common law claims for fraud, intentional misrepresentation, negligent misrepresentation, and unjust enrichment. The central and predominant question as to all of Plaintiffs' claims is whether CBA's packaging was materially misleading and whether all consumers in the class were exposed to that packaging (thus showing class-wide reliance). This determination is not made with regard to each class member, but under a single, objective, reasonable consumer standard.  *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008).  "This objective test renders claims under the UCL, FAL, and CLRA ideal for class certification because they will not require the court to investigate class members' individual interaction with the product.'"   *Tait v. BSH Home Appliances Corp.*, 289 F.R.D 466, 480 (C.D. Cal. 2012).  Moreover, as the Court has already found in certifying the California litigation classes, reliance, materiality, and damages can be proven on a class-wide basis.  ECF No. 94.  More specifically, the Court determined that, based on evidence submitted in connection with Plaintiffs' motion for class certification, materiality and therefore reliance "created by uniform exposure to the allegedly misleading statements" satisfies the predominance requirement as to Plaintiffs' FAL, CLRA, and UCL claims.  *Id.* at 16-21.  For largely the same reasons, the Court found that the predominance requirement was satisfied as to Plaintiffs' common law fraud, misrepresentation, and unjust enrichment claims.  *Id.* at 21-23.  The Court also concluded that Plaintiffs' damages model is tethered to their theory of liability and could be used prove damages on a class-wide basis. These analyses and conclusions remain true for the proposed nationwide class, as the same evidence in support of certification of the California litigation classes could be used to prove materiality, reliance, and damages for the nationwide Settlement Class. As discussed above, the same conduct challenged on the Kona Beer packaging is consistent on a state-by-state basis, ECF No. 79-3 at 154:4-23, and Plaintiffs' expert has already calculated a nationwide 12.7% price premium attributable to the challenged conduct.  ECF No. 79-14 ¶ 144.

23

a.      **Any Minor Variation In State Laws Does Not Preclude Certification Of The Nationwide Settlement Class**

The predominance requirement is satisfied for the nationwide Settlement Class because, regardless of the state, Plaintiffs allege that the challenged representations on the packaging – to which all Settlement Class members have been exposed – are material and deceptive. Accordingly, Plaintiffs' claims present uniform issues of material fact for Class Members nationwide.

This remains true despite *In re Hyundai & Kia Fuel Economy Litigation*, 881 F.3d 679, 702 (9th Cir. 2018) ("*Hyundai*"), *reh'g en banc granted*, 897 F.3d 1003 (9th Cir. 2018), where a Ninth Circuit panel rejected a nationwide settlement.[12] As an initial matter, the panel's decision in *Hyundai* has been vacated pending en banc review. 897 F.3d at1007. As such, *Hyundai* may no longer be cited as precedent.  *Id.* ("Upon the vote of a majority of nonrecused active judges, it is ordered that these cases be reheard en banc pursuant to Federal Rule of Appellate Procedure 35(a) and Circuit Rule 35-3. The three-judge panel disposition in these cases shall not be cited as precedent by or to any court of the Ninth Circuit."). In any event, the panel's decision in *Hyundai* casts no doubt on the viability of the proposed nationwide Settlement Class here. *Hyundai* does not stand for the proposition that a nationwide class can never be certified. Rather, as the panel explained in its now vacated decision, the district court must consider "whether the consumer-protection laws of the affected States vary in *material* ways[.]"  *Id.* at 702 (internal quotation marks omitted) (emphasis added).  This case presents none of the problems addressed in *Hyundai*.

First, unlike in *Hyundai*, where the court certified the nationwide settlement class based on application of California law to all states nationwide, despite previously concluding to the contrary, *Hyundai*, 881 F.3d at 700, this Court never issued any ruling indicating that a nationwide class was unlikely here. Rather, the Court certified California litigation classes, and as set forth above, the challenged conduct on the Kona Beer packaging is the same in every state. Moreover, Plaintiffs' expert has already calculated a nationwide 12.7% price premium attributable to the challenged conduct. Thus, issues of materiality, reliance, and damages can be proven regardless of the state.

