**FARUQI & FARUQI, LLP**
Benjamin Heikali (SBN 307466)
Joshua Nassir (SBN 318344)
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: (424) 256-2884
Facsimile: (424) 256-2885
E-mail: bheikali@faruqilaw.com
        jnassir@faruqilaw.com

**FARUQI & FARUQI, LLP**
Timothy J. Peter (admitted *pro hac vice*)
1617 JFK Boulevard, Suite 1550
Philadelphia, PA 19103
Telephone: (215) 277-5770
Facsimile: (215) 277-5771
E-mail: tpeter@faruqilaw.com

**THE WAND LAW FIRM, P.C.**
Aubry Wand (SBN 281207)
400 Corporate Pointe, Suite 300
Culver City, California 90230
Telephone: (310) 590-4503
Facsimile: (310) 590-4596
E-mail: awand@wandlawfirm.com

*Attorneys for Plaintiffs and the Classes*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| THEODORE BROOMFIELD, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>CRAFT BREW ALLIANCE, INC., *et al.*,<br><br>Defendants. | CASE NO.: 5:17-cv-01027-BLF<br><br>**DECLARATION OF TIMOTHY J. PETER IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date: June 13, 2019<br>Time: 1:30 p.m.<br>Courtroom: 3 – 5th Floor<br>Judge: Hon. Beth Labson Freeman |

I, Timothy J. Peter, hereby declare as follows:

1.     I am an attorney duly licensed to practice law and admitted to do so in the Commonwealth of Pennsylvania and the United States District Court for the Eastern District of Pennsylvania.  I have been admitted *pro hac vice* and am counsel of record for Plaintiffs Theodore Broomfield and Simone Zimmer ("Plaintiffs") as well as the Classes in the above captioned action. I am a partner at the law firm of Faruqi & Faruqi, LLP ("F&F").  I have personal knowledge of the facts stated herein and if called upon to testify to them, I would be competent to do so.

2.     I make this declaration in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement.

**Background**

3.     Before filing any complaint in this action, Class Counsel extensively investigated the claims in this Action.

4.     Specifically, Class Counsel's pre-suit investigation included, but was not limited to, the following:

      a.   Obtaining and reviewing the Kona Beers, including their labeling, packaging, and all other advertisements and promotions for them;

      b.   Obtaining and reviewing electronic images of CBA's website and other electronic marketing platforms;

      c.   Obtaining and reviewing relevant legal precedent regarding similar false and misleading representations on products, including other beer products;

      d.   Obtaining and reviewing relevant filings and applications made for the Kona Beers with the Alcohol and Tobacco Tax and Trade Bureau;

      e.   Obtaining and reviewing financial information regarding the Kona Beers and CBA;

      f.   Extensive legal research to evaluate the prospective merits and weaknesses of the case; and

      g.   Analysis of potential class-wide damages.

5.      After the Court granted in part and denied in part CBA's motion to dismiss, the Parties engaged in substantial fact and expert discovery, including, but not limited to, serving and responding to multiple rounds of interrogatories, document requests and requests for admission, reviewing tens of thousands of documents, retaining experts, and conducting depositions of key corporate marketing witnesses, the Plaintiffs, and the Parties' respective experts.

6.      Plaintiffs also moved for, and CBA opposed, certification of two California litigation classes. On September 25, 2018, the Court granted Plaintiffs' Motion for Class Certification. *See* ECF No. 94. On October 5, 2018, CBA moved for reconsideration of the Court's Order Granting Class Certification (ECF No. 97), which Plaintiffs opposed that same day (ECF No. 98). On October 22, 2019, CBA filed a Rule 23(f) petition for interlocutory appeal of the Court's Order Granting Class Certification, which Plaintiffs timely opposed. On February 1, 2019, the Ninth Circuit Court of Appeals denied CBA's Rule 23(f) petition. ECF No. 104. On February 15, 2019, CBA filed a Petition for Rehearing *en banc* of the Ninth Circuit's denial of CBA's Rule 23(f) petition.

### Mediation and Settlement

7.      On January 24, 2019, the Parties participated in a day-long mediation session with Bruce A. Edwards of JAMS in San Francisco, California. The Parties did not reach settlement during this mediation but continued to engage in settlement discussions outside of mediation. The parties also continued to exchange documents and information regarding their respective positions.

8.      On March 6, 2019, the Parties participated in a second mediation session with Mr. Edwards. The session lasted approximately 12 hours and the Parties were able to reach a settlement in principle at the conclusion of the mediation. The Parties negotiated Class Counsel's attorneys' fees and costs only after reaching agreement on the monetary and injunctive relief for the Class.

9.      In the subsequent weeks, the Parties continued to negotiate and finalize all terms of this Settlement Agreement, and executed the final form on May 23, 2019, a true and correct copy of which is attached as **Exhibit A** to this Declaration. For the Court's convenience, the Exhibits to the Settlement Agreement are set forth in the following chart:

| Exhibit | Description |
|---|---|
| 1 | Claim Form |
| 2 | Summary Notice |
| 3 | Long Form Notice |
| 4 | Proposed Preliminary Approval Order |
| 5 | Proposed Final Approval Order |
| 6 | Proposed Final Judgment |
| 7 | Mock-up of new Kona Beer packaging |

10.     Due to the amount and scope of discovery exchanged and taken, both before, during, and after the Parties began discussing settlement, Plaintiffs were well-apprised of the salient legal and factual issues before reaching the decision to settle this matter.

11.     In light of the proposed Settlement, the Parties have filed a request to stay all appellate proceedings, including CBA's Petition for Rehearing *en banc*.

12.     Based on my extensive experience litigating and resolving similar consumer class action cases, I estimate that between 78,000 and 546,000 will be submitted in connection with this Settlement. I draw this estimate from the following recent class settlements, *inter alia*: *Shalikar v. Asahi Beer USA, Inc.*, No. BC702360 (class-wide settlement in another beer origin case, in which my firm served as co-lead class counsel and class members submitted approximately 120,000 claims); *In re Scotts EZ Seed Litigation*, No. 12-cv-4727 (6.8% claims rate in class-wide settlement in which my firm served as co-lead class counsel); *Forcellati, et al. v. Hyland's, Inc., et al.*, No. 2:12-cv-01983 (129,066 timely claim forms submitted in class-wide consumer class action settlement in which my firm served as co-lead class counsel).  I have also read extensively about claims rate in consumer class action settlements and understand that the claims rates in consumer class actions range from 2% - 20%. *See, e.g., In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 468 n. 134 (C.D. Cal. 2014) ("Rust Consulting, a firm that provides class settlement administrative services, estimates that claims filing rates in consumer litigation range from two to twenty percent.").

13.     Given my estimate of the range of the number of potential claims that may be submitted in connection with this Settlement, the submission of more than 1 million claims – in conjunction with the fact that no proof of purchase is required – may suggest fraud. This is the primary the reasons why Class counsel agreed to giving CBA the option to terminate the Settlement if more than 1,000,000 claims were submitted.

14.     Based on the sales and pricing data produced in this Action, as well as the expert analysis of Stefan Boedeker conducted in support of class certification, Class Counsel was able to determine that the negotiated monetary recovery per Kona Beer product available to the Settlement Class (i.e., $1.25-$2.75) is more than the damages on a per product basis that Class members could have recovered at trial.

15.     I also believe that the injunctive relief agreed to as part of this Settlement – i.e. a conspicuous statement on all consumer-facing Kona Beer packaging listing each location where the Kona Beers are brewed – will mitigate any potential consumer confusion that the Kona Beers are brewed exclusively in Hawaii.

16.     The label representations challenged by Plaintiffs at class certification are on the packaging of 4-pack, 6-pack, 12-pack, and 24-packs of all the Kona Beers, including the additional Kona Beer varieties included in this Settlement.

## Comparable Settlements

17.     Attached hereto as **Exhibit B** is a true and correct copy of the Order Granting Preliminary Approval of the class-wide settlement in *Shalikar v. Asahi Beer USA, Inc.*, No. BC702360. *Shalikar*, a class action in which my firm also served as co-lead counsel, challenged the labeling of Asahi beer as being deceiving because the beers are brewed in Canada. The parties in *Shalikar* eventually reached a nationwide class settlement which received preliminary approval earlier this year and is now pending final approval. Given the status of the case, Class Counsel can report the following available information about the *Shalikar* settlement:

//

//

//

| Total Settlement Fund | N/A – claims made settlement |
|---|---|
| Total Number of Class Members | Unknown |
| Total Number of Class Members to Whom Notice Was Sent | Unknown, however reach was approximately 70% of nationwide class members |
| Method of Notice | 1. Publication Notice in *Car & Driver*, *ESPN*, and *Time* magazines.<br>2. Internet/social media banner advertisements.<br>3. Dedicated settlement website<br>4. Toll-free telephone support |
| Monetary Recovery | 1. $.10 - $2.00, depending on unit size of beer products purchased.<br>2. $10 maximum refund per settlement household. |
| Injunctive Relief | Defendant shall bold the term "Product of Canada" on the neck label of the beer product for a minimum of three years. |
| Number and Percentage of Claim Forms Submitted | Claims: 119,531 (as of May 23, 2019) Claims percentage: unknown |
| Average Recovery Per Claimant | To be determined |
| Amount Distrusted to *Cy Pres* | No *cy pres* |
| Settlement Notice and Administration Costs | Approximately $300,000 |
| Attorneys' Fees and Costs Awarded | To be determined – Class Counsel will seek no more than $765,000, inclusive of all fees, costs and expenses. |

18.     I believe this Settlement is comparable to the *Shalikar* settlement, as both class actions challenge the false advertising of beer products, the settlements are both claims-made settlements with similar monetary recovery per product and maximum recoveries per settlement household, and the settlements both provide for similar injunctive relief by way of changes to the labeling and/or packaging of the beer products.

19.     Attached hereto as **Exhibit C** is a true and correct copy of the Final Judgement and Order of Dismissal With Prejudice in *In re Scotts EZ Seed Litigation*, No. 12-cv-4727 (Dkt. No. 367), in which the United States District Court for the Southern District of New York approved of a nationwide class settlement. My firm served as co-lead class counsel in the *Scotts EZ Seed* action. *Scotts EZ Seed* is a class action in which plaintiffs challenged the "50% Thicker" claim on the label of defendant's grass-seed products. After six years of litigation, the parties in the *Scotts*

*EZ Seed* action reached a nationwide class settlement approved by the court with the following principle term:

| | |
|---|---|
| Total Settlement Fund | N/A – claims made settlement |
| Total Number of Class Members | Approximately 900,000 |
| Total Number of Class Members to Whom Notice Was Sent | Unknown, however reach was approximately 90% of nationwide class members. |
| Method of Notice | 1. Email notice to all class members for whom email addresses were known.<br>2. Post card notice via regular mail to all class members for whom the Parties only had a mailing address for.<br>3. Internet/social media banner advertisements<br>4. Dedicated settlement website<br>5. Toll-free telephone support |
| Monetary Recovery | 6. With Proof of Purchase: $15 per product, up to 6 products.<br>7. Without Proof of Purchase: $15 per product, up to 3 products. |
| Injunctive Relief | None |
| Number and Percentage of Claim Forms Submitted | Claims: 61,944 (as of December 4, 2018) Claims percentage: ~ 6.8% |
| Average Recovery Per Claimant | $42 |
| Amount Distrusted to *Cy Pres* | No *cy pres* |
| Settlement Notice and Administration Costs | Approximately $425,000 |
| Attorneys' Fees and Costs Awarded | $9,700,000.00 |

20. Attached hereto as **Exhibit D** is a true and correct copy of the Order Overruling Objections in *Marty v. Anheuser-Busch Companies, LLC*, No. 13-cv-23656, Dkt. No. 171. In *Marty*, a class action challenging the origin of Beck's beer, the court approved a class-wide settlement which included (1) monetary benefits ranging from $.10 to $1.75 per unit depending on which beer size was purchased; and (2) injunctive relief in the form of label changes inform consumers where Beck's beer is brewed.

21. The plaintiffs' expert in *Marty* had calculated that the negotiated monetary benefit was approximately 33% to 50% of the recovery that plaintiffs could have obtained at trial.

Attached hereto as **Exhibit E** is Plaintiffs' Motion for Final Approval of Class Action Settlement in the *Marty* action (Dkt. No. 157) (*see* p. 12 for relevant portion).

22.     Attached hereto as **Exhibit F** is a true and correct copy of the Final Order and Judgment in *Suarez v. Anheuser-Busch Companies, LLC*, No. 13-033620-CA-01.

## Endorsement of the Settlement

23.     Class Counsel fully endorses the Settlement as fair, adequate, and reasonable.

24.     In considering whether to enter into the Settlement, Plaintiffs and Class Counsel considered the significant risks of proceeding with the litigation, including the risks of maintaining class certification, establishing liability, proving damages at trial, and the likely duration of post-trial motions and appeals. Even if Plaintiffs prevailed at trial, and any appeals were resolved in Plaintiffs' favor, payment to Class members would likely be delayed for several years.

25.     When the risks of further litigation, the uncertainties involved in maintaining class certification, the burdens of proof necessary to establish liability, the probability of appeal of a favorable judgment, and the likely delay in any payments to the Class, are all balanced against the fact that Settlement Class Members will be receiving more monetary recovery on a per unit basis than they could have received at trial, it is clear that the Settlement amount is fair, adequate, and reasonable.

26.     As part of the Settlement, Class Counsel will request the payment of attorneys' fees and expenses in the amount of $2,900,000, which is to be paid by CBA separate and apart from the money made available to the Class for purposes of payments of Claims and notice and administration expenses.

27.     Class Counsel believes that the $2,900,000 in fees and expenses is fair and reasonable and reflects a modest multiplier on Class Counsel's lodestar after deducting litigation costs. While I have not finalized my firm's final costs, my firm's litigation costs to date are $163,933, which includes, *inter alia*, expert fees, mediation fees, travel, and general litigation costs. Moreover, while I have not finalized my firm's lodestar, I estimate that my firm's lodestar to date is approximately $1,012,725. I also understand that my co-counsel's costs and lodestar to date are approximately $160,659 and $700,570, respectively. Thus, after subtracting both firm's

litigation costs (which will continue to increase through the settlement approval process) from the $2,900,000 figure, Class Counsel will be seeking an award of attorneys' fees of approximately $2,575,407. Therefore, the requested attorneys' fees will reflect a roughly 1.50 multiplier on Class Counsel's total current lodestar of approximately $1,713,295.

28.     Class Counsel's lodestar will continue to increase based on the substantial time and effort they will need to expend through the settlement administration and approval process.

29.     As part of the Settlement, Class Counsel will also request class representative service awards to Plaintiffs in an amount of up to $5,000 each. Class Counsel believes this is a modest payment for the extensive risk and services undertaken by each Plaintiff, as well as the substantial benefit conferred on the Class as a result of each Plaintiff's efforts. As will be detailed further in the forthcoming Fee Application, Plaintiffs have been actively involved in, *inter alia*: (1) meeting with Class Counsel and assisting in investigating the claims and drafting the case complaints, (2) responding to discovery and producing documents, (3) sitting for full day deposition sessions; and (4) were actively consulted during the settlement process.

30.     Other than the Settlement Agreement, there are no agreements between Plaintiffs or Class Counsel and CBA.

## Qualifications of Counsel

31.     F&F is a national law firm with offices in New York, Pennsylvania, California, Georgia, and Delaware. The firm's practice focuses primarily on complex class action litigation covering consumer, antitrust, financial, corporate governance, and securities matters. Further, F&F has extensive experience in the litigation, trial and settlement of complex class actions.

32.     During my employment at F&F, I have served as the lead counsel, or counsel, in the following consumer class actions:

   a.   *In re 5-Hour Energy Mktg. & Sales Practices Litig.*, No. MDL 13-2438 (C.D. Cal. Sep. 4, 2014);

   b.   *Forcellati, et al. v. Hyland's, Inc., et al.,* No. 2:12-cv-01983 (C.D. Cal. Nov. 8, 2012);

   c.   *Mack v. LLR, Inc., et al.,* No. 5:17-cv-00853 (C.D. Cal. June 2, 2017);

d.  *Naimi v. Starbucks Corporation*, *et al.*, No. 2:17-cv-0648 (C.D. Cal. Sep. 1, 2017);

e.  *Hesse, et al. v. Godiva Chocolatier, Inc*., No. 19-cv-00972 (S.D.N.Y. Jan. 31, 2019);

f.  *In re Scotts EZ Seed Litigation*, No. 12-cv-04727 (S.D.N.Y. June 15, 2012); and

g.  *In re: Arby's Restaurant Group, Inc. Data Security Litigation*, No. 1:17-cv-1035 (N.D.G.A. March 22, 2017).

32.   Furthermore, since 2011, F&F has served as lead or co-lead counsel in at least following consumer class actions:

a.  *In re: Michaels Stores Pin Pad Litig.*, Case No. 1:11-CV-03350 CPK (N.D. Ill. June 8, 2011);

b.  *In re Haier Freezer Consumer Litig.,* No. C11-02911 (N.D. Cal. Aug. 17, 2011);

c.  *Loreto v. Coast Cutlery Co.,* No. 11-3977 (D.N.J. Sep. 8, 2011);

d.  *Rodriguez v. CitiMortgage, Inc.,* No. 1:11-cv-04718 (S.D.N.Y. Nov. 14, 2011);

e.  *Avram v. Samsung Elecs. Am., Inc.,* No. 11-6973 (D.N.J. Jan 3, 2012);

f.  *Rossi v. Procter & Gamble Co.,* No. 11-7238 (D.N.J. Jan. 31, 2012);

g.  *Dzielak v. Whirlpool Corp.,* No. 2:12-cv-0089 (D.N.J. Feb. 21, 2012);

h.  *Jovel et al., v. i-Health, Inc.*, No 1:12-cv-05614 (E.D.N.Y. March 27, 2012);

i.  *Dei Rossi v. Whirlpool Corp.,* No. 12-125 (E.D. Cal. Apr. 19, 2012);

j.  *In re Sinus Buster Prods. Consumer Litig.,* No. 12-2429 (E.D.N.Y. Dec. 17, 2012);

k.  *In re Alexia Foods, Inc. Litigation*, Case No. 4:11-cv-06119 PJH, ECF No. 66 (N.D. Cal. Dec. 12, 2013);

l.  *Bates v. Kashi Co., et al.*, No. 11-CV-1967-H BGS (S.D. Cal. Sept. 2, 2014);

m.  *Potzner v. Tommie Copper Inc., et al.,* No. 7:15-cv-03183 (S.D.N.Y. Jan. 4, 2016); and

n.  *Shalikar v. Asahi Beer U.S.A., Inc.* No. BC702360 (L.A. Cty Sup. Court).

1    33.    As outlined above and in my firm's most current resume, attached hereto as

2  **Exhibit G**, F&F has extensive experience and knowledge in litigating consumer class action

3  cases, and particularly deceptive product origin cases.

4                    **Selection of the Settlement Administrator**

5    34.    The Parties have selected CPT Group, Inc. ("CPT") to provide Class notice and

6  otherwise administer the Settlement. Before agreeing on CPT, the parties engaged in a months-

7  long process of considering bids from four reputable administrators. This was an iterative process

8  where counsel engaged in numerous back and forth discussions with these administrators, which

9  involved multiple revisions of bids based on factors such as pricing and scope of notice and the

10  administration plan. Notably, each of these administrators provided similar competing bids, and

11  their notice plans overlapped substantially. Class Counsel ultimately selected CPT because they

12  are confident in CPT's experience and expertise in administrating class action settlements. Class

13  Counsel is also confident that CPT's proposed notice and administration plan fully complies with

14  due process, Rule 23(e), relevant case law, and the Settlement Guidance of this District. Moreover,

15  Class Counsel believes that CPT's bid provides the most effective notice for the lowest cost.

16    35.    Over the past two years, F&F has not used CPT to administer a class settlement.

17

18    I declare under penalty of perjury that the foregoing is true and correct. Executed on

19  *May 23*    , 2019 in Philadelphia, Pennsylvania.

20

21                              By: _____

22                                   Timothy J. Peter

23

24

25

26

27

28

                                    -11-

# EXHIBIT A

**FARUQI & FARUQI, LLP**
Benjamin Heikali (SBN 307466)
Joshua Nassir (SBN 318344)
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: (424) 256-2884
Facsimile: (424) 256-2885
E-mail: bheikali@faruqilaw.com
         jnassir@faruqilaw.com

**FARUQI & FARUQI, LLP**
Timothy J. Peter (admitted *pro hac vice*)
1617 JFK Boulevard, Suite 1550
Philadelphia, PA 19103
Telephone: (215) 277-5770
Facsimile: (215) 277-5771
E-mail: tpeter@faruqilaw.com

*Attorneys for Plaintiffs and the Classes*

**THE WAND LAW FIRM, P.C.**
Aubry Wand (SBN 281207)
400 Corporate Pointe, Suite 300
Culver City, California 90230
Telephone: (310) 590-4503
Facsimile: (310) 590-4596
E-mail: awand@wandlawfirm.com

**SHOOK, HARDY & BACON LLP**
Tammy B. Webb (SBN 227593)
John K. Sherk III (SBN 295838)
One Montgomery, Suite 2700
San Francisco, California 94104
Telephone: (415) 544-1900
Facsimile: (415) 391-0281
E-mail: tbwebb@shb.com
         jsherk@shb.com

*Attorneys for Defendant*

**SHOOK, HARDY & BACON LLP**
Naoki S. Kaneko (SBN 252285)
5 Park Plaza, Suite 1600
Irvine, California 92614
Telephone: (949) 475-1500
Facsimile: (949) 475-0016
E-mail: nkaneko@shb.com

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| THEODORE BROOMFIELD, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> CRAFT BREW ALLIANCE, INC., *et al.*, <br><br> Defendants. | CASE NO.: 5:17-cv-01027-BLF <br><br> **SETTLEMENT AGREEMENT** |

1

## SETTLEMENT AGREEMENT

This Settlement Agreement is entered into by Plaintiffs Theodore Broomfield and Simone Zimmer ("Plaintiffs" or "Class Representatives"), individually and on behalf of the Settlement Class (defined herein), and by Defendant Craft Brew Alliance, Inc. ("CBA") (collectively with the Plaintiffs, the "Parties"), in the above-captioned action. This Settlement Agreement is intended by the Parties to fully and finally resolve, discharge, and settle the Released Claims, as defined herein, subject to the terms and conditions set forth below and the final approval of the District Court.

## RECITALS

1.  On February 28, 2017, Plaintiff Zimmer and former plaintiff Sara Cilloni commenced a proposed class action in the Northern District of California against CBA in *Cilloni v. Craft Brew Alliance, Inc.* No. 5-17-cv-01027-BLF in connection with CBA's marketing and sale of Kona Brewing Company Beers (the "*Cilloni* Action").

2.  On March 6, 2017, Plaintiff Broomfield also commenced a proposed class action in the Northern District of California against CBA in *Broomfield v. Kona Brewing Co., et al.*, No. 3:17-cv-01159-MEJ in connection with CBA's marketing and sale of Kona Brewing Company Beers (the "*Broomfield* Action").

3.  On March 20, 2017, the Court entered a Stipulation and Order to Consolidate Related Cases, consolidating the *Cilloni* Action and *Broomfield* Action. The consolidated Action proceeded as *Broomfield v. Craft Brew Alliance, Inc.*, No. 5-17-cv-01027-BLF.

4.  On April 7, 2017, Plaintiffs filed a Consolidated Class Action Complaint against CBA.

5.  On April 28, 2017, CBA filed a Motion to Dismiss the Consolidated Class Action Complaint.

6.  On May 26, 2017, Plaintiffs opposed the Motion to Dismiss.

2

7.      On September 1, 2017, the Court granted in part and denied in part the Motion to Dismiss.

8.      On October 6, 2017, CBA filed an Answer to the Consolidated Class Action Complaint.

9.      On November 6, 2017, Plaintiffs filed a Motion for Reconsideration of the Court's dismissal of Plaintiffs' request for injunctive relief.

10.     On November 27, 2017, the Court granted the Motion for Reconsideration.

11.     On December 7, 2017, Plaintiffs filed a stipulation of dismissal pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii), dismissing Sara Cilloni's individual claims against CBA and removing Sara Cilloni as a plaintiff and class representative.

12.     On December 15, 2017, Plaintiffs filed a First Amended Consolidated Class Action Complaint ("FAC"). In the FAC, Plaintiffs alleged, *inter alia*, that CBA's representations that Kona Brewing Company Beers are brewed in Hawaii are false and deceptive, and based on this factual predicate, asserted the following causes of action: (1) violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*, (2) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*, (3) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*, (4) common law fraud, (5) intentional misrepresentation, (6) negligent misrepresentation, and (7) unjust enrichment.

13.     On December 29, 2017, CBA filed an Answer to the FAC.

14.     The Parties have engaged in substantial fact and expert discovery, including multiple rounds of interrogatories, document requests, and requests for admission, extensive document review, and depositions of key corporate employee witnesses, the plaintiffs, and the Parties' respective experts.

15.    On July 16, 2018, Plaintiffs filed a Motion for Class Certification, moving to certify two

classes:

Six-Pack Class

All persons who purchased any six-pack bottles of the Kona Beers[1] in California at any
time beginning four (4) years prior to the filing of this action on February 28, 2017 until
the present ("Class Period").

Twelve-Pack Class

All persons who purchased any twelve-pack bottles of the Kona Beers in California at any
time beginning four (4) years prior to the filing of this action on February 28, 2017 until
the present ("Class Period").

16.    On August 10, 2018, CBA opposed the Motion for Class Certification.

17.    On September 25, 2018, the Court granted Plaintiffs' Motion for Class Certification in its

entirety, certifying: (1) a damages Class of California purchasers of six- and twelve-packs

of Kona Beers pursuant to Rule 23(b)(3), and (2) an injunctive relief Class of California

purchasers of six- and twelve-packs of Kona Beers pursuant to Rule 23(b)(2). The law

firms of Faruqi & Faruqi, LLP and the Wand Law Firm, P.C. were appointed as Class

Counsel, and Theodore Broomfield and Simone Zimmer were appointed as Class

Representatives.

18.    On October 5, 2018, CBA filed a Motion for Leave to Seek Reconsideration of the Court's

Order Granting Class Certification. Plaintiffs opposed this Motion on October 5, 2018.

19.    On October 16, 2018, the Court denied the Motion for Leave to Seek Reconsideration.

20.    On October 22, 2018, CBA filed a Rule 23(f) petition for interlocutory appeal of the

Court's Order Granting Class Certification, which Plaintiffs timely opposed.

---

[1] Kona Beers were defined for the purposes of Class Certification as Longboard Island Lager,
Hanalei IPA, Castaway IPA, Big Wave Golden Ale, Lemongrass Luau, Wailua Wheat, Fire Rock
Pale Ale, and Pipeline Porter.

21.    On January 24, 2019, the Parties participated in a day-long mediation session with Bruce A. Edwards of JAMS in San Francisco, California. The Parties did not reach settlement during this mediation.

22.    On February 1, 2019, the Ninth Circuit Court of Appeals denied CBA's Rule 23(f) petition.

23.    On February 15, 2019, CBA filed a Petition for Rehearing *En Banc* of the Ninth Circuit's denial of CBA's Rule 23(f) petition.

24.    On March 6, 2019, the Parties participated in a second mediation session with Mr. Edwards. The session lasted approximately 12 hours and the Parties were able to reach a settlement in principle at the conclusion of the mediation.

25.    In the subsequent weeks, the Parties continued to negotiate and finalize all terms of this Settlement Agreement.

26.    On April 24, 2019, the Parties filed a request to stay all appellate proceedings pending the settlement approval process, including CBA's Petition for Rehearing *En Banc.* Also on April 24, 2019, the Parties filed a Joint Status Report Re: Settlement, informing the Court that the Parties had reached a settlement in principle, the terms of which are set forth herein.

27.    CBA, while continuing to deny all allegations of wrongdoing, and disclaiming all liability with respect to all claims, considers it desirable to resolve the Action on the terms stated herein to avoid further expense, inconvenience, and burden, and therefore determines that this Settlement Agreement is in CBA's best interests.

28.    The Parties have engaged in extensive litigation, including substantial completion of fact and expert discovery, and have had a full and fair opportunity to evaluate the strengths and weaknesses of their respective positions. This Settlement Agreement was reached after extensive review of the underlying facts, after extensive arm's length negotiations between

Class Counsel and CBA's Counsel, and after two mediation sessions with Bruce A. Edwards.

29.     Weighing risks and uncertainties of continued litigation and all factors bearing on the merits of settlement, Plaintiffs and Class Counsel are satisfied that the terms and conditions of this settlement are fair, reasonable, adequate, and in the best interests of the Plaintiffs and the Class.

30.     NOW, THEREFORE, without any admission or concession of liability or wrongdoing or the lack of merit of any defense whatsoever by CBA, or any admission or concession of the lack of merit of this Action whatsoever by Plaintiffs, it is hereby stipulated and agreed by the undersigned, on behalf of Plaintiffs, the Settlement Class, and CBA, that the Action and all claims of the Settlement Class be settled, compromised, and dismissed on the merits and with prejudice, subject to Court approval as required by Federal Rules of Civil Procedure 23, on the terms and conditions set forth herein and upon the Effective Date (as defined below).

31.     Each Party affirms that the Recitals above are true and accurate and are hereby made a part of this Settlement Agreement.

## I.   DEFINITIONS

As used in this Settlement Agreement and the Exhibits hereto, in addition to any definitions set forth elsewhere in this Settlement Agreement, the following terms shall have the meanings set forth below. Unless otherwise indicated, defined terms include the plural as well as the singular.

32.     "**Action**" means the consolidated class action initiated by Plaintiffs Theodore Broomfield and Simone Zimmer, captioned *Broomfield v. Craft Brew Alliance, Inc.*, No. 5-17-cv-01027-BLF, in the United States District Court for the Northern District of California.

33. "**Agreement**" or "**Settlement Agreement**" means this Settlement Agreement, and its Exhibits attached hereto and incorporated herein.

34. "**CAFA Notice**" means the notice which CBA shall serve upon the appropriate State and Federal officials, providing notice of the proposed settlement. CBA's Counsel shall provide a declaration attesting to compliance with 28 U.S.C. § 1715(b), which will be filed with Plaintiffs' motion for preliminary and/or final approval.

35. "**Claim Deadline**" means the date to be set by the Court as the deadline for Settlement Class Members to submit Claim Forms, and which shall be ninety (90) calendar days after the Notice Date, subject to Court approval.

36. "**Claim Form**" means the document, substantially in the form attached as **Exhibit 1**, which Settlement Class Members must submit to the Settlement Administrator in order to obtain the Settlement Benefit.

37. "**Claims Period**" means the period of time from the Notice Date until the Claim Deadline.

38. "**Claimant**" means a Settlement Class Member that submits a Claim Form.

39. "**Class Counsel**" or "**Plaintiffs' Counsel**" means the law firms of Faruqi & Faruqi, LLP and the Wand Law Firm, P.C.

40. "**Class Period**" or "**Settlement Class Period**" means the period of time from February 28, 2013 through the date Preliminary Approval is granted.

41. "**Class Representatives**" or "**Plaintiffs**" means Plaintiffs Theodore Broomfield and Simone Zimmer.

42. "**Class Representative Service Award**" means the monetary award, sought by application and approved by the Court, which is payable to the Class Representatives for their efforts and diligence in prosecuting this Action on behalf of the Class and Settlement Class.

7

43. "**Court**" means the United States District Court for the Northern District of California, the Honorable Beth Labson Freeman presiding.

44. "**Defendant**" or "**CBA**" means Craft Brew Alliance, Inc.

45. "**Defendant's Counsel**," "**Defense Counsel**," or "**CBA's Counsel**" means the law firm of Shook, Hardy & Bacon LLP.

46. "**Effective Date**" means the date on which the Court enters an Order and Final Judgment, if no appeal is taken. If an appeal is taken, the Effective Date shall mean the first date all appellate rights (including proceedings in the Supreme Court) with respect to said Order and Final Judgment have expired or been exhausted in such a manner as to affirm the Order and Final Judgment.

47. "**Final Approval Hearing**" means the hearing that is to take place after the entry of a Preliminary Approval Order and after the Notice Date and Claim Deadline for purposes of (a) determining whether the Settlement Agreement should be approved as fair, reasonable, adequate and in the best interests of the Class Members; (b) entering the Order and Final Judgment and dismissing the Action with prejudice; and (c) ruling upon an application by Class Counsel for an award of attorneys' fees, costs and expenses, and Class Representative Service Awards.

48. "**Fee Application**" means a motion for a Fee Award and Class Representative Service Awards, which Plaintiffs will file not later than thirty-five (35) calendar days before the Objection/Exclusion Deadline and the Claim Deadline.

49. "**Fee Award**" means an award of reasonable fees, costs and expenses in an amount up to $2,900,000.00 (Two Million Nine Hundred Thousand Dollars and Zero Cents), sought by application and approved by the Court, which is payable to Class Counsel.

50.     "**Final Approval**" means the Court's entry of an Order following the Final Approval Hearing, substantially in the form of **Exhibit 5** hereto, approving the Settlement pursuant to the terms and conditions of this Agreement without material change, confirming the certification of the Settlement Class for purposes of this Agreement only, and releasing all claims of Plaintiffs and the Settlement Class Members.

51.     "**Final Judgment**" means the Court's entry of an Order and Final Judgment following the Final Approval Hearing, substantially in the form of **Exhibit 6** hereto, dismissing the Action with prejudice.

52.     "**Fraudulent Claims**" means any Claim Forms the Settlement Administrator determines in good faith contain indicia of fraud, deceit or other invalidity, including but not limited to any attempts to bypass the terms and limitations set out in this Agreement regarding Claim Forms, Claimants, Settlement Class Members and Settlement Benefits.

53.     "**Kona Beers**" means all 4-pack, 6-pack, 12-pack, or 24-packs of Longboard Island Lager, Hanalei IPA, Castaway IPA, Big Wave Golden Ale, Lemongrass Luau, Wailua Wheat, Fire Rock Pale Ale, Pipeline Porter, Lavaman Red Ale, Koko Brown Ale, Kua Bay IPA, Gold Cliff IPA, Kanaha Blonde Ale, Liquid Aloha Variety Pack, Island Hopper Variety Pack, Happy Mahalo Variety Pack, Wave Rider Tandem Pack. Excluded from this definition are all Kona Beers that are sold without packaging (i.e., loose bottles, loose cans, and draft beer).

54.     "**Long Form Notice**" means notice of the proposed settlement to be provided to Settlement Class Members substantially in the forms attached as **Exhibit 3**, but which may be modified as necessary to comply with the provisions of any order of Preliminary Approval entered by the Court. The Long Form Notice shall be published on the Settlement Website.

9

55.     "**Motion for Final Approval**" means the motion that the Plaintiffs shall file seeking Final Approval of this Settlement.

56.     **"Notice"** means notice of this Settlement Agreement as defined in Section IV.

57.     "**Notice Date**" means the date that Internet banner notice ads are first published in accord with the Notice Plan set forth in Section IV below.

58.     "**Notice Plan**" means the plan for dissemination of notice of this Settlement Agreement by the Settlement Administrator in accord with the terms and provisions set forth in Section IV below.

59.     "**Notice of Missing or Inaccurate Information**" means the notice sent by the Settlement Administrator to a Claimant who has submitted a Claim Form with inaccurate, disqualifying, incomplete or missing information that is required for the Claimant to be considered eligible for the Settlement Benefit provided by this Settlement.

60.     "**Objection/Exclusion Deadline**" means the date to be set by the Court as the deadline for Settlement Class Members to submit Objections or Requests for Exclusion, and which shall be ninety (90) calendar days after the Notice Date, subject to Court approval.

61.     "**Objection**" means the written communication that a Settlement Class Member must submit to the Court by the Objection/Exclusion Deadline in order to object to the Settlement, as provided for in Section VI below.

62.     "**Person**" means any natural person.

63.     "**Parties**" means Plaintiffs and CBA, collectively, and "**Party**" means either Plaintiffs or CBA, individually.

64.   "**Preliminary Approval**" or "**Preliminary Approval Order**" shall mean the issuance of an order by the Court, substantially in the form of **Exhibit 4** hereto, preliminarily approving, *inter alia*, the terms of this Settlement and authorizing Notice to the Class.

65.   "**Proof of Purchase**" means a receipt, a copy of the purchase on a credit/debit card statement, a copy of the UPC from the package(s) of Kona Beers, retailer reward or membership programs evidencing a purchase of Kona Beers, or other similar type of documentation evidencing the purchase of Kona Beers by the Settlement Class Member.

66.   "**Released Claims**" means any claim, cross-claim, liability, right, demand, suit, matter, obligation, damage, restitution, disgorgement, loss or cost, attorneys' fee, cost or expense, action or cause of action, of every kind and description that the Releasing Party had or has, including assigned claims, whether in arbitration, administrative, or judicial proceedings, whether as individual claims or as claims asserted on a class basis or on behalf of the general public, whether known or unknown, asserted or unasserted, suspected or unsuspected, latent or patent, that is, has been, could reasonably have been, or in the future might reasonably be asserted by the Releasing Party in the Action against any of the Released Parties arising out of the allegations in the complaints filed in the Action. Excluded from the Released Claims is any claim for alleged bodily injuries arising after the Effective Date of this Settlement Agreement.

67.   "**Released Parties**" means CBA, and all of its past, present and/or future parents, predecessors, successors, assigns, subsidiaries, divisions, departments, and affiliates, and any and all of their past, present and/or future officers, directors, employees, stockholders, partners, agents, servants, successors, attorneys, representatives, advisors, consultants,

brokers, distributors, wholesalers, subrogees and assigns of any of the foregoing, and representatives of any of the foregoing.

68. "**Releasing Parties**" means the Plaintiffs, each Settlement Class Member that does not submit a timely and valid Request for Exclusion, and any Person claiming by or through such Settlement Class Member as his/her spouse, parent, child, heir, guardian, associate, co-owner, attorney, agent, administrator, devisee, predecessor, successor, assignee, representative of any kind, shareholder, partner, director, employee, or affiliate.

69. "**Request for Exclusion**" means the written communication that a Settlement Class Member must submit to the Settlement Administrator by the Objection/Exclusion Deadline in order to be excluded from the Settlement as provided for in Section VI below.

70. "**Settlement**" means the settlement embodied in this Agreement.

71. "**Settlement Administrator**" means CPT Group, Inc., which will be responsible for providing notice to the Class and administering the Settlement as provided for in Sections IV and V below. The Parties each represent they do not have any financial interest in the Settlement Administrator or otherwise have a relationship with the Settlement Administrator that could create a conflict of interest. Should a conflict of interest or other issue lead to the disqualification of the selected Settlement Administrator, the Parties will meet and confer as to a suitable replacement.

72. "**Settlement Notice and Administration Costs**" means the costs for providing Notice and administration of the Settlement. CBA shall pay the Settlement Notice and Administration Costs, which are currently estimated to be $395,000.

73.     "**Settlement Benefit**" means the monetary payment described in Section II, available to Settlement Class Members who meet eligibility requirements and submit a timely and valid Claim Form.

74.     "**Settlement Class Members**," "**Class Members**," "**Class**," or "**Settlement Class**" means: All Persons who purchased any four-pack, six-pack, twelve-pack or twenty-four pack of Kona Beers in the United States, it territories, or at any Untied States military facility, during the Class Period.  For the purposes of this definition, individuals living in the same household shall be deemed to be a single Class Member. Excluded from the Settlement Class are: (a) CBA's and any of its parents', affiliates', or subsidiaries' employees, officers and directors, (b) distributors, retailers or re-sellers of Kona Beers, (c) governmental entities, (d) Persons who timely and properly exclude themselves from the Settlement Class as provided herein, (e) the Court, the Court's immediate family, and Court staff, and (f) counsel of record for the Parties, and their respective law firms.

75.     "**Settlement Website**" means the website to be established by the Settlement Administrator for purpose of providing notice, Claim Forms and other information regarding this Agreement. The Settlement Website will include, *inter alia*, (a) an FAQ section, (b) links to all pertinent documents including relevant pleadings as agreed by the Parties or as ordered by the Court, (c) the Fee Application and Motions for Preliminary Approval and Final Approval (and orders granting these motions if and when they are issued), (d) a toll-free number, (e) and other pertinent information about the Settlement. The Settlement Website will be updated regularly with relevant documents as they become available.

76.     "**Summary Notice**" means notice of the proposed Settlement to be provided to Settlement Class Members substantially in the forms attached as **Exhibit 2**, but which may be modified as necessary to comply with the provisions of any order of Preliminary Approval entered by the Court. The Summary Notice will be emailed directly to Class Members for whom CBA has contact information, published on the Settlement Website, and published in print in the National Geographic Magazine and San Jose Mercury News Newspaper.

## II.     SETTLEMENT CONSIDERATION

Settlement consideration shall consist of two primary components: (1) a monetary component consisting of payments to Claimants; and (2) an injunctive relief component whereby CBA agrees to make certain changes to its business practices with respect to Kona Beers.

**Monetary Relief**

77.     To each Claimant who submits a timely and valid Claim Form, CBA will pay a monetary Settlement Benefit. Settlement Class Members residing in the same household (i.e., the same mailing address) who each submit a Claim Form shall only be entitled to a collective maximum payment of $10 or $20 per household, depending on whether Proof of Purchase is submitted, as follows:

    a.     **Per Unit Values**: Claimants may seek the following payment per unit of each Kona Beer purchased during the Settlement Class Period.

        i.   4-pack Kona Beers: $1.25 per unit.

        ii.   6-pack Kona Beers: $1.25 per unit.

        iii.   12-pack Kona Beers: $2.00 per unit.

        iv.   24-pack Kona Beers: $2.75 per unit.

14

b.     **With Proof of Purchase.** Claimants who submit sufficient Proof of Purchase and age verification may claim the above payments per unit, up to a maximum recovery of $20 per Settlement Class Member.

c.     **Without Proof of Purchase.** Claimants who do not submit sufficient Proof of Purchase, or no Proof of Purchase at all, but who submit attestation of his or her purchase of Kona Beers under penalty of perjury, along with age verification, may claim the above payments per unit, up to a maximum recovery of up to $10 per Settlement Class Member.

d.     **Option to Terminate**. Subject to the above terms, should the Settlement Class Members submit more than one million (1,000,000) Claims in this Settlement (regardless of the dollar amount of such claims), CBA shall have the unconditional right, but not the obligation, to terminate this Settlement Agreement. If CBA elects to terminate this Settlement Agreement under this paragraph, CBA must provide written notice to the other Parties' counsel, by hand delivery, mail, or e-mail within ten (10) calendar days of the occurrence of the condition permitting termination. CBA shall be responsible for any Settlement Notice costs incurred if it chooses to exercise this option.

**Injunctive Relief**

78.     Not later than March 2020 or thirty calendar days after the Effective Date, whichever is later, CBA shall make the following changes to its business practices:

a.     To the extent permitted by law and/or regulation, CBA shall include a conspicuous statement on all consumer-facing Kona Beer packaging on a panel other than the bottom of the package that lists each location where the Kona Beers are brewed or

lists the location or locations at which a particular Kona Beer is brewed, for a minimum of four years after the Effective Date. An initial mock-up of the new packaging for one of the Kona Beer products is attached hereto as **Exhibit 7**.

b.  For a minimum of four years after the Effective Date, CBA's General Counsel or his or her designee shall conduct annual meetings with CBA's marketing department to review and comply with the injunctive terms of this Settlement.

79.  To the extent not already done, and to the extent necessary, CBA agrees to provide Plaintiffs and Class Counsel with sufficient confidential sales information and forecasts that will allow the Parties to estimate the monetary value of the foregoing injunctive relief to the Settlement Class. CBA shall not oppose the use of this information in connection with any filings or proceedings related to the Settlement, provided that Plaintiffs shall provide CBA the opportunity to review any such filings in advance, and the Parties will meet and confer and reach mutual agreement as to the appropriate form of disclosing such information to the Court, which may involve filing under seal. The Parties acknowledge and recognize that, in accordance with the interest of public transparency, the filing of any such information under seal will not be requested unless the Parties believe it is necessary to do so.

## III.   CLAIMS PROCESS AND PAYMENT

**Submission of Claims**

80.  To be eligible to receive the Settlement Benefit under the Settlement Agreement, Settlement Class Members must submit a claim to the Settlement Administrator by either: (a) completing, certifying, and mailing the Claim Form to the Settlement Administrator; (b) completing, certifying, and submitting the Claim Form electronically on the Settlement

Website; or (c) completing, certifying and submitting all information contained in the Claim Form electronically on the Settlement Website.

81.    In order to be timely, the Claim Form must be postmarked or electronically submitted by no later than the Claim Deadline. Claim Forms postmarked or electronically submitted after the Claim Deadline may be denied by the Settlement Administrator, and CBA will not be obligated to make any payment on such claims, unless the Parties agree otherwise.

82.    In order to be valid, the Claim Form must: (a) be signed in hard copy or electronically by the Settlement Class Member under penalty of perjury; and (b) bear an attestation by the Settlement Class Member that he/she purchased the Kona Beers during the Class Period, and that he/she was over 21 years old at the time of purchase(s) of the claimed Kona Beers. Claim Forms that do not meet these requirements may be denied by the Settlement Administrator, and CBA will not be obligated to make any payment on such claims, unless the Parties agree otherwise.

**Review of Claims**

83.    The Settlement Administrator shall review all submitted Claim Forms within a reasonable time to determine the validity and timeliness of the Claim, each Settlement Class Member's eligibility for the Settlement Benefit, and the amount of such relief, if any. Copies of submitted Claim Forms shall be provided to CBA's Counsel and to Class Counsel upon request. Settlement Class Members who submit valid and timely Claim Forms shall be entitled to the Settlement Benefit. Settlement Class Members who submit Claims Forms that do not meet the eligibility requirements described herein may not be entitled to such relief.

**Invalid/Fraudulent Claims**

84.     The Settlement Administrator shall use good faith and appropriate procedures to prevent, detect, and reject the payment of Fraudulent Claims and ensure payment of only legitimate claims. The Settlement Administrator shall notify the Claimant via mail or email of the rejection.  If any Claimant whose Claim Form has been rejected, in whole or in part, desires to contest such rejection, the Claimant must, within ten (10) calendar days from receipt of the rejection, mail or email the Settlement Administrator a notice and statement of reasons indicating the grounds for contesting the rejection along with any supporting documentation, requesting further review by the Settlement Administrator, of denial of the Claim. If any Claimant whose Claim Form has been rejected fails to respond to the Settlement Administrator with within ten (10) calendar days from receipt of the rejection, the rejection shall be deemed final and valid. The Settlement Administrator, in consultation with CBA's Counsel and Class Counsel, shall notify the Claimant of its decision within ten (10) business days from receipt of the Claimant's reply contesting the rejection.

**Incomplete or Inaccurate Claim Forms**

85.     After receipt of any Claim Forms containing incomplete or inaccurate information, and/or submitted Claims Forms omitting required information, the Settlement Administrator shall send a Notice of Missing or Inaccurate Information explaining what information is missing or inaccurate.

86.     Claimants shall have until the end of the Claims Period, or thirty (30) calendar days from when the Notice of Missing or Inaccurate Information was mailed, whichever is later, to reply to the Notice of Missing or Inaccurate Information, and provide the required information.

18

87.    If a Claimant fails to respond by the end of the Claims Period or within thirty (30) calendar days from when the Notice of Missing or Inaccurate Information was mailed, whichever is later, or the Settlement Administrator is unable to provide a Notice of Missing or Inaccurate Information as a result of the omitted information, the Settlement Administrator will reject such Claimant's claim, and CBA will not be obligated to make any payment on such claim.

**Provision of Settlement Benefits**

88.    CBA shall transmit to the Settlement Administrator the aggregate dollar value of all Settlement Benefits by no later than fifteen (15) calendar days after the Effective Date.

89.    The Settlement Administrator shall pay all Settlement Benefits to Settlement Class Members who are eligible and who submit a valid and timely Claim Form within fifteen (15) calendar days of receiving the funds from CBA or thirty (30) calendar days of the Effective Date, whichever date is earlier.

90.    Within twenty-one (21) calendar days after the distribution of the Settlement Benefits, the Parties shall file a Post-Distribution Accounting with the Court.

91.    All cash awards to Settlement Class Members will be in the form of a check or via electronic payment, whichever option the Settlement Class Member so chooses.

## IV.    NOTICE

92.    Notice of the Settlement shall conform to all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clauses), the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, the United States District Court for the Northern District of California's Procedural Guidance for Class Action Settlements, and any other applicable law, and shall otherwise be in the manner and form approved by

the Court. To the extent any changes to the notice plan set forth herein need to be modified in any way, the Parties agree to work cooperatively to make any such changes.

**Forms of Notice**

93.     Upon Preliminary Approval, Notice of the Settlement shall be according to the following Notice Plan:

a. <u>Settlement Website Notice</u>: No later than five (5) calendar days before Internet Publication Notice (*see* Paragraph 93(e)), the Settlement Administrator shall create a Settlement Website, which will include, *inter alia*, links to the Long Form Notice, the Summary Notice, this Settlement Agreement and Exhibits, the Claim Form, relevant filings and orders, and information relating to filing a claim, objecting to the Settlement, opting out of the Settlement, other deadlines relating to the Settlement, and instructions on how to access the case docket via PACER or in person at any of the Court's locations.

b. <u>Toll-Free Telephone Support</u>: No later than five (5) calendar days before Internet Publication Notice (*see* Paragraph 93(e)), the Settlement Administrator shall establish a toll-free telephone support system to provide Settlement Class Members with (a) general information about the Action and Settlement; (b) frequently asked questions and answers; and (c) information relating to filing a claim, objecting to the Settlement, opting out of the Settlement, and other deadlines relating to the Settlement.

c. <u>Direct Notice</u>: At or before the filing of the Motion for Preliminary Approval, CBA shall provide the Settlement Administrator with a list of all potential Class Members for whom it has e-mail or mailing addresses. No later than twenty-five

20

(25) calendar days after Preliminary Approval, the Settlement Administrator shall cause the Summary Notice to be sent to all Class Members for whom email addresses or mailing addresses have been provided.

d. <u>Print Publication Notice</u>: On the first available publication date after Preliminary Approval, the Settlement Administrator will publish the Summary Notice in print in National Geographic Magazine for a period of one month. On the first available publication date after Preliminary Approval, the Settlement Administrator will also publish the Summary Notice in print in the San Jose Mercury News Newspapers one day per week for a period of four consecutive weeks in compliance with the CLRA.

e. <u>Internet Publication Notice</u>: No later than twenty-five (25) calendar days after Preliminary Approval, the Settlement Administrator will issue an informational press release to PR Newswire of the Settlement. The press release will include the Settlement Website address so that Settlement Class Members can easily access information about the Action and Settlement. The Settlement Administrator will also purchase Internet banner notice ads that will allow access to the Settlement Website through an embedded hyperlink contained within the banner notice ad. These Internet banner ads will be first published no later than twenty-five (25) calendar days after Preliminary Approval, and will continue for a period of ten (10) weeks.

## V. ADMINISTRATION OF SETTLEMENT

94. All Settlement Notice and Administration Costs shall be paid by CBA.

95.     The Settlement Administrator shall be responsible for administrative tasks, including, without limitation:

    a.  Arranging, as set forth in this Section and in the Preliminary Approval Order, for distribution of Notice of the Settlement (in a form substantially similar to that approved by the Court) and Claims Forms (in a form substantially similar to that approved by the Court) to Settlement Class Members;

    b.  Answering inquiries from Settlement Class Members and/or forwarding such written inquiries to Class Counsel or their designee;

    c.  Receiving and maintaining correspondence regarding Objections and Requests for Exclusion from the Settlement Agreement;

    d.  Posting notices, Claim Forms, and other related documents on the Settlement Website and otherwise maintaining the Settlement Website;

    e.  Receiving and processing Claim Forms, including sending Notices of Missing or Inaccurate Information where applicable;

    f.  Providing weekly updates to CBA's Counsel and Class Counsel regarding the number of Claims, Requests for Exclusion, and Objections.  The updates shall be made on Friday of every week;

    g.  Providing declaration(s) in support of preliminary and final approval as necessary and appropriate;

    h.  Distributing all payments under the Settlement, including payments to Settlement Class Members and the Class Representative Service Awards;

    i.  Providing a post-distribution accounting declaration; and

j.  Otherwise assisting with implementation and administration of the Settlement Agreement terms as the Parties mutually agree or the Court orders the Settlement Administrator to perform.

## VI.  OBJECTIONS AND OPT-OUTS

**Objections**

96.  Settlement Class Members shall have the right to appear and present Objections as to any reason why the terms of this Agreement should not be given Final Approval. Any Objection must be in writing and submitted to the Court no later than the Objection/Exclusion Deadline. Settlement Class Members shall submit written objection to the Court, either by (1) mailing them to the Class Action Clerk, United States District Court for the Northern District of California, 280 South 1st Street, Courtroom 3, San Jose, CA 95113, or (2) filing them in person at any location of the United States District Court for the Northern District of California or via the ECF electronic filing system.

97.  Any Objection must contain a caption or title that identifies it as "Objection to Class Settlement in *Broomfield, et al. v. Craft Brew Alliance, Inc.*, No. 5-17-cv-01027-BLF" and shall also contain:

a.  Information sufficient to identify and contact the objecting Settlement Class Member, including name, address, telephone number, and, if available, email address, and if represented by counsel, the foregoing information for his/her counsel;

b.  Whether the Settlement Class Member, or his or her counsel, intends to appear at the Final Approval Hearing;

c. Whether the Objection applies only to the Settlement Class Member, to a specific subset of the Settlement Class, or to the entire Settlement Class;

d. A clear and concise statement of the Settlement Class Member's Objection, including all bases and legal grounds for the Objection;

e. Documents sufficient to establish the person's standing as a Settlement Class Member, *i.e.*, verification under penalty of perjury as to the person's purchase of Kona Beers during the Class Period, or a Proof of Purchase;

f. A list of any other objections submitted by the Settlement Class Member, or his/her counsel, to any proposed class action settlements submitted in any court, whether state or federal, in the United States for the previous five (5) years.  If the Settlement Class Member or his/her counsel has not objected to any other class action settlement in any other court in the previous five (5) years, he or she shall affirmatively state so; and

98.   No Settlement Class Member shall be entitled to be heard at the Final Approval Hearing (whether individually or through counsel) or to object to the Agreement, and no written Objections or briefs submitted by any Settlement Class Member shall be received or considered by the Court at the Final Approval Hearing, unless written notice of the Settlement Class Member's intention to appear at the Final Approval Hearing, and copies of any written Objections or briefs, have been filed with the Court on or before the Objection/Exclusion Deadline.

99.   Class Counsel and CBA shall have the right to respond to any Objection no later than thirty-five (35) calendar days prior to the Final Approval Hearing.

100.    Settlement Class Members who fail to submit written Objections in the manner specified above shall be deemed to have waived any objections and shall be foreclosed from making any objection (whether by appeal or otherwise) to the Settlement Agreement and shall be bound, to the extent allowed by law, by the terms of the Settlement Agreement.

**Requests for Exclusion/Opt Out**

101.    Any Settlement Class Member who does not wish to participate in this Settlement must submit a Request for Exclusion to the Settlement Administrator by the Objection/Exclusion Deadline, stating a clear intention to be "excluded" from this Settlement. The written request for exclusion must contain the Settlement Class Member's name, current address, and telephone number. The Request for Exclusion must be personally signed by the Settlement Class Member, dated and sent to the Settlement Administrator via the Settlement Website or by hard copy sent via U.S. Mail.

102.    The date of the postmark on the envelope, or the electronic date of submission in the case of a submission via the Settlement Website, shall be the exclusive means used to determine whether a Request for Exclusion has been timely submitted by the Objection/Exclusion Deadline. Any Settlement Class Member whose request to be excluded from the Settlement Class is approved by the Court will not be bound by this Settlement Agreement nor will he or she have any right to object, appeal, or comment thereon.

103.    Settlement Class Members who fail to submit a valid and timely Request for Exclusion on or before the Objection/Exclusion Deadline shall be bound, to the extent allowed by law, by all terms of the Settlement Agreement and any Judgment entered in the Action if the Settlement Agreement is approved by the Court, regardless of whether they have requested exclusion from the Class.

104.   Settlement Class Members who submit a valid and timely Request for Exclusion cannot object to the Settlement.

**No Solicitation of Objections or Exclusions**

105.   The Parties and their counsel agree to use their best efforts to carry out this Agreement. At no time shall any of the Parties or their counsel seek to solicit or otherwise encourage any Party or Settlement Class Member to submit Objections or Requests for Exclusion, or to appeal from the Court's Judgment.

## VII.   ATTORNEYS' FEES & COSTS, AND CLASS REPRESENTATIVE SERVICE AWARDS

**Attorneys' Fees and Costs**

106.   Class Counsel shall submit a Fee Application for an award of attorneys' fees and costs, including expert fees and costs, in an amount not to exceed $2,900,000.00 (Two Million Nine Hundred Thousand Dollars and Zero Cents). CBA and its counsel will not oppose or undermine that request or solicit others to do so.

107.   The Fee Award shall be the total obligation of CBA to pay for attorneys' fees, costs, and/or expenses of any kind (including, but not limited to, travel, filing fees, court reporter and videographer expenses, expert fees and costs, notice of pendency costs and expenses, and document review and production costs) related to this Action.

108.   CBA shall pay the Fee Award by wire transfer to Class Counsel not later than ten (10) calendar days following Final Approval.

109.   This Settlement is not contingent upon the Court awarding any particular amount in attorneys' fees and costs, however, Plaintiffs retain the right to appeal any decision by the Court regarding the Fee Award.

110.   Class Counsel, in their sole discretion, shall allocate and distribute the Fee Award.

111.    CBA shall pay its own attorneys' fees and costs incurred in this Action.

**Class Representative Service Awards**

112.    In recognition of the time and effort the Class Representatives expended in pursuing this Action and fulfilling their obligations and responsibilities as Class Representatives, Class Counsel shall also petition the Court for, and CBA shall not oppose, a service award in an amount of $5,000.00 (Five Thousand Dollars and Zero Cents) to each of the two Class Representatives.

113.    The Court's award of any Class Representative Service Awards shall be separate from its determination of whether to approve the Settlement as set forth in this Agreement.

114.    In the event the Court approves the Settlement, but declines to award a Class Representative Service Award in the amount requested by Class Counsel, the Settlement will nevertheless be binding on the Parties. However, if the Court declines to approve the Settlement, no Class Representative Service Awards shall be paid.

115.    CBA shall pay the Class Representative Service Awards by wire transfer to the Settlement Administrator not later than fifteen (15) calendar days after the Effective Date. The Settlement Administrator shall pay the Class Representative Service Awards to Plaintiffs within fifteen (15) calendar days of receiving the funds from CBA or thirty (30) calendar days of the Effective Date, whichever date is earlier. The Settlement Administrator shall issue an IRS Form 1099-MISC to Plaintiffs solely for the amount awarded by the Court for each Plaintiffs' Class Representative Service Award. Plaintiffs shall be solely and legally responsible to pay and all applicable taxes on their Class Representative Service Awards, and shall hold harmless CBA and Class Counsel from any claim or liability for

taxes, penalties, or interest arising as a result of the Class Representative Service Awards.

116.   Payment by CBA of the Class Representative Service Awards is separate from, and in addition to, the other relief afforded to the Settlement Class Members in this Agreement.

## VIII.   PRELIMINARY APPROVAL

**Motion for Preliminary Approval**

117.   As soon as reasonably practicable after the signing of this Settlement Agreement, Plaintiffs shall file an unopposed Motion for Preliminary Approval of Class Settlement that seeks entry of the Preliminary Approval Order, which, in accordance with the terms of this Agreement, for settlement purposes only would:

    a.   Preliminarily approve this Settlement Agreement;

    b.   Certify a Settlement Class under Federal Rule of Civil Procedure 23 composed of the Settlement Class Members;

    c.   Approve the Settlement Administrator;

    d.   Approve and authorize the contents of the Notice Plan and distribution of the Notice;

    e.   Approve and authorize the procedures for submitting Objections and Requests for Exclusion and the binding nature thereof;

    f.   Set deadlines for submitting papers in support of the Motion for Final Approval, the Motion for Attorneys' Fees, Costs, and Expenses and Class Representative Service Awards, and any responses to timely and valid Objections;

    g.   Schedule the Final Approval Hearing to determine whether Final Approval of the Settlement Agreement is warranted; and

h.  Stay all activity in the Action except to the extent necessary to effectuate this Agreement unless and until this Agreement is terminated pursuant to its terms and conditions.

**Certification of Settlement Class for Settlement Purposes Only**

118.  The Parties agree, for settlement purposes only, that the Settlement Class shall be certified and proceed as a class action under Federal Rule of Civil Procedure 23(b)(3), with a class consisting of all Settlement Class Members, and with Plaintiffs Theodore Broomfield and Simone Zimmer as Class Representatives, and with Class Counsel as counsel for the Settlement Class Members.

119.  In the event that the Court does not preliminarily or finally approve the Settlement Agreement, nothing herein shall be construed to alter the Court's September 25, 2018 Certification Order, or CBA's ability to contest that decision.

## IX.   FINAL APPROVAL

**Motion for Final Approval**

120.  Prior to the Final Approval Hearing, Class Counsel shall petition the Court for Final Approval and Order and Final Judgment that would:

a.  Confirm the certification of the Settlement Class as defined above;

b.  Dismiss this Action, with prejudice, upon the Effective Date;

c.  Decree that neither the Final Approval nor this Agreement constitutes an admission of liability, fault or wrongdoing;

d.  Release the Released Parties from the Released Claims of the Releasing Parties;

e.  Find that this Agreement is entered into in good faith, is reasonable, fair and adequate, and is in the best interest of the Settlement Class Members; and

29

f.   Make such orders as are necessary and appropriate to effectuate the terms and conditions of this Settlement Agreement.

121.   Prior to the Final Approval Hearing, Class Counsel and CBA shall have the right to respond to any Objections submitted by Settlement Class Members.

**Final Approval Hearing**

122.   The Court shall conduct a Final Approval Hearing so that the Court may review any objections to this Agreement, consider the fairness, reasonableness and adequacy of this Agreement and consider the Parties' petition for Final Approval and Class Counsel's Application for a Fee Award and for the Class Representatives' Service Awards. The date of the Final Approval Hearing shall be posted on the Settlement Website in advance of the hearing. If the date of the Final Approval Hearing is subsequently modified by the Court, no further notice is required to be published to Settlement Class Members, except that, the Parties will notify any Settlement Class Member who has filed a timely Objection in writing of any change to the date of the Final Approval Hearing.

**Dismissal of this Action**

123.   The Final Approval shall provide that this Action shall be dismissed, with prejudice, upon the Effective Date.

**X.    RELEASES**

**General Release from Liability**

124.   Upon Effective Date, each of the Plaintiffs and each Settlement Class Member who has not validly and timely submitted a Request for Exclusion shall be deemed to release and forever discharge any and all Released Parties of and from liability of any kind or type whatsoever for any and all Released Claims, and shall be permanently barred and enjoined

30

from initiating, asserting and/or prosecuting any Released Claim(s) against any Released Party in any court or forum. This Agreement shall be the sole and exclusive remedy available to the Releasing Parties for any and all Released Claims against the Released Parties. No Released Party shall be subject to liability or expense of any kind to any Releasing Party with respect to any Released Claim.

125. The Parties agree that they may hereafter discover facts in addition to or different from those they believe to be true with respect to the subject matter of this Agreement. The Parties agree that, notwithstanding the discovery of the existence of any such additional or different facts that, if known, would materially affect its decision to enter into this Agreement, the releases herein given shall be and remain in effect as a full, final and complete general release of the Released Claims and the Parties shall not be entitled to modify or set aside this Agreement, either in whole or in part, by reason thereof. The Parties hereby waive and relinquish, to the fullest extent permitted by law, the rights and benefits of any statute which might otherwise render unenforceable a release contained in this Agreement.

126. With respect to all Released Claims, Plaintiffs and each of the other Settlement Class Members who have not validly opted out of this Settlement agree that they are expressly waiving and relinquishing to the fullest extent permitted by law (a) the provisions, rights and benefits conferred by Section 1542 of the California Civil Code, which provides: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER

SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY" and (b) any law of any state or territory of the United States, federal law or principle of common law, or of international or foreign law, that is similar, comparable or equivalent to Section 1542 of the California Civil Code.

**XI.    Termination and Effect of Termination**

127.    Each Party shall have the right to terminate this Settlement Agreement if: (a) the Court denies preliminary approval of this Settlement Agreement (or grants preliminary approval through an order that is not substantially similar in form and substance to **Exhibit 4** hereto); (b) the Court denies final approval of this Settlement Agreement (or grants final approval through an order that materially differs in substance from **Exhibit 5** hereto); or (c) the Final Approval Order and Judgment do not become Final by reason of a higher court reversing final approval by the Court, and the Court thereafter declines to enter a further order or orders approving the Settlement on the terms set forth herein. If a Party elects to terminate this Settlement Agreement under this paragraph, that Party must provide written notice to the other Parties' counsel, by hand delivery, mail, or e-mail within ten (10) calendar days of the occurrence of the condition permitting termination.

128.    If the Settlement is not approved, the Parties shall meet and confer in good faith, in an effort to effectuate the material terms of the Settlement and/or negotiate a different settlement, consistent with the Parties' desire to resolve this Action. As part of this meet and confer process, the Parties shall contact the mediator (Bruce A. Edwards), or another mediator as mutually agreed by the Parties.

129.    Nothing shall prevent Plaintiffs and/or CBA from appealing or seeking other appropriate relief from an appellate court with respect to any denial by the Court of Final Approval of

the Settlement. In the event such appellate proceedings result, by order of the appellate court or by an order after remand or a combination thereof, in the entry of an order(s) whereby the Settlement is approved in a manner substantially consistent with the substantive terms and intent of this Settlement Agreement, and dismissing all claims in the Action with prejudice, and otherwise meeting the substantive criteria of this Agreement for approval of the Settlement, such order shall be treated as a Final Approval Order.

130.    If this Settlement Agreement is terminated or disapproved, or if the Effective Date should not occur for any reason, then: (a) this Settlement Agreement and all orders entered in connection therewith shall be rendered null and void; and (b) all Parties shall be deemed to have reverted to their respective status in the Action as of the date and time immediately preceding the execution of this Settlement Agreement and, except as otherwise expressly provided, the Parties shall stand in the same position and shall proceed in all respects as if this Settlement Agreement and any related orders had never been executed, entered into, or filed, except that the Parties shall not seek to recover from one another any attorneys' fees, costs, and expenses incurred in connection with this Settlement, including any Settlement Notice and Administration costs already incurred by the Settlement Administrator.

## XII.    Non-Admission of Fault or Liability

131.    This Agreement, whether or not consummated, and any communications exchanged or actions taken pursuant to or during the negotiation of this Agreement are for settlement purposes only. Neither the fact of nor the contents of this Agreement or its exhibits, nor any communications exchanged, nor actions taken, pursuant to or during the negotiation of this Agreement, shall constitute, be construed as, or be admissible in evidence as an

admission of the validity of any claim asserted or fact alleged in this Action or of any wrongdoing, fault, violation of law or liability of any kind on the part of CBA.

## XIII.  Miscellaneous

**Non-Admissibility**

132.  This Agreement and all negotiations, correspondence and communications leading up to its execution shall be deemed to be within the protection of Federal Rule of Evidence 408 and any analogous state or federal rules or principles. Neither this Agreement, nor any terms, conditions, contents or provisions hereof or exhibits hereto, nor any negotiations, correspondence or communications leading up to the execution of this Agreement, shall constitute a precedent or be admissible for any purpose in any proceeding; provided, however, that this Agreement shall be admissible in any proceeding related to the approval of this Agreement, to enforce any of its terms and conditions, to support or defend this Agreement in an appeal from an order granting or denying Final Approval, or to enforce or assert a claim or defense of *res judicata*, *collateral estoppel*, claim preclusion, issue preclusion, settlement, release, merger and bar, or any similar claim or defense against the Plaintiffs, any Settlement Class Member, or any third party.

**Reservation of Rights**

133.  This Settlement Agreement is made without prejudice to the right of CBA to take any position in its defense of the Action, should this Agreement not be approved or implemented.

**Dispute Resolution**

134.  If Plaintiffs or Class Counsel, on behalf of Plaintiffs or any Settlement Class Member, or CBA's Counsel, on behalf of CBA, at any time believe that the other Party has breached

or acted contrary to the Agreement, that Party shall notify the other Party in writing of the alleged violation. The Parties shall meet and confer in good faith to resolve the dispute. If the Parties are unable to resolve their differences within twenty (20) calendar days, either Party shall first contact the mediator (Bruce A. Edwards) to try to resolve the dispute. If that proves unsuccessful, the Party may file an appropriate motion for enforcement with the Court.

**Non-Disparagement**

135.   Class Counsel and Class Representatives agree not to disparage or otherwise take any action which could reasonably be expected to adversely affect the reputation of CBA regarding this matter. CBA and its attorneys agree not to disparage or otherwise take any action which could reasonably be expected to adversely affect the personal or professional reputation of Class Counsel and Class Representatives regarding this matter.

**Authority to Execute**

136.   The Parties warrant and represent that the persons executing this Agreement are duly authorized to do so.

**Assignment of Claims**

137.   The Parties warrant and represent that no claim or any portion of any claim referenced or released in this Agreement has been sold, assigned, conveyed, or otherwise transferred to any other entity or Person.

**Reading and Understanding**

138.   The Parties warrant and represent that they have carefully read this Agreement, have consulted their attorneys regarding this Agreement, and fully understand and voluntarily accept the terms and conditions of this Agreement.

**Reliance on Own Judgment**

139.    The Parties warrant and represent that they have relied upon their own judgment and that of their legal counsel regarding the sufficient and agreed upon consideration for this Agreement and that no statement or representation by any of the other Parties or their agents, employees, officers, directors or legal representatives influenced or induced them to execute this Agreement.

140.    This Agreement shall be construed under and governed by the laws of the State of California, applied without regard to laws applicable to choice of law.

**Jurisdiction of the Court**

141.    The Court shall retain jurisdiction with respect to the interpretation, implementation and enforcement of the terms of this Agreement and all orders and judgments entered in connection therewith, and the parties and their counsel hereto submit to the jurisdiction of the Court for purposes of interpreting, implementing and enforcing the resolution embodied in this Agreement and all orders and judgments entered in connection therewith.

**Entire Agreement**

142.    This Agreement, including all exhibits hereto, shall constitute the entire Agreement among the Parties with regard to the subject of this Agreement and shall supersede any previous agreements, representations, communications and understandings among the Parties with respect to the subject matter of this Agreement.

**Joint Preparation**

143.    This Agreement shall be construed as if the Parties jointly prepared it, and any uncertainty or ambiguity shall not be interpreted against any of the Parties.

**Recitals**

144.    The Recitals are a material part of this Agreement and are incorporated herein in their

entirety.

**Captions**

145.    The captions used in this Agreement are for convenience and identification purposes only,

and are not part of this Agreement.

**Amendment or Modification**

146.    This Agreement may not be changed, modified, or amended except in writing signed by

all Parties (or their successors-in-interest) and approved by the Court. Notwithstanding the

foregoing, however, the claims process set forth above may be modified by mutual

agreement of the Parties without Court approval and the Parties may agree to reasonable

extensions of time in which to accomplish the tasks required by the terms and conditions

of this Agreement.

**Cooperation**

147.    The Parties and their counsel agree to cooperate fully with one another and to use their

best efforts to effectuate the Settlement, including without limitation in seeking

preliminary and final Court approval of the Settlement embodied herein, carrying out the

terms of this Settlement, and promptly agreeing upon and executing all such other

documentation as may be reasonably required to obtain Final Approval by the Court of

the Settlement.

**No Waiver**

148.     The waiver of any term or condition or breach of this Agreement shall not be deemed to

be a waiver of any other term or condition or breach of this Agreement and shall not be

deemed to be a continuing waiver.

**Parties' Waiver of Right to be Excluded and Object.**

149.     The Parties agree that by signing this Agreement they are bound to these terms. The Parties

agree to not object to or appeal from this Agreement or the exhibits attached hereto.

Plaintiffs further agree not to request to be excluded from the Class.

[SIGNATURES ON FOLLOWING PAGES]

APPROVED AND AGREED TO BY THE PLAINTIFFS

By: _____          Date: _____

    Theodore Broomfield

By: _____          Date: _5/22/19_____

    Simone Zimmer

APPROVED AND AGREED TO BY CRAFT BREW ALLIANCE, INC.

By: _____          Date: _____

Title: _____

APPROVED AS TO FORM BY CLASS COUNSEL

By: _____          Date: _____

    Timothy J. Peter
    Benjamin Heikali
    Joshua Nassir

    Faruqi & Faruqi LLP

By: _____          Date: _5/22/19_____

    Aubry Wand

    The Wand Law Firm, P.C.

APPROVED AND AGREED TO BY THE PLAINTIFFS

By: _____       Date: __5 /23 /19__

     Theodore Broomfield


By: _____       Date: _____

     Simone Zimmer


APPROVED AND AGREED TO BY CRAFT BREW ALLIANCE, INC.


By: _____       Date: _____

Title: _____


APPROVED AS TO FORM BY CLASS COUNSEL


By: _____       Date: _____

     Timothy J. Peter
     Benjamin Heikali
     Joshua Nassir

     Faruqi & Faruqi LLP


By: _____       Date: _____

     Aubry Wand

     The Wand Law Firm, P.C.


39

APPROVED AND AGREED TO BY THE PLAINTIFFS


By: _____          Date: _____

    Theodore Broomfield


By: _____          Date: _____

    Simone Zimmer


APPROVED AND AGREED TO BY CRAFT BREW ALLIANCE, INC.


By: _____          Date: _____

Title: _____


APPROVED AS TO FORM BY CLASS COUNSEL


By: _____          Date: 5/23/19

    Timothy J. Peter
    Benjamin Heikali
    Joshua Nassir

    Faruqi & Faruqi LLP


By: _____          Date: _____

    Aubry Wand

    The Wand Law Firm, P.C.

APPROVED AND AGREED TO BY THE PLAINTIFFS


By: _____          Date: _____

     Theodore Broomfield


By: _____          Date: _____

     Simone Zimmer


APPROVED AND AGREED TO BY CRAFT BREW ALLIANCE, INC.

By: _____          Date: _____5/23/2019_____

Title: __General Counsel/Secretary__


APPROVED AS TO FORM BY CLASS COUNSEL


By: _____          Date: _____

     Timothy J. Peter
     Benjamin Heikali
     Joshua Nassir

     Faruqi & Faruqi LLP


By: _____          Date: _____

     Aubry Wand

     The Wand Law Firm, P.C.

APPROVED AS TO FORM BY COUNSEL FOR CRAFT BREW ALLIANCE, INC.

By: _____     Date: _5/23/19_____
       Tammy B. Webb
       John K. Sherk III

       Shook, Hardy & Bacon

# Exhibit 1

*Broomfield, et al. v. Craft Brew Alliance, Inc.*
## CLAIM FORM

If you purchased one or more Kona Beers* at any time from February 28, 2013 through _____, you can complete this Claim Form to be eligible to receive payment under the Settlement.

*Kona Beers include: Longboard Island Lager, Hanalei IPA, Castaway IPA, Big Wave Golden Ale, Lemongrass Luau, Wailua Wheat, Fire Rock Pale Ale, Pipeline Porter, Lavaman Red Ale, Koko Brown Ale, Kua Bay IPA, Gold Cliff IPA, Kanaha Blonde Ale, Liquid Aloha Variety Pack, Island Hopper Variety Pack, Happy Mahalo Variety Pack, and Wave Rider Tandem Pack.

Claim Forms must be completed and submitted by no later than _____. Claim Forms can be submitted electronically at www. _____ or by mail to:

*Broomfield v. Craft Brew Alliance, Inc.*
c/o CPT Group, Inc.
50 Corporate Park
Irvine, CA 92606

---

## PLEASE COMPLETE THE FOLLOWING INFORMATION:

Name (First and Last): _____

Street Address: _____

City:_____State:_____Zip: \_\_ \_\_ \_\_ \_\_ \_\_ - \_\_ \_\_ \_\_ \_\_

Phone Number: (\_\_\_\_)\_\_\_- _____     Email Address: _____

You have two options for filing your claim: if you do not have Proof Purchase, choose **Option A** below. If you have Proof Purchase, choose **Option B** below. For either **Option A** or **Option B**, you will be eligible to receive payments for each qualifying purchase of Kona Beers as follows:

- 4-pack Kona Beers: $1.25 per unit.
- 6-pack Kona Beers: $1.25 per unit.
- 12-pack Kona Beers: $2.00 per unit.
- 24-pack Kona Beers: $2.75 per unit.

Under **Option A,** you can receive up to $10 *per household* depending on the number of Kona Beers you purchased.

Under **Option B**, you can receive up to $20 *per household* depending on the number of Kona Beers you purchased.

---

## Option A:
Submit your Claim *without* Proof of Purchase.

**State the number of Kona Beers you purchased between February 28, 2013 through _____.**

| Unit Type | Number of Units Purchased (e.g., 1, 2, 3, etc.) |
|---|---|
| 4-pack Kona Beers | [space blank; but drop down for online form] |
| 6-pack Kona Beers | [space blank; but drop down for online form] |
| 12-pack Kona Beers | [space blank; but drop down for online form] |
| 24-pack Kona Beers | [space blank; but drop down for online form] |
| TOTAL ($) | [space blank; but default to Max for online form] |

Questions? Visit www.-------- or call -------

**Option B:**
Submit your Claim *with* valid Proof of Purchase:

**State the number of Kona Beers you purchased between February 28, 2013 through** _____.

| Unit Type | Number of Units Purchased (e.g., 1, 2, 3, etc.) |
|---|---|
| 4-pack Kona Beers | [space blank; but drop down for online form] |
| 6-pack Kona Beers | [space blank; but drop down for online form] |
| 12-pack Kona Beers | [space blank; but drop down for online form] |
| 24-pack Kona Beers | [space blank; but drop down for online form] |
| TOTAL ($) | [space blank; but default to Max for online form] |

**Valid Proof of Purchase includes the following:**

☐ receipt(s)
☐ a copy of the UPC from the package(s) of Kona Beers
☐ a copy of the purchase on your credit statement
☐ other document that you believe evidences your purchase of Kona Beers

*Please attach proof of purchase for the items selected in the chart above for valid claim consideration.*

---

**Mark the box stating your preferred method of payment**

[ ] Payment via a Settlement Check - *If selecting this option, please double-check the* <u>*address information*</u> *at the top of this form is correct and current.*

[ ] Electronic Payment via eCheck - *If selecting this option, please double-check the* <u>*email address*</u> *provided at the top of this form is correct and current.*

[ ] Direct Deposit - *If selecting this option, please double-check the* <u>*email address*</u> *provided at the top of this form is correct and current.*

---

**Sign and Date the Affirmation below:**

I hereby affirm, under penalty of perjury under the laws of the United States of America, each of the following:

- I personally purchased the Kona Beers listed above.
- I was 21 years or older at the time that I purchased the Kona Beers listed above.
- I understand that by not opting out of the Settlement, I have given a complete Release of all Released Claims.
- The information provided in this Claim Form is true and correct to the best of my knowledge.

_____        _____
Signature                                                                            Date

**ACCURATE CLAIMS PROCESSING TAKES TIME. THANK YOU FOR YOUR PATIENCE.**

Reminder Checklist:

1. Please sign the above Claim Form and complete all of the information requested above.
2. Enclose a copy of your Proof(s) of Purchase, if you have them, along with the Claim Form.
3. Keep a copy of your Claim Form and supporting documentation for your records.

Questions? Visit www.-------- or call --------

# Exhibit 2

## If you purchased Kona Beer you could get up to $20 from a proposed class action settlement

Th Court has tentatively approved a proposed settlement in *Broomfield v. Craft Brew Alliance, Inc.*, No. 5:17-cv-01027-BLF, a class action alleging Craft Brew Alliance, Inc. ("CBA")'s packaging and marketing of its Kona Beer products portrayed the beer as being brewed in Hawaii, when Plaintiffs claimed they were not.

If you purchased Kona Beer between February 28, 2013 through _____, you may be entitled to a cash payment as part of the settlement up to **$20** with proof of purchase or up to **$10** without proof of purchase.

To receive a monetary payment, you **must submit** a Claim Form by [Claims Deadline]. Claim Forms can be found at www.---------- or can be requested by calling _____.

If you do not want to be bound by the Settlement, you must submit a written Request for Exclusion. If you exclude yourself, you cannot get a payment, but you preserve the right to sue CBA for the claims alleged in the lawsuit.  Any Request for Exclusion must be submitted by [_____], either online at www.------.com or mailed and postmarked to _____.

You can also object to the Settlement. An objection is a written statement explaining why do not think the Settlement is fair. Any objection must be submitted to the Court by [_____]. You cannot object if you exclude yourself from the Settlement.

There will be a final approval hearing for this settlement to determine whether the Court will approve of the settlement, scheduled for [MONTH DAY, YEAR] at [TIME] in the Robert F. Peckham Federal Building, Courtroom 3, located at 280 South 1st Street, Courtroom 3 San Jose, CA 95113.

This Notice summarizes the Settlement. For the precise terms and conditions of the Settlement, please see the Settlement Agreement available at www._____.com, by contacting Class Counsel whose contact information can be found at www. _____.com, by contacting the Settlement Administrator at 1-800-XXX-XXXX, by accessing the Court docket in this case, for a fee, through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Northern District of California, 280 South 1st Street, Courtroom 3 San Jose, CA 95113, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT OR THE CLAIM PROCESS

# Exhibit 3

**United States District Court for the Northern District of California**
*Broomfield v. Craft Brew Alliance, Inc.*, Case No. 5:17-cv-01027-BLF

**If You Purchased Kona Beer, You May Be Eligible to Receive Payment from a Class Action Settlement**

*A federal court authorized this notice.  This is not a solicitation from a lawyer.*

- A Settlement has been reached in a class action lawsuit. Purchasers of Kona Brewing Company Beer ("Kona Beer") sued Craft Brew Alliance, Inc. ("CBA"), alleging statutory consumer protection and common law claims based on representations that the Kona Beers are brewed in Hawaii when Plaintiffs claim they are not. CBA denies the allegations in the lawsuit. The Court has not decided that CBA did anything wrong. The Parties agreed to the Settlement to resolve the lawsuit. For instruction on how to obtain the Settlement Agreement, please see question 16.

- This Notice explains the lawsuit, the Settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them. Judge Beth Labson Freeman of the United States District Court for the Northern District of California is overseeing the Settlement.

- You are eligible to participate in this Settlement if you purchased any 4-pack, 6-pack, 12-pack, or 24-pack variety of Kona Beer from February 28, 2013 through _____. To receive payment under the Settlement, you must submit a Claim Form. Settlement Class Members who do not exclude themselves from the Settlement will be bound by the Settlement even if they do not submit Claim Forms.

- For Settlement Class Members who submit valid Claim Forms ***without*** Proof of Purchase, CBA will pay up to $10, depending on the number of Kona Beers purchased from February 28, 2013 through _____.

- For Settlement Class Members who submit valid Claim Forms ***with*** Proof of Purchase, CBA will pay up to $20, depending on the number of Kona Beers purchased from February 28, 2013 through _____.

- The Parties have further agreed that CBA will pay the costs to administer this Settlement, plus reasonable attorneys' fees and costs, and a payment to the two Plaintiffs.

**Please read this Notice carefully and in its entirety.
Your rights may be affected by the proposed Settlement of this lawsuit,
and you have a choice to make now about how to act:**

| YOUR LEGAL RIGHTS AND OPTIONS | |
|---|---|
| **SUBMIT A CLAIM FORM BY [DATE]** | **This is the only way to receive a monetary payment from the Settlement.** By remaining in the Settlement, whether or not you submit a Claim Form, you will give up any rights to sue CBA separately about the same legal claims in this lawsuit.<br><br>Claim Forms are available at www.--------------.com or by calling ------------. For more detail about the claim process, please see questions 5, 6 and 7 below. |
| **EXCLUDE YOURSELF FROM THE CLASS BY [DATE]** | If you request to be excluded from the Settlement, you will not be eligible to receive the monetary payment, but you will keep your right to sue CBA about the same legal claims in this lawsuit. Requests for Exclusion must be submitted by [date] on www.---------- or mailed to [address]. For more detail about excluding yourself from the Settlement, please see questions 8 and 10 below. |
| **OBJECT BY [DATE]** | You may write to the Court about why you do, or do not, like the Settlement. You must remain in the Settlement (i.e., not exclude yourself) to object to the Settlement. Objections must be submitted to the Court by [date]. For more detail about objecting to the Settlement, please see questions 9 and 10 below. |
| **APPEAR IN THE LAWSUIT OR ATTEND THE FINAL APPROVAL HEARING ON [DATE]** | You may ask to speak in Court about the fairness of the Settlement. Written notice of your intent to appear at the final approval hearing in the Lawsuit must be filed with your Objection and submitted to the Court by [date]. You may enter your appearance in Court through an attorney at your own expense if you so desire. For more detail about appearing in this lawsuit or attending the final approval hearing, please see questions 9, 13, 14 and 15 below. |
| **DO NOTHING** | By doing nothing, you will *not* receive any monetary payment but you will also give up any rights to sue CBA separately about the same legal claims in this lawsuit. |

- Your rights and options – **and the deadlines to exercise them** – are further explained in this Notice.

- The Court in charge of this case still has to decide whether to approve the Settlement. The Settlement Benefit (*i.e.*, the monetary payments described herein) will be made available if the Court approves the Settlement, and after any appeals are resolved, if they are resolved in favor of settlement approval.

---

**Questions?  Visit www._____.**
**or contact the Settlement Administrator at [ _____ ]**

- If you have any questions, please read on and/or visit www.-------------.com or contact Class Counsel or the Settlement Administrator listed in questions 16 below.

BASIC INFORMATION

| 1. | Why did I get this notice? |

If you purchased any 4-pack, 6-pack, 12-pack, or 24-pack variety of Kona Beer from February 28, 2013 through _____, you may be a Class Member and have a right to know about the Settlement and your options. If you have received word of this Notice by e-mail, you have been identified from available records as a possible purchaser of the Kona Beer at issue in the lawsuit. You also may have received this Notice because you requested more information after reading the Settlement Website. If the Court approves the Settlement, and if objections and all appeals are resolved in favor of settlement approval, a settlement administrator approved by the Court will oversee the distribution of the Settlement Benefits that the proposed Settlement allows. You can follow the progress of the Settlement on the settlement website, www.-----------.

| 2. | What is this class action lawsuit about? |

The persons who sued are called the Plaintiffs, and the company they sued, Craft Brew Alliance, Inc., is called the Defendant or "CBA." Plaintiffs and CBA are collectively referred to as "the Parties." Plaintiffs brought this lawsuit on behalf of all other consumers who similarly purchased Kona Beers during the time period of February 28, 2013 through _____ ("Class Members"). This lawsuit alleges that Kona Beers were deceptively advertised as being brewed in Hawaii when they are actually brewed in the continental United States. CBA denies the allegations and has included on all Kona labels the mainland locations where Kona Beers are brewed throughout the time period. The Court has not determined which side is right. Rather, the Parties have agreed to settle the lawsuit to avoid the uncertainties, expenses and expenditure of resources associated with ongoing litigation.

| 3. | Am I part of the Class? |

If you purchased any 4-pack, 6-pack, 12-pack, or 24-pack variety of Kona Beer from February 28, 2013 through _____, you may be a Class Member.

Eligible varieties of Kona Beers include Longboard Island Lager, Hanalei IPA, Castaway IPA, Big Wave Golden Ale, Lemongrass Luau, Wailua Wheat, Fire Rock Pale Ale, Pipeline Porter, Lavaman Red Ale, Koko Brown Ale, Kua Bay IPA, Gold Cliff IPA, Kanaha Blonde Ale, Liquid Aloha Variety Pack, Island Hopper Variety Pack, Happy Mahalo Variety Pack, and Wave Rider Tandem Pack. Kona Beers that are sold without packaging (i.e., loose bottles, loose cans, and draft beer) are not included.

You are **not** a member of the Class if: (a) you have timely and properly excluded yourself from the Settlement, explained in Question 8 below, (b) you are a retailer or distributor of Kona Beer or purchased Kona Beer for the purpose of re-selling the beer, (c) you are an employee of CBA or the law firms of the law firms representing the Parties, or (d) you are governmental entity or part of the Court's immediate family or the Court's staff.

THE SETTLEMENT BENEFITS

| 4. | What does the Settlement provide? |
|---|---|

The Settlement provides the following benefits: (1) monetary compensation to Class Members who submit valid and timely Claim Forms; and (2) injunctive relief whereby CBA will make certain changes to its business practices with respect to Kona Beers. Each is summarized below.

*Monetary Relief.*  The Settlement allows Class Members who submit timely and valid Claim Forms, *without* proof of purchase, to recover up to $10 per household, depending on the number of eligible Kona Beers purchased. Class Members who submit timely and valid Claim Forms, *with* proof of purchase, can recover up to $20 per household, depending on the number of eligible Kona Beers purchased. The following payments can be claimed for each eligible Kona Beer:

    i.      4-pack Kona Beers: $1.25 per unit.

    ii.     6-pack Kona Beers: $1.25 per unit.

    iii.    12-pack Kona Beers: $2.00 per unit.

    iv.    24-pack Kona Beers: $2.75 per unit

*Injunctive Relief*. Under the Settlement, CBA has implemented as a result of this lawsuit, or will implement, the following practices with respect to the Kona Beers:

    i. CBA will include a statement on all Kona Beer packaging that lists each location where Kona Beers are brewed or lists the location or locations at which a particular Kona Beer is brewed, for a minimum of four years after the Effective Date of the Settlement. In addition, for a minimum of four years after the Effective Date of the Settlement, CBA shall revise the "invitation" statement on the top packaging, when used, to read: "Since 1994, Kona Brewing Co. has been committed to making craft ales and lagers of uncompromised quality.  Come visit us at our Hawaii Brewery & Pub in Kailua-Kona, or at our pub on Oahu! Mahalo!"

    ii. CBA's General Counsel or his designee will conduct yearly meetings with CBA's marketing to review the injunctive terms of this Settlement, for a minimum of four years after the Effective Date of the Settlement.

CBA will pay the costs to administer this Settlement, reasonable attorneys' fees, costs and expenses, and a payment to the Plaintiffs (see question 12 below).

A more detailed description of the foregoing can also be found in the Settlement Agreement here [insert hyperlink] or on the website --------------.

| 5. | When will I get my monetary payment? |
|---|---|

The hearing to consider the fairness of the Settlement is scheduled for [Final Approval Hearing Date]. If the Court approves the Settlement, and you submit a Claim Form that is approved by the Settlement Administrator, you will receive payment within approximately 30

---

**Questions?  Visit www._____.**
**or contact the Settlement Administrator at [_____]**

days after the Settlement has been finally approved and/or after any appeals process is complete approving the Settlement. The payment will be made in the form of a check or via electronic payment, whichever you prefer.

### HOW TO GET THE SETTLEMENT BENEFITS

| 6. | How do I get my monetary payment? |
|---|---|

If you are a Class Member and want to receive a payment under the Settlement, you must complete and submit a Claim Form. Claims Forms can be found and submitted through the Settlement Website: _____ by no later than [Claims Deadline] or they can be mailed and postmarked to _____ by no later than [Claims Deadline].

To submit a Claim Form on-line or to request a paper copy, go to www._____.com or call toll free, 1-800-XXX-XXXX.

### YOUR RIGHTS AND OPTIONS

| 7. | What happens if I do nothing at all? |
|---|---|

If you do nothing, then you will remain in the Class and will not receive any payment from this Settlement. If the Court approves the Settlement, you will be bound by its terms, you will no longer have the ability to sue with respect to the claims being resolved by the Settlement, and your claims will be released and dismissed.

The Settlement Agreement describes the released claims in more detail, so please read it carefully. If you have any questions, you can contact the lawyers listed in question 16 for free to discuss, or you can talk to another lawyer of your own choosing if you have questions about what this means.

| 8. | How do I exclude myself from the Settlement? |
|---|---|

If you exclude yourself from the Settlement – which is sometimes called "opting-out" – you will not get any money from the Settlement. However, you may then be able to separately sue or continue to sue CBA for the legal claims that are the subject of the lawsuit.

To exclude yourself from the Settlement, you must submit a valid and timely Request for Exclusion to the Settlement Administrator. In order to be valid, your Request for Exclusion must state that you "want to be excluded from the Settlement in *Broomfield v. Craft Brew Alliance, Inc.*, Case No. 5:17-cv-01027-BLF" or words to similar effect that make clear your intention to be excluded from the Settlement. Your written Request for Exclusion must also include your name, current address, and telephone number. The request must also be signed and dated by you. In order to be timely, your request for exclusion must be submitted by [Objection/Exclusion Deadline] at www.---------- or by U.S. Mail, postmarked on or before that date.

| 9. | How do I object to the Settlement? |
|---|---|

If you are a Class Member, you can object to the Settlement if you do not think it is fair. The Court will consider your views. However, you cannot ask the Court to order a different

settlement; the Court can only approve or reject the Settlement. If the Court denies approval, no settlement payments will be sent out and the lawsuit will continue. If this is what you want to happen, you must object.

To object, you must submit to the Court a written objection entitled "Objection to Class Settlement in *Broomfield v. Craft Brew Alliance, Inc.*, No. 5:17-cv-01027-BLF" that identifies all the reasons for your objections and any legal and factual support for those reasons. Your written objection must also include (1) your name, address, telephone number, email address if available, and if represented by counsel, the foregoing information for your counsel; (2) whether you or your counsel intend on appearing at the Final Approval Hearing; (3) whether the objection applies only to you, to a specific subset of the Class, or the entire Class; (4) information/documents showing that you are a Class Member (i.e. Proof of Purchase or a verification under penalty of perjury as to purchase of Kona Beer during the Class Period). If you or an attorney assisting you with your objection have objected to any class action settlement in the previous 5 years, then you must include a list of those objections identifying each case by its caption or title. If you or your attorney have not objected to any class action settlements in the previous 5 years, then your objection will state that.

You must submit your written objection to the Court, either by (1) mailing them to the Class Action Clerk, United States District Court for the Northern District of California, 280 South 1st Street, Courtroom 3, San Jose, CA 95113, or (2) filing them in person at any location of the United States District Court for the Northern District of California or via the ECF electronic filing system.

The objection must be submitted by [Objection/Exclusion Deadline].

| 10. | What is the difference between objecting and excluding myself from the Settlement? |
|---|---|

Objecting means telling the Court that you do not like something about the Settlement. You can object only if you stay in the Class. Excluding yourself from the Settlement means that you do not want to be part of the Class. If you exclude yourself, then you have no basis to object to the Settlement.

### THE LAWYERS REPRESENTING YOU

| 11. | Do I have a lawyer in this case? |
|---|---|

The Court appointed the law firms of Faruqi & Faruqi, LLP and the Wand Law Firm, P.C. to represent Class Members as "Class Counsel." Class Counsel believe, after conducting an extensive investigation, that the Settlement is fair, reasonable, and in the best interests of the Class Members. You will not be charged for these lawyers. If you want to be represented by a different lawyer in this case, you may hire one at your own expense. If you have any questions about the Settlement, you can contact Class Counsel at the contact information listed in Question 16.

**Questions?  Visit www._____.**
**or contact the Settlement Administrator at [_____]**

| 12. | How will the lawyers be paid? |
|---|---|

In addition to the monetary benefit to be paid to the Class Members, CBA has agreed to pay Class Counsel's fees and costs in an amount to be determined by the Court not to exceed $2,900,000. The Court may award less than this amount. Any fees, costs, and expenses that are awarded to Class Counsel will be paid by CBA separately and in addition to the monetary benefits to Class Members. Also, subject to approval by the Court, CBA has agreed to pay $5,000 to each of the two Plaintiffs ("Service Awards"), in recognition of their efforts on behalf of the Class.

### THE COURT'S FINAL APPROVAL HEARING FOR THE SETTLEMENT

| 13. | Where and when will the Court decide whether to approve the Settlement? |
|---|---|

The Court will hold the Final Approval at [time] on [date] in Courtroom 3 at the Robert F. Peckham Federal Building, located at 280 South 1st Street, Courtroom 3 San Jose, CA 95113. The purpose of the hearing will be for the Court to determine whether to approve the Settlement as fair, reasonable, adequate, and in the best interests of the Class; to consider Class Counsel's request for attorneys' fees and costs; and to consider the request for the Services Awards to the Plaintiffs. At that hearing, the Court will be available to hear any Objections and arguments concerning the fairness of the Settlement.

The hearing may be postponed to a different date or time without notice, so please check www._____.com or call 1-800-XXX-XXXX from time to time. If, however, you timely objected to the Settlement and advised the Court that you intend to appear and speak at the Final Approval Hearing, you will receive notice of any change in the time and date of such hearing.

| 14. | Do I have to come to the Final Approval Hearing? |
|---|---|

No. You do not need to attend the Final Approval Hearing in order to receive payment under the Settlement. Class Counsel will answer any questions the Court may have on behalf of the Class Members. But, you are welcome to attend the Final Approval Hearing at your own expense. If you submit an Objection, you do not have to come to Court to talk about it. If you submitted your Objection on time, the Court will consider it. You may also pay to have another lawyer attend on your behalf, but that is not required.

| 15. | May I speak at the Final Approval Hearing? |
|---|---|

Yes. You, or any lawyer you retain, may ask the Court for permission to speak at the Final Approval Hearing. To do so, you must include in your Objection to the Settlement a statement saying that it is your intent to appear at the Final Approval Hearing. Your Objection and notice of intent to appear must be submitted to the Court and postmarked no later than [Objection/Exclusion Deadline].

---

**Questions?  Visit www._____.**
**or contact the Settlement Administrator at [_____]**

GETTING MORE INFORMATION

| 16. | Are more details available? |
|-----|------------------------------|

Yes. This Notice summarizes the Settlement. For the precise terms and conditions of the Settlement, please see the Settlement Agreement available at www._____.com, by contacting Class Counsel at the information listed below, or by accessing the Court docket in this case, for a fee, through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Northern District of California, 280 South 1st Street, Courtroom 3 San Jose, CA 95113, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays. You can also call the Settlement Administrator at 1-800-XXX-XXXX.

| Class Counsel Contact Information |
|---|
| FARUQI & FARUQI, LLP<br>Joshua Nassir<br>10866 Wilshire Boulevard, Suite 1470<br>Los Angeles, CA 90024<br>Telephone: (424) 256-2884<br><br>THE WAND LAW FIRM, P.C.<br>Aubry Wand<br>400 Corporate Pointe, Suite 300<br>Culver City, California 90230<br>Telephone: (310) 590-4503<br><br>Email: konabeersettlement@gmail.com |

**PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT OR THE CLAIM PROCESS**

# Exhibit 4

1
2
3
4
5
6
7
8
9
10

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| THEODORE BROOMFIELD, *et al.*,<br><br>            Plaintiffs,<br><br>      v.<br><br>CRAFT BREW ALLIANCE, INC., *et al.*,<br><br>            Defendants. | CASE NO.: 5:17-cv-01027-BLF<br><br>**[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |

## [PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL
## OF CLASS ACTION SETTLEMENT

Plaintiffs Theodore Broomfield and Simone Zimmer ("Plaintiffs") and Defendant Craft Brew Alliance, Inc. ( "Defendant" or "CBA") have entered into a Settlement Agreement, which, together with the exhibits attached thereto, sets forth the terms and conditions for a proposed settlement and dismissal of the Action with prejudice as to CBA upon the terms and conditions set forth therein (the "Settlement Agreement").

The Court has before it Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Motion") (ECF No. ☐ ). After reviewing the Motion, the Settlement Agreement and exhibits thereto, the arguments and authorities presented by the Parties and their counsel at the Preliminary Approval Hearing held on June 13, 2019 and the record in the Action, and good cause appearing,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

1.      Terms and phrases in this Order shall have the same meaning as ascribed to them in the Settlement Agreement, unless otherwise defined herein.

2.      The Parties have moved the Court for an order approving the Settlement of the Action in accordance with the Settlement Agreement, which, together with the documents incorporated therein, sets forth the terms and conditions for a proposed settlement and dismissal of the Action with prejudice, and the Court having read and considered the Settlement Agreement and having heard the Parties, hereby preliminarily approves the Settlement Agreement in its entirety subject to the Final Approval Hearing referred to in Paragraph 20 of this Order.

3.      This Court finds that it has jurisdiction over the subject matter of this Action and over all Parties to the Action.

4.      The Court finds that, subject to the Final Approval Hearing, the Settlement Agreement is fair, reasonable, and adequate, within the range of possible approval, and in the best interests of the Settlement Class defined below. The Court further finds that the Settlement Agreement substantially fulfills the purposes and objectives of the class action, and provides substantial relief to the Settlement Class without the risks, burdens, costs, or delay associated with

continued litigation, trial, and/or appeal. The Court also finds that the Settlement Agreement: (a) is the result of arm's-length negotiations between experienced class action attorneys; (b) is sufficient to warrant notice of the Settlement and the Final Approval Hearing to be disseminated to the Settlement Class; (c) meets all applicable requirements of law, including Federal Rule of Civil Procedure 23 and the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715, the U.S. Constitution, and the Northern District of California's Procedural Guidance for Class Action Settlements; and (d) is not a finding or admission of liability by CBA or any other person(s), nor a finding of the validity of any claims asserted in the Action or of any wrongdoing or any violation of law.

## Certification of the Settlement Class

5.     For purposes of settlement only: (a) Faruqi & Faruqi, LLP and the Wand Law Firm, P.C. are appointed Class Counsel for the Settlement Class; and (b) Plaintiffs Theodore Broomfield and Simone Zimmer are appointed Class Representatives for the Settlement Class. The Court finds that these attorneys are competent and capable of exercising the responsibilities of Settlement Class Counsel and that Plaintiffs will adequately protect the interests of the Settlement Class defined below.

6.     For purposes of settlement only, the Court conditionally certifies the following Settlement Class as defined in the Settlement Agreement:

> All Persons who purchased any four-pack, six-pack, twelve-pack or twenty-four pack of Kona Beers in the United States, it territories, or at any Untied States military facility, during the Class Period.

For the purposes of this definition, individuals living in the same household shall be deemed to be a single Class Member.

Kona Beers are defined as all 4-pack, 6-pack, 12-pack, or 24-pack of Longboard Island Lager, Hanalei IPA, Castaway IPA, Big Wave Golden Ale, Lemongrass Luau, Wailua Wheat, Fire Rock Pale Ale, Pipeline Porter, Lavaman Red Ale, Koko Brown Ale, Kua Bay IPA, Gold Cliff IPA, Kanaha Blonde Ale, Liquid Aloha Variety Pack, Island Hopper Variety Pack, Happy Mahalo

Variety Pack, and Wave Rider Tandem Pack. Excluded from this definition are all Kona Beers that are sold without packaging (i.e., loose bottles, loose cans, and draft beer).

Excluded from the Settlement Class are: (a) CBA's employees, officers and directors, (b) distributors, retailers or re-sellers of Kona Beers, (c) governmental entities, (d) persons who timely and properly exclude themselves from the Settlement Class as provided herein, (e) the Court, the Court's immediate family, and Court staff, and (f) counsel of record for the Parties and their respective law firms.

7.     The Court finds, subject to the Final Approval Hearing referred to in Paragraph 20 below, that, solely within the context of and for the purposes of settlement only, the Settlement Class satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure, specifically, that: (a) the Settlement Class is so numerous that joinder of all members is impracticable; (b) there are questions of fact and law common to the Settlement Class; (c) the claims of the Class Representatives are typical of the claims of the members of the Settlement Class; (d) the Class Representatives and Class Counsel will fairly and adequately protect the interests of the members of the Settlement Class; (d) common questions of law or fact predominate over questions affecting individual members; and (e) a class action is a superior method for fairly and efficiently adjudicating the Action.

8.     If the Settlement Agreement does not receive the Court's final approval, if final approval is reversed on appeal, or if the Settlement Agreement is terminated or otherwise fails to become effective, the Court's grant of conditional class certification of the Settlement Class shall be vacated, the Parties shall revert to their positions in the Action as they existed prior to the Settlement Agreement, and the Class Representatives and the Class Members will once again bear the burden to prove their claims at trial.

**Notice and Administration**

9.     The Court approves, as to form, content, and distribution, the Notice Plan set forth in the Settlement Agreement, including the Claim Form attached to the Settlement Agreement as **Exhibit 1**, all forms of Notice to the Settlement Class as set forth in the Settlement Agreement and **Exhibits 2 and 3** thereto, and finds that such Notice is the best notice practicable under the

-4-

circumstances, and that the Notice complies fully with the requirements of the Federal Rules of Civil Procedure. The Court further finds that the Notice is reasonably calculated to, under all circumstances, reasonably apprise members of the Settlement Class of the pendency of this Action, the terms of the Settlement Agreement, and the right to object to the Settlement and to exclude themselves from the Settlement Class. The Court also finds that the Notice constitutes valid, due and sufficient notice to all persons entitled thereto, and meets the requirements of Due Process. The Court further finds that the Notice Plan fully complies with the Northern District of California's Procedural Guidance for Class Action Settlements.

10.     The Parties have jointly selected a reputable settlement administration company, CPT Group, Inc. ("CPT"), to serve as the Settlement Administrator. The Court hereby appoints and authorizes CPT to be the Settlement Administrator, and thereby to perform and execute the notice responsibilities set forth in the Settlement Agreement.

11.     The Parties, without further approval from the Court, are hereby permitted to revise the Claim Form and forms of Notice to the Settlement Class (Exhibits 1 through 3 of the Settlement Agreement) in ways that are appropriate to update those documents for purposes of accuracy or formatting, so long as they are consistent in all material respects with the Settlement Agreement and this Order.

12.     The Court finds that CBA has fully complied with the notice provisions of the Class Action Fairness Act of 2005, 28 U.S.C, § 1715, as described in the Declaration of Tammy B. Webb.

**Submission of Claims and Requests for Exclusion from Class**

13.     Class Members who wish to receive benefits under the Settlement Agreement must complete and submit a timely and valid Claim Form in accordance with the instructions contained therein. All Claim Forms must be postmarked or electronically submitted by _____ ("Claims Deadline")

14.     Any person falling within the definition of the Settlement Class may, upon valid and timely request, exclude him or herself or "opt out" from the Settlement Class. Any such person may do so if, on or before _____ ("Objection/Exclusion Deadline"), they

-5-

comply with the exclusion procedures set forth in the Settlement Agreement. Any members of the Class so excluded shall neither be bound by the terms of the Settlement Agreement nor entitled to any of its benefits.

15.     Class Members who fail to submit a valid and timely request for exclusion shall be bound by all terms of the Settlement Agreement and the Final Judgment (if issued), regardless of whether they have requested exclusion from the Settlement Agreement, regardless of whether they have submitted a Claim Form, and regardless of whether that Claim Form has been deemed valid.

## Objections and Appearances

16.     Any Class Member who has not timely filed a Request for Exclusion may object to the fairness, reasonableness, or adequacy of the Settlement Agreement, to a Final Judgment being entered dismissing the Action with prejudice, to the attorneys' fees and costs sought by Class Counsel, or to the service awards sought for the Class Representatives in the amounts as set forth in the Notice and Settlement Agreement.

17.     Any Class Member who wishes to object must do so by on or before the Objection/Exclusion Deadline of _____. Settlement Class Members shall submit written objection to the Court, either by (1) mailing them to the Class Action Clerk, United States District Court for the Northern District of California, 280 South 1st Street, Courtroom 3, San Jose, CA 95113, or (2) filing them in person at any location of the United States District Court for the Northern District of California or via the ECF electronic filing system.

18.     To validly object, the objection must comply with the objection procedures set forth in the Settlement Agreement, and include the following: (1) a caption or title that identifies it as "Objection to Class Settlement in *Broomfield v. Craft Brew Alliance, Inc*., No. 5-17-cv-01027-BLF" (2) the Settlement Class Member's name, address, telephone number, and if available, email address, and if represented by counsel, the foregoing information for his/her counsel; (3) whether the Settlement Class Member, or his or her counsel, intends to appear at the Final Approval Hearing; (4) whether the objection applies only to the Settlement Class Member, to a specific subset of the Settlement Class, or to the entire Settlement Class; (5) a clear and concise statement of the Settlement Class Member's Objection, including all bases and legal grounds for the

-6-

Objection; (5) documents sufficient to establish the person's standing as a Settlement Class Member, i.e., verification under penalty of perjury as to the person's purchase of Kona Beers or a Proof of Purchase; and (6) a list of any other objections submitted by the Settlement Class Member, or his/her counsel, to any proposed class action settlements submitted in any court, whether state or federal, in the United States for the previous five (5) years. If the Settlement Class Member or his/her counsel has not objected to any other class action settlement in any other court in the previous five (5) years, he or she shall affirmatively state so.

19.     Class Members who fail to file and serve timely written objections in compliance with the requirements of the foregoing paragraph and the Settlement Agreement shall be deemed to have waived any objections and shall be foreclosed from making any objections (whether by appeal or otherwise) to the Settlement Agreement and to any of the following: (a) whether the proposed settlement of the Action on the terms and conditions provided for in the Settlement Agreement is fair, reasonable, and adequate and should be given final approval by the Court; (b) whether a judgment and order of dismissal with prejudice should be entered; (c) whether to approve the Fee Award to Class Counsel; and (d) whether to approve the payment of an Class Representative Incentive Awards to the Class Representatives.

**Final Approval Hearing**

20.     The Final Approval Hearing shall be held before this Court on _____, at _____ in Courtroom 3 at the Robert F. Peckham Federal Building, located at 280 South 1st Street, Courtroom 3 San Jose, CA 95113, to determine: (a) whether the proposed Settlement Agreement is fair, reasonable, and adequate and should be given final approval by the Court; (b) whether a final judgment and order of dismissal with prejudice should be entered; (c) whether to approve the payment of the Fee Award to Class Counsel; and (d) whether to approve the payment of the Class Representative Service Awards to the Class Representatives.

21.     Plaintiffs and Class Counsel shall file their Motion for Final Approval by no later than _____.

22.     Plaintiffs and Class Counsel shall file their Fee Application by no later thirty-five (35) calendar days before the Objection/Exclusion Deadline and the Claim Deadline.

**Related Orders**

23.     All further proceedings in the Action are ordered stayed until Final Judgment or termination of the Settlement Agreement, whichever occurs earlier, except for those matters necessary to obtain and/or effectuate final approval of the Settlement Agreement.

24.     Class Members shall be bound by all determinations and judgments in the Action concerning the Action and/or Settlement Agreement, whether favorable or unfavorable.

25.     The Court retains jurisdiction to consider all further applications arising out of or connected with the proposed Settlement Agreement. The Court may approve the Settlement, with such modifications as may be agreed to by the Parties, if appropriate, without further notice to the Class.

26.     Any Settlement Class Member who does not submit a timely and valid Claim Form: (a) shall be forever barred from receiving any monetary payment under the Settlement; (b) shall be bound by the provisions of the Settlement Agreement and all proceedings, determinations, orders and judgments in the Action relating thereto, including, without limitation, the Final Judgment, if applicable, and the Releases provided for therein, whether favorable or unfavorable to the Settlement Class Member.

27.     If the Settlement receives Final Approval, all Settlement Class Members shall forever be barred and enjoined from directly or indirectly filing, commencing, instituting, prosecuting, maintaining, or intervening in any action, suit, cause of action, arbitration, claim, demand, or other proceeding in any jurisdiction, whether in the United States or elsewhere, on their own behalf or in a representative capacity, that is based upon or arises out of any or all of the Released Claims against CBA and the other Released Parties, as more fully described in the Settlement Agreement.

28.     If the Settlement Agreement is not approved by the Court in complete accordance with its terms, each party will have the option of having the Action revert to its status as if the Settlement Agreement had not been negotiated, made, or filed with the Court. In such event, the Parties will retain all rights as if the Settlement Agreement was never agreed upon.

29.     In the event that the Settlement Agreement is terminated pursuant to the provisions of the Settlement Agreement or for any reason whatsoever the approval of it does not become Final then: (a) the Settlement Agreement shall be null and void, including any provision related to the award of attorneys' fees, costs and expenses, and shall have no further force and effect with respect to any party in this Action, and shall not be used in this Action or in any other proceeding for any purpose; (b) all negotiations, proceedings, documents prepared, and statements made in connection therewith shall be without prejudice to any person or party hereto, shall not be deemed or construed to be an admission by any party of any act, matter, or proposition, and shall not be used in any manner or for any purpose in any subsequent proceeding in this Action or in any other action in any court or other proceeding, provided, however, that the termination of the Settlement Agreement shall not shield from subsequent discovery any factual information provided in connection with the negotiation of this Settlement Agreement that would ordinarily be discoverable but for the attempted settlement; (c) other than as expressly preserved by the Settlement Agreement in the event of its termination, the Settlement Agreement shall have no further force and effect with respect to any party and shall not be used in the Action or any other proceeding for any purpose; and (d) any party may elect to move the Court pursuant to the provisions of this paragraph, and none of the non-moving parties (or their counsel) shall oppose any such motion.

**IT IS SO ORDERED.**

DATED: _____          _____

Honorable Beth Labson Freeman
United States District Judge

# Exhibit 5

1

2

3

4

5

6

7

8

9

10

11

12

13

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| THEODORE BROOMFIELD, *et al.*,<br><br>          Plaintiffs,<br><br>     v.<br><br>CRAFT BREW ALLIANCE, INC., *et al.*,<br><br>          Defendants. | CASE NO.: 5:17-cv-01027-BLF<br><br>**[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |

1

2

### [PROPOSED] ORDER GRANTING FINAL APPROVAL
### OF CLASS ACTION SETTLEMENT

3

4       Plaintiffs Theodore Broomfield and Simone Zimmer ("Plaintiffs") and Defendant Craft

5   Brew Alliance, Inc. ( "Defendant" or "CBA") have entered into a Settlement Agreement, which,

6   together with the exhibits attached thereto, sets forth the terms and conditions for a proposed

7   settlement and dismissal of the Action with prejudice as to CBA upon the terms and conditions set

8   forth therein (the "Settlement Agreement").

9       On _____, the Court granted Plaintiffs' Motion for Preliminary Approval of

10  Class Action Settlement ("Preliminary Approval Order"), conditionally certifying the following

11  Settlement Class pursuant to Fed. R. Civ. P. 23(b)(3):

12      All Persons who purchased any four-pack, six-pack, twelve-pack or twenty-four pack of
        Kona Beers in the United States, it territories, or at any Untied States military facility,
13      during the Class Period.

14      Kona Beers are defined as all 4-pack, 6-pack, 12-pack, or 24-pack of Longboard Island

15  Lager, Hanalei IPA, Castaway IPA, Big Wave Golden Ale, Lemongrass Luau, Wailua Wheat, Fire

16  Rock Pale Ale, Pipeline Porter, Lavaman Red Ale, Koko Brown Ale, Kua Bay IPA, Gold Cliff

17  IPA, Kanaha Blonde Ale, Liquid Aloha Variety Pack, Island Hopper Variety Pack, Happy Mahalo

18  Variety Pack, and Wave Rider Tandem Pack. Excluded from this definition are all Kona Beers

19  that are sold without packaging (i.e., loose bottles, loose cans, and draft beer).

20      For the purposes of this definition, individuals living in the same household shall be

21  deemed to be a single Class Member.

22      Excluded from the Settlement Class are: (a) CBA's employees, officers and directors, (b)

23  distributors, retailers or re-sellers of Kona Beers, (c) governmental entities, (d) persons who timely

24  and properly exclude themselves from the Settlement Class as provided herein, (e) the Court, the

25  Court's immediate family, and Court staff, and (f) counsel of record for the Parties and their

26  respective law firms.

27      Pursuant to the notice requirements set forth in the Settlement Agreement and in the

28  Preliminary Approval Order, the Settlement Class was notified of the terms of the proposed

Settlement, of the right of members of the Settlement Class to opt-out, and of the right of members of the Settlement Class to be heard at a Final Approval Hearing to determine, *inter alia*: (a) whether the terms and conditions of the Settlement Agreement are fair, reasonable, and adequate for the release of the claims contemplated by the Settlement Agreement; and (b) whether judgment should be entered dismissing this Action with prejudice.

The Court has before it Plaintiffs' Motion for Final Approval of Class Action Settlement (ECF No. __), Plaintiffs' Motion for Attorneys' Fees and Costs and Class Representative Service Awards (ECF No. __), together with the Settlement Agreement and exhibits thereto, the arguments and authorities presented by the Parties and their counsel at the Final Approval Hearing held on [_____], and the record in the Action, and good cause appearing,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

1.      Terms and phrases in this Order shall have the same meaning as ascribed to them in the Settlement Agreement, unless otherwise defined herein.

2.      This Court has jurisdiction over the subject matter of the Action and over all Parties to the Action, including all Settlement Class Members.

3.      The notice provided to the Settlement Class pursuant to the Settlement Agreement and Preliminary Approval Order – including (i) direct notice to the Settlement Class via email, (ii) the creation of the Settlement Website, and (iii) the dissemination of Notice via publication and media notice – fully complied with the requirements of Fed. R. Civ. P. 23 and due process, was reasonably calculated under the circumstances to apprise the Settlement Class of the pendency of the Action, their right to object to or to exclude themselves from the Settlement Agreement, and their right to appear at the Final Approval Hearing.

4.      The Court finds that Defendant properly and timely notified the appropriate government officials of the Settlement Agreement, pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715. The Court has reviewed the substance of the CAFA notice provided by CBA, and finds that it complied with all applicable requirements of CAFA. Further, more than ninety (90) days have elapsed since CBA served notice pursuant to CAFA, rendering this Order on Final Approval appropriate under 28 U.S.C. § 1715(d).

5. This Court now gives final approval to the Settlement Agreement, and finds that the Settlement Agreement is fair, reasonable, adequate, and in the best interests of the Settlement Class. The settlement consideration provided under the Settlement Agreement constitutes fair value given in exchange for the release of the Released Claims against the Released Parties. The Court finds that the consideration to be paid to members of the Settlement Class is reasonable, and in the best interests of the Settlement Class Members, considering the total value of their claims compared to (i) the disputed factual and legal circumstances of the Action, (ii) affirmative defenses asserted in the Action, and (iii) the potential risks and likelihood of success of pursuing litigation on the merits. The complex legal and factual posture of this case, the amount of discovery completed, and the fact that the Settlement is the result of arm's-length negotiations between the Parties all support this finding. The Court finds that these facts, in addition to the Court's observations throughout the litigation, demonstrate that there was no collusion present in the reaching of the Settlement Agreement, implicit or otherwise.

6. The Court has considered the factors relevant to class action settlement approval, including: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015).

7. The Court has also considered the requirements of Rule 23(e) of the Federal Rules of Civil Procedure, including:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

-4-

The Court finds that all of the factors enumerated in Rule 23(e)(2) weigh in favor of granting final approval of the settlement.

8.      The Court finds that the Class Representatives and Class Counsel adequately represented the Settlement Class for the purposes of litigating this matter and entering into and implementing the Settlement Agreement.

9.      Accordingly, the Settlement is hereby finally approved in all respects, and the Court certifies the following Settlement Class:

> All Persons who purchased any four-pack, six-pack, twelve-pack or twenty-four pack of Kona Beers in the United States, it territories, or at any Untied States military facility, during the Class Period.

Kona Beers are defined as all 4-pack, 6-pack, 12-pack, or 24-pack of Longboard Island Lager, Hanalei IPA, Castaway IPA, Big Wave Golden Ale, Lemongrass Luau, Wailua Wheat, Fire Rock Pale Ale, Pipeline Porter, Lavaman Red Ale, Koko Brown Ale, Kua Bay IPA, Gold Cliff IPA, Kanaha Blonde Ale, Liquid Aloha Variety Pack, Island Hopper Variety Pack, Happy Mahalo Variety Pack, and Wave Rider Tandem Pack. Excluded from this definition are all Kona Beers that are sold without packaging (i.e., loose bottles, loose cans, and draft beer).

For the purposes of this definition, individuals living in the same household shall be deemed to be a single Class Member.

Excluded from the Settlement Class are: (a) CBA's employees, officers and directors, (b) distributors, retailers or re-sellers of Kona Beers, (c) governmental entities, (d) persons who timely and properly exclude themselves from the Settlement Class as provided herein, (e) the Court, the Court's immediate family, and Court staff, and (f) counsel of record for the Parties and their respective law firms.

10.     The Court finds that the requirements of Rule 23(b)(3) of the Federal Rules of Civil Procedure have been satisfied for certification of the Settlement Class because: Settlement Class Members are so numerous that joinder of all members is impracticable; there are questions of law and fact common to the Settlement Class; the claims and defenses of the Class Representatives are typical of the claims and defenses of the Settlement Class they represent; the Class Representatives have fairly and adequately protected the interests of the Settlement Class with

-5-

regard to the claims of the Settlement Class they represent; common questions of law and fact predominate over questions affecting only individual Settlement Class Members, rendering the Settlement Class sufficiently cohesive to warrant a class settlement; and the certification of the Settlement Class is superior to individual litigation and/or settlement as a method for the fair and efficient resolution of this matter. The Court additionally finds, for the reasons set forth in Plaintiffs' motions for preliminary and final approval, that despite any differences among the laws of the various states, common issues of law and fact predominate, making certification of a nationwide class appropriate. In particular, the various states require similar elements of proof with respect to Plaintiffs' claim for unjust enrichment, and because the identical challenged packaging was provided to all Class Members nationwide, any minor variations in the elements of unjust enrichment under the laws of the various states are not material, do not create a conflict, and do not outweigh a finding of predominance regarding the core factual and legal question presented in this action: whether the packaging of Kona Beers employed uniformly by CBA nationwide would likely deceive a reasonable consumer.

11.     The Parties are hereby directed to further implement the Settlement Agreement according to its terms and provisions. The Settlement Agreement is hereby incorporated into this Final Order in full and shall have the full force of an Order of this Court.

12.     Upon the Effective Date of this Final Order, and the Final Judgment to be entered hereon, this Action shall be dismissed on the merits and with prejudice.

13.     Upon the Effective Date of this Final Order, and the Final Judgment to be entered hereon, Plaintiffs and each and every Settlement Class Member who has not submitted a timely and valid Request for Exclusion (listed in the Declaration of _____), and any Person claiming by or through such Settlement Class Member as his/her spouse, parent, child, heir, guardian, associate, co-owner, attorney, agent, administrator, devisee, predecessor, successor, assignee, representative of any kind, shareholder, partner, director, employee, or affiliate ("Releasing Parties") shall be deemed to have released CBA and all of its past, present and/or future parents, predecessors, successors, assigns, subsidiaries, divisions, departments, and affiliates, and any and all of their past, present and/or future officers, directors, employees,

stockholders, partners, agents, servants, successors, attorneys, representatives, advisors, consultants, brokers, distributors, wholesalers, subrogees and assigns of any of the foregoing, and representatives of any of the foregoing ("Released Parties"), from any claim, cross-claim, liability, right, demand, suit, matter, obligation, damage, restitution, disgorgement, loss or cost, attorneys' fee, cost or expense, action or cause of action, of every kind and description that the Releasing Party had or has, including assigned claims, whether in arbitration, administrative, or judicial proceedings, whether as individual claims or as claims asserted on a class basis or on behalf of the general public, whether known or unknown, asserted or unasserted, suspected or unsuspected, latent or patent, that is, has been, could reasonably have been or in the future might reasonably be asserted by the Releasing Party in the Action against any of the Released Parties arising out of the allegations in the complaints filed in the Action ("Released Claims"). Excluded from these Released Claims is any claim for alleged bodily injuries arising after the Effective Date of this Settlement Agreement.

With respect to all Released Claims, Plaintiffs and each of the other Settlement Class Members who have not validly opted out of this Settlement agree that they are expressly waiving and relinquishing to the fullest extent permitted by law (a) the provisions, rights and benefits conferred by Section 1542 of the California Civil Code, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY

and (b) any law of any state or territory of the United States, federal law, or principle of common law, or of international or foreign law, that is similar, comparable or equivalent to Section 1542 of the California Civil Code.

14.     Upon the Effective Date of this Final Order, and the Final Judgment to be entered hereon, the above release of claims and the Settlement Agreement will be binding on, and will have res judicata and preclusive effect on, all pending and future lawsuits or other proceedings maintained by or on behalf of Plaintiffs and all other Settlement Class Members and Releasing

Parties. All Settlement Class Members are hereby permanently barred and enjoined from filing, commencing, prosecuting, intervening in, or participating (as class members or otherwise) in any lawsuit or other action in any jurisdiction based on or arising out of any of the Released Claims.

15.     This Final Approval Order, the Final Judgment to be entered hereon, the Settlement Agreement, the Settlement which it reflects and all acts, statements, documents or proceedings relating to the Settlement are not, and shall not be construed as, used as, or deemed to be evidence of, an admission by or against CBA of any fault, wrongdoing, or liability on the part of CBA or of the validity for litigation of any claims that have been, or could have been, asserted in the Action. This Order, the Settlement or any such communications shall not be offered or received in evidence in any action of proceeding, or be used in any way as an admission or concession or evidence of any liability or wrongdoing of any nature or that Plaintiffs, any Settlement Class Member, or any other person has suffered any damage; provided, however, that the Settlement, this Order and the Final Judgment to be entered hereon may be filed in any action by CBA or Settlement Class Member seeking to enforce the Settlement or the Final Judgment by injunctive or other relief, or to assert defenses including, but not limited to, res judicata, collateral estoppel, release, good faith settlement, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim.  The Settlement's terms shall be forever binding on, and shall have res judicata and preclusive effect in, all pending and future lawsuits or other proceedings as to Released Claims and other prohibitions set forth in this Order that are maintained by, or on behalf of, the Settlement Class Members or any other person subject to the provisions of this Order.

16.     As stated in more detail in the Court's Order Granting Plaintiffs' Motion for Attorneys' Fees and Costs and Class Representative Service Awards (ECF No. ___), the Court herby Orders that the payment of attorneys' fees, costs, and expenses in the amount of $2,900,000.00 is fair, reasonable, and justified in light of Class Counsel's efforts in this Action. This award includes Class Counsel's unreimbursed litigation expenses of _____. Such payment shall be made pursuant to and in the manner provided by the terms of the Settlement Agreement. The Court further Orders that the payment of Class Representative Service Awards in the amount of $5,000.00 to each of the two Plaintiffs to compensate them for their efforts and

commitment on behalf of the Settlement Class, is fair, reasonable, and justified under the circumstances of this case. Such payment shall be made pursuant to and in the manner provided by the terms of the Settlement Agreement.

17.     The Settlement Administrator is authorized and directed to issue Settlement Benefits to Settlement Class Members who submitted timely and valid Claim Forms in accordance with the terms of the Settlement Agreement.

18.     No later than 21 calendar days after the Settlement Benefits are distributed to the Settlement Class Members who submitted timely and valid Claim Forms, Plaintiffs shall file a Post Distribution Accounting, which includes all information required under Northern District of California Procedural Guidance for Class Action Settlements, and post the same on the Settlement Website. This Order, and the Final Judgment to be entered hereon, shall also be posted on the Settlement Website.

19.     Without affecting the finality of this Final Approval Order, the Final Judgment to be entered hereon, for purposes of appeal, until the Effective Date the Court shall retain jurisdiction over all matters relating to administration, consummation, enforcement, and interpretation of the Settlement Agreement.


**IT IS SO ORDERED.**

DATED: _____

_____
Honorable Beth Labson Freeman
United States District Judge

# Exhibit 6

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| THEODORE BROOMFIELD, *et al.*, | CASE NO.: 5:17-cv-01027-BLF |
| Plaintiffs, | |
| v. | **[PROPOSED] FINAL JUDGMENT** |
| CRAFT BREW ALLIANCE, INC., *et al.*, | |
| Defendants. | |

1

## **[PROPOSED] FINAL JUDGMENT**

2

3        The Court has entered Final Approval of the Parties' settlement. Accordingly, the claims of

4  Plaintiffs and the Settlement Class against Defendant Craft Brew Alliance, Inc. are DISMISSED

5  WITH PREJUDICE, and this Final Judgment shall issue consistent with Federal Rule of Civil

6  Procedure 58.

7

8        **IT IS SO ORDERED.**

9

10  DATED: _____          _____

11                                          Honorable Beth Labson Freeman
                                            United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit 7



# EXHIBIT B

**Preliminary Approval of Class Action Settlement**
**Department SSC-9**
**Hon. Amy Hogue**

<u>Martin Shalikar et al. v. Asahi Beer USA, Inc.</u>
**Case No. BC702360**
Hearing: December 20, 2018 c/f October 30, 2018 c/f July 10, 2018

<u>**RULING**</u>
Grant Preliminary Approval.  Reserve July 16, 2019, 10:00 a.m. for Final Approval Motion.

<u>**BACKGROUND**</u>

     In this consumer class action case, Plaintiffs allege that Defendant Asahi Beer, USA, Inc. ("Asahi") falsely and deceptively labeled, packaged, and advertised its Asahi Super Dry beer ("Asahi Beer" or "Products") in a manner indicating that the Products are brewed in Japan, when the Products are actually brewed in Canada. Specifically, Plaintiffs allege that Defendant's use of Japanese script and characters on the labeling and packaging lead reasonable purchasers of the Product to believe that the Product is brewed in Japan.

     On April 5, 2017, Plaintiff Alexander Panvini filed a consumer fraud class action complaint against Defendant in the United States District Court for the Northern District of California, captioned *Panvini v. Asahi Beer U.S.A., Inc.,* No. 4:17-cv-01896 (N.D. Cal.). (Declaration of Benjamin Heikali ("Heikali Decl."), ¶ 5, Ex. 2.) On April 10, 2017, Plaintiff Matin Shalikar filed a substantially similar consumer fraud class action against Defendant in in the United States District Court for the Central District of California, captioned *Shalikar v. Asahi Beer U.S.A., Inc.,* No. 2:17-cv-02713 (C.D. Cal.). (*Id.* at ¶ 6, Ex. 3.) Both actions, which were eventually merged into one action in the Central District, alleged that Defendant engages in deceptive and unfair business practices by labeling, packaging, and marketing the Products in a manner indicating that the Products are brewed in Japan, when the Products are brewed in Canada. (*Id.* at ¶ 7.)

     After defeating Defendant's motion to dismiss, the Parties exchanged and reviewed discovery and eventually participated in a fruitful 11-hour mediation session facilitated by John B. Bates, Jr., Esq. of JAMS in Los Angeles, California, which set the foundation for and principle terms of the Settlement Agreement. (*Id.* at ¶ 8.) Subsequently, the Parties engaged in over six months of arms-length negotiations, with the aid of Mr. Bates, to reach the final settlement terms now set forth in the Settlement Agreement. (*Id.* at ¶ 9.)

     After exchanging and reviewing relevant discovery, the Plaintiffs decided that because Defendant's headquarters are in Los Angeles County, and because this matter contemplates Settlement of a California class, the appropriate venue for this action is the Superior Court of California, County of Los Angeles. Defendant had no objection to the change in forum for settlement purposes. (*Id.* at ¶ 10.) Therefore, on April 12, 2018, Plaintiffs voluntarily dismissed their individual claims in the *Shalikar* Action in the Central District, and, on April 16, 2018 filed a Class Action Complaint ("CAC") in this Court.  The CAC alleges the following causes of action: (1) Violation of California's Consumers Legal Remedies Act ("CLRA") California Civil Code §1750, *et*

1

*seq.* (for the California Consumer Subclass) and (2) Quasi Contract/ Unjust Enrichment/ Restitution (for the Nationwide Class).

In November 2017, following investigation and discovery, the Parties commenced with settlement negotiations. The arms'-length negotiations included mediation, which set the foundation for and principle terms of the Settlement Agreement, as to both the California and Nationwide classes. After further negotiations, the Parties executed their Settlement Agreement and Release ("Settlement Agreement"), a signed copy of which is attached to the Declaration of Benjamin Heikali ("Heikali Decl.") as Exhibit 1.

On July 10, 2018, the Court ordered the parties to file a revised settlement agreement, with revisions, including a cap on attorney's fees and costs that Class Counsel may seek, in addition to any fee splitting agreements class counsel may have.

On September 28, 2018, the Parties engaged in a settlement conference with the Honorable James R. Dunn to negotiate a cap on attorney's fees and costs, and were able ultimately to come to an agreement. A copy of the fully executed Amended Settlement Agreement is attached to the Declaration of Benjamin Heikali in Further Support of Plaintiff's Unopposed Motion for Preliminary Approval ("Heikali Supp. Decl.") as Exhibit 1.

On October 30, 2018, the court conditionally granted preliminary approval for counsel to address remaining issues flagged by the Court no later than December 2, 2018, and ordered a renewed hearing on preliminary approval.

In response, Class Counsel filed under seal *Plaintiff's Response to October 30, 2018 Tentative Ruling* ("Supp. Brief."), with a redacted version filed with the Court as well. On December 3, 2018, Class Counsel also filed a Second Amended Settlement Agreement attached to the Declaration of Benjamin Heikali in Support of Plaintiff's Response to October 30, 2018 Tentative Ruling ("Heikali Second Supp. Decl.") as Exhibit 1. On December 3, 2018 Defendant filed a Reply to Plaintiff's Response to October 30, 2018 Tentative Ruling ("Defendant's Reply") wherein it stated that it does not oppose Plaintiff's Response to October 30, 2018 Tentative Ruling, however it does not "join the specifics of Plaintiff's valuation of this case and reserves its right to challenge all of Plaintiff's valuation methodologies during the attorney's fee phase of the Settlement Approval process." (Defendant's Reply, 1:1-5.)

Now before the Court is Plaintiff's motion for preliminary approval of the settlement agreement.

## SETTLEMENT CLASS DEFINITION

- **Class Definition:**
  - Settlement Class" **means**: All consumers who purchased Asahi Beer in the United States, its territories, or at any United States military facility or exchange, for personal, family, or household purposes and not for re-sale, during the Class Period. (¶ II.W.)
  - **"California Settlement Class" means:** All consumers who purchased Asahi Beer in California, for personal, family, or household purposes and not for re-sale, during the Class Period. (¶ II.X.)
  - Excluded from the Settlement Class and the California Settlement Class are all persons who validly opt out of the settlement in a timely manner (for purposes of damages claims only); counsel of record (and their respective law firms) for

2

the Parties; Defendant and any of its parents, affiliates, subsidiaries, and all of its respective employees, officers, and directors; and the presiding judge in the Action or judicial officer presiding over the matter, and all of their immediate families and judicial staff. (¶¶ II.W-X.)

○ **"Settlement Class Household"** For purposes of the Claims Process, a Class Member shall be treated as a "Settlement Class Household," together with any family members or extended family members living under the same roof as the Class Member. (¶ II.Y.)

○ **"Class Period"** means April 5, 2013 through the date of Preliminary Approval of Class Settlement. (¶ II.L.)

○ The parties stipulate to class certification for settlement purposes only. (¶ IX.)

■ The Parties intend for the Court to give final approval to the certification of both of the Settlement Classes. If the Court gives final approval to only one of the classes, the Agreement shall be final and binding only as to the class certified, and the Parties' and Class Administrator's obligations shall be limited to the scope of the certified class. If the Court fails to certify both the Settlement Class and the California Settlement Class, then the Agreement shall be null and void, and the Parties shall revert to the position they were in prior to seeking approval for the Agreement. (¶ IV.A.)

## TERMS OF SETTLEMENT AGREEMENT

The Settlement Agreement's essential terms are:
- Defendant is to pay up to **$765,000** for attorney fees and costs (¶VII);
- Defendant is to pay up to **$5,500** ($2,750 x2) for Service Awards to the Class Representatives (¶VII); and
- Defendant is to pay an estimated **$300,000** for Administration Expenses (¶XI.A.9).
- Defendant agrees to monetary and injunctive relief as discussed further below.

- **Injunctive Relief:** As part of the Settlement Agreement, Defendant has agreed to bold the term "Product of Canada" on the neck of the label of the Product bottles for three years. (¶ V.A.)

- **Monetary Relief:** Class Members who submit timely and valid Claim Forms will receive a cash payment in the based on the number and type of Products purchased during the Class Period as follows: $.50 per 6-pack of the Products; $0.10 per Big Bottle of the Products; $1.00 per 12-pack of cans of the Products; and $2.00 per 24-pack of cans of the Products. (¶ V.B.9.)

  - The amount of cash recovery is subject to a $10 maximum refund per Settlement Class Household. (*Ibid*)
  - Cash payments will be paid by the Settlement Administrator via check or an electronic payment process (such as PayPal), at the Class Member's election. (*Ibid*)

3

- **Claims Process:** To be eligible for a cash payment, a Settlement Class Member and/or a California Settlement Class Member must submit a timely and valid Claim Form, which will be evaluated by the Class Action Settlement Administrator. (¶ V.B.) A copy of the Parties' proposed Claim Form is attached to the Heikali Declaration as Exhibit A.

  o **"Claim Period"** means the time period in which Settlement Class Members and/or California Settlement Class Members may submit a Claim Form for review to the Class Action Settlement Administrator. The Claims Period shall run for 120 days from the date that Class Notice is initially disseminated. (¶ II.F.)

  o The Claim Form will be: (i) included on the Settlement Website to be designed and administered by the Settlement Administrator, and Class Members shall be allowed to complete and submit the Claim Form online; (ii) made readily available from the Settlement Administrator, including by requesting a Claim Form from the Settlement Administrator by mail, e-mail, or calling a toll-free number provided by the Settlement Administrator; and (iii) mailed to those individuals for whom Defendant has addresses. (¶ V.B.1.)

  o Claim Forms must be postmarked or submitted online before or on the last day of the Claim Period, the specific date of which will be prominently displayed on the Claim Form and Class Notice. (¶ V.B.2.)

  o **Validity of Claim Forms.** Valid Claim Forms must contain the Settlement Class Member's name and mailing address, attestation of purchase(s), and type(s) and number of Products purchased. Claim Forms that do not meet the requirements set forth in this Agreement and in the Claim Form instructions may be rejected. The Settlement Administrator will determine a Claim Form's validity.

    ▪ Where a good faith basis exists, the Settlement Administrator may reject a Settlement Class Member's Claim Form for, among other reasons, the following: (a) Failure to attest to the purchase of the Products, or purchase of products that are not covered by the terms of this Settlement Agreement; (b) Failure to provide adequate verification or additional information of the Claim pursuant to a request of the Class Action Settlement Administrator; (c) Failure to fully complete and/or sign the Claim Form; (d) Failure to submit a legible Claim Form; (e) Submission of a fraudulent Claim Form; (f) Submission of more than one Claim Form per Settlement Class Household; (g) Submission of Claim Form that is duplicative of another Claim Form; (h) Submission of Claim Form by a person who is not a Settlement Class Member or a California Settlement Class Member; (i) Request by person submitting the Claim Form to pay funds to a person or entity that is not the Settlement Class Member or California Settlement Class Member for whom the Claim Form is submitted; (j) Failure to submit a Claim Form by the end of the Claim Period; or (k) Failure to otherwise meet the requirements of this Agreement. (¶ V.B.3.)

  o **Attestation of Purchase Under Penalty of Perjury Required.** Each Class Member shall sign and submit a Claim Form that states to the best of his or her knowledge the total number and type of purchased Products. The Claim Form

4

shall be signed under an affirmation stating the following or substantially similar language: "I declare, under penalty of perjury, that the information in this Claim Form is true and correct to the best of my knowledge, and that I purchased the Product(s) claimed above during the Class Period for personal or household use and not for resale. I understand that my Claim Form may be subject to audit, verification, and Court review." (¶ V.B.4.)

o **Verification of Purchase May Be Required.** The Claim Form shall advise Class Members that while proof of purchase is not required to submit a Claim, the Settlement Administrator has the right to request verification or more information regarding the purchase of the Products for the purpose of preventing fraud. If the Class Member does not timely comply or is unable to produce documents or additional information to substantiate the information on the Claim Form and the Claim is otherwise not approved, the Settlement Administrator may disqualify the Claim. The Parties shall have the ability to review any Claim Forms rejected by the Settlement Administrator. (¶ V.B.5.)

o **Claim Form Deficiencies.** The Settlement Administrator will take all reasonable and customary steps to attempt to cure defectively submitted claims and to determine the Class Member's eligibility for payment and the amount of payment. (¶ V.B.7.)

o **Failure to Submit Claim Form.** Unless a Class Member opts out pursuant to Section XII, any Class Member who fails to submit a timely and valid Claim Form shall be forever barred from receiving any payment pursuant to this Agreement, and shall in all other respects be bound by all of the terms of this Agreement and the terms of the Final Judgment and Order Approving Settlement to be entered in the Action. Based on the Release contained in the Agreement, any Class Member who does not opt out will be barred from bringing any action in any forum (state or federal) against any of the Discharged Parties concerning any of the matters subject to the Release. (¶ V.B.8.)

- **"Opt-Out Date"** means the date 21 days prior to the Final Approval Hearing. (¶ II.R, as amended)

o **Objections:** Any Class Member who intends to object to the fairness of the Settlement may do so in writing prior to the Final Approval Hearing or in person at the Final Approval Hearing. Any written objection must be in writing; signed by the Class Member (and his or her attorney, if individually represented); and submitted to the Settlement Administrator, with a copy delivered to Class Counsel and Defendant's Counsel at the addresses set forth in the Class Notice. (¶ XII.A.1.)

- KCC Class Action Services will perform settlement administration. (¶ II.H.)
- Participating class members and the named Plaintiff will release certain claims against Defendants. (See further discussion below)

/ / /

## ANALYSIS OF SETTLEMENT AGREEMENT

**1.  Does a presumption of fairness exist?**

1. <u>Was the settlement reached through arm's-length bargaining?</u> Yes. The Parties participated in a mediation session facilitated by John B. Bates Jr., Esq. of JAMS, which set the foundation for and principle terms of settlement. (Heikali Decl. ¶ 8.) Subsequent to the mediation, the Parties engaged in over six months of arms' length negotiations, with the aid of Mr. Bates, to finalize settlement terms. (*Id.* at ¶ 9.)

2. <u>Were investigation and discovery sufficient to allow counsel and the court to act intelligently?</u> Yes. Class Counsel began investigating Defendants labeling, packaging, and advertising of products in or around July 2016. Investigation included Obtaining and reviewing the Products, including their labeling, packaging, and all other advertisements and promotions for the Products; Obtaining and reviewing electronic images of Defendant's website and other electronic marketing platforms; Obtaining and reviewing relevant legal precedent regarding similar false and misleading representations on products, including other beer products; Obtaining and reviewing relevant filings and applications made for the Products with the Alcohol and Tobacco Tax and Trade Bureau; and Obtaining and reviewing financial information regarding the Products and Defendant. (Motion at 3:21-4:8.) The extensive negotiations came only after Plaintiffs defeated Defendant's motion to dismiss and Class Counsel had an opportunity to obtain and review discovery, review and assess relevant law and facts to assess the merits of the claims and determine how to best serve the interests of the members of the putative classes. (Heikali Decl. at ¶ 8.)

3. <u>Is counsel experienced in similar litigation?</u> Yes. As outlined in their respective firm resumes, each of the Class Counsel firms has experience litigating and resolving national consumer class actions, particularly in the field of food and beverage labeling. (Heikali Decl. at ¶ 18, Exhibits 4-6.)

4. <u>What percentage of the class has objected?</u> This cannot be determined until the fairness hearing. (See Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2014) § 14:139.18, ["Should the court receive objections to the proposed settlement, it will consider and either sustain or overrule them at the fairness hearing."].)

<u>CONCLUSION:</u> The settlement is entitled to a presumption of fairness.

**2.  Is the settlement fair, adequate, and reasonable?**

1. <u>Strength of Plaintiff's case.</u> "The most important factor is the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement." (*Kullar v. Foot Locker Retail, Inc.* (2008) 168 Cal.App.4th 116, 130.) Counsel contends that while Plaintiffs have conducted a survey demonstrating that Defendant's labeling and packaging deceives a majority of consumers and were ready to retain experts to demonstrate the same, Defendant was also prepared to submit expert testimony rebutting Plaintiffs' position and experts. (Motion, 12: 17-20.) Thus, the case would likely have been reduced to a financially costly "battle of the experts" in which both sides would fight over whether the Products' labeling and packaging is likely to deceive a reasonable consumer and the materiality of such representations. (Motion, 12: 25-26.)

In the event the Defendant would prevail, the Settlement Classes would be left with nothing. (Motion, 12: 20-23.)

Counsel contends that the proper measure of damages in a deceptive labeling case is the excess money paid by consumers for a product based on the challenged representation ("the price premium") commanded by the products. (*See Brazil v. Dole Packaged Foods, LLC,* No. 12-cv-01831-LHK, 2014WL 5794873, at *5 (N.D. Cal. Nov. 6, 2014) ("The proper measure of restitution in a mislabeling case is the amount necessary to compensate the purchaser for the difference between the product as labeled and the product as received.") Counsel contends that at issue is the amount a consumer overpaid based on the belief the products were imported from Japan, when they were actually brewed in Canada. (Supp. Brief, 3:20-27.)

As the case settled before trial experts were employed to provide an evaluation of damages, counsel used a comparison of the Products at issue with similar beer products marked and sold without the Challenged representations to provide a reasonable estimate as to damages. (Supp. Brief, 3:27-4:9.)

Based on those comparisons (Supp. Brief, 4:10-6:19), counsel contends that it appears that consumers pay approximately $1.00 to $1.50 more, or approximately 11.2%-16.6% more per 6-pack of the Products that comparable lager style beers without the deceptive representations. Accordingly, counsel contends that if an expert conducted a damage analysis of the price premium commanded by the Products, it would have been found this premium associated with each 6-pack of the Products, which would be the amount of damages consumers are entitled to at trial. (Supp. Brief, 6:20-7:2.)

Counsel further contends this estimated price premium is consistent with the price premium commanded by another Japanese marketed beer not actually brewed in Japan, and consistent with the price prelim measure by experts in another beer labeling case. (Supp. Brief, 7:3-12; Heikali Second Supp. Decl., Exhibits 3-4.)

Therefore class Counsel estimated that if the maximum damages per 6-pack of the Products is **$1.00-$1.50, then the $.50** per 6-pack negotiated for the Settlement Class Members is approximately **33%-50%** of the potential recovery had Plaintiff prevailed at trial. (Supp. Brief, 7:13-15.) These estimates are within the "ballpark" of reasonableness.

2.   <u>Risk, expense, complexity and likely duration of further litigation.</u>  Given the nature of the class claims, the case is likely to be expensive and lengthy to try.  Procedural hurdles (e.g., motion practice and appeals) are also likely to prolong the litigation as well as any recovery by the class members.

3.   <u>Risk of maintaining class action status through trial.</u>  Even if a class is certified, there is always a risk of decertification.  (See *Weinstat v. Dentsply Intern., Inc.* (2010) 180 Cal.App.4th 1213, 1226 ["Our Supreme Court has recognized that trial courts should retain some flexibility in conducting class actions, which means, under suitable circumstances, entertaining successive motions on certification if the court subsequently discovers that the propriety of a class action is not appropriate."].)

4.   <u>Amount offered in settlement</u>.

<u>Monetary Relief:</u> Class Counsel contends that because there is no cap to the amount that Settlement Members may recover (meaning that Defendant will be labile for any and all valid and timely claim forms submitted by Settlement Class Members), it is difficult to provide a definite value of the settlement recovery. However, class counsel contends that one way to

estimate the total potential recovery for settlement Class Members would be by using the sales information provided by Defendant in discovery. Based on the total units sold during the class period and the recovery per unit for each of the products under the Settlement Agreement, counsel have provided a reasonable estimate of the total potential recovery for class members sufficient to justify this settlement. (Supp. Brief, 2:1-20.)

Injunctive Relief:  As part of the Settlement Agreement, Defendant has agreed to bold the term "Product of Canada" on the neck of the label of the Product bottles for three years. (¶ V.A.) Counsel contends that theoretically as a result of this relief, the Products are no longer deceptively advertised and can no longer garner the price premium attributed to the misleading representations. Therefore, although it is difficult to precisely value the injunctive relief, a reasoned estimate can be derived by looking at the economics of the matter. (Supp. Brief, 8:22-27.)

Counsel contends that going forward, the market price of the Products should decrease to reflect the price without the price premium, and consumers will benefit from the difference in the price they would have paid with the price premium versus the adjusted lower price they will pay going forward. Thus, assuming sales figures in the next three years remain consistent with historical sales figures, counsel contends that a reasonable estimate of the value of injunctive relief can be calculated by multiplying the estimated number of units that will be sold over the next three years by the estimated priced premium consumers will save per units for a total value that, as established in the sales figures received by the court under seal, adds substantial value to the injunction.  (Supp. Brief, 9:1-16.)

5.  Extent of discovery completed and stage of the proceedings.  As indicated above, at the time of the settlement, Class Counsel had conducted sufficient discovery.

6.  Experience and views of counsel.  The settlement was negotiated and endorsed by Class Counsel who, as indicated above, is experienced in class action litigation, including consumer class actions.

7.  Presence of a governmental participant.  This factor is not applicable here.

8.  Reaction of the class members to the proposed settlement.  The class members' reactions will not be known until they receive notice and are afforded an opportunity to object, opt-out and/or submit claim forms.  This factor becomes relevant during the fairness hearing.

CONCLUSION:  The settlement can be preliminarily deemed "fair, adequate, and reasonable."

3.  **Scope of the release**

Upon the Effective Date, and except as to such rights or claims as may be created by this Agreement, and in consideration for the settlement benefits described in this Agreement, Plaintiffs and each member of the Settlement Class and/or California Settlement Class who has not validly excluded himself or herself from the Settlement pursuant to shall be deemed to fully release and discharge Defendant and all its present and former parent companies, subsidiaries, shareholders, officers, directors, employees, agents, servants, registered representatives, attorneys, insurers, affiliates, and successors, personal representatives, heirs and assigns, retailers, suppliers, distributors, endorsers, consultants, and any and all other entities or persons upstream and downstream in the production/distribution channels (together, the

"Discharged Parties") from all claims, demands, actions, and causes of action of any kind or nature whatsoever, whether at law or equity, known or unknown, direct, indirect, or consequential, liquidated or unliquidated, foreseen or unforeseen, developed or undeveloped, arising under common law, regulatory law, statutory law, or otherwise, whether based on federal, state or local law, statute, ordinance, regulation, code, contract, common law, or any other source, or any claim that Plaintiffs or Settlement Class Members or California Settlement Class Members ever had, or now have, against the Discharged Parties in any other court, tribunal, arbitration panel, commission, agency, or before any governmental or administrative body, or any other adjudicatory body, on the basis of, arising from, or relating to the claims alleged or that could have been alleged based on the underlying facts asserted in the operative Complaint, including all claims related to the labeling / packaging / marketing regarding the place of origin / brewing, identity of brewer, and source of ingredients for Asahi-branded beer (the "Released Claims"). The Released Claims expressly exclude claims for personal injury against the Discharged Parties. The Released Claims expressly exclude claims for personal injury against the Discharged Parties. (¶ VIII, as amended.)

　　　To the extent permitted by law, this Agreement may be pleaded as a full and complete defense to, and may be used as the basis for an injunction against, any action, suit, or other proceeding that may be instituted, prosecuted, or attempted in breach of or contrary to this Agreement, or any other action or claim that arises out of the same factual predicate or same set of operative facts as this Action. (¶ VIII.C.)

## 4.　May conditional class certification be granted?

### 1.　Standards

　　　A detailed analysis of the elements required for class certification is not required, but it is advisable to review each element when a class is being conditionally certified (*Amchem Products, Inc. v. Winsor* (1997) 521 U.S. 620, 622-627.) The trial court can appropriately utilize a different standard to determine the propriety of a settlement class as opposed to a litigation class certification. Specifically, a lesser standard of scrutiny is used for settlement cases. (*Dunk v. Ford Motor Co.* (1996) 48 Cal.App.4th 1794, 1807 fn. 19.) Finally, the Court is under no "ironclad requirement" to conduct an evidentiary hearing to consider whether the prerequisites for class certification have been satisfied. (*Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, 240.)

### 2.　Analysis

　　　a.　Numerosity.  The Settlement Class consists of thousands of members. The California Settlement Class consists of thousands of members. As alleged in the CAC and confirmed in discovery, Defendant has sold at least thousands of units of the Products to its distributors nationwide and in California, which were ultimately sold to customers through various retailers. (CAC § 44.) This element is met.

　　　b.　Ascertainability.  The proposed class is defined above.  The class definition is "precise, objective and presently ascertainable." (*Sevidal v. Target Corp.* (2010) 189 Cal.App.4th 905, 919.) The Settlement Classes are objectively defined and are limited by geography and relevant Class Period. (Motion, 17:20-21.) Because the labeling of the Products remained materially uniform throughout the Class Period, the Settlement Classes are defined in such a way that self-identification is possible. (Motion, 17:21-24.)

c.  Community of interest.  "The community of interest requirement involves three factors: '(1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class.'"  (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435.)

Here, common issues include whether Defendant engaged in false and misleading conduct in violation of the CLRA and was unjustly enriched as a result.  (Motion, 19:10-12.) The present Action is based on uniform representations made prominently on the Products during the Class Period, capable of being seen by every Settlement Class Member. (Motion, 19:12-14.)

Further, Plaintiffs' claims are typical of those of the proposed Settlement Classes because their claims pose the same questions of law and fact as those of the Settlement Class Members and arise from the same representations on the Products' packaging and labeling. (Motion, 22:13-16.)

Finally, Plaintiffs' interests are not antagonistic to the interests of the Settlement Class Members because their claims arise from the same standardized conduct of Defendant as those of the proposed Settlement Classes, and Plaintiffs seek remedies equally applicable and beneficial to the Settlement Classes. (Motion, 22:22-25.)

d.  Adequacy of class counsel.  As indicated above, Class Counsel is experienced in class action litigation, including consumer class actions.

e.  Superiority.  Given the relatively small size of the individual claims, a class action appears to be superior to separate actions by the class members.

CONCLUSION:  The class may be conditionally certified since the prerequisites of class certification have been satisfied.

## 5.  Is the notice proper?

1.  Content of class notice.  The proposed Publication Notice is attached to the Settlement Agreement as Exhibit D. Its content appears to be acceptable. The Notice is one page and contains the following information: class definition, summary of the case, information regarding settlement, summary of procedures for claim submission, opting out, and submitting objections, the consequences of submitting a claim, opting out, or objecting, the time date and location of the final approval hearing, and the website for class members to view detailed information.

The proposed Full Notice, which will be available to Class Members via the settlement website, is attached to the Settlement Agreement as Exhibit E. Its content appears to be acceptable. It includes information such as:  a summary of the litigation; the nature of the settlement; the terms of the settlement agreement;  the proposed deductions from the gross settlement amount (attorney fees and costs, enhancement awards, and claims administration costs); the procedures and deadlines for participating in, opting out of, or objecting to, the settlement; the consequences of participating in, opting out of, or objecting to, the settlement; and the date, time, and place of the final approval hearing. (Exhibit E to Settlement Agreement.)

2. <u>Method of class notice.</u>  A detailed Settlement Notice Plan is attached to the Heikali Declaration as Exhibit C. In summary, Defendant, at its cost, shall issue the Class Notice in accordance with the requirements of the Preliminary Approval Order, as follows:

▪   Subject to the approval of the Court and to begin no later than 45 days after the order of Preliminary Approval, Defendant shall cause the Publication Notice to be published in substantially the forms attached to the Settlement Agreement as Exhibits D and E and in the manner recommended by the Settlement Administrator. Publication Notice shall be published substantially according to the Notice Plan attached to the Settlement Agreement as Exhibit C. In addition, Class Notice, in substantially the form attached to the Settlement Agreement as Exhibit E shall be published on the Settlement Website.  (¶ (X)(A).)

▪   The proposed Publication Notice to be published in the widely circulated magazines Car and Driver, ESPN The Magazine, and Time, is attached as Exhibit D to the Settlement Agreement. Publication Notice will also be made via targeted ads on Facebook, Google Display Network, and YouTube. (Motion, 7:10-13.)  The proposed Summary Class Notice, which will be available on the Settlement Website or by calling a toll-free telephone number to request a copy, is attached as Exhibit E to the Settlement Agreement. (Motion, 7:13-15.)  The Publication Notice and Summary Class Notice were designed in accordance with the Federal Judicial Center's ("FJC") "plain language" guidelines. (Heikali Decl. at ¶ 14.)

•   The Publication Notice and Summary Class Notice will also direct consumers to a Settlement Website dedicated to the settlement and the claims process, where Settlement Class Members can review the Summary Class Notice, settlement documentation, and other relevant court documents, as well as fill out a Claim Form for payment. (Motion, 7:21-24.)  The proposed Claim Form is attached as Exhibit A to the Settlement Agreement. (Motion, 7:24-25.)  The Settlement Website will be designed and maintained by KCC. In addition, KCC will maintain a toll free call-in number for the settlement through which Settlement Class Members can obtain information about the Settlement Agreement and obtain a hardcopy of the Summary Class Notice or Claim Form. (Motion, 7:25- 8:2.)

3. <u>Cost of class notice.</u>  As indicated above, claims administration costs are estimated to be **$300,000.** (Amended Settlement Agreement, ¶XI.A.9) Prior to the time of the final fairness hearing, the claims administrator must submit a declaration attesting to the total costs incurred and anticipated to be incurred to finalize the settlement for approval by the Court.

## 6.  <u>Attorney fees and costs</u>

California Rule of Court, rule 3.769(b) states: "Any agreement, express or implied, that has been entered into with respect to the payment of attorney fees or the submission of an application for the approval of attorney fees must be set forth in full in any application for approval of the dismissal or settlement of an action that has been certified as a class action."

Ultimately, the award of attorney fees is made by the court at the fairness hearing, using the lodestar method with a multiplier, if appropriate.  (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095-1096; *Ramos v. Countrywide Home Loans, Inc.* (2000) 82 Cal.App.4th 615, 625-626; *Ketchum III v. Moses* (2000) 24 Cal.4th 1122, 1132-1136.)  Despite any agreement by the parties to the contrary, "the court ha[s] an independent right and responsibility to review

the attorney fee provision of the settlement agreement and award only so much as it determined reasonable." (*Garabedian v. Los Angeles Cellular Telephone Company* (2004) 118 Cal.App.4th 123, 128.)

The award for fees and expenses shall be allocated as follows: 25% to Halunen Law, 37.5% to Faruqi & Faruqi LLP, and 37.5% to Reese LLP. (Heikali Supp. Decl., ¶7.)

The question of whether Class Counsel is entitled to **$765,000** in attorney fees and costs will be addressed at the fairness hearing when class counsel brings a noticed motion for attorney fees. Class counsel must provide the court with billing information so that it can properly apply the lodestar method, and must indicate what multiplier (if applicable) is being sought as to each counsel.

Class Counsel should also be prepared to justify the costs sought by detailing how they were incurred.

## 7.   Incentive Award to Class Representative

The Settlement Agreement provides for enhancement awards of up to **$5,500** ($2,750 each) for the class representatives. In connection with the final fairness hearing, the named Plaintiffs must submit declarations attesting to why they should be entitled to enhancement awards in the proposed amount. The named Plaintiffs must explain why they "should be compensated for the expense or risk he has incurred in conferring a benefit on other members of the class." (*Clark v. American Residential Services LLC* (2009) 175 Cal.App.4th 785, 806.) Trial courts should not sanction enhancement awards of thousands of dollars with "nothing more than *pro forma* claims as to 'countless' hours expended, 'potential stigma' and 'potential risk.' Significantly more specificity, in the form of quantification of time and effort expended on the litigation, and in the form of reasoned explanation of financial or other risks incurred by the named plaintiffs, is required in order for the trial court to conclude that an enhancement was 'necessary to induce [the named plaintiff] to participate in the suit . . . .'" (*Id.* at 806-807, italics and ellipsis in original.)

The Court will decide the issue of the enhancement awards at the time of final approval.

# EXHIBIT C

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Scotts EZ Seed Litigation | Case No. 12-cv-4727 (VB) (PED) |

## [PROPOSED] FINAL JUDGMENT AND
## ORDER OF DISMISSAL WITH PREJUDICE

WHEREAS, a class action is pending before the Court captioned *In re Scotts EZ Seed Litigation*, Case No. 7:12-cv-4727-VB-PED; and

WHEREAS, Plaintiffs Michael Arcuri, David Browne, Gwen Eskinazi, Stacy Lonardo, Lance Moore, Vance Smith, and Nancy Thomas (collectively, "Plaintiffs") and Defendants The Scotts Miracle-Gro Company, Inc. and The Scotts Company LLC (collectively, "Defendants" or "Scotts") have entered into a class action Stipulation of Settlement, which, together with the exhibits attached thereto, sets forth the terms and conditions for a proposed settlement and dismissal of the Action with prejudice as to Defendants upon the terms and conditions set forth therein (the "Settlement Agreement") (ECF No. 343-1); and

WHEREAS, on June 21, 2018, the Court granted Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, conditionally certifying a Settlement Class pursuant to Fed. R. Civ. P. 23(b)(3) of "all persons who purchased Scotts EZ Seed in the states of New York and California containing the label statement '50% Thicker' Claim'." (ECF No. 347 ¶ 9); and

WHEREAS, the Court has considered the Parties' Class Action Settlement Agreement (ECF No. 343-1), as well as Plaintiffs' Motion for Final Approval of the Settlement Agreement (ECF No. 362), Plaintiffs' Motion for Attorneys' Fees, Costs, And Expenses, And Incentive Awards (ECF No. 349), together with all exhibits thereto, the arguments and authorities presented by the Parties and their counsel at the Final Approval Hearing held on December 19,

2018, and the record in the Action, and good cause appearing;

IT IS HEREBY ORDERED, DECREED, AND ADJUDGED AS FOLLOWS:

1.　　Terms and phrases in this Final Judgment shall have the same meaning as ascribed to them in the Parties' class action Settlement Agreement.

2.　　This Court has jurisdiction over the subject matter of the Action and over all Parties to the Action, including all Settlement Class Members.

3.　　The notice provided to the Settlement Class pursuant to the Settlement Agreement (ECF No. 343-1) and order granting Preliminary Approval (ECF No. 347) – including (i) direct notice to the Settlement Class via email and U.S. mail in accordance with the Notice plan, (ii) the creation of the Settlement Website, and (iii) the dissemination of Notice via Internet banner ads as well as by targeted Facebook and Instagram ad campaigns – fully complied with the requirements of Fed. R. Civ. P. 23 and due process, was reasonably calculated under the circumstances to apprise the Settlement Class of the pendency of the Action, their right to object to or to exclude themselves from the Settlement Agreement, and their right to appear at the Final Approval Hearing.

4.　　Eight individuals – Edward Fisher, Judy Haddad, Marva Kelley, Richard Knappen, Jill McCue, Catherine Sellinger, Elisa Thompson, and Joan Wisniewski – have submitted timely requests for exclusion and are therefore excluded from the Settlement Class.

5.　　The Court finds that Defendants properly and timely notified the appropriate government officials of the Settlement Agreement, pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715.  The Court has reviewed the substance of Defendants' notice, and finds that it complied with all applicable requirements of CAFA.  Further, more than ninety (90) days have elapsed since Defendant provided notice pursuant to CAFA and the Final

Approval Hearing.

6.    This Court now gives final approval to the Settlement Agreement, and finds that the Settlement Agreement is fair, reasonable, adequate, and in the best interests of the Settlement Class.  The settlement consideration provided under the Settlement Agreement constitutes fair value given in exchange for the release of the Released Claims against the Released Parties.  The Court finds that the consideration to be paid to members of the Settlement Class is reasonable, and in the best interests of the Settlement Class Members, considering the total value of their claims compared to (i) the disputed factual and legal circumstances of the Action, (ii) affirmative defenses asserted in the Action, and (iii) the potential risks and likelihood of success of pursuing litigation on the merits.  The complex legal and factual posture of this case, the amount of discovery completed, and the fact that the Settlement is the result of arm's-length negotiations between the Parties support this finding.  The Court finds that these facts, in addition to the Court's observations throughout the litigation, demonstrate that there was no collusion present in the reaching of the Settlement Agreement, implicit or otherwise.

7.    The Court has specifically considered the factors relevant to class action settlement approval, including:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).

8.    The Court finds that the Class Representatives and Class Counsel adequately

represented the Settlement Class for the purposes of litigating this matter and entering into and implementing the Settlement Agreement.

9.     Accordingly, the Settlement is hereby finally approved in all respects.

10.     The Parties are hereby directed to implement the Settlement Agreement according to its terms and provisions.  The Settlement Agreement is hereby incorporated into this Final Judgment in full and shall have the full force of an Order of this Court.

11.     This Court hereby dismisses the Action, as identified in the Settlement Agreement, on the merits and with prejudice.

12.     Upon the Effective Date of this Final Judgment, Plaintiffs and each and every Settlement Class Member who did not opt out of the Settlement Class (whether or not such members submit claims), including such individuals' respective present or past heirs, executors, estates, administrators, predecessors, successors, assigns, parent companies, subsidiaries, associates, affiliates, employers, employees, agents, consultants, independent contractors, insurers, directors, managing directors, officers, partners, principals, members, attorneys, accountants, financial and other advisors, underwriters, shareholders, lenders, auditors, investment advisors, legal representatives, successors in interest, assigns and companies, firms, trusts, and corporations shall be deemed to have released Defendants, as well as any and all of its respective present or past heirs, executors, estates, administrators, predecessors, successors, assigns, parent companies, subsidiaries, licensors, licensees, associates, affiliates, employers, employees, agents, consultants, independent contractors, insurers, directors, managing directors, officers, partners, principals, members, attorneys, accountants, financial and other advisors, underwriters, shareholders, lenders, auditors, investment advisors, legal representatives, successors in interest, assigns and companies, firms, trusts, and corporations from any and all

actual, potential, filed, known or unknown, fixed or contingent, claimed or unclaimed, suspected or unsuspected, claims, demands, liabilities, rights, causes of action, contracts or agreements, extra-contractual claims, damages, punitive, exemplary or multiplied damages, expenses, costs, attorneys' fees and or obligations (including "Unknown Claims," as defined in the Settlement Agreement), whether in law or in equity, accrued or unaccrued, direct, individual or representative, of every nature and description whatsoever, whether based federal, state, local, statutory or common law or any other law, rule or regulation, against the Released Parties, or any of them, arising out of any facts, transactions, events, matters, occurrences, acts, disclosures, statements, representations, omissions or failures to act regarding the allegations in the operative complaint in this Action, or arising out of or relating to the marketing, advertising, promoting, sale or distributing of the Scotts EZ Seed product labeled with the 50% Thicker Claim, including all claims that were brought or could have been brought in the Action.

13.     Upon the Effective Date of this Final Judgment, the above release of claims and the Settlement Agreement will be binding on, and will have *res judicata* and preclusive effect on, all pending and future lawsuits or other proceedings maintained by or on behalf of Plaintiffs and all other Settlement Class Members and Releasing Parties.  All Settlement Class Members are hereby permanently barred and enjoined from filing, commencing, prosecuting, intervening in, or participating (as class members or otherwise) in any lawsuit or other action in any jurisdiction based on or arising out of any of the Released Claims.

14.     The Court has also considered Plaintiffs' Motion For Attorneys' Fees, Costs, and Expenses, And Incentive Awards, as well as the supporting memorandum of law and declarations (ECF Nos. 349-360), and adjudges that the payment of attorneys' fees, costs, and expenses in the amount of $9,700,000.00 is reasonable in light of the multi-factor test used to

evaluate fee awards in the Second Circuit.  *See Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).  This award includes Class Counsel's unreimbursed litigation expenses.  *See* ECF No. 360 at 15-16.  Such payment shall be made pursuant to and in the manner provided by the terms of the Settlement Agreement.

15.     The Court has also considered Plaintiffs' Motion, memorandum of law, and supporting declarations for incentive awards to the Class Representatives.  *See* ECF No. 360 at 16-17.  The Court adjudges that the payment of an incentive award in the amount of $10,000 to each Class Representative to compensate them for their efforts and commitment on behalf of the Settlement Class, is fair, reasonable, and justified under the circumstances of this case.  Such payment shall be made pursuant to and in the manner provided by the terms of the Settlement Agreement.

16.     The Parties, without further approval from the Court, are hereby permitted to agree and adopt such amendments, modifications, and expansions of the Settlement Agreement and its implementing documents (including all exhibits to the Settlement Agreement) so long as they are consistent in all material respects with this Final Judgment and do not limit the rights of Settlement Class Members.

17.     Without affecting the finality of this Final Judgment for purposes of appeal, until the Effective Date the Court shall retain jurisdiction over all matters relating to administration, consummation, enforcement, and interpretation of the Settlement Agreement.

18.     This Court hereby directs entry of this Final Judgment pursuant to Federal Rule of Civil Procedure 58 based upon the Court's finding that there is no just reason for delay of enforcement or appeal of this Final Judgment.

IT IS SO ORDERED, this _____ day of _____, 2018.


_____
The Honorable Vincent L. Briccetti
United States District Judge

# EXHIBIT D

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 13-cv-23656-JJO**

**[CONSENT]**

FRANCISCO RENE MARTY,
SETH GOLDMAN, and
FERNANDO MARQUET
on behalf of themselves and all others
similarly situated;

Plaintiffs,

v.

ANHEUSER-BUSCH COMPANIES, LLC;

Defendant.

_____/

**CLASS ACTION**

## ORDER OVERRULING OBJECTIONS

On June 23, 2015, this Court granted preliminary approval of the proposed class

action settlement set forth in the Settlement Agreement and Release ("Settlement

Agreement") between Plaintiffs Francisco Rene Marty, Seth Goldman, and Fernando

Marquet, individually and on behalf of themselves and all members of the Settlement Class,[1]

and Defendant Anheuser-Busch Companies, LLC ("Defendant" or "A-B").

On October 20, 2015, the Court held a duly noticed final approval hearing to consider

(1) whether the terms and conditions of the Settlement Agreement are fair, reasonable, and

adequate; (2) whether a judgment should be entered permanently barring the Parties and

Settlement Class Members from prosecuting the other Parties and their officers, attorneys,

directors, shareholders, employees, agents, retailers, suppliers, distributors, endorsers,

---

[1] Unless otherwise defined, capitalized terms in this Order Overruling Objections have the
definitions found in the Settlement Agreement.

consultants, and any and all other entities or persons upstream and downstream in the production/distribution channels in regard to those matters released as set forth in Section VI of the Settlement Agreement; and (3) whether and in what amount to approve Class Counsel's application for the requested award of attorneys' fees and costs and the Class Representative applications.

These issues are addressed in the Court's Final Order and Judgment, entered contemporaneously with this Order. This Order is concerned with whether the two objections raised to the Settlement — which the Court also considered at the October 20, 2015 final approval hearing — should be sustained or overruled.

Accordingly, it is hereby **ORDERED AND ADJUDGED** that:

1.     The Court considers the reaction of the class to the proposed settlement to be an important indicator as to its reasonableness and fairness. Of the approximately 1.7 million class members nationwide who received notice of the Settlement, there were only five opt outs and two objections raised: one by Abner Leps; and one by Florida attorney Stephen D. Field and his client Ross Muller. The Court finds this fact to be overwhelming support for the settlement and clear evidence of its reasonableness and fairness. *See Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1381 (S.D. Fla. 2007) ("A low percentage of objections demonstrates the reasonableness of a settlement.").

2.     The Court carefully reviewed the argument and position set forth in Mr. Muller's written objection at the Final Fairness Hearing, specifically addressed the objections raised by Mr. Muller, and rejected them. Mr. Muller did not attend the Final Fairness Hearing.

3.     Mr. Muller's objection relates to his belief that the Settlement provides inadequate relief and calls for an excessive fee request and excessive class representative

award. This objection, however, does not compel this Court to find that the Settlement was not fair, reasonable, or adequate. *See Poertner v. Gillette Co.*, 14-13882, 2015 WL 4310896, at *4 (11th Cir. Jul. 16, 2015) (affirming final approval of class action settlement with $6.00 recovery cap for claimants with no proof of purchase); *Lee v. Ocwen Loan Servicing, LLC*, 14-CV-60649, 2015 WL 5449813, at *17 (S.D. Fla. Sept. 14, 2015) (rejecting objector's argument that settlement could have been improved through direct payments and noting that an objector "must do more than just argue that she would have preferred a different settlement structure"). Nor does Mr. Muller's objection take into account the inherent risks associated with complex litigation such as this and the possibility that A-B may have ultimately prevailed in this case. As such, Mr. Muller's objection is **overruled** in its entirety.

    4.    Mr. Muller's objection to the proposed fee award on the grounds that the "percentage of the fund" approach is inapplicable to a "claims-made settlement" is rejected. In *Poertner*, 2015 WL 4310896, the Eleventh Circuit approved a claims-made class action settlement based upon the deceptive labeling of a consumer product (batteries). *Id.* at *1, *4. In approving the requested attorneys' fees, the Court used the percentage-of-the-fund analysis, and specifically noted that "no principled reason counsels against" applying *Camden I's*[2] "percentage-of-recovery rule to claims-made settlements."[3] *Id.* at *4 n.2. The *Poertner* decision is consistent with numerous other decisions from this district that use the percentage-of-the-fund approach to evaluate the appropriateness of attorneys' fees in a claims-made class

---

[2] *Camden I Condominium Association, Inc. v. B. Dunkle*, 946 F. 2d 768, 772 (11th Cir. 1991) (hereinafter "*Camden I*").

[3] The Eleventh Circuit explained that "properly understood, a claims-made settlement is . . . the functional equivalent of a common fund settlement where the unclaimed funds revert to the defendant, indeed; the two types of settlements are fully synonymous." *Poertner*, 2015 WL 4310896, at *4 n.2 (citation and quotation marks omitted).

action settlement like this one. *See, e.g., Saccoccio*, 297 F.R.D. at 694–95; *Hall v. Bank of Am., N.A.*, 1:12-CV-22700-FAM, 2014 WL 7184039, at *8–*9 (S.D. Fla. Dec. 17, 2014); *Hamilton v. SunTrust Mortg. Inc.*, 13-60749-CIV, 2014 WL 5419507, at *7 (S.D. Fla. Oct. 24, 2014); *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1339 (S.D. Fla. Feb. 16, 2007); *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1328 (S.D. Fla. 2001). The "percentage-of-the-fund" analysis applies here.

5.      Mr. Muller further claims that the proposed fee award is too large when compared to the actual pay out to class members who make claims. A similar objection was recently rejected by the Eleventh Circuit in *Poertner* because it was "based on [a] flawed valuation of the settlement pie[,] limiting the monetary value to the amount of [Defendant's] actual payouts," while excluding the value of the injunctive and other negotiated relief. *See* 2015 WL 4310896, at *6. The Court rejects this objection on the same grounds.

6.      The Court further rejects Mr. Muller's objection that Class Counsel has not produced evidence sufficient to support a lodestar analysis. *See* Muller Objection at 2.  In the Eleventh Circuit, a lodestar analysis may be used as a "cross-check" to the percentage-of-the-fund analysis. *See, e.g., Pinto*, 513 F. Supp. 2d at 1343. But use of the lodestar cross-check is not mandatory. *See In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1362–63 (S.D. Fla. 2011) (declining to perform lodestar cross-check because *Camden I* "mandated the exclusive use of the percentage approach in common fund cases" and noting "courts in this Circuit regularly award fees . . . without discussing lodestar at all.") (internal quotations marks, brackets and emphasis omitted); *see also Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1298 (11th Cir. 1999) ("while we have decided in this circuit that a lodestar calculation is not proper in common fund cases, we may refer to that figure for comparison.").

Moreover, Class Counsel provided detailed evidence of the number of hours expended, the hourly rates for the various timekeepers, the prevailing market rates, and all of the lodestar factors. (Exhibit 1 to Plaintiffs' Motion for Final Approval [D.E. 157] — Ronzetti Decl. and Composite Exhibit 1 thereto).

7.      Mr. Muller's argument that the injunctive relief secured by the Settlement should be given no weight when considering Class Counsel's fee is similarly rejected. Under Eleventh Circuit law, injunctive changes such as label modifications represent a benefit to the class and should be considered when approving a class settlement. *See Poertner*, 2015 WL 4310896, at *5, *6 (trial court properly concluded that "class received substantial benefit" from label change that removed allegedly misleading statement from battery label and non-monetary relief was properly considered in evaluating attorneys' fees); *see also Lee*, 2015 WL 5449813, at *26 (considering value of injunctive relief when approving class counsel's fee request, even though no specific dollar amount was attributed to injunctive change and noting "courts consider the value of injunctive relief and monetary relief together in assessing whether a class action settlement provides sufficient relief to the class."). Moreover, the five-year length of the injunctive relief is adequate and reasonable, and protects consumers from future harm. *See Hall v. Bank of America, N.A.*, Case No. 12-cv-22700, DE# 403-1 at 21 (S.D. Fla); *Fladell v. Wells Fargo Bank, N.A.*, Case No. 13-cv-60721, DE# 158-1 at 22-24 (S.D. Fla); *Hamilton v. SunTrust Mortgage*, Case No. 13-cv-60749, DE# 158-1 at 20-22 (S.D. Fla.).

8.      Finally, the Court rejects Mr. Muller's objection to the extent it suggests that Class Counsel did not post its fee motion to the Settlement Website, and that the requested Class Representative awards of $5,000.00 are excessive. First, Class Counsel's fee motion has

been posted on the Settlement Website since September 22, 2015, before Mr. Muller filed his objection and before the September 29, 2015 objection deadline. Further, Rule 23(h) does not require a fee motion to be posted on the settlement website before the objection deadline. Second, the $5,000.00 service award is reasonable and well-supported, and should be approved. *See Saccoccio*, 297 F.R.D. at 695 (approving $5,000.00 representative service award and noting that courts find it appropriate to reward class plaintiffs who act as private attorneys general); *Lee*, 2015 WL 5449813, at *26 (approving $5,000.00 class representative service award); *Hamilton*, 2014 WL 5419507, at *8 (same).

9.      The Court also carefully reviewed the argument and position set forth in Mr. Leps' written objection at the Final Fairness Hearing, specifically addressed the objections raised by Mr. Leps, and rejected them. Mr. Leps did not attend the Final Fairness Hearing.

10.      Mr. Leps' objection relates to his belief that the Settlement provides inadequate relief and calls for an excessive fee request. This objection does not compel this Court to find that the Settlement was not fair, reasonable, or adequate for the reasons set forth in paragraphs 3-7, *supra*. Nor does Mr. Leps' objection take into account the inherent risks associated with complex litigation such as this and the possibility that A-B may have ultimately prevailed in this case. As such, Mr. Leps' objection is **overruled** in its entirety.

11.      Mr. Leps' objection further states: "It is also disturbing that Anheuser-Busch has agreed not to challenge a fee of up to $3,500,000.00." Leps Objection at 2. Courts in this circuit have referred to settlement provisions where defendants agree not to object to class counsel's fee request as long as it does not exceed an agreed upon amount as "clear-sailing" provisions. In *Poertner*, 2015 WL 4310896, at *6, the Eleventh Circuit addressed an objector's self-dealing contention which included a "clear-sailing" provision and found that

the objector's "self-dealing contention [wa]s belied by the record" where "the parties settled only after engaging in extensive arms-length negotiations moderated by an experienced, court-appointed mediator." Here, the settlement occurred only after extensive arms' length negotiations overseen by an experienced court-appointed mediator, there is absolutely no evidence of collusion, and the parties negotiated attorneys' fees only after negotiating relief to the Class. *See id.*; *Lee,* 2015 WL 5449813, at *12 (finding "clear-sailing provision to be immaterial" where there was no evidence of collusion among the settling parties and fees were negotiated only after all other terms were agreed upon); *Fladell v. Wells Fargo Bank, N.A.,* No. 0:13–cv–60721, 2014 WL 5488167, at *4 (S.D. Fla. Oct. 29, 2014) ("[A]lthough the Settlement Agreement includes a 'clear-sailing' provision, that is immaterial. There was no collusion in the settlement negotiations and the Parties began negotiations regarding attorneys' fees only after finishing negotiating the Settlement itself.").

12.     The Court further rejects Mr. Leps' objection to the extent he asserts that the Court should not grant final approval before the claims rate is known. "District courts often grant final approval of class action settlements before the final claims deadline." *Lee,* 2015 WL 5449813, at *22–*23 (collecting cases, rejecting same argument by objector, and granting final approval where final claims rate was unknown) (quoting *Hamilton,* 2014 WL 5419507); *see also Saccoccio,* 297 F.R.D. at 696 (overruling same objection because courts in this district have upheld settlements before claims deadline had passed); *Perez,* 501 F. Supp. 2d at 1383 (court need not wait for final claims data to approve).

13.     Class Counsel submitted evidence and argued at the Final Fairness Hearing that Mr. Leps' objection appears to be ghost written by a professional objector attorney, pointing to the fact that the objection was mailed from a different state than the state in which

Mr. Leps resides, his October 13, 2015 letter to the Court was also mailed from a different state, he paid approximately $60.00 to mail his objection *via* USPS Express mail (well exceeding the value of his claim). Although this may constitute indicia that the objection is ghost written, the Court need not rely upon that ground in overruling the objection and overrules the objection on its merits for the reasons stated herein.

**DONE AND ORDERED** in Chambers at Miami, Florida this _22_ day of _October_, 2015.

HONORABLE JOHN J. O'SULLIVAN
United States Magistrate Judge

Copies furnished to all counsel of record

# EXHIBIT E

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 13-cv-23656-JJO

FRANCISCO RENE MARTY,
SETH GOLDMAN, and
FERNANDO MARQUET
on behalf of themselves and all others
similarly situated,

       Plaintiffs,

v.

ANHEUSER-BUSCH COMPANIES, LLC,

       Defendants.

_____/

## PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, APPLICATION FOR SERVICE AWARDS, CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES AND EXPENSES, AND INCORPORATED MEMORANDUM OF LAW

Class Representative Plaintiffs and Settlement Class Counsel hereby request entry of an order granting final approval of the class action settlement as set forth in the parties' Settlement Agreement and Release, which was preliminarily approved by this Court on June 23, 2015.

## INTRODUCTION

After a hard-fought litigation in which fact and expert discovery was largely completed and class certification and motions in *limine* were fully briefed and argued, Plaintiffs and Defendant Anheuser-Busch Companies, LLC ("A-B") (collectively the "Parties") have negotiated a settlement that provides substantial relief to purchasers of Beck's Beer,[1] a domestically brewed beer that Plaintiffs allege has been falsely advertised and marketed as an import by A-B throughout the United States. The Parties have executed a Settlement Agreement and Release ("Settlement Agreement" (DE 149-1)) and agreed upon the form of proposed Notice to Class Members.[2]

To date, no member of the Class has objected to the settlement, and there have been only a handful of opt-outs – overwhelming class support that shows the settlement's fairness. Under the Settlement Agreement, A-B has agreed, among other things, to offer partial refunds to Settlement Class Members for Beck's Beer in varying amounts, depending upon the product purchased and whether the claim is supported by proof of purchase. The Settlement Agreement also contains important injunctive relief which achieves greater disclosure of A-B's practices concerning Beck's Beer, by requiring the inclusion of "Brewed in USA" or "Product of USA" on the label and packaging of Beck's Beer.  Notice of this Settlement via a plan approved by the Court was disseminated to all Class Members by, among other things, (i) published notice, (ii) internet notice, (iii) establishment of a settlement website, and (iv) through direct mail or email (along with a Claim Form) to currently available addresses that have been provided to A-B through the Beck's or A-B website or via email or telephone by potential Beck's Beer consumers.

---

[1] "Beck's Beer" refers to all bottles or cans of Beck's Pilsner, Beck's Dark, Beck's Light, and/or Beck's Oktoberfest brewed and sold in the United States by Defendant Anheuser-Busch Companies, LLC.

[2] Unless otherwise noted, all capitalized terms used herein have the same definition as that provided in the Settlement Agreement.

Undersigned counsel are well positioned to evaluate and negotiate this settlement because they have been actively litigating against A-B in this Action, and in a related state-court case concerning Kirin Beer, for almost two years. Plaintiffs' counsel investigated and supported Plaintiffs' claims through extensive discovery, including the review of thousands of pages of documents, and numerous depositions of key A-B personnel as well as expert depositions. Nonetheless, Plaintiffs and the Class faced significant hurdles in litigating their claims. Given the immediate and substantial benefits the settlement will provide to the Class, there can be no question that the terms of the proposed Settlement Agreement are fair, reasonable, and adequate and should receive the Court's approval.

Additionally, Class Counsel are asking the Court to award them $3.5 million in fees and expenses, an amount that was negotiated only after all class benefits had been secured, and is payable by A-B *in addition to* the benefits to the Class. Such a fee would amount to only 10.9% to 15.3% of the monetary recovery to the Class, and is easily within the parameters established by the Eleventh Circuit.

Accordingly, Plaintiffs respectfully request that the Court grant final approval of the Settlement Agreement, and approve the application for attorneys' fees and Representative Plaintiffs' service awards.

## FACTUAL BACKGROUND

### 1. The Beck's Litigation and Mediation

Plaintiff Marty began the litigation by filing the Action on October 9, 2013, seeking damages, injunctive relief and declaratory relief. Plaintiff Marty alleged that Beck's Pilsner had been deceptively marketed as being brewed in Germany, when in fact it was brewed in the United States. The Action asserted a claim for unjust enrichment on behalf of a nationwide class and a claim for violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq.* "FDUTPA", on behalf of a Florida subclass. The Complaint was amended on March 31, 2014, adding Plaintiffs Goldman and Marquet, as well as claims under New York General Business Law § 349, California Unfair Competition Law, Business and Professions Code § 17200, and California Consumer Legal Remedies Act, Civil Code § 1750. The Amended Complaint sought certification of a nationwide unjust enrichment class and three state subclasses for Florida, New York, and California for the consumer protection act claims. The Action alleged that A-B's advertising, marketing and selling practices regarding Beck's Beer were

deceptive, and sought a change to the marketing practices of A-B and the packaging of Beck's Beer.

The Parties engaged in substantial discovery. There were twelve depositions taken of the Parties, non-parties, and expert witnesses. (Exhibit 1--Declaration of T. Ronzetti ("Ronzetti Decl."), at ¶ 8.) The Parties litigated discovery issues and responded to interrogatories, and over 28,000 documents were produced. *Id.* The Plaintiffs retained experts to evaluate marketing practices and damages calculations. *Id.*

Defendant A-B moved to dismiss the Amended Complaint in its entirety. After extensive briefing and oral argument, the motion was largely denied on September 5, 2015, and Plaintiffs filed a Second Amended Complaint on September 19, 2014.

During the pendency of this Action, Counsel for Plaintiffs litigated and ultimately reached a nationwide class action settlement, including both monetary and injunctive relief, in a related state-court case involving Kirin beer. *See Suarez v. Anheuser-Busch Companies, LLC*, Case No. 13-033629 CA 01 (Fla. 11th Jud. Cir.). That settlement was reached only within a month of trial and with the assistance of retired Judge Gerald Cope serving as mediator.

This case was also resolved only at the brink of a litigation milestone, class certification. Plaintiffs' Motion for Class Certification was fully briefed, along with various motions in *limine* directed at the expert witnesses. These motions were argued before the Court on April 16, 2015, and after the hearing, the Court ordered the Parties to mediation. The Parties conducted a mediation with a highly respected commercial litigator, Ronald Ravikoff, Esq., on May 26, 2015. (Ronzetti Decl. at ¶¶ 8, 19.) Before, during, and after the mediation, the Parties engaged in a series of discussions regarding a settlement of the Action, including substantial arm's-length negotiations. *Id.* The result was a settlement of the Action in its entirety, culminating with this Settlement Agreement.

## 2. **The Settlement Terms and Agreement**

### A. *The Proposed Class*

The Settlement Agreement provides relief to all consumers who purchased bottles and/or cans of Beck's Beer brewed and sold by A-B in the United States for personal, family, or household purposes and not for re-sale from May 1, 2011 up to and including June 23, 2015. Excluded from the Settlement Class are all persons who validly opt out of the settlement in a timely manner (for purposes of damages claims only); counsel of record (and their respective law

firms) for the Parties; A-B and any of its parents, affiliates, subsidiaries, and all of its respective employees, officers, and directors; and the presiding judge in the Action or judicial officer presiding over the matter, and all of their immediate families and judicial staff.

### B. *Monetary and Other Relief*

The Settlement Agreement affords the Class Members monetary relief, and provides injunctive relief to assist the Class Members. Specifically, the Settlement Agreement requires A-B to offer partial refunds to Settlement Class Members for Beck's Beer in varying amounts that are based upon whether the claims are supported by proof of purchase. Settlement Class Members will be entitled to the following refunds:

- o Six pack of 12 oz. bottles or cans: $.50 each
- o Four pack of 16 oz. cans: $.50 each
- o Twelve pack of 12 oz. bottles or cans: $1.00 each
- o Fifteen pack of 12 oz. bottles or cans: $1.25 each
- o Twenty pack of 12 oz. bottles: $1.75
- o Individual bottle or can: $0.10 each

Reimbursements for claims supported by proof of purchase are capped at $50.00 per Settlement Class Household, while reimbursements for claims not supported by proof of purchase are capped at $12.00 per Settlement Class Household.

Additionally, the Settlement Agreement provides meaningful injunctive relief. Specifically, the injunction provides that for a period of no less than five years, and subject to all necessary regulatory approvals by appropriate governing agencies, A-B must include the phrase "Brewed in USA" or "Product of USA" on (1) Beck's Beer bottles substantially in the position and form recently approved by the Alcohol, Tobacco Tax & Trade Bureau ("TTB"); (2) Beck's Beer cans in its present position and form; (3) the front and back of all Beck's Beer consumer-facing packages; and (4) the "About Beck's" (http://becks.com/#/en/about/becks) page of the Beck's website. The Parties agreed that the type face, type size, position, color, and setoff of the disclosures will be sufficient to inform a reasonable consumer of the place where Beck's Beer is brewed while not unduly impairing A-B's marketing.

### C. *Release of Claims against Defendant*

In exchange for the settlement relief, Settlement Class Members agreed to release A-B and all related persons and entities from all claims relating to this Action, as specifically set forth in the Settlement Agreement.

### D. *Class Counsel Fees and Expenses and Named Plaintiffs Case Contribution Award*

The Parties agreed that A-B would pay, beyond and separate from the Class's benefits, up to $3.5 million in attorney's fees and expenses and service awards of $5,000 to each Class Representative Plaintiff, without objection. The Parties also agreed that the consideration of whether to grant or deny these requested sums is to be separate and apart from the Court's consideration of the fairness, reasonableness, and adequacy of the settlement.

### 3.   Preliminary Approval, Notice and Settlement Administration

The Court preliminarily approved the terms of the Settlement Agreement and certified the proposed Settlement Class on June 23, 2015. *See* Order Granting Prelim. App. (D.E. 152) The Court preliminarily found that "the Settlement Agreement (1) was reached after arm's-length negotiations before a distinguished mediator, and after substantial factual and legal analyses by the parties; and (2) provides substantial benefits to all class members, especially in light of the risks associated with this litigation." *Id.* at 3.  The Court also approved the proposed Class Notice and notice plan, finding that it meets the requirements of Rule 23 of the Federal Rules of Civil Procedure, and provides the best notice practicable under the circumstances. *Id.* at 3. The Court ordered A-B to begin dissemination of the Class Notice within 30 days. *Id.*

Under the Settlement Agreement, the deadline for filing claims is November 20, 2015. The Settlement Administrator, Kurtzman Carson Consultants ("KCC"), obtained three computerized lists of 42,478 names with addresses or emails, characterized as potential Beck's consumers, i.e., consumers who purchased bottles or cans of Beck's Pilsner, Beck's Dark, Beck's Light, and/or Beck's Oktoberfest brewed and sold in the United States for personal, family, or household purposes and not for re-sale during the Class Period. (Exhibit 2-- Declaration of Jeffrey Gyomber re: Notice Procedures (("KCC Decl.") at ¶ 7.) KCC updated these addresses using the National Change of Address system. (*See id.* at ¶ 8.) KCC also removed records that were duplicative or had incomplete or invalid addresses, resulting in 40,039 names and addresses (with 15,852 valid email addresses) on the potential Beck's consumers. (*See id.* at ¶ 9.) On or before July 23, 2015, a Notice Packet was mailed by First

5

Class postage to all 24,187 potential Beck's consumers, and emails were delivered to all 15,852 valid email addresses. (*See id.* at ¶¶ 14, 15.)

On July 23, 2015, KCC initiated an internet banner ad campaign, and on or before August 27, 2015, KCC caused the Summary Notice to be published in the August 27, 2015 issue of Rolling Stone and the August 31, 2015 issue of ESPN The Magazine. (*See id.* at ¶¶ 16, 17.) KCC also established and administered an Interactive Voice Response system to provide information about the settlement and to record requests for Notice Packets (which was supplemented with an option to speak with a live operator or staff members trained in the details of the settlement), and a website (http://www.BecksBeerSettlement.com/) to provide information about the settlement and to allow Class Members to download copies of the Claim Form and Notice. (*See id.* at ¶¶ 10, 11, 12.) Moreover, the settlement has garnered a significant amount of media attention, with coverage of the settlement occurring in the following outlets:

- The National Law Review
- The Wall Street Journal
- Law 360
- BloombergBusiness
- CBSPhilly
- CBS This Morning
- CBS News
- CNBC
- CNN Money
- NPR
- Drinks Business Review
- Agenda—A Financial Times Service
- Fortune
- Fox News
- Great Beer Now
- Just Drinks
- Nasdaq
- St. Louis Post-Dispatch

- Top Class Actions
- The Daily Business Review
- USA Today

(*See* Ronzetti Decl. at ¶ 26.)

The deadline to opt-out out of the damages portion or to object to the Settlement Agreement is September 29, 2015. As of the date of this Motion, no objections have been filed and only three requests to be excluded from the settlement have been received.[3] (*Id.* at ¶ 20.)

## LEGAL ARGUMENT

## I. THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT.

Settlement "has special importance in class actions with their notable uncertainty, difficulties of proof, and length. Settlements of complex cases contribute greatly to the efficient utilization of scarce judicial resources, and achieve the speedy resolution of justice[.]" *Turner v. Gen. Elec. Co.*, No. 2:05-CV-186-FTM-99DNF, 2006 WL 2620275, at *2 (M.D. Fla. Sept. 13, 2006) (citation omitted). For these reasons, "there exists an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005) (citation omitted).

On final approval, after notice to the class and time and opportunity for absent class members to object or otherwise be heard, the Court considers whether the settlement "is fair, adequate, and reasonable and is not the product of collusion between the parties." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984) (citation omitted); Fed. R. Civ. P. 23(e). The Court is "not called upon to determine whether the settlement reached by the parties is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial." *In re Mex. Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1014 (N.D. Ill. 2000) (citations omitted). Instead, courts consider the following factors: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense and duration of litigation; (3) the stage of proceedings at which the settlement was achieved and the amount of

---

[3] Nationwide consumer class litigation often results in lawyer-driven objections in an effort to hold up the class settlement solely for a payoff. The Kirin settlement resulted in such objections, which Class Counsel defeated in litigation. (Ronzetti Decl. at ¶ 24.) Such objections may arise in this case as well. That, however, would not diminish what is clearly overwhelming acceptance of the Settlement by the Class Members with legitimate motives.

discovery completed; (4) the probability of the plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of class counsel, class representatives, and the substance and amount of opposition received. *Leverso v. SouthTrust Bank of Ala., N.A.*, 18 F.3d 1527, 1530 n.6 (11th Cir. 1994); *see also Faught v. Amer. Home Shield Corp.*, 668 F.3d 1233, 1240 (11th Cir. 2012); *Bennett*, 737 F.2d at 986. "In assessing these factors, the Court 'should be hesitant to substitute ... her own judgment for that of counsel.'" *Lipuma*, 406 F. Supp. 2d at 1315 (quoting *In re Smith,* 926 F.2d 1027, 1028 (11th Cir. 1991)). An analysis of these factors in the instant Action compels the conclusion that the Court should approve the proposed Settlement Agreement.

### A. The Beck's Settlement Is the Product of Good Faith, Informed, and Arms'-Length Negotiations among Experienced Counsel.

The first factor that a Court considers in determining whether to grant final approval of a Settlement Agreement is whether the settlement was obtained by fraud or collusion among the parties and their counsel. Courts rely on the presumption of good faith in the negotiating process. *See Hemphill v. San Diego Ass'n of Realtors, Inc.*, 225 F.R.D. 616, 621 (S.D. Cal. 2004) ("the courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement").  The settlement terms here are the product of significant give and take by the Parties, and were negotiated at arms' length. (Ronzetti Decl. at ¶ 19.) The Parties engaged in substantial settlement negotiations for months before the formal mediation before Mr. Ravikoff on May 26, 2015 and had regular communications, negotiating first the terms of an initial term sheet and then a Settlement Agreement reflecting the final terms. Mr. Ravikoff has significant experience mediating complex commercial suits to resolution and his involvement alone weighs in favor of approval. *See, e.g.,  Poertner v. Gillette Co.*, 14-13882, 2015 WL 4310896, at *6 (11th Cir. 2015) (affirming approval of class action settlement and finding objector's allegation of self-dealing "is belied by the record: the parties settled only after engaging in extensive arms-length negotiations moderated by an experienced, court-appointed mediator"); *Nelson v. Mead Johnson & Johnson Co.*, 484 Fed. Appx. 429, 435 (11th Cir. 2012) (finding no collusion where "the settlement agreement was the result of extensive arms-length negotiations moderated by a court-appointed mediator"); *Lee v. Ocwen Loan Servicing, LLC*, No. 14-CV-60649, at 25-26 (S.D. Fla. September 14, 2015) (attached as Exhibit 3) (approving settlement and noting use of a highly respected mediator supported conclusion that negations

8

were not the product of collusion); *Hamilton v. SunTrust Mortg. Inc.*, 13-60749-CIV, 2014 WL 5419507, at *2 (S.D. Fla. 2014) (fact that settlement occurred "only after the parties mediated over a period of months with a nationally recognized and well respected mediator" supported approval of class action settlement).

The Parties' extensive negotiations were also informed by considerable discovery. The Parties have been actively litigating this matter for almost two years. The Parties have produced over 28,000 documents and deposed corporate and class representatives, as well as other key A-B personnel. Litigation of Plaintiffs' claims was also adversarial, and in the almost two years during which this Action and the *Kirin* case were pending, the parties advocated their positions zealously. (Ronzetti Decl. at ¶¶ 5, 8, 10.) The Parties have also engaged in significant motion preparation, briefing a motion to dismiss, motions in *limine* including a motion to exclude expert testimony, and class certification, among others. *Id.* The adversarial nature of the proceedings confirms the absence of fraud or collusion. *See, e.g., Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) (there was "no doubt that th[e] case ha[d been] adversarial, featuring a high level of contention between the parties").

### B. The Issues Presented Were Highly Complex, and Settlement Approval Will Save the Class Years of Extremely Costly Litigation in this Court and on Appeal.

This case involves complex legal claims and defenses brought on behalf of over a million class members, and includes nationwide common law, quasi-contractual and consumer protection statute claims from three different states. The underlying facts of the case required interpreting complicated factual details such as differences in the locations, amounts, and reasons for which consumers purchased Beck's Beer, and the need for experts in the fields of marketing and economics. (Ronzetti Decl. at ¶¶ 7, 8, 12.) Legally, the case involves complex state law claims, as well as sophisticated defenses. Defendant A-B responded with challenging arguments. Among others, A-B argued Class Members were not ascertainable; that Plaintiffs lacked standing to pursue injunctive relief and failed to state a claim; and that A-B had adequately disclosed Beck's Beer's background. *Id.*

Litigating these claims would have undoubtedly proven difficult and consumed significant time, money, and judicial resources. As mentioned, the litigation has been pending for nearly two years. Without a settlement, the case would have likely continued for at least another two to three years, and would have involved a trial, post-trial motions, and an appeal. (Exhibit 4-

-Declaration of T. Scott (("Scott Decl.") at ¶ 17.) Even if Plaintiffs would have ultimately prevailed (which A-B contests), the win for Class Members would likely have come only after years of trial and appellate proceedings and the expenditure of significant funds by both Parties. *See, e.g., Lee*, No. 14-CV-60649, at 21 (attached as Exhibit 3) (fact that any success in litigation "would likely have bourne fruit for the Class only after years of trial and appellate proceedings and the expenditure of millions of dollars by both sides" was a factor supporting approval of settlement); *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 694 (S.D. Fla. 2014), *appeal dismissed* (Oct. 15, 2014) (fact that "absent settlement, [the parties] would have had to expend significant resources in litigating a protracted trial and appeal" was a factor supporting approval); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1381 (S.D. Fla. 2007) (fact that, without a settlement, plaintiffs would incur significant trial expenses and the delay and uncertainty of appeal, supported approval of settlement).

By contrast, the proposed Settlement provides immediate and substantial monetary relief to the Class, with cash payments approximating 33% to 50% of Class Members' actual damages. (Ronzetti Decl. at ¶ 15.) This range is extremely favorable, and constitutes an excellent result. (Scott Decl. at ¶ 13.); *see also Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1346 (S.D. Fla. 2011) (range of 9% to 45% of damages was an "exemplary" result). These benefits come without the expense, uncertainty, and delay of continued and indefinite litigation. In light of the costs, uncertainties, and delays of litigating through trial—to say nothing of an appeal— "the benefits to the class of the present settlement become all the more apparent." *See Ressler v. Jacobso*n, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992).

### C. The Factual Record Was Sufficiently Developed to Enable Class Counsel to Make a Reasoned Judgment Regarding the Settlement.

Courts consider "the degree of case development that class counsel have accomplished prior to settlement" to ensure that "counsel had an adequate appreciation of the merits of the case before negotiating." *In re Gen. Motors Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 813 (3d Cir. 1995). At the same time, however "[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *Ressler*, 822 F. Supp. at 1555.

Prior to settlement, Class Counsel had been litigating claims against A-B for over a year and a half, and had familiarized themselves thoroughly with the facts surrounding the marketing, advertising, packaging, and labeling of Beck's Beer. (Ronzetti Decl. at ¶¶ 5, 8, 10.) The Parties produced thousands of pages of documents and the depositions of key A-B personnel, the class representatives and the experts were completed. *Id.* The Parties had also engaged in significant motion practice, briefing a motion to dismiss, and motion *in limine* as to all of the experts disclosed in the case. *Id.*

Moreover, the settlement terms in this case were the product of significant give and take by the settling parties, and were negotiated at arms' length. (Ronzetti Decl. at ¶ 19.) The Parties participated in extensive negotiations before the formal mediation before Mr. Ravikoff, on May 26, 2015 and then had regular communications over the course of the next several months, negotiating both the terms of an initial term sheet and a settlement agreement reflecting the final terms.

Counsel for both parties are very familiar with consumer class action cases and had ample time, information, and resources available to assess the strengths and weaknesses of the case and reach a fair and reasonable settlement. (Scott Decl. at ¶ 19) (Ronzetti Decl. at ¶ 10.)

### D.  Plaintiffs Would Have Faced Significant Obstacles to Obtaining Relief.

 "[T]he likelihood and extent of any recovery from the defendants absent … settlement" must be considered in assessing the reasonableness of a settlement. *See In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 314 (N.D. Ga. 1993); *see also Ressler*, 822 F. Supp. at 1555 ("a court is to consider the likelihood of the plaintiffs' success on the merits of his claims against the amount and form of relief offered in the settlement before judging the fairness of the compromise"). Class Counsel and Plaintiffs believe they have a compelling case, but also recognize that A-B has raised significant defenses to all claims.

The classwide damages model and presentation in this case was complex due to the nature of the beer market, where the manufacturer sells to a distributor who sells to the ultimate consumer, and the data reflecting those sales.  (Ronzetti Decl. at ¶ 12.)  A-B attacked the Plaintiffs' price-premium model and its premises throughout the litigation.  Class certification is always challenging, and the unsettled nature of ascertainability in the Eleventh Circuit enhances the risk of prosecution in a consumer case like this.  *See Karhu v. Vital Pharmaceuticals, Inc.*, Case No. 14-11648 (11th Cir. June 9, 2015).  Although Class Counsel believe Plaintiffs' Motion

11

for Class Certification was meritorious, other cases in this district involving labeling have failed at the certification stage. *See, e.g.*, *Randolph v. J.M. Smucker Co.*, Case No. 13-cv-80581-BB (S.D. Fla. Dec. 23, 2014); *Karhu v. Vital Pharma., Inc.*, Case No. 13-60768-CIV, 2014 WL 350811 (S.D. Fla., July 17, 2014), *aff'd*, Case No. 14-11648 (11th Cir. June 9, 2015). Regarding injunctive relief, this Court itself originally dismissed the claim due to Article III limitations. (*See* DE 88). Although Plaintiffs amended over to satisfy those limitations, their pleading and its claim were never subsequently tested. Thus, this case presented profound risks in achieving any result at all for the Class. (Ronzetti Decl. at ¶ 12) (Scott Decl. at ¶ 11.)

Further, major litigation against A-B involving labeling practices had been litigated and lost, in a multi-district litigation involving alcohol content. *See In re Anheuser-Busch Beer Labeling, Marketing, and Sales Practice Litigation*, MDL No. 2448 (N.D. Ohio).

Although Plaintiffs and Class Counsel maintain that A-B's defenses lack merit, if the litigation continued, Plaintiffs and Class Members would have faced the risk of not prevailing on their claims. (Scott. Decl. at ¶ 11); *see also, e.g., Kunzelmann*, 2013 WL 139913 (noting obstacles created by application of multistate law, among other things).

### E. The Benefits Provided by the Settlement Are Fair, Reasonable, and Adequate When Considered Against the Possible Range of Recovery.

The Settlement Agreement provides monetary recoveries that represent a substantial amount of the recovery Plaintiffs could recover at trial. As explained above, the Settlement Agreement provides that Class Members are eligible to receive refunds for the particular product they purchased. Using data uncovered in the litigation and with calculations assisted by Plaintiffs' experts, it is estimated these recovery amounts are approximately 33% to 50% of the recovery Plaintiffs could achieve at trial, depending on the product claimed. (Ronzetti Decl. at ¶ at ¶ 15.) As such, the recovery surpasses the standards established by this and other courts. (Scott Decl. ¶ 13); *see, e.g., Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) *aff'd*, 899 F.2d 21 (11th Cir. 1990) ("the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair and inadequate … A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery[.]"); *Bennett*, 737 F.2d at 986-87 and n.9 (11th Cir. 1984) (approving as fair and adequate settlement that was 5.6% of potential recovery in light of the risks of further litigation and litigation objectives); *In re Checking Account Overdraft Litig.*, 830

F. Supp. 2d at 1346 ("nine percent or higher constitutes a fair settlement even absent the risks associated with prosecuting these claims"); *Sunbeam Sec. Litig.*, 176 F. Supp. 2d at 1331-32 (recovery of 10.7% of "plaintiffs' 'best case' scenario" fell "well within the range of what is fair, adequate, and reasonable"); *In re Rite Aid Corp. Sec. Litig.,* 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (noting that since 1995, class action settlements have typically "recovered between 5.5% and 6.2% of the class members' estimated losses").

Additionally, the injunctive relief secured by the Settlement Agreement provides an additional benefit to the Class, and further supports a finding that the Settlement is fair, reasonable, and adequate. (Scott Decl. at ¶¶ 14, 38.) Further, the presence of "strong defenses to the claims" makes lower recoveries more reasonable. *See Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1346 ("standing alone, nine percent or higher constitutes a fair settlement even absent the risks associated with prosecuting these claims."). And, "when settlement assures immediate payment of substantial amounts to class members, even if it means sacrificing speculative payment of a hypothetically larger amount years down the road, settlement is reasonable[.]" *Johnson v. Brennan*, No. 10-cv-4712, 2011 WL 4357376, at *12 (S.D.N.Y. Sept. 16, 2011) (citation and internal quotations omitted).

Without a doubt, Plaintiff and the Class faced significant hurdles in litigating their claims to resolution. Each Class Member stands to recover approximately 33% to 50% of the amount attainable at trial. These results fall well within the range of reasonableness.

## F. The Opinions of Class Counsel, the Class Representative, and Absent Class Members Strongly Favor Settlement Approval.

A court should give "great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation." *Warren v. Tampa,* 693 F. Supp. 1051, 1060 (M.D. Fla. 1988). This Court has already found that Class Counsel and Plaintiffs will adequately represent the Class in this action, and its conclusion was warranted. *See* Order Granting Prelim. App. (DE 152 at 2.) ("Plaintiffs fairly and adequately represent the interests of the Settlement Class."). It is Class Counsel's informed opinion that the Settlement is fair, reasonable, adequate, and in the best interests of the Class. (Ronzetti Decl. at ¶¶ 13, 15, 17.) The overwhelming class support for the settlement in this case is evidence of its fairness. There were no objections to preliminary approval of the class settlement, which, as mentioned previously, was granted by the Court. As of the date of this filing, there are no objections to final

approval of the class settlement, and only three opt outs. (KCC Decl. at ¶ 20.) Thus, this supports a finding that the settlement is fair and reasonable. *Lee*, No. 14-CV-60649, at 11-12 (attached as Exhibit 3) (fact that there were only four objections and 160 requests for exclusion in class of almost 400,000 was "powerful indicia that the Settlement is fair, reasonable and adequate, and deserves final approval"); *Perez*, 501 F. Supp. 2d at 1381 ("a low percentage of objections demonstrates the reasonableness of a settlement"); *Saccoccio*, 297 F.R.D. at 694 ("low resistance" to settlement consisting of eight objections and 122 opt-outs supported approval). Viewed either independently or taken together, the above factors confirm that the settlement is fair, reasonable, and adequate.

## II.  CLASS COUNSEL SHOULD BE AWARDED REASONABLE FEES AND COSTS AND CLASS REPRESENTATIVE PLAINTIFFS THE REQUESTED SERVICE AWARD.

For their extensive work prior to the filing of the complaint and throughout the pre-trial and settlement phases of this litigation, Class Counsel seek $3.5 million in attorneys' fees and expenses, equaling only 10.9% to 15.3% of the monetary settlement benefits provided to the Class, and without considering the settlement's important injunctive relief which alone justifies the award.  A service award of $5,000 to each Class Representative is also appropriate.

### A.  The Court Should Award the Requested Attorney's Fees and Expenses.

Class Counsel is entitled to an attorney's fee for the benefit obtained in a class settlement. *See Casey v. Citibank, N.A.*, No. 12-cv-00820 (N.D.N.Y.) at (D.E. 223); *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478, 676 (1980); *see David v. Am. Suzuki Motor Corp.*, No. 08–CV–22278, 2010 WL 1628362 (S.D. Fla. Apr. 15, 2010) (settlement with ascertainable benefits may be treated as a common fund to which a percentage fee may be awarded, even if the fee is separately paid by the defendant). In the Eleventh Circuit, "attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I Condo. Ass'n v. Dunkle,* 946 F.2d 768, 774 (11th Cir. 1991); *see also Poertner*, 2015 WL 4310896, at *4 n.2 (holding that "no principled reason counsels against" extending *Camden I's* percentage-of-recovery rule to claims-made settlements); *Pinto*, 513 F. Supp. 2d at 1339; *In re Sunbeam Sec. Litig.,* 176 F. Supp. 2d at 1333. The percentage applies to the total benefits provided, even where the actual payments to the class following a claims process is lower.  *See Waters v. Int'l Precious Metals Corp.,* 190 F.3d 1291, 1295-96 (11th Cir.

1999); *see also Casey*, No. 12-cv-00820 (N.D.N.Y.) at (D.E. 221) (the amount of claims made is "irrelevant to the underlying issue; to wit, whether the proposed settlement agreement is fair, reasonable, and adequate").

Under this approach, "the majority of common fund fee awards fall between 20% to 30% of the fund." *Camden I*, 946 F.2d at 774. This range of 20%-30% is viewed as a "benchmark" that may be adjusted in accordance with individual circumstances of each case, using the factors set forth in *Johnson v. Georgia Highway Express, Inc.,* 448 F.2d 714 (5th Cir. 1974). *See Camden I*, 946 F.2d at 774-75; *see also Waters*, 190 F.3d at 1294 (reiterating the *Camden I* analysis and affirming award of fees using 30% as the benchmark and then adjusting upward to 33 1/3%). Here, of the $3.5 million fee and expense award that Class Counsel seeks, the net award of fees equals $3,140,053.94 ($3,500,000 total minus $359,946.06 in costs). (Ronzetti Decl. at ¶ 22.) Plaintiffs' economic damages expert has estimated that the settlement provides approximately $20,463,870.00 to $28,885,420.00 in relief available to the Class. (Anderson Decl. at 19.) Therefore, the requested fee is only 10.9% to 15.3% of the estimated value of the Settlement to the Class. This is a modest fee based on Eleventh Circuit precedent, which uses 20% to 30% as its benchmark award. *Camden I Condo Ass'n v. Dunkle*, 946 F.2d 768 at 774-875; *see also Poertner*, 2015 WL 4310896, at *4 (confirming *Camden I's* use of 25% as benchmark).[4]

This benchmark may be adjusted due to the *Johnson* factors, which include: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional relationship with the client; and (12) awards in similar cases. *See Camden I,* 946 F.2d at 772 n.3. The Court may

---

[4] The attorneys' fee request is also supported when using a lodestar crosscheck because the award has a 2.2 multiplier. (Ronzetti Decl. at ¶ 22.) This is a modest multiplier. The range is typically 2.26 to 4.5, with many cases awarding much higher multipliers. *Pinto*, 513 F. Supp. 2d at 1344 (noting lodestar multiples "in large and complicated class actions" range from 2.26 to 4.5, while "three appears to be the average"); *Behrens*, 118 F.R.D. at 549 (in complex cases "a lodestar multiple of three appears to be average" and "most lodestar multiples awarded in cases like this are between 3 and 4").

also consider the time required to reach settlement, the existence of substantial objections from class members, the existence of non-monetary benefits of the settlement, and the economics involved in prosecuting a class action. *Id.* at 775. As explained below, the factors set forth in *Camden I* amply support the full requested award.

1. **The Contingent Nature of the Fee, the Financial Burden Carried by Counsel, and the Economics of Prosecuting a Class Action Support the 10.9% to 15.3% Award.**

A determination of a fair fee for Class Counsel must include consideration of the contingent nature of the fee, the outlay of out-of-pocket expenses by Class Counsel, and the fact that the risks of failure and nonpayment in a class action are extremely high. *See Pinto*, 513 F. Supp. 2d at 1339. These factors weigh in favor of awarding Class Counsel 10.9% to 15.3% of the cash benefits obtained. Class Counsel have received no compensation during the course of this litigation and have incurred over $359,946.06 in costs litigating on behalf of the Class, which they risked losing had A-B prevailed. (Ronzetti Decl. at ¶ 21; Scott Decl. at ¶ 41.) From the time Class Counsel filed suit, there existed a real possibility that they would achieve no recovery and hence no compensation.

2. **The Requested Fees Are Below the Market Rate in Complex, Contingent Litigation.**

A fee of 10.9% to 15.3% of the cash value is below the market for class actions. "The percentage method of awarding fees in class actions is consistent with, and is intended to mirror, practice in the private marketplace where attorneys typically negotiate percentage fee arrangements with their clients." *Pinto*, 513 F. Supp. 2d at 1340. In private litigation, attorneys regularly contract for contingent fees between 30% and 40% directly with their clients. (Scott Decl. at ¶ 40.) These percentages are the prevailing market rates throughout the United States for contingent representation. *See Pinto*, 513 F. Supp. 2d at 1341 (citing, *inter alia*, *Kirchoff v. Flynn*, 786 F.2d 320, 323 (7th Cir. 1986)). In making a determination of what constitutes a fair percentage fee, this Court should be guided by such awards. A fee of approximately 10.9% to 15.3% of the total monetary benefits obtained is fully consistent with and falls well within, if not below, the range of the customary fee awarded in common fund cases, many of which have

awarded a higher percentage.[5]

### 3. The Novelty and Difficulty of the Questions at Issue and Undesirability of the Case.

As previously mentioned, this case presents novel questions of law and complex issues of fact. Class action matters are generally complex, but this one is particularly so. The interplay between A-B's disclosures, potentially individualized issues of differences in the locations, amounts, and reasons for which consumers purchased Beck's Beer, state and common law, TTB preemption, and the formulation of a damages methodology led to significant briefing on class certification and would have led to further briefing on the merits, at trial, post-trial, and on appeal. (Scott Decl. at ¶¶ 24, 25) (Ronzetti Decl. at ¶¶ 6, 7, 12.) Moreover, A-B also vigorously asserted the defense of lack of ascertainability, a defense that disposed of other consumer class cases in circuits across the country. *Id.* Further, this case was undesirable at the outset--Class Counsel took on a corporate defendant with vast resources necessary to withstand a lengthy legal battle. (Scott Decl. at ¶ 42) (Ronzetti Decl. at ¶ 6.) The undesirability of the case is also evidenced by the fact that, to Class Counsel's knowledge, no other representatives filed cases elsewhere in the country addressing the misleading labeling and packaging of beer as an import. *Id.* The only other contemporaneous labeling and marketing case located against A-B, *In re Anheuser-Busch Beer Labeling, Marketing, and Sales Practice Litigation*, MDL No. 2448 (N.D. Ohio), was dismissed on safe harbor grounds, as A-B notified the Court here in the course of the motion to dismiss filings (DE 66.) Thus, even though Class Counsel successfully reached a settlement with A-B, the difficulty of mastering and litigating these issues and the undesirability of the case amply supports the full award requested.

---

[5] *See also, e.g., Gutter v. E.I. Dupont De Nemours & Co.,* 95–2152–Civ–Gold (S.D. Fla. May 30, 2003) (33-1/3 %); *Waters,* 190 F.3d 1291 (affirming 33-1/3%); *Tapken v. Brown,* Case No. 90-0691-CIV, 1992 WL 178984, Fed. Sec. L. Rep. P 96805 (S.D. Fla. 1995) (33%); *In re Home Shopping Network Sec. Litig.,* Case No. 87-428-T-13(A) (M.D. Fla. 1991) (33%).

### 4. The Skill, Experience, and Reputation of Class Counsel.

This litigation required a high degree of skill and experience given the complexity of the issues. Class Counsel have established their skill, experience, and reputation in repeated cases before this Court. (Scott Decl. at ¶ 34, 35; Firm Resumes at D.E. 149-6.) Class Counsel has many years of experience successfully litigating nationally recognized class actions.

Beyond that, Class Counsel's reputation, diligence, expertise, and skill are reflected in the results they have achieved. They resolved this dispute efficiently despite the potential hurdles presented them and the arguments raised by A-B detailed above. The quality of Class Counsel and their achievement in this case is equally shown by the strength of their opponents, Skadden, Arps, Slate, Meagher & Flom LLP and Kenny Nachwalter, P.A., two of the finest defense firms in the country. (Scott Decl. at ¶ 35; Ronzetti Decl. at 11.) This factor thus also favors awarding the requested fee.

### 5. The Result Achieved for the Class.

The result here is extraordinary, and perhaps best establishes the propriety of the requested fee award. The result achieved is a major factor to consider in making a fee award. *See Hensley v. Eckerhart,* 461 U.S. 424, 436, (1983) ("critical factor is the degree of success obtained"); *Pinto,* 513 F. Supp. 2d at 1342; *Behrens,* 118 F.R.D. at 547-48 ("The quality of work performed in a case that settles before trial is best measured by the benefit obtained."). In considering the results, courts examine the value of *both* monetary and injunctive relief. *See Lee,* No. 14-CV-60649, at 40 (attached as Exhibit 3); *Perez,* 501 F. Supp. 2d 1360; *LiPuma,* 406 F. Supp. 2d at 1323; *In re Managed Care Litig.,* 2003 WL 228500700, at *6 (S.D. Fla. Oct. 24, 2003). Class Counsel are indeed entitled to a statutory award of attorney's fees *solely* based on the injunctive relief that they achieved. *Airflo A/C & Heating, Inc. v. Pagan,* 929 So. 2d 739, 742 (Fla. 2d DCA 2006) (plaintiff who obtained injunctive relief, but no monetary damages, was entitled to attorneys' fees under FDUTPA); *Carr v. Tadin, Inc.,* 51 F. Supp. 3d 970, 976 (S.D. Cal. 2014) (awarding attorney's fees and approving class action settlement where plaintiffs obtained injunction, but no monetary relief, under California deceptive trade practices statutes); *N. State Autobahn, Inc. v. Progressive Ins. Group Co.,* 102 A.D.3d 5, 15, 953 N.Y.S.2d 96, 103-04 (2012) (New York General Business Law § 349 is a broad remedial statute that allows private plaintiffs to obtain, *inter alia,* injunctive relief and attorneys' fees).

Here, even without considering the value of the injunctive relief, it is estimated that the Settlement delivers between $20,463,870.00 and $28,885,420.00 to the Class. (Anderson Decl. at 19.) Further, Class Members are able to obtain approximately 33% to 50% of the recovery Plaintiffs could achieve at trial, depending on the product claimed. (Ronzetti Decl. at ¶ 15.) This is an outstanding result that supports Class Counsel's fee request. (Scott Decl. at ¶¶ 13, 31.)

### 6. The Time and Labor of Class Counsel and Preclusion of Other Work.

Prosecuting and settling the claims in this case demanded considerable time and labor. Kozyak, Tropin & Throckmorton LLP and Harke Clasby & Bushman LLP served as lead counsel. Robert W. Rodriguez, P.A. served as liaison with the class representatives and, along with Campbell Law, LLC, assisted in prosecuting depositions and effectuating process. (Ronzetti Decl. at ¶ 9.)

Class Counsel first interviewed class representatives and investigated the potential claims. After preparing the pleadings, Class Counsel spent many hours performing legal and factual research, engaging in extensive discovery production, and preparing witnesses. (Ronzetti Decl. at ¶ 8.) In total, Class Counsel reviewed over 72,000 pages of documentation and conducted and defended twelve fact and expert witness depositions. Moreover, throughout the litigation, Class Counsel spent many hours working closely with experts to prepare reports and prepare for depositions. (*Id.*) In sum, the settling of this claim demanded considerable time and labor. Class Counsel has already spent 3,400 hours in this litigation and further time will be required in order to conclude the matter. (*Id.* at ¶ 21, 24.) The considerable time and energy devoted to this matter necessarily limited the time available for other litigation, and Class Counsel, in fact, turned away other significant and profitable work in order to give this case the time, effort, and attention it deserved. (Scott Decl. at ¶ 36.)

### 7. The Reaction of the Class.

As of the date of this filing, there have been no objections to the final settlement and only three Class Members have submitted valid opt-out requests. (KCC Decl. at ¶ 20.) The Class is estimated to have beyond 1 million households. (Anderson Decl. at 14.) That this sizeable class has asserted no objections supports the fee request. *See Pinto*, 513 F. Supp. 2d at 1343; Scott Decl. at ¶ 19.

**B.  A Service Award of $5,000 Is Appropriate.**

The Court should approve a service award of $5,000 for the Representative Plaintiffs, as is customary and well supported by precedent in the Eleventh District. *See, e.g.*, *Pinto*, 513 F. Supp. 2d at 1344; (Ronzetti Decl. at ¶ 25.)  In instituting this litigation, the Representative Plaintiffs have acted as private attorney generals seeking a remedy for what appeared to be a public wrong. *See Pinto,* 513 F. Supp. 2d at 1344.  The Class Representatives aided in the investigation of these claims, discovery requests, depositions and settlement, all at their financial risk. (Ronzetti Decl. at ¶ 25.)  Furthermore, the detailed Notice advised Class Members that the Representative Plaintiffs would apply for a service award of $5,000 each, and no Class Member has objected to this reasonable request. (KCC Decl. at ¶ 21.) Private class action suits are a primary weapon in the enforcement of laws designed for the protection of the public.  *See Pinto,* 513 F. Supp. 2d at 1344.  Approval of this award is warranted as a matter of policy and is appropriate under applicable precedents.

## <u>CONCLUSION</u>

Plaintiffs respectfully request the Court enter an order granting final approval of the Class Action Settlement, as well as the applications for Class Counsel's fees and expenses and a $5,000 service award to each of the Class Representatives.

Respectfully submitted,


Lance A. Harke, P.A.
lharke@harkeclasby.com
Sarah Clasby Engel
sengel@harkeclasby.com
Howard M. Bushman, Esq.
hbushman@harkeclasby.com
**HARKE CLASBY & BUSHMAN LLP**
9699 NE Second Avenue
Miami Shores, Florida 33138
Telephone:     (305) 536-8220
Facsimile:     (305) 536-8229


Robert W. Rodriguez, Esq.
RobertWRodriguez@GMail.Com
**ROBERT W. RODRIGUEZ, P.A.**
66 West Flagler Street, Suite 1002
Miami, Florida 33130
Telephone:  (305) 444-1446
Facsimile:  (305) 907-5244

/s/ Thomas A. Tucker Ronzetti
Thomas A. Tucker Ronzetti, Esq.
tr@kttlaw.com
Adam M. Moskowitz, Esq.
amm@kttlaw.com
Tal J. Lifshitz, Esq.
tjl@kttlaw.com
**KOZYAK, TROPIN &**
**THROCKMORTON, LLP**
2525 Ponce de Leon Blvd., 9th Floor
Coral Gables, FL 33134
Telephone:  (305) 372-1800
Facsimile:   (305) 372-3508
*Counsel for Plaintiffs*


John Campbell, Esq.
john@campbelllawllc.com
**CAMPBELL LAW, LLC**
1500 Washington Avenue,
Suite 100
St. Louis, MO 63103
(314)588-8101
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of September, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing documents is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic filing.

/s/ Thomas A. Tucker Ronzetti

## SERVICE LIST

Stanley H. Wakshlag
swakshlag@knpa.com
201 South Biscayne Boulevard, Suite 1100
Miami, FL 33131-4327
Phone: (305) 373-1000
Fax: (305) 372-1861

*Attorneys for Defendant Anheuser-Busch
Companies, LLC*

David R. Pehlke
david.pehlke@skadden.com
Brandon R. Keel
brandon.keel@skadden.com
**SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP**
155 North Wacker Drive
Chicago, IL 60606
Phone: (312) 407-0700
Fax: (312) 407-0411

*Attorneys for Defendant Anheuser-Busch
Companies, LLC*

# EXHIBIT F

Miami-Dade Official Records - Print Document

CFN: 20150249606 BOOK 29583 PAGE 808
DATE:04/20/2015  08:34:51 AM
HARVEY RUVIN, CLERK OF COURT, MIA-DADE CTY

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT, IN AND FOR MIAMI-
DADE COUNTY, FLORIDA

CASE NO. 13-033620 CA 01

LADY J. SUAREZ and GUSTAVO
E. OLIVA,

    Plaintiffs,

v.

ANHEUSER-BUSCH COMPANIES,
LLC,

    Defendant.

_____/

CLASS REPRESENTATION

COMPLEX BUSINESS LITIGATION DIV.

## FINAL ORDER AND JUDGMENT

On December 17, 2014, this Court granted preliminary approval of the proposed class action settlement set forth in the Settlement Agreement and Release ("Settlement Agreement") between Plaintiffs Lady J. Suarez and Gustavo E. Oliva, on behalf of themselves and all members of the Settlement Class,[1] and Defendant Anheuser-Busch Companies, LLC. The Court also provisionally certified the Settlement Class for settlement purposes, approved the procedure for giving Class Notice to the members of the Settlement Class, and set a final approval hearing to take place on April 17, 2014.

On April 17, 2014, the Court held a duly noticed final approval hearing to consider (1) whether the terms and conditions of the Settlement Agreement are fair, reasonable, and adequate; (2) whether a judgment should be entered permanently barring the Parties and Settlement Class Members from prosecuting the other Parties and their officers, attorneys,

_____

[1] Unless otherwise defined, capitalized terms in this Final Order and Judgment have the definitions found in the Settlement Agreement.

11/30/2018                              Miami-Dade Official Records - Print Document

CFN: 20150249606 BOOK 29583 PAGE 809

directors, shareholders, employees, agents, retailers, suppliers, distributors, endorsers, consultants, and any and all other entities or persons upstream and downstream in the production/distribution channels in regard to those matters released as set forth in Section VI of the Settlement Agreement; and (3) whether and in what amount to approve Class Counsel's application for the requested award of attorneys' fees and costs and the Class Representative applications.

Accordingly, it is hereby **ORDERED AND ADJUDGED** that:

1.      The Court has personal jurisdiction over the parties and the Settlement Class Members, venue is proper, the Court has subject matter jurisdiction to approve the Settlement Agreement, including all exhibits thereto, and to enter this Final Order and Judgment. Without in any way affecting the finality of this Final Order and Judgment, this Court hereby retains jurisdiction as to all matters relating to administration, consummation, enforcement, and interpretation of the Settlement Agreement and of this Final Order and Judgment, and for any other necessary purpose.

2.      The Court finds that Class Notice was given in the manner ordered by the Court; constituted the best practicable notice to apprise Settlement Class Members of the pendency of the Action, their right to object or exclude themselves from the proposed Settlement, and their right to appear at the Final Approval Hearing; was fair, reasonable, and adequate and constituted sufficient notice to all persons entitled to receive notice, including all Settlement Class Members; and complied fully with the requirements of Florida Rule of Civil Procedure 1.220.

3.      The Court finds that the prerequisites for a class action under Florida Rule of Civil Procedure 1.220(a) and Florida Rule of Civil Procedure 1.220(b) have been satisfied for

2

11/30/2018                                        Miami-Dade Official Records - Print Document

CFN: 20150249606 BOOK 29583 PAGE 810

settlement purposes for each Settlement Class Member in that (a) the number of Settlement Class Members is so numerous that joinder of all members thereof is impracticable; (b) there are questions of law and fact common to the Settlement Class; (c) the claims of the Class Representatives are typical of the claims of the Settlement Class they seek to represent; (d) Class Representatives have and will continue to fairly and adequately represent the interests of the Settlement Class for purposes of entering into the Settlement Agreement; (e) the questions of law and fact common to the Settlement Class Members predominate over any questions affecting any individual Settlement Class Member; (f) Defendant has acted on grounds generally applicable to all Class Members, thereby making final injunctive relief concerning the class as a whole appropriate; and (g) a class action is superior to the other available methods for the fair and efficient adjudication of the controversy.

4.      Pursuant to Florida Rule of Civil Procedure 1.220, this Court hereby finally certifies the Settlement Class, as identified in the Settlement Agreement, which shall consist of all consumers who purchased Kirin Beer in the United States for personal, family, or household purposes and not for re-sale from October 25, 2009 through the date of entry of this Order. Kirin Beer is defined as all bottles and/or cans of Kirin Ichiban and/or Kirin Ichiban Light sold in the United States by Anheuser-Busch Companies, LLC. Excluded from the Settlement Class are all persons who validly opt out of the settlement in a timely manner (for purposes of damages claims only)[2]; counsel of record (and their respective law firms) for the Parties; Defendant and any of its parents, affiliates, subsidiaries, and all of its respective employees, officers, and directors; and the presiding judge in the Action or judicial officer presiding over the matter, and all of their immediate families and judicial staff.

---

[2] No opt-outs have been made.

3

11/30/2018                                    Miami-Dade Official Records - Print Document

CFN: 20150249606 BOOK 29583 PAGE 811

5.      Pursuant to Florida Rule of Civil Procedure 1.220 the Court hereby awards Class Counsel Attorneys' Fees and Expenses in the amount of $1,000,000.00 payable pursuant to the terms of the Settlement Agreement. The Court also awards a case contribution award in the amount of $5,000.00 to Plaintiff Lady J. Suarez. The Court also awards a case contribution award in the amount of $5,000.00 to Plaintiff Gustavo E. Oliva.

6.      The terms of the Settlement Agreement and of this Final Order and Judgment, including all exhibits thereto, shall be forever binding on the parties, and shall have *res judicata* and preclusive effect in all pending and future lawsuits maintained by the Plaintiffs and all other Settlement Class Members, as well as their heirs, executors and administrators, successors, and assigns.

7.      The Releases, which are set forth in Section VI of the Settlement Agreement and which are also set forth below, are expressly incorporated herein in all respects and are effective as of the date of this Final Order and Judgment; and the Discharged Parties (as that term is defined below in the Settlement Agreement) are forever released, relinquished, and discharged by the releasing persons from all released claims:

**VI. RELEASE**

Upon the Effective Date, and except as to such rights or claims as may be created by this Agreement, and in consideration for the settlement benefits described in this Agreement, Plaintiffs and the Settlement Class fully release and discharge Defendant, Kirin Holdings Company, Ltd., and all their present and former parent companies, subsidiaries, shareholders, officers, directors, employees, agents, servants, registered representatives, attorneys, insurers, affiliates, and successors, personal representatives, heirs and assigns, retailers, suppliers, distributors, endorsers, consultants, and any and all other entities or persons upstream and downstream in the production/distribution channels (together, the "Discharged Parties") from all claims, demands, actions, and causes of action of any kind or nature whatsoever, whether at law or equity, known or unknown, direct, indirect, or consequential, liquidated or unliquidated, foreseen or unforeseen, developed or undeveloped, arising under common law, regulatory law, statutory law, or otherwise, whether based on

4

CFN: 20150249606 BOOK 29583 PAGE 812

federal, state or local law, statute, ordinance, regulation, code, contract, common law, or any other source, or any claim that Plaintiffs or Settlement Class Members ever had, now have, may have, or hereafter can, shall or may ever have against the Discharged Parties in any other court, tribunal, arbitration panel, commission, agency, or before any governmental and/or administrative body, or any other adjudicatory body, on the basis of, arising from, or relating to the claims alleged in the Action.

8.    This Final Order and Judgment and the Settlement Agreement (including the exhibits thereto) may be filed in any action against or by any released person to support a defense of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim.

9.    Without further order of the Court, the Parties may agree to reasonably necessary extensions of time to carry out any of the provisions of the Settlement Agreement.

10.    This Action, including all individual claims and class claims presented herein, is hereby **DISMISSED** on the merits and **WITH PREJUDICE** against the Plaintiffs and all other Settlement Class Members, without fees or costs to any party except as otherwise provided herein.

DONE AND ORDERED in Chambers at Miami-Dade County, Florida, on 04/17/15.


JOHN W. THORNTON
CIRCUIT COURT JUDGE

ORIGINAL

JUDGE JOHN W. THORNTON JR.

5

CFN: 20150249606 BOOK 29583 PAGE 813

---

**FINAL ORDERS AS TO ALL PARTIES**
**SRS DISPOSITION NUMBER   12**
THE COURT DISMISSES THIS CASE AGAINST
ANY PARTY NOT LISTED IN THIS FINAL ORDER
OR PREVIOUS ORDER(S). THIS CASE IS CLOSED
AS TO ALL PARTIES.

                    **Judge's Initials   JWT**

---

The parties served with this Order are indicated in the accompanying 11th Circuit email confirmation which includes all emails provided by the submitter. The movant shall IMMEDIATELY serve a true and correct copy of this Order, by mail, facsimile, email or hand-delivery, to all parties/counsel of record for whom service is not indicated by the accompanying 11th Circuit confirmation, and file proof of service with the Clerk of Court.

Signed and stamped original Order sent to court file by Judge Thornton's staff.

Copies furnished to all counsel of record

6

# EXHIBIT G



Faruqi & Faruqi, LLP focuses on complex civil litigation, including securities, antitrust, wage and hour, consumer, and pharmaceutical class actions as well as shareholder derivative and merger and transactional litigation.   The firm is headquartered in New York, and maintains offices in California, Delaware, Pennsylvania and Georgia.

Since its founding in 1995, Faruqi & Faruqi, LLP has served as lead or co-lead counsel in numerous high-profile cases which have provided significant recoveries to investors, consumers and employees.

# <u>PRACTICE AREAS</u>

## SECURITIES FRAUD LITIGATION

From its inception, Faruqi & Faruqi, LLP has devoted a substantial portion of its practice to class action securities fraud litigation. In *In re PurchasePro.com, Inc. Securities Litigation*, No. CV-S-01-0483 (JLQ) (D. Nev.), as co-lead counsel for the class, Faruqi & Faruqi, LLP secured a $24.2 million settlement in a securities fraud litigation even though the corporate defendant was in bankruptcy.  As noted by Senior Judge Justin L. Quackenbush in approving the settlement, ***"I feel that counsel for plaintiffs evidenced that they were and are skilled in the field of securities litigation."***

Other past achievements include: *In re Olsten Corp. Sec. Litig.*, No. 97-CV-5056 (RDH) (E.D.N.Y.) (recovered $24.1 million dollars for class members) (Judge Hurley stated: "The quality of representation here I think has been excellent."), *In re Tellium, Inc. Sec. Litig.*, No. 02-CV-5878 (FLW) (D.N.J.) (recovered $5.5 million dollars for class members); *In re Mitcham Indus., Inc. Sec. Litig.*, No. H-98-1244 (S.D. Tex.) (recovered $3 million dollars for class members despite the fact that corporate defendant was on the verge of declaring bankruptcy), and *Ruskin v. TIG Holdings, Inc.*, No. 98 Civ. 1068 LLS (S.D.N.Y.) (recovered $3 million dollars for class members).

Recently, Faruqi & Faruqi, LLP, as sole lead counsel, won a historic appeal in the United States Court of Appeals for the Fourth Circuit in *Zak v. Chelsea Therapeutics Inc. Int'l, Ltd.*, Civ. No. 13-2730 (2015), where the Court reversed a trial court's *scienter* ruling for the first time since the enactment of the Private Securities Litigation Reform Act of 1995 ("PSLRA").  The Court remanded the case to the district court, where Faruqi & Faruqi, LLP defeated defendants' motion to dismiss and subsequently obtained final approval of a $5.5 million settlement for the class.  *McIntyre v. Chelsea Therapeutics Int'l, LTD*, No. 12-CV-213 (MOC) (DCK) (W.D.N.C.).  In *In re Avalanche Biotechnologies Sec. Litig.*, No. 3:15-cv-03185-JD (N.D. Cal.), Faruqi & Faruqi, LLP served as sole lead counsel for the class in the federal court action, and, together with counsel in the parallel state court action, secured final approval of a $13 million global settlement of both actions on January 19, 2018.  In *Rihn v. Acadia Pharmaceuticals, Inc.*, No. 3:15-cv-00575-BTM-DHB (S.D. Cal.), the court denied defendants' first motion to dismiss, and on January 8, 2018, Faruqi & Faruqi, LLP, as sole lead counsel for the class, secured final approval of a $2.95 million



settlement for the class, which represented approximately 36% of the total recognized losses claimed by the class.  In *In re Geron Corp., Sec. Litig.*, No. 14-CV-1424 (CRB) (N.D. Cal.), Faruqi & Faruqi, LLP, as sole lead counsel for the class, defeated defendants' motion to dismiss and, on July 21, 2017, obtained final approval of a settlement awarding $6.25 million to the class.  Also, in *In re Dynavax Techs. Corp. Sec. Litig.*, No. 13-CV-2796 (CRB) (N.D. Cal.), Faruqi & Faruqi, LLP, as sole lead counsel for the class, defeated defendants' motion to dismiss, and on February 6, 2017, secured final approval of a $4.5 million settlement on behalf of the class.  In *In re L&L Energy, Inc. Sec. Litig.*, No. 13-cv-6704 (RA) (S.D.N.Y.), Faruqi & Faruqi, LLP, as co-lead counsel, obtained final approval on July 31, 2015 of a $3.5 million settlement for the class.  In *In re Ebix, Inc. Securities Litigation*, No. 11-cv-2400 (RWS) (N.D. Ga.), the court denied defendants' motion to dismiss and Faruqi & Faruqi, LLP, as sole lead counsel, obtained final approval on June 13, 2014 of a $6.5 million settlement for the class.  In *Shapiro v. Matrixx Initiatives, Inc.*, No. CV-09-1479 (PHX) (ROS) (D. Ariz.), Faruqi & Faruqi, LLP, as co-lead counsel for the class, defeated defendants' motion to dismiss, succeeded in having the action certified as a class action, and secured final approval of a $4.5 million settlement for the class.  *See also In re Longwei Petroleum Inv. Holding Ltd. Sec. Litig.*, No. 13 Civ. 214 (HB) (S.D.N.Y.) (as sole lead counsel, obtained final approval of a $1.34 million settlement on behalf of the class); *Simmons v. Spencer, et al.*, No. 13 Civ. 8216 (RWS) (S.D.N.Y.) (as co-lead counsel obtained final approval of settlement awarding $1.5 million to the class).

Additionally, Faruqi & Faruqi, LLP is serving as court-appointed lead counsel in the following cases:

- *Loftus v. Primero Mining Corp.*, No. 16-01034 (BRO) (RAO) (C.D. Cal.) (appointed sole lead counsel for the class);
- *Bielousov v. GoPro, Inc., et al.*, No. 4:16-CV-06654-CW (N.D. Cal.) (as sole lead counsel for the class, defeated defendants' motion to dismiss);
- *Attigui v. Tahoe Resources, Inc., et al.*, No. 2:17-cv-01868 (RFB) (NJK) (D. Nev.) (appointed sole lead counsel for the class).
- *Khanna v. Ohr Pharmaceutical, Inc.*, No. 1:18-cv-01284 (LAP) (S.D.N.Y.) (appointed sole-lead counsel for the class);
- *DeSmet v. Intercept Pharmaceuticals, Inc.*, No. 1:17-cv-07371 (LAK) (S.D.N.Y.) (appointed sole-lead counsel for the class); and
- *Lee v. Synergy Pharmaceuticals, Inc. Sec. Litig.*, No. 1:18-cv-00873 (AMD) (VMS) (E.D.N.Y.) (appointed as co-lead counsel for the class).

## SHAREHOLDER MERGER AND TRANSACTIONAL LITIGATION

Faruqi & Faruqi, LLP is nationally recognized for its excellence in prosecuting shareholder class actions brought nationwide against officers, directors and other parties responsible for corporate wrongdoing. Most of these cases are based upon state statutory or common law principles involving fiduciary duties owed to investors by corporate insiders as well as Exchange Act violations.



Faruqi & Faruqi, LLP has obtained significant monetary and therapeutic recoveries, including millions of dollars in increased merger consideration for public shareholders; additional disclosure of significant material information so that shareholders can intelligently gauge the fairness of the terms of proposed transactions and other types of therapeutic relief designed to increase competitive bids and protect shareholder value. As noted by Judge Timothy S. Black of the United States District Court for the Southern District of Ohio in appointing lead counsel *Nichting v. DPL Inc.*, Case No. 3:11-cv-141 (S.D. Ohio), "[a]lthough all of the firms seeking appointment as Lead Counsel have impressive resumes, the Court is most impressed with Faruqi & Faruqi."

For example, in *Hall v. Berry Petroleum Co.*, No. 8476-VCG (Del. Ch.), Faruqi & Faruqi, LLP as sole lead counsel was credited by the Delaware Chancery Court with contributing to an increase in exchange ratio in an all-stock transaction that provided Berry Petroleum Co. stockholders with an additional $600 million in consideration for their shares as well as the disclosure of additional material information regarding the transaction. The court noted at the settlement hearing "[t]he ability of petitioning counsel [Faruqi] is known to the Court, and plaintiff's counsel [Faruqi] are well versed in the prosecution of corporate law actions." Faruqi & Faruqi, LLP achieved a similar result in *In Re Energysolutions, Inc. Shareholder Litigation*, Cons. C.A. No. 8203-VCG (Del. Ch.), in which the Faruqi Firm, as co-lead counsel, was credited in part with an increase in the merger consideration from $3.75 to $4.15 in cash per Energysolution share by the acquirer Energy Capital, and credited with additional material disclosures distributed to stockholders. In approving the settlement of the case and noting that the price increase amounted to an extra $36 million for stockholders, the Delaware Court stated that the standing and ability of the stockholders' counsel, including Faruqi & Faruqi, LLP and its co-counsel, is "…among the highest in our bar." *See In Re Energysolutions, Inc. S'holder Litig.*, Cons. C.A. No. 8203-VCG (Del. Ch. Feb. 11, 2014). In *In Re Jefferies Group, Inc. Shareholders Litigation*, C.A. No. 8059-CB (Del. Ch.), Faruqi & Faruqi, LLP acted as co-lead counsel representing Jeffries Group, Inc. stockholders in challenging the transaction with Leucadia National Corporation. After years of vigorous litigation, the parties reached a settlement that recovered $70 million additional consideration for the former Jeffries Group Inc. stockholders.

In *In re Playboy Enterprises, Inc. Shareholders Litigation*, Consol. C.A. No. 5632-VCN (Del. Ch.), Faruqi & Faruqi, LLP achieved a substantial post close settlement of $5.25 million. In *In re Cogent, Inc. Shareholders Litigation*, Consol. C.A. No. 5780-VC (Del. Ch.) Faruqi & Faruqi, LLP, as co-lead counsel, obtained a post-close cash settlement of $1.9 million after two years of hotly contested litigation; In *Rice v. Lafarge* North *America, Inc., et al.*, No. 268974-V (Montgomery Cty., Md. Circuit Ct.), Faruqi & Faruqi, LLP, as co-lead counsel represented the public shareholders of Lafarge North America ("LNA") in challenging the buyout of LNA by its French parent, Lafarge S.A., at $75.00 per share. After discovery and intensive injunction motions practice, the price per share was increased from $75.00 to $85.50 per share, or a total



benefit to the public shareholders of $388 million.  The Lafarge court gave Class counsel, including Faruqi & Faruqi, LLP, shared credit with a special committee appointed by the company's board of directors for a significant portion of the price increase.

Similarly, in *In re: Hearst-Argyle Shareholder Litig.,* Lead Case No. 09-Civ-600926 (N.Y. Sup. Ct.) as co-lead counsel for plaintiffs, Faruqi & Faruqi, LLP litigated, in coordination with Hearst-Argyle's special committee, an increase of over 12.5%, or $8,740,648, from the initial transaction value offered for Hearst-Argyle Television Inc.'s stock by its parent company, Hearst Corporation.  Faruqi & Faruqi, LLP, in *In re Alfa Corp. Shareholder Litig.,* Case No. 03-CV-2007-900485.00 (Montgomery Cty, Ala. Cir. Ct.) was instrumental, along with the Company's special committee, in securing an increased share price for Alfa Corporation shareholders of $22.00 from the originally-proposed $17.60 per share offer, which represented over a $160 million benefit to class members, and obtained additional proxy disclosures to ensure that Alfa shareholders were fully-informed before making their decision to vote in favor of the merger, or seek appraisal.

Moreover, in *In re Fox Entertainment Group, Inc. S'holders Litig.,* Consolidated C.A. No. 1033-N (Del. Ch. 2005), Faruqi & Faruqi, LLP, a member of the three (3) firm executive committee, and in coordination with Fox Entertainment Group's special committee, created an increased offer price from the original proposal to shareholders, which represented an increased benefit to Fox Entertainment Group, Inc. shareholders of $450 million.  Also, in *In re Howmet Int'l S'holder Litig.,* Consolidated C.A. No. 17575 (Del. Ch. 1999) Faruqi & Faruqi, LLP, in coordination with Howmet's special committee, successfully obtained an increased benefit to class members of $61.5 million dollars).

Recently, in *In re Orchard Enterprises, Inc. Stockholder Litigation*, C.A. No. 7840-VCL (Del. Ch.), Faruqi & Faruqi, LLP acted as co-lead counsel with two other firms.  That action involved the approval of a merger by Orchard's Board of Directors pursuant to which Dimensional Associates LLC would cash-out the stock of Orchard's minority common stockholders at a price of $2.05 per share and then take Orchard private.  On April 11, 2014, the parties reached an agreement to settle their claims for a payment of $10.725 million to be distributed among the Class, which considerably exceeded the $2.62 per share difference between the $2.05 buyout price and the $4.67 appraisal price determined in *In re Appraisal of The Orchard Enterprises, Inc.*, C.A. No. 5713-CS, 2012 WL 2923305 (Del. Ch. July 18, 2012).

Faruqi also has noteworthy successes in achieving injunctive or declaratory relief pre and post close in cases where corporate wrongdoing deprives shareholders of material information or an opportunity to share in potential profits.  In *In re Harleysville Group, Inc. S'holders Litigation*, C.A. Bo. 6907-VCP (Del. Ch. 2014), Faruqi as sole lead counsel obtained significant disclosures for stockholders pre-close and secured valuable relief post close in the form of an Anti-Flip Provision providing former stockholders with 25% of any profits in Qualifying Sale.  In April 2012, Faruqi as sole lead obtained an unprecedented

4



injunction in *Knee v. Brocade Communications Systems, Inc.*, No. 1-12-CV-220249, slip op. at 2 (Cal. Super. Ct. Apr. 10, 2012) (Kleinberg, J.).  In *Brocade*, Faruqi, as sole lead counsel for plaintiffs, successfully obtained an injunction enjoining Brocade's 2012 shareholder vote because certain information relating to projected executive compensation was not properly disclosed in the proxy statement.  (Order After Hearing [Plaintiff's Motion for Preliminary Injunction; Motions to Seal]).  In *Kajaria v. Cohen*, No. 1:10-CV-03141 (N.D. Ga., Atlanta Div.), Faruqi & Faruqi, LLP, succeeded in having the district court order Bluelinx Holdings Inc., the target company in a tender offer, to issue additional material disclosures to its recommendation statement to shareholders before the expiration of the tender offer.

## SHAREHOLDER DERIVATIVE LITIGATION

Faruqi & Faruqi, LLP has extensive experience litigating shareholder derivative actions on behalf of corporate entities.  This litigation is often necessary when the corporation has been injured by the wrongdoing of its officers and directors.  This wrongdoing can be either active, such as the wrongdoing by certain corporate officers in connection with purposeful backdating of stock-options, or passive, such as the failure to put in place proper internal controls, which leads to the violation of laws and accounting procedures.  A shareholder has the right to commence a derivative action when the company's directors are unwilling or unable, to pursue claims against the wrongdoers, which is often the case when the directors themselves are the wrongdoers.

The purpose of the derivative action is threefold: (1) to make the company whole by holding those responsible for the wrongdoing accountable; (2) the establishment of procedures at the company to ensure the damaging acts can never again occur at the company; and (3) make the company more responsive to its shareholders.  Improved corporate governance and shareholder responsiveness are particularly valuable because they make the company a stronger one going forward, which benefits its shareholders. For example, studies have shown the companies with poor corporate governance scores have 5-year returns that are 3.95% below the industry average, while companies with good corporate governance scores have 5-year returns that are 7.91 % above the industry-adjusted average.  The difference in performance between these two groups is 11.86%.  *Corporate Governance Study: The Correlation between Corporate Governance and Company Performance*, Lawrence D. Brown, Ph.D., Distinguished Professor of Accountancy, Georgia State University and Marcus L. Caylor, Ph.D. Student, Georgia State University. Faruqi & Faruqi, LLP has achieved all three of the above stated goals of a derivative action.  The firm regularly obtains significant corporate governance changes in connection with the successful resolution of derivative actions, in addition to monetary recoveries that inure directly to the benefit of the company.  In each case, the company's shareholders indirectly benefit through an improved market price and market perception.

5



In *In re UnitedHealth Group Incorporated Derivative Litig.*, Case No. 27 CV 06-8065 (Minn. 4th Judicial Dist. 2009) Faruqi & Faruqi, LLP, as co-lead counsel for plaintiffs, obtained a recovery of more than $930 million for the benefit of the Company and corporate governance reforms designed to make UnitedHealth a model of corporate responsibility and transparency. ***At the time, the settlement reached was believed to be the largest settlement ever in a derivative case***. *See* "UnitedHealth's Former Chief to Repay $600 Million," Bloomberg.com, December 6, 2007 ("the settlement . . . would be the largest ever in a 'derivative' suit . . . according to data compiled by Bloomberg.").

As co-lead counsel in *Weissman v. John, et al.*, Cause No. 2007-31254 (Tex. Harris County 2008) Faruqi & Faruqi, LLP, diligently litigated a shareholder derivative action on behalf of Key Energy Services, Inc. for more than three years and caused the company to adopt a multitude of corporate governance reforms which far exceeded listing and regulatory requirements. Such reforms included, among other things, the appointment of a new senior management team, the realignment of personnel, the institution of training sessions on internal control processes and activities, and the addition of 14 new accountants at the company with experience in public accounting, financial reporting, tax accounting, and SOX compliance.

More recently, Faruqi & Faruqi, LLP concluded shareholder derivative litigation in *The Booth Family Trust, et al. v. Jeffries, et al.*, Lead Case No. 05-cv-00860 (S.D. Ohio 2005) on behalf of Abercrombie & Fitch Co. Faruqi & Faruqi, LLP, as co-lead counsel for plaintiffs, litigated the case for six years through an appeal in the U.S. Court of Appeals for the Sixth Circuit where it successfully obtained reversal of the district court's ruling dismissing the shareholder derivative action in April 2011. Once remanded to the district court, Faruqi & Faruqi, LLP caused the company to adopt important corporate governance reforms narrowly targeted to remedy the alleged insider trading and discriminatory employment practices that gave rise to the shareholder derivative action.

The favorable outcome obtained by Faruqi & Faruqi, LLP in *In re Forest Laboratories, Inc. Derivative Litigation*, Lead Civil Action No. 05-cv-3489 (S.D.N.Y. 2005) is another notable achievement for the firm. After more than six years of litigation, Faruqi & Faruqi, LLP, as co-lead counsel, caused the company to adopt industry-leading corporate governance measures that included rigorous monitoring mechanisms and Board-level oversight procedures to ensure the timely and complete publication of clinical drug trial results to the investing public and to deter, among other things, the unlawful off-label promotion of drugs.

## ANTITRUST LITIGATION

The attorneys at Faruqi & Faruqi, LLP represent direct purchasers, competitors, third-party payors, and consumers in a variety of individual and class action antitrust cases brought under Sections 1 and 2 of the Sherman Act. These actions, which typically seek treble damages under Section 4 of the Clayton Act,

6



have been commenced by businesses and consumers injured by anticompetitive agreements to fix prices or allocate markets, conduct that excludes or delays competition, and other monopolistic or conspiratorial conduct that harms competition.

*Actions for excluded competitors*.   Faruqi & Faruqi represents competitors harmed by anticompetitive practices that reduce their sales, profits, and/or market share.  One representative action is *Babyage.com, Inc., et al. v. Toys "R" Us, Inc., et al.* where Faruqi & Faruqi was retained to represent three internet retailers of baby products, who challenged a dominant retailer's anticompetitive scheme, in concert with their upstream suppliers, to impose and enforce resale price maintenance in violation of §§ 1 and 2 of the Sherman Act and state law.  The action sought damages measured as lost sales and profits.  This case was followed extensively by the Wall Street Journal.  After several years of litigation, this action settled for an undisclosed amount.

*Actions for direct purchasers*.   Faruqi & Faruqi represents direct purchasers who have paid overcharges as a result of anticompetitive practices that raise prices.  These actions are typically initiated as class actions.  A representative action on behalf of direct purchasers is *Rochester Drug Co-Operative, Inc. v. Warner Chilcott Public Limited Company, et al.*, No. 12-3824 (E.D. Pa.), in which Faruqi & Faruqi was appointed co-lead counsel for the proposed plaintiff class under Federal Rule of Civil Procedure 23(g). Faruqi & Faruqi's attorneys are counsel to direct purchasers (typically wholesalers) in multiple such class actions.

*Actions for third-party payors*.   Faruqi & Faruqi represents, both in class actions and in individual actions, insurance companies who have reimbursed their policyholders at too high a rate due to anticompetitive prices that raise prices.  One representative action is *In re Tricor Antitrust Litigation*, No. 05-360 (D. Del.), where Faruqi & Faruqi represented PacifiCare and other large third-party payors challenging the conduct of Abbott Laboratories and Laboratories Fournier in suppressing generic drug competition, in violation of §§ 1 and 2 of the Sherman Act. The *Tricor* litigation settled for undisclosed amount in 2010.

*Results*.  Faruqi & Faruqi's attorneys have consistently obtained favorable results in their antitrust engagements.  Non-confidential results include the following:  *In re Skelaxin (Metaxalone) Antitrust Litig.*, No. 12-md-2343, (E.D. Tenn.) ($73 million settlement); *In re Wellbutrin XL Antitrust Litig.*, No. 08-2431 (E.D. Pa.) ($37.5 million partial settlement); *In re Iowa Ready-Mixed Concrete Antitrust Litigation*, No. C 10-4038 (N.D. Iowa) ($18.5 million settlement); *In re Metoprolol Succinate Direct Purchaser Antitrust Litigation*, 06-52 (D. Del.) ($20 million settlement); *In re Ready-Mixed Concrete Antitrust Litigation*, No. 05-979 (S.D. Ind.) ($40 million settlement); *Rochester Drug Co-Operative, Inc., et al. v. Braintree Labs, Inc.*, No. 07-142-SLR (D. Del.) ($17.25 million settlement).

NEW YORK          CALIFORNIA          DELAWARE          PENNSYLVANIA          GEORGIA



A more complete list of Faruqi & Faruqi's active and resolved antitrust cases can be found on its web site at *www.faruqilaw.com.*

## CONSUMER PROTECTION LITIGATION

Attorneys at Faruqi & Faruqi, LLP have advocated for consumers' rights, successfully challenging some of the nation's largest and most powerful corporations for a variety of improper, unfair and deceptive business practices.  Through our efforts, we have recovered hundreds of millions of dollars and other significant remedial benefits for our consumer clients.

For example, in *Bates v. Kashi Co., et al.*, Case No. 11-CV-1967-H BGS (S.D. Cal. 2011), as co-lead counsel for the class, Faruqi & Faruqi, LLP secured a $5.0 million settlement fund on behalf of California consumers who purchased Kashi products that were deceptively labeled as "nothing artificial" and "all natural."  The settlement provides class members with a full refund of the purchase price in addition to requiring Kashi to modify its labeling and advertising to remove "All Natural" and "Nothing Artificial" from certain products.  As noted by Judge Marilyn L. Huff in approving the settlement, *"Plaintiffs' counsel has extensive experience acting as class counsel in consumer class action cases, including cases involving false advertising claims."*  Moreover, in *Thomas v. Global Vision Products*, Case No. RG-03091195 (California Superior Ct., Alameda Cty.), Faruqi & Faruqi, LLP served as co-lead counsel in a consumer class action lawsuit against Global Vision Products, Inc., the manufacturer of the Avacor hair restoration product and its officers, directors and spokespersons, in connection with the false and misleading advertising claims regarding the Avacor product.  Though the company had declared bankruptcy in 2007, Faruqi & Faruqi, LLP, along with its co-counsel, successfully prosecuted two trials to obtain relief for the class of Avacor purchasers.  In January 2008, a jury in the first trial returned a verdict of almost $37 million against two of the creators of the product.  In November 2009, another jury awarded plaintiff and the class more than $50 million in a separate trial against two other company directors and officers.  This jury award represented the largest consumer class action jury award in California in 2009 (according to VerdictSearch, a legal trade publication).

Additionally, in *Rodriguez v. CitiMortgage, Inc.*, Case No. 11-cv-04718-PGG-DCF (S.D.N.Y. 2011), Faruqi & Faruqi, LLP, as co-lead class counsel, reached a significant settlement with CitiMortgage related to improper foreclosure practices of homes owned by active duty servicemembers. The settlement was recently finalized pursuant to a Final Approval Order dated October 6, 2015, which provides class members with a monetary recovery of at least $116,785.00 per class member, plus the amount of any lost equity in the foreclosed property.

Below is a non-exhaustive list of settlements where Faruqi & Faruqi, LLP and its partners have served as lead or co-lead counsel:

8



- *In re Sinus Buster Products Consumer Litig.*, Case No. 1:12-cv-02429-ADS-AKT (E.D.N.Y. 2012). The firm represented a nationwide class of purchasers of assorted cold, flu and sinus products. A settlement was obtained, providing class members with a cash refund up to $10 and requiring defendant to discontinue the marketing and sale of certain products.
- *In re:  Alexia Foods, Inc. Litigation.,* Case No. 4:11-cv-06119 (N.D. Cal. 2011).  The firm represented a proposed class of all persons who purchased certain frozen potato products that were deceptively advertised as "natural" or "all natural."  A settlement was obtained, providing class members with the cash refunds up to $35.00 and requiring defendant to cease using a synthetic chemical compound in future production of the products.
- *In re: Haier Freezer Consumer Litig.*, Case No. 5:11-CV-02911-EJD (N.D. Cal. 2011).  The firm represented a nationwide class of consumers who purchased certain model freezers, which were sold in violation of the federal standard for maximum energy consumption.  A settlement was obtained, providing class members with cash payments of between $50 and $325.80.
- *Loreto v. Coast Cutlery Co.*, Case No. 11-3977 SDW-MCA (D.N.J. 2011) The firm represented a proposed nationwide class of people who purchased stainless steel knives and multi-tools that were of a lesser quality than advertised.  A settlement was obtained, providing class members with a full refund of the purchase price.
- *Rossi v Procter & Gamble Company.*, Case No. 11-7238 (D.N.J. 2011).  The firm represented a nationwide class of consumers who purchased deceptively marketed "Crest Sensitivity" toothpaste.  A settlement was obtained, providing class members with a full refund of the purchase price.
- *In re:  Michaels Stores Pin Pad Litig.*, Case No. 1:11-CV-03350 CPK (N.D. Ill. 2011).  The firm represented a nationwide class of persons against Michaels Stores, Inc. for failing to secure and safeguard customers' personal financial data.  A settlement was obtained, which provided class members with monetary recovery for unreimbursed out-of-pocket losses incurred in connection with the data breach, as well as up to four years of credit monitoring services.
- *Kelly, v. Phiten*, Case No. 4:11-cv-00067 JEG (S.D. Iowa 2011).  The firm represented a proposed nationwide class of consumers who purchased Defendant Phiten USA's jewelry and other products, which were falsely promoted to balance a user's energy flow.  A settlement was obtained, providing class members with up to 300% of the cost of the product and substantial injunctive relief requiring Phiten to modify its advertising claims.
- *In re: HP Power-Plug Litigation,* Case No. 06-1221 (N.D. Cal. 2006).  The firm represented a proposed nationwide class of consumers who purchased defective laptops manufactured by defendant.  A settlement was obtained, which provided full relief to class members, including among other benefits a cash payment up to $650.00 per class member, or in the alternative, a repair free-of-charge and new limited warranties accompanying repaired laptops.
- *Delre v. Hewlett-Packard Co.*, C.A. No. 3232-02 (N.J. Super. Ct. 2002).  The firm represented a proposed nationwide class of consumers (approximately 170,000 members) who purchased, HP dvd-100i dvd-writers ("HP 100i") based on misrepresentations regarding the write-once ("DVD+R") capabilities of the HP 100i and the compatibility of DVD+RW disks written by HP 100i with DVD players and other optical storage devices.  A settlement was obtained, which provided full relief to class members, including among other benefits, the replacement of defective HP 100i with its more current, second generation DVD writer, the HP 200i, and/or refunds the $99 it had charged some consumers to upgrade from the HP 100i to the HP 200i prior to the settlement.

In addition, Faruqi & Faruqi, LLP and its partners are currently serving as lead or co-lead counsel in the following class action cases:

- *Dei Rossi et al. v. Whirlpool Corp.,* Case No. 2:12-cv-00125-TLN-JFM (E.D. Cal. 2012) (representing a certified class of people who purchased mislabeled KitchenAid brand refrigerators from Whirlpool Corp.)

9



- *In re: Scotts EZ Seed Litigation*, Case No. 7:12-cv-04727-VB (S.D.N.Y. 2012) (representing a certified class of purchasers of mulch grass seed products advertised as a superior grass seed product capable of growing grass in the toughest conditions and with half the water.)
- *Forcellati et al., v Hyland's, Inc. et al.,* Case No. 2:12-cv-01983-GHK-MRW (C.D. Cal. 2012) (representing a certified nationwide class of purchasers of children's cold and flu products.)
- *Avram v. Samsung Electronics America, Inc., et al.,* Case No. 2:11-cv-06973 KM-MCA (D.N.J. 2011) (representing a proposed nationwide class of persons who purchased mislabeled refrigerators from Samsung Electronics America, Inc. for misrepresenting the energy efficiency of certain refrigerators.)
- *Dzielak v. Whirlpool Corp., et al.*, Case No. 12-CIV-0089 SRC-MAS (D.N.J. 2011) (representing a proposed nationwide class of purchasers of mislabeled Maytag brand washing machines for misrepresenting the energy efficiency of such washing machines.)
- *In re: Shop-Vac Marketing and Sales Practices Litigation,* Case No. 4:12-md-02380-YK (M.D. Pa. 2012) (representing a proposed nationwide class of persons who purchased vacuums or Shop Vac's with overstated horsepower and tank capacity specifications.)
- *In re: Oreck Corporation Halo Vacuum And Air Purifiers Marketing And Sales Practices Litigation*, MDL No. 2317 (the firm was appointed to the executive committee, representing a proposed nationwide class of consumers who purchased vacuums and air purifiers that were deceptively advertised effective in eliminating common viruses, germs and allergens.)

## EMPLOYMENT PRACTICES LITIGATION

Faruqi & Faruqi, LLP is a recognized leader in protecting the rights of employees.  The firm's Employment Practices Group is committed to protecting the rights of current and former employees nationwide.  The firm is dedicated to representing employees who may not have been compensated properly by their employer or who have suffered investment losses in their employer-sponsored retirement plan.  The firm also represents individuals (often current or former employees) who assert that a company has allegedly defrauded the federal or state government.

Faruqi & Faruqi represents current and former employees nationwide whose employers have failed to comply with state and/or federal laws governing minimum wage, hours worked, overtime, meal and rest breaks, and unreimbursed business expenses.  In particular, the firm focuses on claims against companies for (i) failing to properly classify their employees for purposes of paying them proper overtime pay, or (ii) requiring employees to work "off-the-clock," and not paying them for all of their actual hours worked.

In prosecuting claims on behalf of aggrieved employees, Faruqi & Faruqi has successfully defeated summary judgment motions, won numerous collective certification motions, and obtained significant monetary recoveries for current and former employees.  In the course of litigating these claims, the firm has been a pioneer in developing the growing area of wage and hour law.  In *Creely, et al. v. HCR ManorCare, Inc.*, C.A. No. 3:09-cv-02879 (N.D. OH), Faruqi & Faruqi, along with its co-counsel, obtained one of the first decisions to reject the application of the Supreme Court's Fed. R. Civ. P. 23 certification analysis in *Wal-Mart Stores, Inc. v. Dukes et. al.,* 131 S. Ct. 2541 (2011) to the certification process of collective actions brought pursuant to the Fair Labor Standards Act of 1938 ("FLSA").  The firm, along with its co-counsel,

10



also recently won a groundbreaking decision for employees seeking to prosecute wage and hour claims on a collective basis in *Symczyk v. Genesis Healthcare Corp. et al.*, No. 10-3178 (3d Cir. 2011).  In *Symczyk,* the Third Circuit reversed the district court's ruling that an offer of judgment mooted a named plaintiff's claim in an action asserting wage and hour violations of the FLSA.  Notably, the Third Circuit also affirmed the two-step process used for granting certification in FLSA cases.  The *Creely* decision, like the Third Circuit's *Genesis* decision, will invariably be relied upon by courts and plaintiffs in future wage and hour actions.

Some of the firm's notable recoveries include *Bazzini v. Club Fit Management, Inc.,* C.A. No. 08-cv-4530 (S.D.N.Y. 2008), wherein the firm settled a FLSA collective action lawsuit on behalf of tennis professionals, fitness instructors and other health club employees on very favorable terms.  Similarly, in *Garcia, et al., v. Lowe's Home Center, Inc., et al.*, C.A. No. GIC 841120 (Cal. Sup. Ct. 2008), Faruqi & Faruqi served as co-lead counsel and recovered $1.6 million on behalf of delivery workers who were unlawfully treated as independent contractors and not paid appropriate overtime wages or benefits.

The firm's Employment Practices Group also represents participants and beneficiaries of employee benefit plans covered by the Employee Retirement Income Security Act of 1874 ("ERISA").  In particular the firm protects the interests of employees in retirement savings plans against the wrongful conduct of plan fiduciaries.  Often, these retirement savings plans constitute a significant portion of an employee's retirement savings.  ERISA, which codifies one of the highest duties known to law, requires an employer to act in the best interests of the plan's participants, including the selection and maintenance of retirement investment vehicles.  For example, an employer who administers a retirement savings plan (often a 401(k) plan) has a fiduciary obligation to ensure that the retirement plan's assets (including employee and any company matching contributions to the plan) are directed into appropriate and prudent investment vehicles.

Faruqi & Faruqi has brought actions on behalf of aggrieved plan participants where a company and/or certain of its officers breached their fiduciary duty by allowing its retirement plans to invest in shares of its own stock despite having access to materially negative information concerning the company which materially impacted the value of the stock.  The resulting losses can be devastating to employees' retirement accounts.  Under certain circumstances, current and former employees can seek to hold their employers accountable for plan losses caused by the employer's breach of their ERISA-mandated duties.

The firm's Employment Practices Group also represents whistleblowers in actions under both federal and state False Claims Acts.  Often, current and former employees of business entities that contract with, or are otherwise bound by obligations to, the federal and state governments become aware of wrongdoing that causes the government to overpay for a good or service.  When a corporation perpetrates such fraud, a whistleblower may sue the wrongdoer in the government's name to recover up to three times actual damages and additional civil penalties for each false statement made.  Whistleblowers who initiate



such suits are entitled to a portion of the recovery attained by the government, generally ranging from 15% to 30% of the total recovery.

False Claims Act cases often arise in context of Medicare and Medicaid fraud, pharmaceutical fraud, defense contractor fraud, federal government contractor fraud, and fraudulent loans and grants. For instance, in *United States of America, ex rel. Ronald J. Streck v. Allergan, Inc. et al.*, No. 2:08-cv-05135-ER (E.D. Pa.), Faruqi & Faruqi represents a whistleblower in an un-sealed case alleging fraud against thirteen pharmaceutical companies who underpaid rebates they were obliged to pay to state Medicaid programs on drugs sold through those programs.

Based on its experience and expertise, the firm has served as the principal attorneys representing current and former employees in numerous cases across the country alleging wage and hour violations, ERISA violations and violations of federal and state False Claims Acts.

# <u>ATTORNEYS</u>

## NADEEM FARUQI

Mr. Faruqi is Co-Founder and Managing Partner of the firm. Mr. Faruqi oversees all aspects of the firm's practice areas. Mr. Faruqi has acted as sole lead or co-lead counsel in many notable class or derivative action cases, such as: *In re Olsten Corp. Secs. Litig.*, C.A. No. 97-CV-5056 (E.D.N.Y.) (recovered $25 million dollars for class members); *In re PurchasePro, Inc., Secs. Litig.*, Master File No. CV-S-01-0483 (D. Nev. 2001) ($24.2 million dollars recovery on behalf of the class in securities fraud action); *In re Avatex Corp. S'holders Litig.*, C.A. No. 16334-NC (Del. Ch. 1999) (established certain new standards for preferred shareholders rights); *Dennis v. Pronet, Inc.*, C.A. No. 96-06509 (Tex. Dist. Ct.) (recovered over $15 million dollars on behalf of shareholders); *In re Tellium, Inc. Secs. Litig.*, C.A. No. 02-CV-5878 (D.N.J.) (class action settlement of $5.5 million); *In re Tenet Healthcare Corp. Derivative Litig.*, Lead Case No. 01098905 (Cal. Sup. Ct. 2002) (achieved a $51.5 million benefit to the corporation in derivative litigation).

Upon graduation from law school, Mr. Faruqi was associated with a large corporate legal department in New York. In 1988, he became associated with Kaufman Malchman Kirby & Squire, specializing in shareholder litigation, and in 1992, became a member of that firm. While at Kaufman Malchman Kirby & Squire, Mr. Faruqi served as one of the trial counsel for plaintiff in *Gerber v. Computer Assocs. Int'l, Inc.*, 91-CV-3610 (E.D.N.Y. 1991). Mr. Faruqi actively participated in cases such as: *Colaprico v. Sun Microsystems*, No. C-90-20710 (N.D. Cal. 1993) (recovery in excess of $5 million on behalf of the shareholder class); *In re Jackpot Secs. Enters., Inc. Secs. Litig.*, CV-S-89-805 (D. Nev. 1993) (recovery in excess of $3 million on behalf of the shareholder class); *In re Int'l Tech. Corp. Secs. Litig.*, CV 88-440 (C.D.



Cal. 1993) (recovery in excess of $13 million on behalf of the shareholder class); and *In re Triangle Inds., Inc. S'holders Litig.*, C.A. No. 10466 (Del. Ch. 1990) (recovery in excess of $70 million).

Mr. Faruqi earned his Bachelor of Science Degree from McGill University, Canada (B.Sc. 1981), his Master of Business Administration from the Schulich School of Business, York University, Canada (MBA 1984) and his law degree from New York Law School (J.D., *cum* laude, 1987).  Mr. Faruqi was Executive Editor of New York Law School's Journal of International and Comparative Law.  He is the author of "Letters of Credit: Doubts As To Their Continued Usefulness," Journal of International and Comparative Law, 1988. He was awarded the Professor Ernst C. Stiefel Award for Excellence in Comparative, Common and Civil Law by New York Law School in 1987.

Mr. Faruqi is licensed to practice law in New York and is admitted to the United States District Courts for the Southern, Eastern and Western Districts of New York, and the District of Colorado, and the United States Court of Appeals for the Second and Third Circuits.

## LUBNA M. FARUQI

Ms. Faruqi is Co-Founder of Faruqi & Faruqi, LLP.  Ms. Faruqi is involved in all aspects of the firm's practice.  Ms. Faruqi has actively participated in numerous cases in federal and state courts which have resulted in significant recoveries for shareholders.

Ms. Faruqi was involved in litigating the successful recovery of $25 million to class members in *In re Olsten Corp. Secs. Litig.*, C.A. No. 97-CV-5056 (E.D.N.Y.).  She helped to establish certain new standards for preferred shareholders in Delaware in *In re Avatex Corp. S'holders Litig.*, C.A. No. 16334-NC (Del. Ch. 1999).  Ms. Faruqi was also lead attorney in *In re Mitcham Indus., Inc. Secs. Litig.*, Master File No. H-98-1244 (S.D. Tex. 1998), where she successfully recovered $3 million on behalf of class members despite the fact that the corporate defendant was on the verge of declaring bankruptcy.

Upon graduation from law school, Ms. Faruqi worked with the Department of Consumer and Corporate Affairs, Bureau of Anti-Trust, the Federal Government of Canada.  In 1987, Ms. Faruqi became associated with Kaufman Malchman Kirby & Squire, specializing in shareholder litigation, where she actively participated in cases such as: *In re Triangle Inds., Inc. S'holders Litig.*, C.A. No. 10466 (Del. Ch. 1990) (recovery in excess of $70 million); *Kantor v. Zondervan Corp.*, C.A. No. 88 C5425 (W.D. Mich. 1989) (recovery of $3.75 million on behalf of shareholders); and *In re A.L. Williams Corp. S'holders Litig.*, C.A. No. 10881 (Del. Ch. 1990) (recovery in excess of $11 million on behalf of shareholders).

Ms. Faruqi graduated from McGill University Law School at the age of twenty-one with two law degrees: Bachelor of Civil Law (B.C.L.) (1980) and a Bachelor of Common Law (L.L.B.) (1981).

Ms. Faruqi is licensed to practice law in New York and is admitted to the United States District Court for the Southern District of New York.



# PETER KOHN

Mr. Kohn is a partner in Faruqi & Faruqi, LLP's Pennsylvania office.

Prior to joining the firm, Mr. Kohn was a shareholder at Berger & Montague, P.C., where he prepared for trial several noteworthy lawsuits under the Sherman Act, including *In re Buspirone Patent & Antitrust Litigation*, MDL No. 1410 (S.D.N.Y.) ($220M settlement), *In re Cardizem CD Antitrust Litigation*, No. 99-MD-1278 (E.D. Mich.) ($110M settlement), *Meijer, Inc. v. Warner-Chilcott*, No. 05-2195 (D.D.C.) ($22M settlement), *In re Relafen Antitrust Litigation*, No. 01-12239 (D. Mass.) ($175M settlement), *In re Remeron Direct Purchaser Antitrust Litigation*, No. 03-cv-0085 (D.N.J.) ($75M settlement), *In re Terazosin Hydrochloride Antitrust Litigation*, No. 99-MDL-1317 (S.D. Fla.) ($72.5M settlement), and *In re Tricor Direct Purchaser Antitrust Litig.*, No. 05-340 (D. Del.) ($250M settlement).  The court appointed him as co-lead counsel for the plaintiffs in *In re Pennsylvania Title Ins. Antitrust Litig.*, No. 08cv1202 (E.D. Pa.) (pending action on behalf of direct purchasers of title insurance alleging illegal cartel pricing under § 1 of the Sherman Act).

A sampling of Mr. Kohn's reported cases in the antitrust arena includes *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, Civil Action No. 14-md-02503-DJC, 2015 U.S. Dist. LEXIS 125999 (D. Mass. Aug. 14, 2015) (denying motion to dismiss reverse payment claims under the Sherman Act); *King Drug Co. of Florence v. Cephalon, Inc.*, 88 F. Supp. 3d 402 (E.D. Pa. 2015) (reverse payment claims under the Sherman Act survived summary judgment); *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, 64 F. Supp. 3d 665 (E.D. Pa. 2014) (denying motion to dismiss product hopping claims under the Sherman Act); *In re Lidoderm Antitrust Litig.*, 74 F. Supp. 3d 1052 (N.D. Cal. 2014) (denying motion to dismiss reverse payment claims under the Sherman Act); *Mylan Pharms., Inc. v. Warner Chilcott Pub.*, No. 12-3824, 2013 U.S. Dist. LEXIS 152467 (E.D. Pa. June 11, 2013) (denying motion to dismiss product hopping claims under the Sherman Act); *In re Hypodermic Prods. Antitrust Litig.*, 484 Fed. Appx. 669 (3d Cir. 2012) (issue of direct purchaser standing under Illinois Brick); *Wallach v. Eaton Corp.*, 814 F. Supp. 2d 428 (D. Del. 2011) (application of the Third Circuit's "complete involvement" exception to the in pari delicto doctrine); *Delaware Valley Surgical Supply Inc. v. Johnson & Johnson*, 523 F.3d 1116 (9th Cir. 2008) (issue of direct purchaser standing under *Illinois Brick*); *Babyage.com, Inc. v. Toys "R" Us, Inc.*, 558 F. Supp.2d 575 (E.D. Pa. 2008) (denying defendants' motion to dismiss following the Supreme Court's decisions in *Twombly* and *Leegin*, and for the first time in the Third Circuit adopting the Merger Guidelines method of relevant market definition); *J.B.D.L. Corp. v. Wyeth-Ayerst Laboratories, Inc.*, 485 F.3d 880 (6th Cir. 2007) (affirming summary judgment in exclusionary contracting case); and *Babyage.com, Inc. v. Toys "R" Us, Inc.*, 458 F. Supp.2d 263 (E.D. Pa. 2006) (discoverability of surreptitiously recorded statements prior to deposition of declarant).



Mr. Kohn is a 1989 graduate of the University of Pennsylvania (B.A., English) and a 1992 *cum laude* graduate of Temple University Law School, where he was senior staff for the *Temple Law Review* and received awards for trial advocacy.  Mr. Kohn was recognized as a "recommended" antitrust attorney in the Northeast in 2009 by the Legal 500 guide (www.legal500.com) and was chosen by his peers as a "SuperLawyer" in Pennsylvania in 2009 - 2013, and 2016.  Mr. Kohn was an invited speaker at the ABA Section of Antitrust Law's 2016 Spring Meeting in Washington, D.C., for the Health Care & Pharmaceuticals and State Enforcement Committee's program, "Exclusionary or Not?  Product Hopping and REMS." He was also invited to speak for the ABA Section of Antitrust Law's program "Product Hopping Cases:  Where Are We and Where Are We Headed" in December 2015, as well as Harris Martin Publishing's Antitrust Pay-for-Delay Litigation Conference in 2014 and 2015.  In 2011, Mr. Kohn was selected as a Fellow in the Litigation Counsel of America, a trial lawyer honorary society composed of less than one-half of one percent of American lawyers.  He is a member of the bars of the Supreme Court of Pennsylvania (1992-present), the United States District Court for the Eastern District of Pennsylvania (1995-present), the United States District Court for the Eastern District of Michigan (2010-present), the United States Court of Appeals for the Third Circuit (2000-present), the United States Court of Appeals for the Sixth Circuit (2005-present), the United States Court of Appeals for the Ninth Circuit (2016-present), and the United States Court of Appeals for the Federal Circuit (2011-present).

## RICHARD W. GONNELLO

Richard W. Gonnello is a partner in Faruqi & Faruqi, LLP's New York office.

Prior to joining the firm, Mr. Gonnello was a partner at Entwistle & Cappucci LLP and an associate at Latham & Watkins LLP.  He began his career representing large corporations in litigation, arbitration, and governmental investigations.  Mr. Gonnello now represents shareholders in securities fraud cases and other investment disputes.

Mr. Gonnello has represented institutional and individual investors in obtaining substantial recoveries in numerous class actions, including *In re Royal Ahold Sec. Litig.*, No. 03-md-01539 (D. Md. 2003) ($1.1 billion) and *In re Tremont Securities Law, State Law and Insurance Litigation*, No. 08-cv-11117 (S.D.N.Y. 2011) ($100 million+).  Mr. Gonnello has also obtained favorable recoveries for institutional investors pursuing direct securities fraud claims, including cases against *Qwest Communications International, Inc.* ($175 million+) and *Tyco Int'l Ltd* ($21 million).

Mr. Gonnello has successfully argued numerous cases, including *Zak v. Chelsea Therapeutics Int'l, Ltd.*, Civ. No. 13-2370 (2015), which was before the Fourth Circuit Court of Appeals and resulted in the Court's first reversal of a district court's dismissal in the twenty years since the Private Securities Litigation Reform Act was enacted in 1995.

15



Mr. Gonnello has co-authored the following articles:  "*'Staehr' Hikes Burden of Proof to Place Investor on Inquiry Notice*, "New York Law Journal, December 15, 2008; and "*Potential Securities Fraud: 'Storm Warnings' Clarified*," New York Law Journal, October 23, 2008.

Mr. Gonnello attended the University of Chicago, where he was named to the Dean's List every quarter, and thereafter graduated *summa cum laude* from Rutgers University in 1995, where he was named Phi Beta Kappa.  He received his law degree from UCLA School of Law (J.D. 1998), and was a member of the UCLA Journal of Environmental Law & Policy.

Mr. Gonnello is licensed to practice law in New York and is admitted to the United States District Courts for the Southern and Eastern Districts of New York and the United States Court of Appeals for the Second, Fourth, Seventh and Ninth Circuits.

## JOSEPH T. LUKENS

Mr. Lukens is a partner in Faruqi & Faruqi, LLP's Pennsylvania office.

Mr. Lukens was a shareholder at the Philadelphia firm of Hangley Aronchick Segal Pudlin & Schiller, where he represented large retail pharmacy chains as opt-out plaintiffs in numerous lawsuits under the Sherman Act.  Among those lawsuits were *In re Brand Name Prescription Drugs Antitrust Litigation* (MDL 897, N.D. Ill.), *In re Terazosin Hydrochloride Antitrust Litigation* (MDL 1317, S.D. Fla.), *In re TriCor Direct Purchaser Antitrust Litigation* (05-605, D. Del.), *In re Nifedipine Antitrust Litigation* (MDL1515, D.D.C.), *In re OxyContin Antitrust Litigation* (04-3719, S.D.N.Y), and *In re Chocolate Confectionary Antitrust Litigation* (MDL 1935, M.D. Pa.).  While the results in the opt-out cases are confidential, the parallel class actions in those matters which are concluded have resulted in settlements exceeding $1.1 billion.

Earlier in his career, Mr. Lukens concentrated in commercial and civil rights litigation at the Philadelphia firm of Schnader, Harrison, Segal & Lewis.  The types of matters that Mr. Lukens handled included antitrust, First Amendment, contracts, and licensing.  Mr. Lukens also worked extensively on several notable *pro bono* cases including *Commonwealth v. Morales*, which resulted in a rare reversal on a second post-conviction petition in a capital case in the Pennsylvania Supreme Court.

Mr. Lukens graduated from LaSalle University (B.A. Political Science, *cum laude*, 1987) and received his law degree from Temple University School of Law (J.D., *magna cum laude*, 1992) where he was an editor on the *Temple Law Review* and received several academic awards.  After law school, Mr. Lukens clerked for the Honorable Joseph J. Longobardi, Chief Judge for the United States District Court for the District of Delaware (1992-93).  Mr. Lukens is a member of the bars of the Supreme Court of Pennsylvania (1992-present), the United States Supreme Court (1996-present); the United States District Court for the Eastern District of Pennsylvania (1993-present), the United States Court of Appeals for the



Third Circuit (1993-present), and the United States Court of Appeals for the District of New Jersey (1994-present).

Mr. Lukens has several publications, including: *Bringing Market Discipline to Pharmaceutical Product Reformulations*, 42 Int'l Rev. Intel. Prop. & Comp. Law 698 (September 2011) (co-author with Steve Shadowen and Keith Leffler); *Anticompetitive Product Changes in the Pharmaceutical Industry*, 41 Rutgers L.J. 1 (2009) (co-author with Steve Shadowen and Keith Leffler); *The Prison Litigation Reform Act: Three Strikes and You're Out of Court — It May Be Effective, But Is It Constitutional?*, 70 Temp. L. Rev. 471 (1997); *Pennsylvania Strips The Inventory Search Exception From Its Rationale – Commonwealth v. Nace*, 64 Temp. L. Rev. 267 (1991).

## STUART J. GUBER

Stuart J. Guber is a Partner in Faruqi & Faruqi, LLP's Pennsylvania office.

Mr. Guber focuses his practice on representing institutional and individual investors in class actions under the federal securities laws, shareholder derivative suits and mergers and acquisitions litigation, as well as other complex litigation representing consumers.  During his 25-year career as a securities and complex litigator, Mr. Guber, as one of the lead attorneys, has successfully litigated numerous shareholder cases to settlement and verdict including *In re Rite Aid Pharmacy Sec. Litig.*, No. MDL 1360 (E.D. Pa) ($320 Million settlement of securities class action); *In re Tycom Ltd. Sec. Litig.*, No. 03-CV-03540 (D. Conn.) ($79 million settlement in securities class action); *In re Providian Financial Corp. Sec. Litig.*, No. 01-CV-3952 (N.D. Cal.) ($65 million settlement in securities class action); *In re Bell South Corp. Sec. Litig.*, No. 02-CV-2142 (N.D. Ga.) ($35 million settlement in securities class action); *In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*, No. 1:08-CV-11064 (D. Mass.) ($25 million class action securities settlement in which participating class members will recover over 65% of their losses); *Robbins v. Koger Properties*, No. 90-896-civ-J-10 (M.D. Flo.) (plaintiffs' trial counsel in jury verdict awarding $81.3 million in damages); *Maiocco, et al. v. Greenway Capital Corp.*, et al., NASD No. 94-04396 (Lead trial counsel for plaintiffs in securities arbitration awarding $227,000 in compensatory damages and $100,000 in punitive damages); *Solomon v. T.F.M., Inc.* (achieved defense verdict as lead trial counsel in securities arbitration representing Philadelphia Stock Exchange options trading firm); *Minerva Group LP v. Keane*, Index No. 800621 (Sup. Ct. NY) (mergers and acquisitions case settled for amendments to merger agreement, additional disclosures and a price bump per share to be paid shareholders from $8.40 per share to $9.25 per share in merger consideration). Mr. Guber has successfully litigated consumer class actions (for e.g., *Nepomuceno v. Knights of Columbus*, No. Civ. A. 96 C 4789 (N.D. Ill.), settled for $22 million in life insurance vanishing premium consumer fraud case) and successfully defended at trial a union health and welfare fund being sued by a healthcare provider (*Centre for Neuro Skills, Inc.-Texas v. Specialties & Paper Products Union*

17



*No. 527 Health and Welfare Fund*, No. CC-07-10150-A (Cty. Ct. Dallas, Tex.), lead trial defense counsel securing a directed verdict in favor of defendant).

Mr. Guber has also been involved as lead or co-lead counsel in litigation producing a number of noteworthy published decisions including: *South Ferry LP v. Killinger*, 542 F.3d 776 (9th Cir. 2008); *Koehler v. Brody*, 483 F.3d 590 (8th Cir. 2007); *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273 (11th Cir. 2006); *Garfield v. NDC Health*, 466 F.3d 1255 (11th Cir. 2006); *In re Cerner Corp. Sec. Litig.*, 425 F.3d 1079 (8th Cir. 2005); *Nevius v. Read-Rite Corp.*, 335 F.3d 843 (9th Cir. 2003); *Robbins v. Koger Properties*, 116 F.3d 1441 (11th Cir. 1997); *Schreiber v. Kellogg*, 50 F.3d 264 (3d Cir. 1995); *In re Evergreen Ultra Short Opportunities Fund Se. Litig.*, 275 F.R.D. 382 (D. Mass. 2011) *Marsden v. Select Med. Corp.*, 246 F.R.D. 480 (E.D. Pa. 2007); *In re Friedman's Inc. Securities Litigation*, 385 F. Supp. 2d 1345 (N.D. Ga. 2005); *In re Bellsouth Corp. Sec. Litig.*, 355 F. Supp. 2d 1350 (N.D. Ga. 2005); *Tri-Star Farms Ltd. v. Marconi*, PLC, et al., 225 F. Supp. 2d 567 (W.D. Pa. 2002); *In re Campbell Soup Company Securities Litigation*, 145 F. Supp. 2d 574 (D.N.J. 2001); *In re Rite Aid Corp. Securities Litigation*, 146 F. Supp. 2d 706 (E.D. Pa. 2001); *In re ValuJet, Inc. Securities Litigation*, 984 F. Supp. 1472 (N.D. Ga.1997); *Schreiber v. Kellogg*, 194 B.R. 559 (E.D. Pa. 1996); *Schreiber v. Kellogg*, 839 F. Supp. 1157 (E.D. Pa. 1993); *Schreiber v. Kellogg*, 838 F. Supp. 998 (E.D. Pa.1993).

Mr. Guber is admitted to practice before the state bars of Pennsylvania and Georgia and is admitted to numerous federal courts including: United States District Courts for the Eastern District of Pennsylvania, Northern District of Georgia, Eastern District of Michigan and District of Colorado; and the United States Circuit Courts of Appeals for the First, Third, Eighth, Ninth, Tenth and Eleventh Circuits. He graduated with a Juris Doctor from Temple University School of Law (1990) and with a B.S. in Business Administration, majoring in accounting from Temple University (1986).

## JAMES M. WILSON, JR.

James M. Wilson, Jr. is a Partner in Faruqi & Faruqi LLP's New York office

Prior to joining Faruqi & Faruqi, Mr. Wilson was a partner at Chitwood Harley Harnes, LLP, and a senior associate with Reed Smith, LLP. Mr. Wilson has represented institutional pension funds, corporations and individual investors in courts around the country and obtained significant recoveries, including the following securities class actions: *In re ArthroCare Sec. Litig.* No. 08-0574 (W.D. Tex.) ($74 million); *In re Maxim Integrated Prod. Sec. Litig.*, No. 08-0832 (N.D.Cal.) ($173 million); *In re TyCom Ltd. Sec. Litig.*, MDL No. 02-1335 (D.N.H.) ($79 million); and *In re Providian Fin. Corp. Sec. Litig.*, No. 01-3952 (N.D. Cal.). Mr. Wilson also has obtained significant relief for shareholders in merger suits, including the following: *In re Zoran Corporation Shareholders Litig.*, No. 6212-VCP (Del. Chancery); and *In re The Coca-Cola Company Shareholder Litigation*, No. 10-182035 (Fulton County Superior Ct.).



Mr. Wilson has authored numerous articles addressing current developments including the following Expert Commentaries published by Lexis Nexis: *The Liability Faced By Financial Institutions From Exposure To Subprime Mortgages; Losses Attributable To Sub-Prime Mortgages; The Supreme Court's Decision in Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc. et al.; Derivative Suite by LLC Members in New York: Tzolis v. Wolff*, 10 N.Y.3d 100 (Feb. 14, 2008).

Mr. Wilson obtained his undergraduate degree from Georgia State University (B.A. 1988), his law degree from the University of Georgia (J.D. 1991), and Masters in Tax Law from New York University (LL.M. 1992). He is licensed to practice law in Georgia and New York and is admitted to the United States District Courts for Middle and Northern Districts of Georgia, the Eastern and Southern Districts of New York, the Eastern District of Michigan and the District of Colorado, and the United States Courts of Appeals for the Second, Fifth and Eleventh Circuits.

## ROBERT W. KILLORIN

Robert W. Killorin is a Partner with the firm, and is based in Atlanta. His practice is focused on shareholder merger and securities litigation. Mr. Killorin is an accomplished trial lawyer with over twenty years of experience in civil litigation. Prior to joining Faruqi & Faruqi, Mr. Killorin was a partner at the firm of Chitwood Harley Harnes, LLP where he specialized in complex securities litigation. Mr. Killorin has represented numerous individual plaintiffs, as well as institutional pension funds, corporations and individual investors in courts around the country. He has obtained significant recoveries, including the following securities class actions: *In re FireEye, Inc. Sec. Litig.,* No. 14-266866 ($10 million settlement pending); *In re ArthroCare Sec. Litig.* No. 08-0574 (W.D. Tex.) ($74 million); *In re Maxim Integrated Prod. Sec. Litig.*, No. 08-0832 (N.D. Cal.) ($173 million); *In re TyCom Ltd. Sec. Litig.*, MDL No. 02-1335 (D.N.H.) ($79 million); and *In re Providian Fin. Corp. Sec. Litig.*, No. 01-3952 (N.D. Cal.). Mr. Killorin has obtained significant relief for shareholders in merger suits, including the following: *In re The Coca-Cola Company Shareholder Litigation*, No. 10-182035 (Fulton County Superior Ct.).

Mr. Killorin authored "Preparing Clients to Testify" – Chapter 19 of *Civil Trial Practice, Winning Techniques of Successful Trial Attorneys*, Lawyers and Judges Publishing Company (2000), and has written articles and lectured on various legal topics. He is listed in Who's Who in American Law and is an AV® Preeminent™ Peer Review Rated attorney.

Mr. Killorin obtained his undergraduate degree from Duke University (B.A., cum laude, 1980) and his law degree from the University of Georgia (J.D. 1983) where he was on the national mock trial team and a national moot court team. He is licensed to practice law in Georgia and is admitted to the United States Supreme Court, the United States Courts of Appeals for the Tenth and Eleventh Circuits, and the United States District Courts for Middle and Northern Districts of Georgia.

## BRADLEY J. DEMUTH

Bradley J. Demuth's practice is focused on complex antitrust litigation with particular expertise in cases involving pharmaceutical overcharges resulting from delayed generic entry schemes, price fixing, and other anticompetitive conduct.  Mr. Demuth is a partner in the firm's New York office.

Upon graduating, cum laude, from American University Washington College of Law (1999), Mr. Demuth served as a law clerk to the United States Court of Appeals for the Second Circuit.  While thereafter associated with Cadwalader, Wickersham & Taft LLP and Skadden, Arps, Slate, Meager & Flom LLP, Mr. Demuth successfully represented several national and multinational corporate defendants in a wide range of antitrust and other commercial disputes.  His antitrust experience includes litigating issues in the pharmaceutical, high-tech, professional sports, consumer goods, luxury goods, financial benchmarking, commodities, and industrial materials contexts.  In 2008, Mr. Demuth received the Pro Bono Service Award for briefing and arguing an appeal made to the New York Supreme Court Appellate Term (1st Dep't) on behalf of displaced low-income tenants.  From 2009-2010, Mr. Demuth served as a Special Assistant Corporation Counsel and acting lead trial counsel for the City of New York, where among other favorable resolutions, he obtained a verdict for the City after a two-week trial in Richardson v. City of New York (Index. No. 14216-99).

Upon joining the Plaintiffs' bar in 2012, Mr. Demuth has made notable contributions in several high-profile pharmaceutical antitrust cases that resulted in significant recoveries, including in:

• American Sales Company, LLC v. Pfizer, Inc. (E.D. Va.) (re Celebrex) (October 2017 $94 million dollar settlement pending final approval);

• In re Aggrenox Antitrust Litigation (D. Conn.) ($146 million settlement);

• Castro v. Sanofi Pasteur, Inc. (D.N.J.) (re Menactra) ($61.5 million settlement); and

• In re Flonase Antitrust Litigation (E.D. Pa.) ($150 million settlement).

Mr. Demuth is also currently involved in several other pending high-profile pharmaceutical antitrust matters including:  In re Generic Pharmaceutical Pricing Antitrust Litigation (E.D. Pa.); In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litigation (E.D.N.Y.); and In re Intuniv Antitrust Litigation (D. Mass.).

Mr. Demuth is a member of the New York State bar and is admitted to practice before the United States Court of Appeals for the Second Circuit, and the United States District Courts for the Southern and Eastern Districts of New York and the District of Colorado.

## DAVID FELDERMAN

David Felderman is a Partner in Faruqi & Faruqi, LLP's Pennsylvania office.  Mr. Felderman has

20



extensive experience in complex litigation.

Prior to Faruqi & Faruqi, Mr. Felderman was a Partner at Spector, Roseman & Kodroff, P.C. (2000-2018) where he handled class action litigation with a focus on antitrust and securities fraud cases. In addition, from 2008 through 2018, he served as the Partner in charge of the day-to-day operations of the firm's Global Portfolio Monitoring Platform where he provided portfolio monitoring services to institutional investors including public pension funds, Taft-Hartley funds, asset managers, and other institutional investors.

Throughout his career, Mr. Felderman has participated in litigating numerous securities fraud and antitrust class actions including the following: In re The Bancorp, Inc. Securities Litigation, No. 14 Civ. 0952 (GMS) (D. Del.); In re Sunoco, Inc., April Term, 2012, No. 3894 (Pa. Common Pleas, Phila. County); In re Harleysville Mutual, November Term, 2011, No. 2137 (Pa. Common Pleas, Phila. County); In re Lehman Brothers Holdings, Inc. Equity/Debt Securities Litigation, No. 08-cv-5523 (S.D.N.Y.); In re Alltel Shareholder Litigation, Civ. No. 2975-CC (Del. Chancery); In re Converium/SCOR Holding (Switzerland) AG Litigation, No. 04 Civ. 7897 (DLC) (S.D.N.Y.); In re AOL Time Warner Securities Litigation, MDL Docket No. 1500 (S.D.N.Y.); Stop & Shop Supermarket Co. v. Smithkline Beecham Corp., No. 03-cv-04578; In re Insurance Brokerage Antitrust Litigation, No. 04-5184 (D. N.J.); In re Monosodium Glutamate Antitrust Litigation, MDL Docket No. 1328 (D. Minn); and In re Flat Glass Antitrust Litigation, MDL No. 1200 (W.D. Pa.).

Mr. Felderman was also previously associated with McEldrew & Fullam, P.C. (1998-2000) where his practice focused on medical malpractice and product liability litigation. Prior to that, Mr. Felderman served as a law clerk to the Honorable Bernard J. Goodheart in the Philadelphia Court of Common Pleas.

Professionally, Mr. Felderman served a three-year term (2000-2002) as a member of the Executive Committee of the Philadelphia Bar Association's Young Lawyers Division where he Co-Chaired Legal Line, P.M. for three consecutive years. Under his leadership, Legal Line, P.M. won the National Association of Bar Executives 2001 LEXIS Community and Education Outreach Award. Mr. Felderman also formerly served as a member of the Philadelphia Bar Association's State Civil Committee (1998-1999) and the Pennsylvania Trial Lawyers Association's New Lawyer Section Leadership Council (1998-1999).

Additionally, Mr. Felderman currently serves as a member of the Penn Alumni Interview Program where he is responsible for interviewing prospective freshman. Mr. Felderman previously served as a member of the Board Directors of the Penn Alumni Club of Philadelphia (2002-2006) where he served as President (2004-2006) and Chair of the Membership Committee (2004-2006). He also served as a member of the Board of Directors of Penn's Alumni Class Leadership Council (2003-2008) where he served a two-year term as Chair of the By-Laws Committee (2006-2008). Moreover, Mr. Felderman served as a member of the Board of Directors of the Alumni Society of The William Penn Charter School (1998-2001) where he served a one-year term as Secretary (2000-2001). He has also served as a Class Agent since 1998 and



served as the Reunion Chair for the Class of 1987's 15th, 20th, 25th, and 30th reunions.

Mr. Felderman earned his J.D., cum laude, from Temple University, Beasley School of Law (1996).  He is also a graduate of the University of Pennsylvania (B.A., Economics, 1991).

## TIMOTHY J. PETER

Timothy J. Peter is a Partner in Faruqi & Faruqi, LLP's Pennsylvania office and focuses his practice on securities law and complex civil litigation.

Prior to joining Faruqi & Faruqi, Mr. Peter was an Associate at Cohen Placitella & Roth, P.C. where he was involved in such high profile litigation as: *In re Vioxx Products Liability Litigation* ($8.25 million recovery for the Commonwealth of Pennsylvania) and *In re Evergreen Ultra Short Opportunities Fund Securities Litigation* ($25 million class action securities settlement in which participating class members will recover over 65% of their losses). In addition, Mr. Peter played an important role in the resolution of *In re Minerva Group LP v. Mod-Pac Corp., et al.*, in which defendants increased the price of an insider buyout from $8.20 to $9.25 per share, a significant victory for shareholders. Prior to attending law school, Mr. Peter worked for one of largest financial institutions in the world where he gained significant insight into the inner workings of the financial services industry.

Mr. Peter is a 2009 cum laude graduate of the Michigan State University College of Law, where he served as an associate editor of the Journal of Medicine and Law. He received his undergraduate degree in Economics from the College of Wooster in 2002.

Mr. Peter is admitted to practice in the Commonwealth of Pennsylvania and the U.S. District Court for the Eastern District of Pennsylvania.

## ADAM STEINFELD

Adam Steinfeld is a Partner in Faruqi & Faruqi, LLP's New York office.  He practices in the area of antitrust litigation with a focus on competition in the pharmaceutical industry.

Mr. Steinfeld has litigated successfully with significant contributions in *In re Buspirone Patent & Antitrust Litigation*, MDL No. 1410 (S.D.N.Y.) ($220M settlement); *In re Cardizem CD Antitrust Litigation*, No. 99-MD-1278 (E.D. Mich.) ($110M settlement); *In re Relafen Antitrust Litigation*, No. 01-12239 (D. Mass.) ($175M settlement); *In re Remeron Direct Purchaser Antitrust Litigation*, No. 03-cv-0085 (D.N.J.) ($75M settlement); *In re Terazosin Hydrochloride Antitrust Litigation*, No. 99-MDL-1317 (S.D. Fla.) ($72.5M settlement); *In re Tricor Direct Purchaser Antitrust Litig.*, No. 05-340 (D. Del.) ($250M settlement); and *Mylan Pharms., Inc. v. Warner Chilcott*, No. 12-cv-3824 (E.D. Pa.) ($12 million settlement).

Prior to joining Faruqi & Faruqi, Mr. Steinfeld was associated with Grant and Eisenhofer, P.A. (2011-2015) and a partner at Garwin, Gerstein and Fisher, LLP, New York (1997-2009).



Mr. Steinfeld is the author of Nuclear Objections: The Persistent Objector and the Legality of the Use of Nuclear Weapons, 62 Brooklyn L. Rev. 1635 (winter, 1996).

Mr. Steinfeld received his law degree from Brooklyn Law School (J.D., 1997) where he was an editor on the Brooklyn Law Review and received several academic awards.  Mr. Steinfeld is a member of the bars of the States of New York, New Jersey and Massachusetts; and is admitted to practice before the United States District Courts for the District New Jersey, Eastern District of New York, Southern District of New York, and Western District of New York.  Mr. Steinfeld graduated from Brandeis University (B.A., Politics, 1994).

## MICHAEL VAN GORDER

Michael Van Gorder's practice is focused on securities litigation.  Mr. Van Gorder is a Partner in the firm's Delaware office.

Prior to joining F&F, Mr. Van Gorder served as a law clerk to the Honorable James T. Vaughn, Jr. of the Delaware Supreme Court (2015-16).  While attending law school, Mr. Van Gorder served as the Editor-in-Chief of the Delaware Journal of Corporate Law and was selected as a Josiah Oliver Wolcott Fellow with the Delaware Supreme Court.  Before law school, Mr. Van Gorder worked in the private bank of a global financial services firm where he held multiple securities licenses.

Mr. Van Gorder has authored the following article:  Boilermakers v. Chevron:  Are Board Adopted Arbitration Bylaws Valid Under Delaware's General Corporation Law?, 39 Del. J. Corp. L. 443 (2014).

Mr. Van Gorder received his J.D., magna cum laude, from Widener University School of Law (2015).  Mr. Van Gorder received his B.S., Business Management, 2008; M.B.A., Finance, 2011, from Wilmington University.

Mr. Van Gorder is licensed to practice law in the state of Delaware and is admitted to the United States District Courts for the District of Delaware and District of Colorado.

## BENJAMIN HEIKALI

Benjamin Heikali's practice is focused on securities and consumer litigation.  Mr. Heikali is a Partner in the firm's Los Angeles office.

Prior to joining F&F, Mr. Heikali interned at the U.S. Securities and Exchange Commission, Division of Enforcement, focusing on municipal bond litigation and financial fraud work.

Mr. Heikali graduated U.C.L.A. School of Law (J.D., 2015).  During law school, Mr. Heikali was awarded the Masin Family Academic Excellence Award for outstanding performance; and the 2015 American College of Bankruptcy Law Meet, "Best Term Sheet."  As well, Mr. Heikali served as Staff Editor of the U.C.L.A. Entertainment Law Review.  Mr. Heikali received his B.A. in Psychology, with honors, from



University of Southern California, 2012.

Mr. Heikali is licensed to practice law in California and is admitted to practice before the United States District Courts for the Central, Northern, Southern, and Eastern Districts of California and the United States Court of Appeals for the Ninth Circuit.

## NINA VARINDANI

Nina Varindani is a Partner in Faruqi & Faruqi, LLP's New York office.

Prior to joining the firm, Ms. Varindani practiced commercial litigation at Milber Makris Plousadis & Seiden, LLP where she represented directors, officers and other professionals and corporations in complex commercial litigation in federal and state courts. Additionally, Ms. Varindani gained further litigation experience in law school through internships at Collen IP and the New York State Judicial Institute.

Ms. Varindani is licensed to practice law in New York and is admitted to practice before the United States District Courts for the Southern District of New York and the Eastern District of New York.

Ms. Varindani graduated from the George Washington University (B.A. in Psychology, 2006) and Pace Law School (J.D., 2010).

## INNESSA MELAMED HUOT

Innessa Melamed Huot is a Partner in the firm's New York office and focuses her practice on employment law and wage and hour class action litigation.

Ms. Huot represents employees across the country in both individual and class action lawsuits. Ms. Huot has litigated cases in both federal and state courts, involving FLSA claims, state wage and hour violations, discrimination and harassment claims, retaliation matters, FMLA and ADA violations, breach of contract disputes, and other employment-related violations. Ms. Huot has served as lead or co-lead counsel in numerous cases filed against major businesses and corporations, and has successfully recovered millions of dollars on behalf of her clients.

Ms. Huot is active in multiple bar associations, including the Brooklyn Bar Association's Young Lawyers Section, American Bar Association's Section of Labor and Employment, the National Employment Lawyers Association (NELA), and the American Association for Justice (AAJ).

Ms. Huot earned her J.D., *magna cum laude*, from Pace Law School and her M.B.A. in Finance, *summa cum laude*, from Pace Lubin School of Business. Ms. Huot graduated from Syracuse University with a B.A., *summa cum laude*, in Political Science and International Relations.

Ms. Huot is licensed to practice law in New York, New Jersey, and Connecticut and is admitted to practice before the United States District Courts for the Southern District, Eastern District, Western District, and Northern District of New York, the District of New Jersey, and the Second Circuit Court of Appeals.

24



## MEGAN SULLIVAN

Megan Sullivan is a Partner in Faruqi & Faruqi, LLP's New York office.

Prior to joining the firm, Ms. Sullivan was a litigation associate at Crosby & Higgins LLP where she represented institutional and individual investors in securities arbitrations before FINRA and counseled corporate clients in commercial disputes in federal court.  Additionally, Ms. Sullivan gained further litigation experience in law school through internships at the Kings County District Attorney's Office and the Adjudication Division of the New York City Department of Consumer Affairs.

Ms. Sullivan graduated from the University of California, Los Angeles (B.A., History, 2008) and from Brooklyn Law School (J.D., *cum laude*, 2011).  While at Brooklyn Law School, Ms. Sullivan served as Associate Managing Editor of the Brooklyn Journal of Corporate, Financial and Commercial Law.

Ms. Sullivan is licensed to practice law in the State of New York, and is admitted to the United States District Courts for the Southern and Eastern Districts of New York and the United States Court of Appeals for the Ninth Circuit.

## KATHERINE M. LENAHAN

Katherine M. Lenahan is a Partner in Faruqi & Faruqi, LLP's New York office.

Prior to joining Faruqi & Faruqi, Ms. Lenahan practiced securities litigation at Entwistle & Cappucci LLP. Ms. Lenahan gained further experience through internships for the Honorable Sherry Klein Heitler, Administrative Judge for Civil Matters, First Judicial District, and the Kings County District Attorney's Office.

Ms. Lenahan graduated from Fordham University (B.A., Political Science, *magna cum laude*, 2009) and Fordham University School of Law (J.D., 2012). While at Fordham Law School, Ms. Lenahan served as an associate editor of the Fordham Intellectual Property, Media and Entertainment Law Journal and was a fellow at the Center on Law and Information Policy.

Ms. Lenahan is licensed to practice law in New York, and is admitted to the United States District Court for the Southern District of New York, and the United States Courts of Appeals for the Second and Ninth Circuits.

## STEPHEN G. DOHERTY

Stephen Doherty is Senior Counsel in the Pennsylvania office of Faruqi & Faruqi, LLP.   Mr. Doherty practices in the area of antitrust law and is significantly involved in prosecuting antitrust class actions on behalf of direct purchasers of brand name and generic drugs and charging pharmaceutical manufacturers with price fixing and with illegally blocking the market entry of less expensive competitors.



Earlier in his career, Mr. Doherty litigated consumer fraud and employment discrimination cases in both state and federal courts in Pennsylvania and New Jersey.  He has served on numerous volunteer boards, including Gilda's Club of Delaware Valley and the BCBA Pro Bono Committee, has served as a volunteer instructor for VITA Education Services, and as a pro bono lawyer for the Consumer Bankruptcy Assistance Project.

Mr. Doherty is a 1992 graduate of Temple University Law School, where he was senior staff for the Temple Law Review and received several academic awards and is the author of Joint Representation Conflicts of Interest: Toward A More Balanced Approach, 65 Temp. L. Rev. 561 (1992).  Mr. Doherty is a 1988 graduate of Dickinson College (B.A., Anthropology and Latin American Studies).

## NEILL CLARK

Mr. Clark is Of Counsel in Faruqi and Faruqi, LLP's Pennsylvania office.

Before joining the firm, Mr. Clark was an associate at Berger & Montague, P.C. where he was significantly involved in prosecuting antitrust class actions on behalf of direct purchasers of brand name drugs and charging pharmaceutical manufacturers with illegally blocking the market entry of less expensive competitors.

Eight of those cases have resulted in substantial settlements totaling over $950 million: *In re Cardizem CD Antitrust Litig.* settled in November 2002 for $110 million; *In re Buspirone Antitrust Litig.* settled in April 2003 for $220 million; *In re Relafen Antitrust Litig.* settled in February 2004 for $175 million; *In re Platinol Antitrust Litig.* settled in November 2004 for $50 million; *In re Terazosin Antitrust Litig.* settled in April 2005 for $75 million; *In re Remeron Antitrust Litig.* settled in November 2005 for $75 million; *In re Ovcon Antitrust Litig.* settled in 2009 for $22 million; and *In re Tricor Direct Purchaser Antitrust Litig.* settled in April 2009 for $250 million.

Mr. Clark was also principally involved in a case alleging a conspiracy among hospitals and the Arizona Hospital and Healthcare Association to depress the compensation of per diem and traveling nurses, *Johnson et al. v. Arizona Hospital and Healthcare Association et al.*, No. CV07-1292 (D. Ariz.).

Mr. Clark was selected as a "Rising Star" by Pennsylvania Super Lawyers and listed as one of the Top Young Lawyers in Pennsylvania in the December 2005 edition of Philadelphia Magazine.  Two cases in which he has been significantly involved have been featured as "Noteworthy Cases" in the NATIONAL LAW JOURNAL articles, "The Plaintiffs' Hot List" (*In re Tricor Antitrust Litig.* October 5, 2009 and *Johnson v. Arizona Hosp. and Healthcare Ass'n.*, October 3, 2011).

Mr. Clark graduated cum laude from Appalachian State University in 1994 and from Temple University Beasley School of Law in 1998, where he earned seven "distinguished class performance" awards, an oral advocacy award and a "best paper" award.

26



## RAYMOND N. BARTO

Raymond N. Barto's practice is focused on antitrust litigation.  Mr. Barto is an associate in the firm's New York office.

Prior to joining F&F, Mr. Barto was an associate at a prominent New York City law firm where he represented consumers, shareholders, and employees in class action cases that involved consumer fraud, breach of fiduciary duty, and ERISA.

While at Brooklyn Law School, Mr. Barto served as an Articles Editor for the Brooklyn Law Review.  As well, Mr. Barto served as an intern to the Honorable Judge William Pauley III of the United States District Court for the Southern District of New York; the United States Attorney's Office for the Eastern District of New York; the litigation department for Marsh & McLennan Companies; and the Kings County District Attorney's Office.

Mr. Barto earned his J.D, cum laude, from Brooklyn Law School (2013).  Mr. Barto earned his undergraduate degree from Fordham University (B.A., History, 2007).

Mr. Barto is licensed to practice law in New York and New Jersey.

## DAVID CALVELLO

David Calvello is an Associate in Faruqi & Faruqi, LLP's New York office where his focus is litigating Antitrust matters.

Mr. Calvello graduated from the University of Richmond (B.S., 2011) with a double major in Finance and Political Science and Pace Law School (J.D., *magna cum laude*, 2014).  He is licensed to practice law in New York and New Jersey and is admitted to practice before the United States District Court for New Jersey.

Prior to joining Faruqi & Faruqi, Mr. Calvello was as an Associate at Kaufman Borgeest & Ryan, LLP where he focused primarily on insurance coverage matters with respect to Directors & Officers (D&O), Errors & Omissions (E&O), and Professional Liability lines of coverage.  In law school, Mr. Calvello served as an editor on the Pace International Law Review and received the New Rochelle Bar Association Award upon graduation.  He was also very active in moot court competitions, and competed in the Willem C. Vis International Commercial Arbitration Moot held in Vienna, Austria.

## SHERIEF MORSY

Sherief Morsy's practice is focused on securities litigation.   Mr. Morsy is an Associate in the firm's New York office.

Prior to joining F&F, Mr. Morsy was a litigation associate at a New York law firm where he



specialized in New York State Appellate practice.  Mr. Morsy also gained litigation experience as an intern with the Honorable Shira A. Sheindlin, Southern District of New York (2013).  He interned as well with a New York securities firm, a multinational corporation, and the King's County DA's office.

Mr. Morsy received his J.D., cum laude, from Brooklyn Law School, 2014.  While at Brooklyn Law School, Mr. Morsy was a Notes and Comments Editor of the Brooklyn Law Review.  He is the author of The JOBS Act and Crowdfunding:  How Narrowing the Secondary Market Handicaps Fraud Plaintiffs, 79 Brook. L. Rev. (2014), Brooklyn Law Review, Vol. 79, Issue 3.  Mr. Morsy received his B.A. in Political Science and Philosophy, Rutgers University, 2010.

Mr. Morsy is licensed to practice law in New York and New Jersey and is admitted to the United States District Courts for the Southern and Eastern Districts of New York and the District of New Jersey.

## ALEX HARTZBAND

Alex Hartzband's practice is focused on employment litigation.  Mr. Hartzband is an associate in the firm's New York office.

Prior to joining F&F, Mr. Hartzband was an associate at a prominent New York firm where he represented employees on an individual and class basis on employment matters including, but not limited to:  discrimination; sexual harassment; whistleblower retaliation; and breach of contract.  As well during law school, Mr. Hartzband worked with a New York firm that represented labor unions and individual employees.  Mr. Hartzband was a member of Fordham Law's Moot Court Board.

Mr. Hartzband earned his J.D. from Fordham University School of Law (J.D. 2015).  Mr. Hartzband earned his undergraduate degree from George Washington University (B.A., History, 2012).

Mr. Hartzband is licensed to practice law in New York and New Jersey.  Further, Mr. Hartzband is admitted to practice before the United States District Courts for the Southern and Eastern Districts of New York.

## ALEX B. HELLER

Alex B. Heller's practice is focused on securities litigation.  Mr. Heller is an associate in the firm's Pennsylvania office.

Prior to joining F&F, Mr. Heller was an associate at a prominent law firm in Philadelphia where he focused on commercial litigation and corporate counsel matters.

While attending law school, Mr. Heller worked as a law clerk for a large national law firm and as a legal intern for KPMG.  During law school, Mr. Heller served as a research assistant to the Law & Economics Center at George Mason University School of Law.  Mr. Heller, also during law school, served as an associate editor for the George Mason Law Review.



Mr. Heller is a Certified Public Accountant (CPA).   Prior to law school, he practiced public accounting at PricewaterhouseCoopers LLP and Mazars USA LLP, providing audit and assurance services.

Mr. Heller has authored the following articles: Corporate Death Penalty: Prosecutorial Discretion and the Indictment of SAC Capital, 22 GEO. MASON L. REV. 763 (2015); Co-Author, Cybersecurity Disclosures in SEC Filings: When, How, BLOOMBERG BNA (March 13, 2015).

Mr. Heller earned his J.D. from George Mason University School of Law (J.D. 2015).  Mr. Heller earned his undergraduate degree from American University (B.S. Business Administration, Accounting Specialization, 2008).

Mr. Heller is licensed to practice law in Pennsylvania and New Jersey.  Mr. Heller is admitted to practice before the United States District Court for the Eastern District of Pennsylvania and the United States Court of Appeals for the Third Circuit.

## KRISTYN FIELDS

Kristyn Fields' practice is focused on antitrust litigation.  Ms. Fields is an Associate in the firm's New York office.

Prior to joining F&F, Ms. Fields interned for the Honorable Martin Marcus, New York Supreme Court, Bronx County.  As well, Ms. Fields participated in the Brooklyn Law Incubator & Policy Clinic providing pro bono counsel to emerging start-up companies.  While at Brooklyn Law School, Ms. Fields served as an Executive Articles Editor of the Brooklyn Journal of Corporate, Financial & Commercial Law.  Also, Ms. Fields was a member of the Moot Court Honor Society.

Ms. Fields earned her J.D. from Brooklyn Law School (2016).  Ms. Fields earned her undergraduate degree from Boston College (B.A., Political Science, 2013).

Ms. Fields is licensed to practice law in New York.

## PATRICK J. COLLOPY

Patrick Collopy's practice is focused on employment litigation. Mr. Collopy is an Associate in the firm's New York office.

Prior to joining the firm, Mr. Collopy served as a legal intern at a New York law firm. Mr. Collopy gained experience in employment law while interning on Capital Hill at the Congressional Office of Compliance. Additionally, gained further litigation experience as a legal intern at the Kings County District Attorney's Office.

Mr. Collopy earned his J.D. from Brooklyn Law School (2016) and his undergraduate degree from Fordham University (B.A., History; Minor in Economics, 2009).

Mr. Collopy is licensed to practice law in New York.



## DILLON HAGIUS

Dillon Hagius's practice is focused on securities litigation.  Mr. Hagius is an Associate in the firm's New York office.

Prior to joining F&F, Mr. Hagius served as a judicial clerk in Maryland's 10th Judicial District.  At UCLA Law School, Mr. Hagius was a research assistant; an Empirical Legal Scholar; a staff editor on the UCLA Journal of International Law and Foreign Affairs and travelled to the Eastern Congo to research gender violence.  As well in law school, Mr. Hagius externed at the Securities and Exchange Commission in the Division of Corporation Finance, Office of the Enforcement Liaison and the Office of International Affairs.

Mr. Hagius earned his J.D. from UCLA School of Law, Los Angeles, CA (J.D. 2016, Dean's Scholarship).  Mr. Hagius graduated from the University of Maryland, College Park (B.S. International Business with honors, 2013).

Mr. Hagius is barred in the states of New York, Maryland, California and the District of Columbia, and the United States District Court for the Northern District of California.

## JOSHUA NASSIR

Joshua Nassir's practice is focused on consumer litigation.  Mr. Nassir is an associate in the firm's California office.

Since joining the F&F team, Mr. Nassir has litigated numerous actions on behalf of consumers including, but not limited to, cases against Sun-Maid Growers of California; Innovation Ventures; LLC (5-hour ENERGY®); Dr Pepper Snapple Group, Inc.; Craft Brew Alliances, Inc. (Kona beer); and Skeeter Snacks, LLC.

Prior to Faruqi & Faruqi, Mr. Nassir worked with a prominent LA firm where he focused on litigation.

During law school, Mr. Nassir served as a full-time Judicial Extern for the Honorable Philip S. Gutierrez, United States District Court for the Central District of California.  As well, he was a staff editor for the UCLA School of Law Journal of Environmental Law & Policy and was heavily involved in the school's Moot Court and Mock Trial tournaments.

Mr. Nassir earned his J.D. from UCLA School of Law, 2017. Mr. Nassir received his undergraduate degree from UCLA (B.A. History, cum laude, 2014.)

Mr. Nassir is admitted to practice in California.



## SAMI AHMAD

Sami Ahmad's practice is focused on securities litigation.  Mr. Ahmad is an Associate in the firm's New York office.

While at law school, Mr. Ahmad worked as an honors intern at the Securities and Exchange Commission, Division of Trading and Markets.  Mr. Ahmad was also a research assistant at the George Washington University School of Business where he assisted on contract law assignments.  Also at law school, Mr. Ahmad served as a staff editor of the George Washington University Business and Finance Law Review.

Prior to law school, Mr. Ahmad worked as a financial analyst at the firm's New York office.  While obtaining his bachelor's degree, Mr. Ahmad gained experience working as an equities research intern and summer associate at Merrill Lynch and Goldman Sachs.

Mr. Ahmad earned his Juris Doctor from George Washington University Law School (J.D. 2018). Mr. Ahmad earned his undergraduate degree from McGill University (B.A. with Honors, History and Economics, 2011).

## MAXWELL MICHAEL

Maxwell Michael's practice is focused on shareholder merger and securities litigation.  Mr. Michael is an associate in Faruqi & Faruqi, LLP's New York office.

During law school, Mr. Michael was awarded the Masin Family Academic Excellence Award for outstanding performance.  Mr. Michael was also a research assistant whose primary research was on Delaware General Corporation Law and State Fiduciary Duties.

Mr. Michael earned his J.D from UCLA School of Law (2018) with specializations in Mergers and Acquisitions and Securities Regulation.  Mr. Michael earned his undergraduate degree from Baruch College (B.B.A., 2015, summa cum laude) where he majored in Finance with a double minor in Advanced Business Analysis and History.

Mr. Michael is licensed to practice law in New York.