**FARUQI & FARUQI, LLP**
Benjamin Heikali (SBN 307466)
Joshua Nassir (SBN 318344)
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: (424) 256-2884
Facsimile: (424) 256-2885
E-mail: bheikali@faruqilaw.com
        jnassir@faruqilaw.com

**FARUQI & FARUQI, LLP**
Timothy J. Peter (admitted *pro hac vice*)
1617 JFK Boulevard, Suite 1550
Philadelphia, PA 19103
Telephone: (215) 277-5770
Facsimile: (215) 277-5771
E-mail: tpeter@faruqilaw.com

*Attorneys for Plaintiffs and the Settlement Class*

**THE WAND LAW FIRM, P.C.**
Aubry Wand (SBN 281207)
400 Corporate Pointe, Suite 300
Culver City, California 90230
Telephone: (310) 590-4503
Facsimile: (310) 590-4596
E-mail: awand@wandlawfirm.com

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| THEODORE BROOMFIELD, *et al.*,<br><br>      Plaintiffs,<br><br>   v.<br><br>CRAFT BREW ALLIANCE, INC., *et al.*,<br><br>      Defendants. | CASE NO.: 5:17-cv-01027-BLF<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS AND CLASS REPRESENTATIVE SERVICE AWARDS**<br><br>Date: December 19, 2019<br>Time: 1:30 p.m.<br>Courtroom: 3 – 5th Floor<br>Judge: Hon. Beth Labson Freeman |

# TABLE OF CONTENTS

I.      INTRODUCTION..................................................................................................... 1

II.     LEGAL STANDARD ............................................................................................... 1

III.    RELEVANT BACKGROUND................................................................................ 2

IV.     ARGUMENT ........................................................................................................... 2

        A.      Summary Of Settlement Benefits................................................................. 2

        B.      Plaintiffs Are Entitled To Recover Attorneys' Fees ................................... 3

        C.      The Requested Fee Award Resulted From Arm's Length Negotiations.................. 3

        D.      The Requested Fee Award Is Reasonable Under The Lodestar Method ................. 5

                1.      Work Performed By Class Counsel On Behalf Of The Class...................... 5

                2.      Class Counsel's Hourly Rates Are Reasonable............................................ 7

                3.      A Modest 1.42 Multiplier Is Appropriate.................................................... 8

        E.      A Percentage Of The Recovery Cross-Check Supports The Reasonableness Of
                The Fee Request ..................................................................................... 12

        F.      The Litigation Costs Are Reasonable....................................................... 14

        G.      The Class Representative Service Awards Are Reasonable ..................... 15

V.      CONCLUSION ..................................................................................................... 17

i

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS AND
CLASS REPRESENTATIVE SERVICE AWARDS CASE NO. CV-17-CV-01027-BLF

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*In re Apple Computer, Inc. Derivative Litig.*,
  No. C 06-4128, 2008 WL 4820784 (N.D. Cal. Nov. 5, 2008)........................................ 4

*Asghari v. Volkswagen Grp. of Am., Inc.*,
  No. CV 13-02529 MMM (VBKx), 2015 WL12732462 (C.D. Cal. May 29, 2015)................. 7

*Barbosa v. Cargill Meat Solutions Corp.*,
  297 F.R.D. 431 (E.D. Cal. 2013) ................................................................................ 9

*Bellinghausen v. Tractor Supply Co.*,
  306 F.R.D. 245 (N.D. Cal. 2015) ............................................................................... 15

*Blackwell v. Foley*,
  724 F. Supp. 2d 1068 (N.D. Cal. 2010) .................................................................. 5, 6

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011)................................................................................... 9, 10

*Blum v. Stenson*,
  465 U.S. 886 (1984) .................................................................................................. 7

*Chambers v. Whirlpool Corp.*,
  214 F. Supp. 3d 877 (C.D. Cal. 2016) .................................................................... 10

*Chavez v. Netflix, Inc.*,
  162 Cal. App. 4th 43 (2008) ................................................................................... 11

*Children's Hosp. and Med. Ctr. v. Bonta*,
  97 Cal. App. 4th 740 (2002) .................................................................................... 7

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013)................................................................................................. 14

*Ellsworth v. U.S. Bank*, N.A.,
  No. 3:12-cv-02506-LB, 2015 WL 12952698 (N.D. Cal. Sept. 24, 2015)................................12

*In re Extreme Networks, Inc. Sec. Litig.*,
  No. 15-cv-04883-BLF, 2019 WL 3290770 (N.D. Cal. July 22, 2019)..........................15

*Fitzhenry-Russell v. Keurig Dr Pepper Inc., et al*,
  Case No. 5:17-cv-00564 (N.D. Cal. Feb 03, 2017)....................................................8

*Gergetz v. Telenav, Inc.*,
  No. 16-CV-04261-BLF, 2018 WL 4691169 (N.D. Cal. Sept. 27, 2018) ..................... 11

ii

*Graham v. DaimlerChrysler Corp.*,
    34 Cal. 4th 553 (2004) ............................................................................... 3

*Guippone v. BH S & B Holdings LLC*,
    No. 09 Civ. 1029(CM), 2011 WL 5148650 (S.D.N.Y. Oct. 28, 2011) ....................... 16

*Gutierrez v. Wells Fargo Bank, N.A.*,
    No. C 07-05923 WHA, 2015 WL 2438274 (N.D. Cal. May 21, 2015) ....................... 8

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998)........................................................... 4, 5, 7

*Hartless v. Clorox Co.*,
    273 F.R.D. 630 (S.D. Cal. 2011)............................................................. 12

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) ....................................................................... 1, 2, 9

*Hopkins v. Stryker Sales Corp.*,
    No. 11-CV-02786-LHK, 2013 WL 496358 (N.D. Cal. Feb. 6, 2013).......................... 14

*In re Hyundai & Kia Fuel Econ. Litig.*,
    926 F.3d 539 (9th Cir. 2019).............................................................. *passim*

*Isquierdo v. W.G. Hall, LLC*,
    No. 15-cv-00335-BLF, 2017 WL 4390250 (N.D. Cal. Oct. 3, 2017).......................... 16

*Jacob v. Pride Transp., Inc.*,
    No. 16-cv-06781-BLF, 2018 WL 1411136 (N.D. Cal. Mar. 21, 2018)................. 15, 16

