UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| THEODORE BROOMFIELD, *et al.*, | Case No. 5:17-cv-01027-BLF |
| Plaintiffs, | |
| v. | |
| CRAFT BREW ALLIANCE, INC., *et al.*, | |
| Defendants. | |

DECLARATION
OF
STEFAN BOEDEKER

August 27, 2019

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

I, Stefan Boedeker, declare as follows:

1.　I am a Statistician and an Economist. I received a Bachelor of Science degree in Statistics and a Bachelor of Arts degree in Business Administration from the University of Dortmund/Germany in 1988. I received a Master of Science degree in Statistics from the University of Dortmund/Germany in 1988, and I received a Master of Arts degree in Economics from the University of California, San Diego in 1992. I also completed Ph.D. requirements (except dissertation) in Economics at the University of California, San Diego.

2.　I am a Managing Director at the Berkeley Research Group ("BRG") based at 550 South Hope Street, Suite 2150, Los Angeles, CA, 90071. Prior to joining BRG, I was a Partner at Resolution Economics. I also held Managing Director positions at Alvarez & Marsal, Navigant Consulting, and LECG. I held partner-level positions at Deloitte & Touche LLP, PricewaterhouseCoopers LLP, and Arthur Andersen LLP. At the three latter firms, I was responsible for the Economic and Statistical Consulting group on the West Coast. Before moving to the United States to attend graduate school, I worked as a statistician for the German Government from 1986 to 1989.

3.　For over 25 years, my work has focused on the application of economic, statistical, and financial models to a variety of areas, such as providing solutions to business problems, supporting complex litigation in a consulting and expert witness role, and conducting economic impact studies in a large variety of industries including, but not limited to, healthcare, retail, grocery manufacturing, technology, entertainment, manufacturing, automotive, energy and utilities, hospitality, and federal, state, and local government agencies.

4.　All the facts and circumstances set forth in this declaration are known to me personally and I am prepared to testify to them if called upon to do so. My curriculum vitae which includes matters in which I have testified is attached to this report as Exhibit A. BRG is being compensated for its work on this matter based on an agreed upon hourly billing rate schedule. My hourly billing rate for professional services related to this case is $650 and the billing rates of BRG

staff supporting me on this engagement range from $150 to $575. BRG's payment in this matter is not contingent upon my opinions or the outcome of this litigation.

## BACKGROUND

5. I was previously retained by counsel for Plaintiffs in *Theodore Broomfield, et al., v. Craft Brew Alliance, Inc., et al.*, No. 5:17-cv-01027 to develop an economic loss model to quantify the damages suffered by the proposed class of consumers attributable to the alleged false and deceptive representations on the packaging of Craft Brew Alliance's ("CBA") Kona branded beer products ("Kona Beers") that they were brewed in Hawaii when they were not. I was further asked to use the results of a market research study performed by another expert in the case, and other data, to develop an econometric/statistical model to estimate class-wide damages suffered by purchasers of Kona Beers based on the foregoing theory of liability advanced by Plaintiffs.

6. I submitted an Expert Report on March 29, 2018 and a Rebuttal Report on May 28, 2018. I was deposed on June 20, 2018.

7. The results of my extensive economic loss calculations indicated that the average economic loss to the consumers nationwide who had purchased Kona Beers is 12.7% of the product price. *See* ECF No. 83-14, ¶ 148.

## ASSIGNMENT

8. I have now been asked by Plaintiffs' counsel to estimate the monetary value of the injunctive relief that has been obtained under the terms of the settlement reached by the parties.

9. In undertaking this assignment, I have drawn on the work I previously performed for purposes of class certification in this matter. I do not include the details of my prior work here, but to briefly summarize, my Expert Report and Rebuttal Report set forth my research regarding the beer market, the theoretical framework for my economic loss model, the methodology of the empirical study that I performed, and the ultimate conclusion that I reached, which as it pertains to my analysis here, is the 12.7% economic loss consumers suffered nationwide as a result of the representation that Kona Beers are brewed in Hawaii. It is my understanding that before a settlement was reached the Court granted class certification with respect to a damages class and

injunctive relief class of California consumers based on Plaintiffs' theory of liability. My methodology equally applies to the nationwide settlement class here.

10. It is my understanding that the Settlement Agreement provides for the following injunctive relief:

> *"Not later than March 2020 or thirty calendar days after the Effective Date, whichever is later, CBA shall make the following changes to its business practices:*
>
> a. *To the extent permitted by law and/or regulation, CBA shall include a conspicuous statement on all consumer-facing Kona Beer packaging on a panel other than the bottom of the package that lists each location where the Kona Beers are brewed or lists the location or locations at which a particular Kona Beer is brewed, for a minimum of four years after the Effective Date. An initial mock-up of the new packaging for one of the Kona Beer products is attached hereto as Exhibit 7.*
>
> b. *For a minimum of four years after the Effective Date, CBA's General Counsel or his or her designee shall conduct annual meetings with CBA's marketing department to review and comply with the injunctive terms of this Settlement."*[1]

11. Based on the foregoing, it is my understanding that CBA has agreed to change the product packaging to indicate that Kona Beers are not solely brewed in Hawaii, commencing in or around March 2020 through 2023. I do not offer an opinion here as to the efficacy of this injunctive relief; my assignment was to estimate the potential monetary value of the injunctive relief based on the assumption that it does in fact remove consumer confusion regarding where the Kona Beers are brewed.