---

[12] The case was argued and submitted September 27, 2018 but no opinion has been issued yet.

Second, unlike in *Hyundai*, Plaintiffs are not seeking to apply California law to class members in all states, but to apply the unjust enrichment laws of each state to the residents of that state. This is possible because the unjust enrichment laws of each state are not materially different. Indeed, several courts have recognized that the unjust enrichment laws across all 50 states are materially similar for the purposes of Rule 23 predominance analysis. *See, e.g.*, *In re Abbott Labs. Norvir Anti-Trust Litig.*, No. C 04-1511 CW, 2007 WL 1689899, at *9 (N.D. Cal. June 11, 2007) (certifying nationwide class and holding that the "variations among some States' unjust enrichment laws do not significantly alter the central issue or the manner of proof"); *In re Checking Account Overdraft Litig.*, 307 F.R.D. 630, 647 (S.D. Fla. 2015) ("There is general agreement among courts that the '"minor variations in the elements of unjust enrichment under the laws of the various states . . . are not material and do not create an actual conflict."'").  To the extent there are any immaterial differences in the unjust enrichment laws between the states, the Ninth Circuit has made clear that "'[v]ariations in state law do not necessarily preclude a [nationwide] 23(b)(3) action' because sometimes 'the idiosyncratic differences between state consumer protection laws are not sufficiently substantive to predominate over the shared claims.'"  *Hanlon*, 150 F.3d at 1022-23. Similarly, in *Koller v. Med Foods, Inc.*, Case No. 14-cv- 2400-RS (N.D. Cal.) (ECF No. 144) the parties sought approval of a nationwide settlement after a California only class was certified. The plaintiffs asserted that due to material similarity in the unjust enrichment laws of all 50 states, the predominance requirement for class certification in the context of settlement approval was satisfied.  *Id.* at 19-23. The *Koller* court granted final approval, overruling an objection, in this regard.  *Koller*, ECF No. 169 at 11.

In accord with this principle, in *In Re Anthem, Inc. Data Breach Litigation*, the court held that predominance was satisfied with respect to a nationwide settlement class notwithstanding *Hyundai*. There, the court approved nationwide settlement despite *Hyundai* because although "[i]t is true that the state consumer protection statutes at issue here are not identical . . . the Court concludes that this is a case in which 'the idiosyncratic differences between state consumer protection laws are not sufficiently substantive to predominate over the shared claims.'" *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 313 (N.D. Cal. 2018), *appeal dismissed sub nom.*

25

*In re Anthem, Inc., Customer Data Sec. Breach Litig.*, No. 18-16866, 2018 WL 7890391 (9th Cir. Oct. 15, 2018) (citation omitted). The *In Re Anthem* court further held that the case revolved around a common issue across the country – whether Anthem used unreasonable data security – which could be resolved using common evidence. *Id.*

Notably, this Court has also certified nationwide settlement classes post *Hyundai*. For example, in *Sheikh v. Tesla, Inc*., No. 17-CV-02193-BLF, 2018 WL 5794532, at *4 (N.D. Cal. Nov. 2, 2018), this Court certified a nationwide settlement class based on a "common question in this case—whether Tesla's conduct with respect to its representations and delivery of the features violated consumer protection statutes, false advertising laws . . . "[13] The same is true here. This litigation involves one common issue: whether the packaging of Kona Beer employed uniformly by CBA nationwide would likely deceive a reasonable consumer. The Court can apply the unjust enrichment laws of all fifty states as they are materially similar. And any immaterial difference in the unjust enrichment laws of the states is dwarfed by common issue regarding consumer deception, materiality, and damages at the core of this litigation. Therefore, the predominance element is met for the nationwide settlement class.