*Kearney v. Hyundai Motor Am.*,
    No. SACV 09-1298-JST, 2013 WL 3287996 (C.D. Cal. June 28, 2013)....................... 4

*Knight v. Red Door Salons, Inc.*,
    No. 08-01520 SC, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ...................... 9

*Koller et al. v. Med Foods, Inc., et al.*,
    Case No. 3:14-CV-2400-RS (N.D. Cal. Aug. 29, 2018) ................................ 8

*Kumar v. Salov North America Corp.*,
    Case No. 14-cv-2411 (N.D. Cal. Jul. 7, 2017)............................................. 8

*Lofton v. Verizon Wireless (VAW) LLC*,
    No. C 13-05665, 2016 WL 7985253 (N.D. Cal. May 27, 2016) ...................... 9

iii

1
2
*Mendoza v. Hyundai Motor Co., Ltd.*,
  No. 15-CV-01685-BLF,
  2017 WL 342059 (N.D. Cal. Jan. 23, 2017) (J. Freeman).........................................3, 14

3
4
*Miller v. Ghirardelli Chocolate Co.*,
  No. 12-CV-04936-LB, 2015 WL 758094 (N.D. Cal. Feb. 20, 2015).....................12, 17

5
6
*Moreno v. City of Sacramento*,
  534 F.3d 1106 (9th Cir. 2008).............................................................................6, 7

7
8
*In re Omnivision Tech., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ..........................................................10, 14, 15

9
10
*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015)..............................................................................5, 13, 17

11
*In re Optical Disk Drive Prod. Antitrust Litig.*,
  No. 3:10-md-2143 RS, 2016 WL 7364803 (N.D. Cal. Dec. 19, 2016) ...........................8

12
13
*Paul, Johnson, Alston & Hunt v. Graulty*,
  886 F.2d 268 (9th Cir. 1989).........................................................................................14

14
15
*Poertner v. Gillette Co.*,
  618 F. App'x 624 (11th Cir. 2015) ................................................................................2

16
*Pokorny v. Quixtar, Inc.*,
  No. C 07-0201 SC, 2013 WL 3790896 (N.D. Cal. July 18, 2013)................................13

17
18
*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
  148 F.3d 283 (3d Cir. 1998)..........................................................................................12

19
20
*Rhom v. Thumbtack, Inc.*,
  No. 16-cv-02008-HSG, 2017 WL 4642409 (N.D. Cal. Oct. 17, 2017).......................17

21
22
*Rodriguez v. West Publ'n Corp.*,
  563 F.3d 948 (9th Cir. 2009)..........................................................................................15

23
*Sadowska v. Volkswagen Grp. of Am., Inc.*,
  No. CV 11-00665, 2013 WL 9600948 (C.D. Cal. Sept. 25, 2013)................................4

24
25
*Schwarz v. Sec. of Health & Human Servs.*,
  73 F.3d 895 (9th Cir. 1995).............................................................................................7

26
27
*Seebrook v. The Children's Place Retail Stores, Inc.*,
  No. 11-837-CW, 2013 WL 6326487 (N.D. Cal. Dec. 4, 2013)......................................5

28

iv

*Shames v. Hertz Corp.*,
   No. 07-CV-2174-MMA(WMC), 2012 WL 5392159 (S.D. Cal. Nov. 5, 2012) ........... 10

*Sheikh v. Tesla, Inc.*,
   No. 17-CV-02193-BLF, 2018 WL 5794532 (N.D. Cal. Nov. 2, 2018) ........................ 11

*Skaff v. Meridien N. Am. Beverly Hills, LLC*,
   506 F.3d 832 (9th Cir. 2007) ................................................................................. 3

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir 2003) ............................................................................ 1, 13

*Stetson v. Grissom*,
   821 F.3d 1157 (9th Cir. 2016) ............................................................................... 8

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, &
   Prods. Liab. Litig.*,
   No. 8:10ML 02151 JVS, 2013 WL 12327929 (C.D. Cal. July 24, 2013) ...................... 9

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
   896 F.2d 403 (9th Cir. 1990) ................................................................................. 8

*Van Vranken v. Atl. Richfield Co.*,
   901 F. Supp. 294 (N.D. Cal. 1995) .................................................................. 11, 16

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ......................................................................... 10, 11

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
   19 F.3d 1291 (9th Cir. 1994) ............................................................................... 11

*Wershba v. Apple Computer, Inc.*,
   91 Cal. App. 4th 224 (2001) ................................................................................ 11

*White v. City of Richmond*,
   559 F.127 (N.D. Cal. 1982) ................................................................................. 10

*Williams v. MGM-Pathe Commc'ns Co.*,
   129 F.3d 1026 (9th Cir. 1997) (per curiam) .......................................................... 12

*Willner v. Manpower Inc.*,
   No. 11-CV-02846-JST, 2015 WL 3863625 (N.D. Cal. June 22, 2015) .................... 6, 7

*Wilson v. Metals USA, Inc.*,
   No. 2:12-CV-00568-KJM-DB, 2019 WL 1129117 (E.D. Cal. Mar. 12, 2019) .............. 5

v

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*In re Yahoo Mail Litig.*,
   No. 13-CV-4980-LHK, 2016 WL 4474612 (N.D. Cal. Aug. 25, 2016)........................ 15

**Statutes**

Cal. Civ. Code § 1021.5........................................................................................... 3

Cal. Civ. Code § 1780(e)......................................................................................... 3

**Other Authorities**

Fed. R. Civ. P. 23(e)(2)(C) ...................................................................................... 15

Notes of the Advisory Committee on 2018 Amendments of Fed. R. Civ. P. 23(e)(2) ....................4

Fed. R. Civ. P. 23(h) ................................................................................................ 1

vi

**ISSUE TO BE DECIDED**

Whether the Court should grant Plaintiffs' application for attorneys' fees and costs and class representative service awards, and if so, in what amounts.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Plaintiffs respectfully submit this application for an award of attorneys' fees, litigation costs, and class representative service awards to compensate them and their counsel for their work in achieving this Settlement, which affords substantial monetary compensation and injunctive relief to a nationwide class of consumers who purchased Kona Brewing Company Beers ("Kona Beers") sold by Defendant Craft Brew Alliance, Inc. ("CBA") during the Class Period.[1]

Plaintiffs are requesting an award of attorneys' fees based on their lodestar, a figure the Ninth Circuit finds presumptively reasonable when deciding fee awards. After subtracting out-of-pocket litigation costs from the total amount of $2,900,000 that CBA has agreed to pay for attorneys' fees and costs, Plaintiffs are requesting $2,570,026.41 in attorneys' fees, which represents a modest multiplier of 1.42 based on Class Counsel's current lodestar of $1,813,458.75. Plaintiffs also request service awards of $5,000 each for the integral role they played in achieving this Settlement. In short, because the requested attorneys' fees, costs, and class representative service awards are fair, reasonable, and appropriate, the Court should grant this Motion.