12. I have performed three methods of calculating the monetary value of the foregoing injunctive relief. All three methods involve straightforward application of my economic loss model

---

[1] Settlement Agreement, ¶ 78.

to forecasted future revenue during the four-year time period (2020 to 2023) that the product packaging changes must be implemented by CBA under the terms of the settlement ("injunctive relief period"). The methods vary, however, depending on the methodology for calculating the future revenue for Kona Beers:

    a. The first method (Table 2) assumes that the existing revenues for Kona Beers during the time period of 2014 to 2018 ▇▇▇▇ during the injunctive relief period.

    b. The second method (Table 3) is based on forecasted growth revenues during the injunctive relief period, extrapolated from the existing data using a trend analysis.

    c. The third method (Table 4), which is the most conservative approach, applies the ▇▇▇▇ from the existing historical sales data ▇▇▇▇ to the injunctive relief period.

13. Table 1 shows CBA's actual revenues for Kona Beer in the United States for full calendar years 2014 to 2018 that I used to make the projection for the injunctive relief period.

**Table 1  CBA's Actual Annual Revenue 2014-2018**

| Year | Revenue |
|------|---------|
| 2014 | ▇▇▇▇ |
| 2015 | ▇▇▇▇ |
| 2016 | ▇▇▇▇ |
| 2017 | ▇▇▇▇ |
| 2018 | ▇▇▇▇ |

Source: CBAKONA00017521_CONFIDENTIAL.xlsx[2]

14. Using the data summarized in Table 1, I was able to calculate ▇▇▇▇ annual revenue from 2014-2018 and then use that number ▇▇▇▇ to estimate ▇▇▇▇ in 2020 to 2023 shown in Table 2. ▇▇▇▇

---

[2] I understand this file lists nationwide aggregate sales data during the time period of 2014 to 2018 for the Kona Beers included in the settlement.

**Table 2  Forecasted Revenue and Estimated Economic Loss Based ▉▉▉ Revenues in 2014-2018**

| Year | Revenue | Economic Loss at 12.7% |
|---|---|---|
| 2020 | ▉▉▉ | ▉▉▉ |
| 2021 | | |
| 2022 | | |
| 2023 | | |
| Total | | $34,871,840 |

*Source: Own analysis based on CBAKONA00017521_CONFIDENTIAL.xlsx*

15.   As you can see from the historical sales data in Table 1, there was ▉▉▉ ▉▉▉ during the time period of 2014 to 2018. Table 3 shows estimated revenues for 2020 to 2023 based on a time trend analysis, ▉▉▉ ▉▉▉. The time trend analysis tested several available statistical models and settled on an autoregressive integrated moving average (ARIMA) with a random walk and a drift as the best fitting model.

Table 3  **Forecasted Revenue and Estimated Economic Loss Based on Trend Analysis**

| Year | Revenue | Economic Loss at 12.7% |
|---|---|---|
| 2020 | | |
| 2021 | | |
| 2022 | | |
| 2023 | | |
| Total | | $52,809,883 |

*Source: Own analysis based on CBAKONA00017521_CONFIDENTIAL.xlsx*

16. Table 4 shows estimated revenues for 2020 to 2023 based on ▮▮▮ revenue from the existing historical sales data ▮▮▮

Table 4  **Forecasted Revenue and Estimated Economic Loss Based on ▮▮▮ Revenue in 2014-2018**

| Year | Revenue | Economic Loss at 12.7% |
|---|---|---|
| 2020 | | |
| 2021 | | |
| 2022 | | |
| 2023 | | |
| Total | | $24,881,137 |

*Source: Own analysis based on CBAKONA00017521_CONFIDENTIAL.xlsx*

17. The value of the injunctive relief based on these three methods are summarized in Table 5.

-6-

### Table 5  Summary of Estimated Future Revenues and Monetary Value of Injunctive Relief

| Assumption | Revenue 2020-2023 | Value Of Injunctive Relief |
|---|---|---|
| The ▓▓▓ annual revenue in the period 2014 to 2018 are applied to the period 2020 to 2023 (Table 2) | ▓▓▓ | $33,146,148 |
| Annual revenues in the period 2020 to 2023 forecasted with a trend analysis (Table 3). | ▓▓▓ | $52,809,883 |
| ▓▓▓ revenue in the period 2014 to 2018 applied to the period 2020 to 2023 (Table 4) | ▓▓▓ | $24,881,137 |

Source: Own analysis based on CBAKONA00017521_CONFIDENTIAL.xlsx

### CONCLUSION

18.     In my opinion, an estimate of the monetary value of the injunctive relief over a four-year period after the Effective Date of the settlement can be obtained based on my economic loss model and the estimated annual sales revenues. Using the actual revenues for Kona Beers in the United States for full calendar years 2014 to 2018, I was able to estimate projected annual revenue in 2020-2023, based on three different approaches, which when applied to the 12.7% economic loss figure I previously calculated, yields a minimum of $24,881,137 and a maximum of $52,809,883, with respect to the monetary value of the injunctive relief.

Respectfully submitted on August 27, 2019

*[signature]*

Stefan Boedeker