2.    A Class Is The Superior Method To Resolve This Controversy

A class action is superior to other methods of litigation where, as here, "classwide litigation of common issues will reduce litigation costs and promote greater efficiency" and "no realistic alternative [to classwide treatment] exists." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996). In considering whether a class action is superior, the Court must focus on whether "efficiency and economy" would be advanced by class treatment. *See Zinser v. Accufix*

---

[13] This Court also preliminarily approved a nationwide settlement class in *In Re Nexus 6P Products Liability Litigation*, No. 5:17-cv-02185-BLF (N.D. Cal. May 3, 2019) (ECF No. 204). Several other courts post *Hyundai* have upheld nationwide class settlements. *See, e.g.*, *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig*, 895 F.3d 597, 609 n.17 (9th Cir. 2018), *petition for cert. docketed* (approving nationwide settlement where "predominance analysis under Rule 23(b)(3), [was] sufficient under *In re Hyundai*"); *In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 17-md-02777, 2019 WL 536661 at *7 (N.D. Cal. Feb. 11, 2019) (preliminarily approving nationwide class settlement despite *Hyundai*, because "while there are some variations in state law, Plaintiffs have made at least a fair argument . . . that such variations are not so extensive or complicated that they defeat predominance").

*Research Inst., Inc.*, 253 F.3d. 1180, 1190 (9th Cir. 2001). Here, concentrating the adjudication of claims into a single proceeding is highly desirable because individual claims could only be brought by claimants unlikely to be able to afford to pursue them or who lack sufficient knowledge of their rights. Even if those individuals could bring separate lawsuits, having nearly identical lawsuits filed by hundreds if not thousands of individuals would be wasteful and inefficient. Indeed, the Court has already made this finding. ECF No. 94 at 35 ("The Court finds a class action here would be the superior method of adjudication. The alternative to class action would surely mean an abandonment of claims by most class members since the amount of individual recovery is so small—just a few dollars per pack purchased.") (citation omitted). Accordingly, certification of the Settlement Class is superior to any other method of resolution, as it will promote economy, expediency, and efficiency.

## VI.   THE PROPOSED CLASS NOTICE PLAN SHOULD BE APPROVED

### A.   The Settlement Administrator And Settlement Administration Costs

Set forth below is the information describing the proposed settlement administrator as required under the Settlement Guidelines, ¶ 2. The Parties have selected CPT to provide Class notice and otherwise administer the Settlement. Before agreeing on CPT, the parties engaged in a months-long process of considering bids from four reputable administrators. Peter Decl., ¶ 34. This was an iterative process where counsel engaged in numerous back and forth discussions with these administrators, which involved multiple revisions of bids based on factors such as pricing and scope of notice and the administration plan. *Id.* Notably, each of these administrators provided similar competing bids and their notice plans overlapped substantially. *Id.* Class Counsel ultimately selected CPT because they are confident in CPT's experience and expertise in administrating class action settlements. *Id.* Class Counsel is also confident that CPT's proposed notice and administration plan fully complies with due process, Rule 23(e), relevant case law, and the Settlement Guidance. *Id.* Moreover, Class Counsel believed that CPT's bid provided the most effective notice for the lowest cost. *Id.*

Over the past two years, Class Counsel has used CPT to administer one class settlement. Peter Decl. ¶ 35; Wand Decl., ¶ 4. Thus, while Class Counsel has sufficient information to be

27

confident in CPT's qualifications, there is no repeated or ongoing relationship between CPT and Class Counsel.  Wand Decl., ¶¶ 4-5.  Moreover, none of the parties have a financial interest in CPT or otherwise have a relationship with CPT that could create a conflict of interest.   Settlement Agreement, ¶ 71.

It is estimated that CPT's costs to provide notice to the Class and administer settlement payments is approximately $395,000.  Green Decl., ¶ 32.  Given the robust notice plan proposed by CPT, explained in more detail below, these costs are relatively small in comparison to the value of the Settlement and are well justified to ensure that adequate notice is given to the Class and that payments are properly distributed. In any event, CBA is responsible for paying all Settlement Administration costs separate and apart from any amounts paid to the Settlement Class. Settlement Agreement, ¶ 72.