## II.   LEGAL STANDARD

Under Fed. R. Civ. P. 23(h), "the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Like every other aspect of the settlement, attorneys' fees provisions included in class action settlement agreements are subject to the determination of the requested fees and costs are "fundamentally fair, adequate, and reasonable." *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir 2003) (quoting Fed. R. Civ. P. 23(e)). However, as the United States Supreme Court explained: "A request for attorney's fees should not result in a

---

[1] Unless otherwise defined, capitalized terms used herein have the same meaning as defined in the Settlement Agreement.

second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

### III.   RELEVANT BACKGROUND

As instructed by the Northern District of California Procedural Guidance for Class Action Settlements ("Settlement Guidelines"), the relevant factual and procedural background of this case will be set forth in Plaintiffs' forthcoming motion for final approval to be filed by October 28, 2019. A hearing on both motions is scheduled for December 19, 2019. A summary of the background of this case is also set forth in Paragraphs 1-26 of the Settlement Agreement.

### IV.   ARGUMENT

#### A.   Summary Of Settlement Benefits

The Settlement affords considerable monetary and injunctive relief to the Class. Each Class Member who submits a timely and valid Claim Form will receive a monetary payment ranging between $1.25 and $2.75 per package of Kona Beers purchased, for a maximum amount of $10 without proof of purchase, or $20 with proof of purchase, per household. Declaration of Timothy J. Peter ("Peter Decl."), ¶ 3, Ex. A ("Settlement Agreement"), ¶ 77(b), (c). Significantly, this monetary recovery exceeds the damages on a per product basis that Class Members could have recovered at trial. *See* Declaration of Timothy J. Peter In Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF No. 116), ¶ 14; *see also Poertner v. Gillette Co.*, 618 F. App'x 624, 628 (11th Cir. 2015) (holding that the "monetary relief that the settlement offered the class was fair" when the amount offered "exceeded the damages that an average class member would have received if the class had prevailed at trial."). The Settlement also provides for meaningful injunctive relief, requiring CBA to place a conspicuous statement regarding the Kona Beers' brewing location(s) on the outer packaging of the Kona Beers, which will mitigate consumer confusion regarding where they are brewed. Settlement Agreement, ¶ 78(a), Ex. 7. To the extent the value of the injunctive relief is assessed in monetary terms, and as discussed in greater detail below, Plaintiffs' damages expert has conservatively estimated the value to be $24,881,137.

As part of the Settlement, CBA has agreed to pay $2,900,000 in attorneys' fees and costs separate and apart from the money made available to satisfy payments to the Class and to cover

2

settlement administration costs. Settlement Agreement, ¶ 106. The Settlement is not contingent on the award of attorneys' fees and costs. *Id.*, ¶ 109. For the following reasons, the requested attorneys' fees and costs should be approved.

**B.    Plaintiffs Are Entitled To Recover Attorneys' Fees**

"Under California law, '[i]t is undisputed that relief obtained through a settlement may qualify a plaintiff as the prevailing party.'" *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 844 (9th Cir. 2007) (citation omitted). As prevailing parties, Plaintiffs are entitled to an award of reasonable attorneys' fees and costs pursuant to the California Consumers Legal Remedies Act ("CLRA"). Specifically, Cal. Civ. Code § 1780(e) provides that "[t]he court shall award court costs and attorney's fees to a prevailing plaintiff in litigation filed pursuant to this section." Plaintiffs are also entitled to recover attorneys' fees under Cal. Civ. Code § 1021.5, as they have achieved a "substantial benefit" to a large class of persons. *See* Cal. Civ. Code § 1021.5; *see also Mendoza v. Hyundai Motor Co., Ltd.*, No. 15-CV-01685-BLF, 2017 WL 342059, at *14 (N.D. Cal. Jan. 23, 2017) (J. Freeman) (holding that "Class Counsel is entitled to an award of attorneys' fees" under the CLRA and Cal. Civ. Code § 1021.5); *Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 578 (2004), as modified (Jan. 12, 2005) ("It is well settled that attorney fees under section 1021.5 may be awarded for consumer class action suits benefiting a large number of people.").

**C.    The Requested Fee Award Resulted From Arm's Length Negotiations**

The requested attorneys' fees and costs are presumptively reasonable because they were negotiated by the Parties at arm's length through the assistance of an experienced mediator. Plaintiffs and Class Counsel negotiated with CBA to reach an agreed-upon fee amount that they regarded as reasonable based on consideration, of among other things, the benefits achieved for the Class, the time and effort devoted to the litigation, and applicable legal authority. Peter Decl., ¶ 10. Moreover, the fee amount, like the Settlement itself, was agreed upon under the auspices and with the assistance of Bruce Edwards of JAMS, Inc., an experienced, well-respected mediator.

3

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS AND
CLASS REPRESENTATIVE SERVICE AWARDS CASE NO. CV-17-CV-01027-BLF

Declaration of Bruce A. Edwards ("Edwards Decl.") (ECF No. 115-3), ¶¶ 5-6.[2] This fact serves as "independent confirmation that the fee was not the result of collusion or a sacrifice of the interests of the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998), *as amended on* July 24, 1998; *In re Apple Computer, Inc. Derivative Litig.*, No. C 06-4128, 2008 WL 4820784, at * 3 (N.D. Cal. Nov. 5, 2008) (finding that mediator's "participation weighs considerably against any inference of a collusive settlement.").