**B.       The Method Of Providing Notice To The Class**

Adequate notice is critical to court approval of a class settlement under Rule 23(e).  *Hanlon*, 150 F.3d at 1025; Settlement Guidelines, ¶ 3.

The proposed Notice Plan will consist of four components; (1) direct email notice, (2) print publication notice, (3) internet and social media notice, and (4) notice via the settlement website. Together, this Notice Plan is reasonably calculated to reach approximately 90 percent of the Class and will thus adequately apprise the Settlement Class Members of this Settlement and their rights under the Settlement.   Green Decl. at ¶¶ 13-14.   In short, the proposed Notice Plan is the best practicable method of providing notice under the circumstances. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) ("The notice must be the best practicable, reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.") (internal quotation marks omitted).

1.       Settlement Website Notice: No later than five calendar days before Internet Publication Notice, CPT will create an interactive Settlement Website, which will include, *inter alia*, links to the Long Form Notice, the Summary Notice, the Claim Form, the Settlement Agreement and Exhibits, relevant filings and orders, and information relating to filing a claim, objecting to the Settlement, opting out of the Settlement, other deadlines relating to the Settlement,

28

and instructions on how to access the case docket via PACER or in person at any of the Court's locations.  Settlement Agreement, ¶ 93(a).

2. <u>Toll-Free Telephone Support</u>: No later than five calendar days before Internet Publication Notice, CPT will establish a toll-free telephone support system to provide Settlement Class Members with (a) general information about the Action and Settlement; (b) frequently asked questions and answers; and (c) information relating to filing a claim, objecting to the Settlement, opting out of the Settlement, and other deadlines relating to the Settlement. *Id.*, ¶ 93(b).

3. <u>Direct Notice</u>: No later than twenty-five calendar days after Preliminary Approval, CPT will cause the Summary Notice to be sent to all Class Members for whom addresses have been provided. As CBA is a wholesaler and does not sell directly to consumers, it as a general matter does have such information for Class members. However, CBA does have such information for approximately 795 potential Class members, each of whom will receive direct notice via U.S. mail.  *Id.*, ¶ 93(c); Green Decl., ¶ 16.

4. <u>Print Publication Notice</u>: On the first available publication date after Preliminary Approval, CPT will publish the Summary Notice in print in National Geographic Magazine for a period of one month.  *Id.*, ¶ 93(d).  National Geographic Magazine is a national magazine with an estimated circulation of 2,648,853 individuals.  Green Decl., ¶ 19.  Publication in National Geographic Magazine is expected to reach 16.42% of the Target Audience, and based on the market research and class definition, National Geographic had the highest circulation and best reach for the target audience for the lowest cost.  *Id.*  Assuming the Court grants preliminary approval by on June 13, 2019, the Summary Notice can be published in the September edition of National Geographic.  *Id.*, ¶ 23.  Further, on the first available publication date after Preliminary Approval,  CPT will publish the Summary Notice in print in the San Jose Mercury News Newspaper one day per week for a period of four consecutive weeks in compliance with the CLRA, Cal. Civ. Code § 1781(d) and (e). Assuming the Court grants preliminary approval on June 13, 2019, the Summary Notice can be published in the San Jose Mercury News beginning on July 7, 2019.  *Id.*

5. <u>Internet and Social Media Publication Notice</u>: No later than twenty-five calendar days of Preliminary Approval, CPT will issue an informational press release to PR

29

Newswire of the Settlement.  The press release will include the Settlement Website address so that Settlement Class Members can easily access information about the Action and Settlement. The Settlement Administrator will also purchase internet and social media banner notice ads that will allow access to the Settlement Website through an embedded hyperlink contained within the banner notice ad. These banner ads will continue for a period of ten (10) weeks from the date of first publication.  Settlement Agreement, ¶ 93(e).