In addition, Plaintiffs and Class Counsel only negotiated attorneys' fees and costs at the end of the second mediation session, *after* they reached agreement on the other key deal terms – namely, the class-wide monetary and injunctive relief. Edwards Decl., ¶ 5; *see also Sadowska v. Volkswagen Grp. of Am., Inc.*, No. CV 11-00665, 2013 WL 9600948, at *8 (C.D. Cal. Sept. 25, 2013) (finding agreement on fees and expenses reasonable where "[o]nly after agreeing upon proposed relief for the Class Members, did the parties discuss attorneys' fees, expenses, and costs"); *Kearney v. Hyundai Motor Am.*, No. SACV 09-1298-JST, 2013 WL 3287996, at *7 (C.D. Cal. June 28, 2013) ("As a threshold matter, the Court notes that the Federal Judicial Center, in its Manual for Complex Litigation, approves the parties' method of negotiating the settlement and then separately negotiating the attorneys' fees."). Here, the interests of the Class are promoted by a fee that was negotiated after all class-wide relief was determined because, once the material terms of the Settlement were agreed upon, CBA had every incentive to negotiate as low a fee as possible. Class Counsel remained ready to litigate the attorneys' fees issue if the Parties could not reach an agreement. Peter Decl., ¶ 11. At bottom, the negotiated fee reflects an arm's length compromise where CBA recognized that if it litigated the fee, it might do worse. Under these circumstances, the Court should give weight to the judgment of the Parties and their counsel regarding reasonable fees and costs. Notes of the Advisory Committee on 2018 Amendments of Fed. R. Civ. P. 23(e)(2) (courts may look at "the treatment of any award of attorneys' fees, with respect to both the manner of negotiating the fee award and its terms.").

---

[2] This declaration was submitted in support of Plaintiffs' motion for preliminary approval and is not re-filed here.

**D.    The Requested Fee Award Is Reasonable Under The Lodestar Method**

Plaintiffs move for an award of attorneys' fees based on their lodestar, with a modest 1.42 multiplier. In the Ninth Circuit, the lodestar method is the preferred approach for determining whether a fee request is reasonable when there is no common fund or when it is difficult to assess the monetary value of the settlement with certainty, as is the case here. *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 570 (9th Cir. 2019) (approving of lodestar method when "it is difficult to estimate the settlement value's upper bounds."); *see also Hanlon*, 150 F.3d at 1029 (affirming choice of lodestar method where calculation of value of common fund was uncertain); *see also Wilson v. Metals USA, Inc.*, No. 2:12-CV-00568-KJM-DB, 2019 WL 1129117, at *8 (E.D. Cal. Mar. 12, 2019) (holding that when settlement relief is paid on a claims made basis and "not a common fund […] it appears the lodestar method is the appropriate method" for determining the reasonableness of attorneys fees). In addition, "[f]ees awarded pursuant to [Cal. Civ. Code] § 1021.5 are determined under the lodestar method." *Seebrook v. The Children's Place Retail Stores, Inc.*, No. 11-837-CW, 2013 WL 6326487, at *2 (N.D. Cal. Dec. 4, 2013). Moreover, the Ninth Circuit recently held that "we do not require courts employing the lodestar method to perform a 'crosscheck' using the percentage method. This would make 'little logical sense,', because 'the lodestar method yields a fee that is presumptively [reasonable].'" *In re Hyundai*, 926 F.3d at 571.

"The lodestar method requires 'multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer.'" *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015) (internal quotation omitted). As explained below, Class Counsel has devoted a total of approximately 3,284 hours to this litigation and have a total lodestar to date of $1,813,458.75.

1.    Work Performed By Class Counsel On Behalf Of The Class

In accordance with Section VII Court's Standing Order Re Civil Cases, a breakdown by category of major tasks summarizing the hours expended and corresponding lodestars on a timekeeper by timekeeper basis is set forth in the Declarations of Timothy J. Peter and Aubry Wand. Peter Decl., Ex. D; Wand Decl., ¶ 18. In reviewing this work, the Court should consider that "[a]n

5

attorney's sworn testimony that, in fact, it took the time claimed ... is evidence of considerable weight on the issue of the time required[.]" *Blackwell v. Foley*, 724 F. Supp. 2d 1068, 1081 (N.D. Cal. 2010) (quotation marks and citation omitted). "To deny compensation, it must appear that the time claimed is obviously and convincingly excessive under the circumstances." *Id.* As can be seen from these declarations, Class Counsel devoted significant time and effort to this litigation, including, *inter alia*, successfully opposing a motion to dismiss, drafting several iterations of the complaint and other pleadings, taking and responding to comprehensive written discovery, taking and defending eight corporate, client, and expert depositions, reviewing thousands of pages of discovery, preparing for class certification, successfully certifying two litigation classes, and then successfully opposing a Rule 23(f) petition. *See* Peter Decl., ¶¶ 5-10. And, after engaging in two mediations that included several months of negotiation, Class Counsel was able to secure this Settlement, which the Court preliminarily approved on June 14, 2019.

Further, Class Counsel deftly balanced vigorous litigation of this case with the benefits of minimizing unnecessary work – all with the goal of achieving the best possible result for the Class. For example, Class Counsel was able to obtain the discovery needed to achieve class certification while avoiding costly discovery disputes. Peter Decl., ¶¶ 6-7; Wand Decl., ¶ 20. Class Counsel also worked in cooperation with one another to endeavor to divide tasks, ensure efficient case management, and avoid duplicative work. Peter Decl., ¶ 19; Wand Decl., ¶ 21. In short, Class Counsel did not undertake extraneous work nor was there an incentive to do so. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) ("It must also be kept in mind that lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee."). Indeed, Class Counsel vigorously litigated this case in the face of considerable risk that a class might not be certified, and thus, had no incentive to devote unnecessary time to this matter. Peter Decl., ¶ 8. This remains true for work performed even after a settlement in principle was reached. *See Willner v. Manpower Inc.*, No. 11-CV-02846-JST, 2015 WL 3863625, at *3 (N.D. Cal. June 22, 2015) (holding that "if the settlement is not approved, 'there is risk that the Court may deny class certification or, following

1    initial certification, subsequently decertify the class based on unanticipated individualized issues or

2    manageability concerns.'") (citation omitted).