6.   <u>Total Reach</u>: The Notice Plan is designed to create roughly 40,000,000 impressions nationwide through internet banner and social media advertisements for a reach of approximately 75%.  Green Decl., ¶¶ 13, 18.  Print publication notice will reach approximately 16% of the Class for a combined reach through print, internet and social media of approximately 90%. Green Decl., ¶¶ 19, 33.  The Federal Judicial Center notes that a notice plan is reasonable if it reaches at least 70% of the class.  *See* FED. JUDICIAL CTR., Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide 3 (2010).  Thus, a 90% reach is clearly sufficient.

**C.   Class Notice Documents**

In the Ninth Circuit, notice is satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."  *Churchill Vill.*, 361 F.3d at 575.  The Class Notice documents consist of a Summary Notice and a Long Form Notice.  Settlement Agreement, Exs. 2-3, respectively.  These Notice Documents adequately apprise Class Members of the material terms of this Settlement and will enable them to make an informed decision about how they wish to proceed under the Settlement. They are also written in simple, straightforward language in full compliance with the Settlement Guidelines, ¶ 3.

The Summary Notice includes a basic description of the case and a summary of the process and deadlines for submitting claims, requests for exclusion, and objections.  *Id.*, ¶ 76, Ex. 2.  It also informs Class Members about how they can obtain additional information by providing them with the URL address for the Settlement Website, a toll-free number they can call, and information regarding how to access pertinent documents through PACER.  *Id.*

The Long Form Notice provides more detailed information about the Settlement, including: (1) basic background information about the lawsuit; (2) a description of the benefits provided by the

30

Settlement; (3) an explanation of how Class Members can obtain settlement benefits; (4) an explanation of how Class Members can exercise their right to request exclusion from or object to the settlement; (5) an explanation that any claims against CBA that could have been litigated in this action will be released if the Class Member does not request exclusion from the Settlement; (6) information regarding Class Counsel's forthcoming request for fees and expenses, Plaintiffs' service payments, and how Class Members may obtain a copy of the upcoming fee application (which, like all pertinent settlement documents, will be posted to a settlement website listed in the Notice); (7) instructions on how to access the case docket via PACER or in person at any of the court's locations; (8) the Final Approval hearing date (subject to change); (9) an explanation of eligibility for appearing at the Final Approval hearing; and (10) Class Counsel's contact information. *Id.* ¶ 54, Ex. 3.

### D. Submission Of Claim Forms And Estimated Claims Rate

#### 1. Submission of Claim Forms

Class members are required to submit a timely and valid Claim Form in order to receive payment under the Settlement. Settlement Agreement, ¶ 36, Ex. 1. The Claim Form is straight forward and concise. Aside from basic purchase information, the Claim Form must be signed in hard copy or electronically by the Settlement Class Member under penalty of perjury and bear an attestation by the Settlement Class Member that he/she purchased the Kona Beers during the Class Period, and that he/she was over 21 years old at the time of purchase(s). *Id.*, ¶ 82. Claim Forms, which can be found on the Settlement Website, can be submitted by mail or electronically via the Settlement Website, to the Settlement Administrator. *Id.* ¶ 81. Class Members shall have 90 days from the date that Internet banner notice ads are first published (Notice Date) to submit Claim Forms. *Id.*, ¶¶ 35, 57, 81. Class members who submit valid and timely Claim Forms will be paid by check or via electronic deposit, whichever option they prefer, consistent with Settlement Guidelines ¶ 3. *Id.*, ¶ 91.

#### 2. Estimated Claims Rate

Regarding paragraph 1(g) of the Settlement Guidelines, and based on its experience administering other class action settlements and its review of consumer survey data and research,