3         Moreover, Class Counsel's lodestar does not include the additional time that they will need

4    to devote to implementing the Settlement (should the Court grant final approval), which will include

5    assisting Class Members with claims, communicating with CBA and the Settlement Administrator

6    and overseeing settlement administration generally, work spent on any appeal if necessary, and

7    taking further steps to close out the litigation. Peter Decl., ¶ 20; Wand Decl., ¶ 23. Judging by

8    previous experience, these responsibilities will require approximately 100 hours of work. Peter

9    Decl., ¶ 20; *see also Hanlon*, 150 F.3d at 1029 (affirming an award of attorneys' fees where the

10   award "include[d] all future services that class counsel must provide through the life of the latch

11   replacement program" because class counsel "must remain available to enforce the contractual

12   elements of the settlement agreement and represent any class members who encounter difficulties");

13   *Asghari v. Volkswagen Grp. of Am., Inc.*, No. CV 13-02529 MMM (VBKx), 2015 WL12732462, at

14   *50 (C.D. Cal. May 29, 2015) (supplementing lodestar with "one hundred hours of junior attorney

15   time" based on future work class counsel would need to spend through the settlement process).

16        In sum, the number of hours that Class Counsel devoted to this litigation are reasonable,

17   particularly in light of the excellent result obtained on behalf of the Class. *See Moreno*, 534 F.3d at

18   1112 ("[b]y and large, the court should defer to the winning lawyer's professional judgment as to

19   how much time he was required to spend on the case; after all, he won, and might not have, had he

20   been more of a slacker.").

21        2.    Class Counsel's Hourly Rates Are Reasonable

22        In assessing the reasonableness of an attorney's hourly rate, courts consider whether the

23   claimed rate is "in line with those prevailing in the community for similar services by lawyers of

24   reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11

25   (1984). The relevant community is the community in which the court sits. *See Schwarz v. Sec. of*

26   *Health & Human Servs.*, 73 F.3d 895, 906 (9th Cir. 1995). Rates are reasonable if they are "within

27   the range of reasonable rates charged by and judicially awarded comparable attorneys for

28   comparable work." *Children's Hosp. and Med. Ctr. v. Bonta*, 97 Cal. App. 4th 740, 783 (2002).

7

"Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determination in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

Courts in this district and others have recently approved hourly rates of Class Counsel's firms that are in line with those requested here. Peter Decl., ¶ 23; Wand Decl., ¶¶ 16-17. These prior rates approved for Class Counsel should be adjusted upward for inflation based on their current billing rates. *Stetson v. Grissom*, 821 F.3d 1157, 1166 (9th Cir. 2016) ("The lodestar should be computed either using an hourly rate that reflects the prevailing rate as of the date of the fee request, to compensate class counsel for delays in payment inherent in contingency-fee cases, or using historical rates and compensating for delays with a prime-rate enhancement."). Further, the rates requested by Class Counsel are within the range of rates charged by skilled counsel in the Bay Area in similar complex civil litigation that have been approved by courts in this district. Peter Decl., ¶ 24; Wand Decl., ¶ 15 (citing, *e.g.*, *Fitzhenry-Russell v. Keurig Dr Pepper Inc., et al*, Case No. 5:17-cv-00564 (N.D. Cal. Feb 03, 2017) (ECF Nos. 327-1, 350) (approving partner rates up to $894 and associate rates up to $658); *In re Optical Disk Drive Prod. Antitrust Litig.*, No. 3:10-md-2143 RS, 2016 WL 7364803, at *8 (N.D. Cal. Dec. 19, 2016) (approving partner rates up to $950 and associate rates up to $605, holding that "these ranges are within the ranges accepted by other Courts in this District and market surveys.") (citation omitted."); *Koller et al. v. Med Foods, Inc., et al.*, Case No. 3:14-CV-2400-RS (N.D. Cal. Aug. 29, 2018) (approving rates of $950-$975 for partners and $775 for associate); *Kumar v. Salov North America Corp.*, Case No. 14-cv-2411 (N.D. Cal. Jul. 7, 2017) (approving rates of $925-$950 for partners and $725 for associates); *Gutierrez v. Wells Fargo Bank, N.A.*, No. C 07-05923 WHA, 2015 WL 2438274, at *5 (N.D. Cal. May 21, 2015) (approving partner rates up to $975 and associate rates up to $495 in a consumer class action)). Therefore, Class Counsel's hourly rates are consistent with prevailing rates in this market and are reasonable.

### 3.    A Modest 1.42 Multiplier Is Appropriate

Plaintiffs request a 1.42 multiplier on their lodestar. Although the lodestar figure is "presumptively reasonable," the "district court may then adjust the resulting [lodestar] figure

8

upward or downward to account for various factors […] including the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *In re Hyundai*, 926 F.3d at 570-71 (citing *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)). The Court has "broad discretion" in its "use of the multipliers" and determination of a reasonable fee. *Id.* at 572. These factors support the requested 1.42 multiplier.

First, Class Counsel are highly regarded members of the bar with extensive expertise in the areas of class action litigation involving consumer claims like those at issue here. Peter Decl., ¶ 13; Wand Decl., ¶¶ 4-13; *see also Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 449 (E.D. Cal. 2013) (finding that "the specialized skill of Class Counsel in this area of the law was generally an asset to the Class Members[.]"). Moreover, Class Counsel zealously litigated this case on behalf of the Class and prevailed on critical issues leading up to this Settlement. The quality of representation is underscored by the fact that CBA, which was represented by a first-rate law firm with significant experience litigating consumer class actions, vigorously contested liability and class certification. Peter Decl., ¶ 26. In the face of this defense, Class Counsel's ability to obtain a favorable settlement is an indicator of their quality of work. *Knight v. Red Door Salons, Inc.*, No. 08-01520 SC, 2009 WL 248367, at *6 (N.D. Cal. Feb. 2, 2009) (where defense counsel "understood the legal uncertainties in this case[] and were in a position to mount a vigorous defense," the favorable class settlement was "some testament to Plaintiffs' counsel's skill"); *Lofton v. Verizon Wireless (VAW) LLC*, No. C 13-05665, 2016 WL 7985253, at *1 (N.D. Cal. May 27, 2016) (the "risks of class litigation against an able defendant well able to defend itself vigorously" support an upward adjustment in the award of fees); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 8:10ML 02151 JVS (FMOx), 2013 WL 12327929, at *32 (C.D. Cal. July 24, 2013) (holding that the skill of counsel factor "weighs in favor of approving the entire proposed fee award" when "class counsel faced an exceptionally skilled adversary with substantial resources.").