31

CPT estimates that there are approximately 7,800,000 Class members. Green Decl., ¶ 11. While it is impossible to state a precise claims rate at this juncture, CPT estimates a claims rate of between 1% - 7%. Green Decl., ¶ 29. This estimate is consistent with the experience of Class Counsel, who also believe an estimated claims rate of between 1% - 7% is likely here. Peter Decl., ¶ 12; Wand Decl., ¶¶ 18-19. Based on these estimates, Class Counsel anticipates that between 78,000 to 546,000 Claims will be submitted.  Given the comprehensive notice plan designed to reach approximately 90 percent of the Class, the anticipated claims number should not pose a barrier to preliminary approval of the Settlement. Regardless of the ultimate claims number, the alternative to the proposed Settlement is trial. Even if Plaintiffs prevailed at trial on all of their claims, some sort of similar claims procedure would be necessary to distribute the damages recovered. There is no reason to believe that the claims number after trial would be any higher than the claims number that will result from this Settlement, particularly in light of the comprehensive notice plan provided for under the Settlement.

       **E.**       **Objections And Exclusions**

              1.      <u>Objections</u>

       In compliance with the Settlement Guidelines, ¶ 5, the Long Form and Summary Notices inform Class Members of their right to object to the Settlement. The Objection must be signed by the Class Member and include: (a) information sufficient to identify and contact the objecting Class Member; (b) whether the person intends to appear the Final Approval Hearing; (c) whether the Objection applies only to the Settlement Class Member, to a specific subset of the Settlement Class, or to the entire Settlement Class; (d) the legal and factual arguments supporting the Objection; (e) verification that the person has standing as a Class member; and (f) a list of any other objections submitted by the Settlement Class Member, or his/her counsel, to any proposed class action settlements.  Settlement Agreement, ¶ 97.  Class Members must submit their written Objection within 90 days after the Notice Date (the "Objection/Exclusion Deadline").  Settlement Agreement, ¶ 61.  Class Members who fail to timely make Objections in the manner specified shall be deemed to have waived any objections and shall be foreclosed from making any objections (whether by appeal or otherwise) to the Settlement. *Id.* at ¶ 100.

2.     Exclusions

Class Members will have the opportunity to exclude themselves from the Settlement by submitting a written, signed request to the Settlement Administrator or by selection on the Settlement Website. Settlement, ¶¶ 69, 101-03. Class Members must submit their written Request for Exclusion within 90 days after the Notice Date (the "Objection/Exclusion Deadline"). Settlement Agreement, ¶ 69. Notice given to Class Members of the right to exclude is fully compliant with the Settlement Guidelines, ¶ 4.

## VII.   PROPOSED SETTLEMENT IMPLEMENTATION DATES

Assuming the Court grants preliminary approval on June 13, 2019, Plaintiffs propose (and CBA does not object to) the following settlement implementation dates:

| Event | Date |
| --- | --- |
| Notice Date | July 8, 2019 (or no later than 25 calendar days from preliminary approval) |
| Deadline to File Motion for Attorneys' Fees and Costs and Class Representative Service Awards | September 2, 2019 |
| Claims Deadline & Objection/Exclusion Deadline | October 7, 2019 |
| Deadline to File Motion for Final Approval | October 28, 2019 |
| Hearing on Motion for Final Approval | December 5, 2019 at 9:00 a.m. (or at the Court's convenience) |

## VIII.   CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant this Motion and preliminarily approve the Settlement.

DATED: May 23, 2019                    **FARUQI & FARUQI, LLP**

By:   */s/ Timothy J. Peter*

Timothy J. Peter
1617 John F. Kennedy Boulevard, Suite 1550
Philadelphia, PA 19103
Tel: (215) 277-5770

33

1

2
Fax: (215) 277-5771
Email:  tpeter@faruqilaw.com

3
Benjamin Heikali (SBN 307466)
Joshua Nassir (SBN 318344)

4
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024

5
Telephone: (424) 256-2884
Facsimile: (424) 256-2885

6
E-mail: bheikali@faruqilaw.com
            jnassir@faruqilaw.com

7

8
**THE WAND LAW FIRM, P.C.**
Aubry Wand

9
400 Corporate Pointe, Suite 300
Culver City, California 90230

10
Tel: 310-590-4503
Fax: 310-590-4596

11
E-mail: awand@wandlawfirm.com

12

13
*Attorneys for Plaintiffs and the Classes*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28