Second, the significant results obtained for the Class supports the requested multiplier. *See Hensley*, 461 U.S. at 435 ("Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee."). The "benefit obtained for the class" is the "[f]oremost" factor

9

when considering the propriety of a multiplier. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). The immediate relief afforded to the Class, which provides a greater cash recovery than Class Members could have received on a per product basis at trial, alongside changes to the Kona Beers' packaging, demonstrates the significant value of the Settlement. *See Shames v. Hertz Corp.*, No. 07-CV-2174-MMA(WMC), 2012 WL 5392159, at *7, *21 (S.D. Cal. Nov. 5, 2012) (approving plaintiff's fee request of $5,123,336.00 under a claims-made settlement which provided a cash recovery of 67% of actual damages). The exceptional results achieved here are reinforced by the fact Plaintiffs certified two California litigation classes but were ultimately able to obtain a nationwide settlement. *Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877, 902 (C.D. Cal. 2016) ("These results are particularly impressive given that class counsel began with an 11–state lawsuit and converted it into a nationwide settlement.").

Third, the complexity of the issues involved, and the skills necessary to adequately manage these issues, support the requested multiplier. This case involved several complex issues – advancing consumer claims on representations CBA contended were puffery, proffering a viable method of calculating damages on a class-wide basis, and certifying a nationwide settlement class – to name a few. Moreover, litigating nationwide class actions like this one inherently involves the management of complex issues. *See In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008) (the "prosecution and management of a complex national class action requires unique legal skills and abilities" that are to be considered when evaluating fees) (internal quotation marks omitted).

Fourth, as the Ninth Circuit has long recognized, it is an "established practice in the private legal market of rewarding attorneys for the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002). "When [such an] action is successful, therefore, the attorneys must be rewarded, not only for the hours reasonably expended in prosecuting the action, but also for the risk that no fee would ever be forthcoming." *White v. City of Richmond*, 559 F.127, 133 (N.D. Cal. 1982). Class Counsel undertook representation of this matter on a pure contingency-fee basis, expending substantial time and out-of-pocket costs over the course of over two years with no

10

guarantee of any recovery. Shouldering these risks, at the exclusion of other fee generating matters during time periods of intense litigation, without any monetary gain in the event of an adverse judgment, therefore warrants approval of the requested 1.42 multiplier. *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994) ("Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose.").

Finally, the overall reasonableness of the requested 1.42 multiplier is underscored by the fact that higher multipliers are commonly awarded in similar cases. For wholly-contingent consumer class actions like this one, California courts have approved fee awards with multipliers of 2 and even higher. *See*, *e.g.*, *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 255 (2001) ("Multipliers can range from 2 to 4 or even higher."); *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66 (2008) (same). Similarly, in the Ninth Circuit, multipliers "ranging from one to four are frequently awarded […] when the lodestar method is applied." *Vizcaino*, 290 F.3d at 1051 n.6 (internal quotation marks omitted); *see also Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 298–99 (N.D. Cal. 1995) (holding that multiplier of 3.6 was "well within the acceptable range for fee awards in complicated class action litigation" and explaining that "[m]ultipliers in the 3–4 range are common"). And in *In re Hyundai*, the Ninth Circuit recently held that a 1.5521 multiplier was "modest or in-line with others we have affirmed." 926 F.3d at 572 (9th Cir. 2019). Consistent with this authority, this Court has also approved higher multipliers in similar class actions. *See*, *e.g.*, *Gergetz v. Telenav, Inc.*, No. 16-CV-04261-BLF, 2018 WL 4691169, at *7 (N.D. Cal. Sept. 27, 2018) (approving 2.625 multiplier on lodestar in class action settlement "in light of the facts that Class Counsel accepted this case on a contingency basis, had to forego other work to litigate this case, and achieved a truly excellent result for the class."); *Sheikh v. Tesla, Inc.*, No. 17-CV-02193-BLF, 2018 WL 5794532, at *8 (N.D. Cal. Nov. 2, 2018) ("[A] multiplier of 2.36 is within the range of reasonableness.").

Accordingly, the requested 1.42 multiplier is in line with California and Ninth Circuit law and should be awarded.

1

     **E.**     **A Percentage Of The Recovery Cross-Check Supports The Reasonableness Of The Fee Request**

2

3        As set forth above, the Court should utilize the lodestar method and need not cross-check

4   the lodestar calculation against the percentage of the recovery. *In re Hyundai*, 926 F.3d at 571. That

5   being said, the Court could take a second look at the reasonableness of the fee award by cross-

6   checking it against a percentage of the total value of the benefits conferred on the Class. If the Court

7   chooses to perform this cross-check, it should consider the monetary payment available to the Class,

8   settlement administration costs, Plaintiffs' attorneys' fees and costs, and the injunctive relief

9   afforded to the Class.

10        When cross-checking the fee award against the benefit to the Class, the Court should look

11   to the funds made available to the class, *not* the amount actually claimed by the Class. *Williams v.*

12   *MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) (per curiam) ("We conclude that

13   the district court abused its discretion by basing the fee on the class members' claims against the

14   fund rather than on a percentage of the entire fund or on the lodestar."). This approach has been

15   followed by numerous district courts. *See*, *e.g.*, *Miller v. Ghirardelli Chocolate Co.*, No. 12-CV-

16   04936-LB, 2015 WL 758094, at *5 (N.D. Cal. Feb. 20, 2015) ("Ninth Circuit precedent requires

17   courts to award class counsel fees based on the total benefits being made available to class members

18   rather than the actual amount that is ultimately claimed.") (citing *MGMPathe Commc'ns Co.*, 129

19   F.3d at 1027); *Ellsworth v. U.S. Bank*, N.A., No. 3:12-cv-02506-LB, 2015 WL 12952698, at *4

20   (N.D. Cal. Sept. 24, 2015) ("precedent requires courts to award class counsel fees based on the total

21   benefits being made available to class members rather than the actual amount that is ultimately

22   claimed"); *Hartless v. Clorox Co.*, 273 F.R.D. 630, 643 n. 3 (S.D. Cal. 2011) ("Under Ninth Circuit

23   law, it is an abuse of discretion to base the percentage recovery on the amount of claimed funds

24   rather than the entire settlement fund.").

25        Here, the total monetary payment to the Class is difficult to quantify given the uncapped

26   nature of the claims process. *See*, *e.g., In re Prudential Ins. Co. Am. Sales Practice Litig. Agent*

27   *Actions*, 148 F.3d 283, 323 (3d Cir. 1998) (holding that the "uncapped nature of the relief provided

28   make[s] it difficult to determine accurately the actual value of the settlement."). While CBA has the

12

1    option to terminate the Settlement if more than 1 million Class Members submit claims, the

2    monetary reimbursement is available to all Class Members and there is no cap as to how many Class

3    Members can seek reimbursement. Settlement Agreement, ¶ 77(d). Thus, assuming 1 million Class

4    Members submit Claims (which would not trigger CBA's option to terminate the Settlement) for

5    $10 (no proof of purchase required), the monetary value of compensation available to the Class is

6    reasonably valued at $10,000,000.

7         In addition, the Court should consider the settlement administration costs of $395,000 and

8    the attorneys' fees and litigation costs of $2,900,000. *See, e.g.*, *Online DVD-Rental*, 779 F.3d at 953

9    ("The district court did not abuse its discretion in calculating the fee award as a percentage of the

10   total settlement fund, including notice and administrative costs, and litigation expenses"); *Staton v.*

11   *Boeing Co.*, 327 F.3d 938, 975 (9th Cir. 2003) ("[W]here the defendant pays the justifiable cost of

12   notice to the class . . . it is reasonable . . . to include that cost in a putative common fund benefiting

13   the plaintiffs for all purposes, including the calculation of attorneys' fees.").

14        Lastly, the Court should consider the value of the injunctive relief. *See Pokorny v. Quixtar,*

15   *Inc.*, No. C 07-0201 SC, 2013 WL 3790896, at *1 (N.D. Cal. July 18, 2013) ("The court may

16   properly consider the value of injunctive relief obtained as a result of settlement in determining the

17   appropriate fee."). To evaluate this injunctive relief in monetary terms, Plaintiffs' expert, Stefan

18   Boedeker, forecasted the Kona Beers' revenue for the time period of the injunctive relief using three

19   different methodologies as described in his declaration, and then applied the 12.7% nationwide

20   economic loss percentage he previously calculated in support of Plaintiffs' class certification, to

21   these forecasted revenues, which resulted in the following estimated values: (1) $33,146,148; (2)

22   $52,809,883; and (3) $24,881,137. Declaration of Stefan Boedeker, ¶¶ 12-18. Plaintiffs propose that

23   the most conservative valuation of the injunctive relief, $24,881,137, be applied here.

24        Based on the foregoing, a reasonable estimate of the monetary value of the Settlement is

25   $38,176,137. And even if the Court were to exclude the monetary value of the injunctive relief, the

26   Settlement is still reasonably valued at $13,295,000. In the first scenario, the requested attorneys'

27   fees represent just 6.7% of the overall value of the Settlement, and in the latter scenario, it represents

28   19% of the overall value of the Settlement. In either event, the fee request represents less than the

1  Ninth Circuit's 25 percent benchmark, *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272
2  (9th Cir. 1989), and is thus reasonable under a percentage of the recovery cross-check.

3  **F.    The Litigation Costs Are Reasonable**

4  Plaintiffs are entitled to recover the litigation expenses they reasonably incurred in
5  investigating, prosecuting, and settling this case. *Omnivision*, 559 F. Supp. 2d at 1048 (allowing
6  recovery of "expenses relat[ing] to photocopying, printing, postage and messenger services, court
7  costs, legal research on Lexis and Westlaw, experts and consultants, and the costs of travel for
8  various attorneys and their staff throughout the case.") (citing *Harris v. Marhoefer*, 24 F.3d 16, 19
9  (9th Cir. 1994)); *Mendoza v. Hyundai Motor Co., Ltd.*, No. 15-CV-01685-BLF, 2017 WL 342059,
10  at *14 (N.D. Cal. Jan. 23, 2017) (J. Freeman) (holding that costs are compensable under the CLRA
11  and Cal. Civ. Code § 1021.5).

12  To date, Class Counsel have incurred out-of-pocket costs totaling $329,973.59 Peter Decl.,
13  ¶ 27; Wand Decl., ¶ 26. The bulk of these costs ($277,525.36) are attributable to expert witness fees
14  to Berkeley Research Group (conjoint analysis) and Michael Dennis (consumer perception survey),
15  as well as associated deposition time.[3] Although these expert costs were expensive, such expert
16  work is compensable. *See generally Hopkins v. Stryker Sales Corp.*, No. 11-CV-02786-LHK, 2013
17  WL 496358, at *6 (N.D. Cal. Feb. 6, 2013) (holding that class counsel's "necessary expenses also
18  included the retention of three experts" which allowed class counsel "to effectively and accurately
19  evaluate both the potential damages in this case, as well as the strengths and weaknesses of the
20  damage calculations they would be prepared to present at trial"). This expert work was necessary in
21  two respects. First, the onus was on Plaintiffs to proffer a viable method of calculating damages on
22  a class-wide basis in order to obtain class certification. *See Comcast Corp. v. Behrend*, 569 U.S. 27,
23  34 (2013). Second, the conjoint analysis enabled Plaintiffs to intelligently evaluate the damages at
24  issue, which was critical to Plaintiffs' ability to negotiate and secure preliminary approval of the

27  [3] Plaintiffs also paid expert witness fees to John Palmer (water expert) and Economics &
28  Technology, Inc. (consulting services only).

14

1   Settlement. *See* Fed. R. Civ. P. 23(e)(2)(C) (requiring courts to consider whether "the relief provided

2   for the class is adequate.").

3        This amount also includes costs for: (1) the several depositions in this matter, including

4   transcript and travel costs; (2) mediation fees, including travel costs; (3) fees paid to CBA's expert

5   for his deposition time; (4) filing and service fees, including costs for courtesy copies required by

6   the Court; and (5) other typical costs such as printing, copying, and telephone charges. Peter Decl.

7   ¶ 27; Wand Decl. ¶ 26. These costs were also necessary to secure the resolution of this litigation and

8   should be approved. *Omnivision*, 559 F. Supp. 2d at 1048.

9        **G.    The Class Representative Service Awards Are Reasonable**

10        CBA has agreed to pay $5,000 in service awards to each of the two class representatives.

11   Settlement Agreement, ¶ 112. The Settlement, however, is not contingent on payment of these

12   service awards, *id.*, ¶ 109, so there is no conflict of interest between Plaintiffs and the Class.

13   Declaration of Theodore Broomfield ("Broomfield Decl."), ¶ 4; Declaration of Simone Zimmer

14   ("Zimmer Decl."), ¶ 4. For the reasons discussed below, the requested service awards are well

15   justified.

16        As an initial matter, class representative service awards "are fairly typical in class action

17   cases," *Rodriguez v. West Publ'n Corp.*, 563 F.3d 948, 958 (9th Cir. 2009), and such awards are

18   "intended to compensate class representatives for work done on behalf of the class [and] make up

19   for financial or reputational risk undertaken in bringing the action and . . . to recognize their

20   willingness to act as a private attorney general." *Id.* at 958-59. Moreover, the "Ninth Circuit has

21   established $5,000 as a reasonable benchmark [for service awards]." *In re Yahoo Mail Litig.*, No.

22   13-CV-4980-LHK, 2016 WL 4474612, at *11 (N.D. Cal. Aug. 25, 2016); *Bellinghausen v. Tractor*

23   *Supply Co.*, 306 F.R.D. 245, 266 (N.D. Cal. 2015) (collecting cases and observing that "[in the

24   Northern District of California], a $5,000 payment is presumptively reasonable.").

25        This Court has also approved service awards of $5,000 or more in similar class action cases.

26   *See, e.g.*, *In re Extreme Networks, Inc. Sec. Litig.*, No. 15-cv-04883-BLF, 2019 WL 3290770, at *11

27   (N.D. Cal. July 22, 2019) ("Service awards as high as $5,000 are presumptively reasonable in this

28   judicial district."); *Jacob v. Pride Transp., Inc.*, No. 16-cv-06781-BLF, 2018 WL 1411136, at *6-7

15

1   (N.D. Cal. Mar. 21, 2018) ("[T]he Court concludes that the requested $10,000 service awards are

2   appropriate" in a class action when the representatives "worked on the case for more than a year,

3   provid[ed] valuable documents and information to Class Counsel" and their efforts aided Class

4   Counsel in providing "significant benefit to the class in the form of cash payments to class

5   members[.]"); *Isquierdo v. W.G. Hall, LLC*, No. 15-cv-00335-BLF, 2017 WL 4390250, at *9 (N.D.

6   Cal. Oct. 3, 2017) (granting $5,000 service award when representative "spent over fifteen hours

7   performing work on behalf of the class" and "provid[ed] Class Counsel with information and

8   documents" in addition to "reviewing documents including his own declaration in this matter.")

9           When assessing a request for service awards, courts typically consider the following criteria:

10   "1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the

11   notoriety and personal difficulties encountered by the class representative; 3) the amount of time

12   and effort spent by the class representative; 4) the duration of the litigation and; 5) the personal

13   benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." *Van*

14   *Vranken*, 901 F. Supp. at 299. Consideration of these factors supports the requested service awards.

15           First, Plaintiffs were willing to lend their name to this matter, thus subjecting themselves to

16   public attention, in order to bring this case on behalf of the Class. Broomfield Decl., ¶ 8; Zimmer

17   Decl., ¶ 9. Moreover, while Plaintiffs have not (to their knowledge) personally experienced adverse

18   consequences as a result of this case, it did garner a fair amount of media attention, as it was widely

19   reported by local and mainstream media outlets. Peter Decl., ¶ 30; *see also Guippone v. BH S & B*

20   *Holdings LLC*, No. 09 Civ. 1029(CM), 2011 WL 5148650, *7 (S.D.N.Y. Oct. 28, 2011) ("Even

21   where there is not a record of actual retaliation, notoriety, or personal difficulties, class

22   representatives merit recognition for assuming the risk of such for the sake of absent class members"

23   and recognizing "the fact that a plaintiff has filed a federal lawsuit is searchable on the internet and

24   may become known to prospective employers when evaluating the person.").

25           Second, Plaintiffs were actively engaged in this action over the past two years. Among other

26   things, Plaintiffs provided information to Class Counsel for the complaints and other pleadings,

27   reviewed pleadings and other documents, communicated on a regular basis with counsel and kept

28   themselves informed of progress in the litigation and settlement negotiations, prepared and sat for

depositions, and reviewed and approved the proposed Settlement. Broomfield Decl., ¶¶ 5-6; Zimmer Decl., ¶¶ 5-6; *see also Miller*, 2015 WL 758094, at *7 (awarding $5,000 service awards to named plaintiffs who searched personal records, were deposed, responded to interrogatories and requests for production, provided declarations, and attended or consulted during mediation).

Finally, Plaintiffs' dedication was notable, particularly given the relatively modest size of their personal financial stake in this case vis-à-vis the total settlement value. The service awards represent a small portion of the overall value of the Settlement and are thus reasonable. *See, e.g.*, *Online DVD-Rental*, 779 F.3d at 947-48 (approving $5,000 service award to nine class representatives because in assessing propriety of service award, courts should focus on the "number of class representatives, the average incentive award amount, and the proportion of the total settlement that is spent on incentive awards."); *Rhom v. Thumbtack, Inc.*, No. 16-cv-02008-HSG, 2017 WL 4642409, at *8 (N.D. Cal. Oct. 17, 2017) ("A $5,000 award also equals approximately 1-2% of the total settlement fund, which is consistent with other court-approved enhancements."). Accordingly, the Court should approve the requested class representative service awards.

## V.   **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this Motion and award $2,900,000 in attorneys' fees and costs and $5,000 in service awards to each of the two class representatives.

DATED: September 2, 2019           **Faruqi & Faruqi, LLP**

By: */s/ Timothy J. Peter*
Timothy J. Peter

The Wand Law Firm, P.C.
Aubry Wand

*Attorneys for Plaintiffs and the Settlement Class*