**FARUQI & FARUQI, LLP**
Benjamin Heikali (SBN 307466)
Joshua Nassir (SBN 318344)
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: (424) 256-2884
Facsimile: (424) 256-2885
E-mail: bheikali@faruqilaw.com
         jnassir@faruqilaw.com

**FARUQI & FARUQI, LLP**
Timothy J. Peter (admitted *pro hac vice*)
1617 JFK Boulevard, Suite 1550
Philadelphia, PA 19103
Telephone: (215) 277-5770
Facsimile: (215) 277-5771
E-mail: tpeter@faruqilaw.com

**THE WAND LAW FIRM, P.C.**
Aubry Wand (SBN 281207)
400 Corporate Pointe, Suite 300
Culver City, California 90230
Telephone: (310) 590-4503
Facsimile: (310) 590-4596
E-mail: awand@wandlawfirm.com

*Attorneys for Plaintiffs and the Settlement Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| THEODORE BROOMFIELD, *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>CRAFT BREW ALLIANCE, INC., *et al.*,<br><br>    Defendants. | CASE NO.: 5:17-cv-01027-BLF<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date: December 19, 2019<br>Time: 1:30 p.m.<br>Courtroom: 3 – 5th Floor<br>Judge: Hon. Beth Labson Freeman |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on December 19, 2019, at 1:30 pm, in Courtroom 3 of the above-captioned Court, Plaintiffs will and hereby do move this Court, pursuant to Fed. R. Civ. P. 23(e), this District's Civil Local Rules, this Court's Standing Orders, and this District's Procedural Guidance For Class Action Settlements, for an entry of a Final Approval Order approving the terms of the proposed Settlement Agreement, and for entry of Final Judgment.

This Motion is based on this Notice of Motion, the below Memorandum of Points and Authorities in support, the Declarations of Timothy J. Peter, Tammy B. Webb, and Ani S. Sarich, the Settlement Agreement and exhibits thereto, the complete files and records in this action, on such further oral and documentary evidence that may be submitted, and any further evidence as the Court may receive.

DATED: October 28, 2019                    **FARUQI & FARUQI, LLP**

By: */s/ Timothy J. Peter*
Timothy J. Peter
Benjamin Heikali
Joshua Nassir

**THE WAND LAW FIRM, P.C.**
Aubry Wand

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

II.   RELEVANT PROCEDURAL BACKGROUND ................................................. 1

III.  THE SETTLEMENT TERMS ............................................................................ 3

    A.   The Settlement Class ................................................................................. 3

    B.   Monetary Benefit For The Settlement Class ............................................. 4

    C.   Injunctive Relief For The Settlement Class .............................................. 4

    D.   Release Of Settlement Class Members' Claims ........................................ 5

IV.   CLASS NOTICE HAS BEEN PROPERLY DISSEMINATED ........................ 5

    A.   Class Notice Documents ........................................................................... 5

    B.   The Notice Plan Was Successfully Implemented ..................................... 6

V.    THE SETTLEMENT MERITS FINAL APPROVAL ....................................... 8

    A.   Plaintiffs And Class Counsel Have Adequately Represented The Settlement Class ......... 10

    B.   The Settlement Was Reached After Informed, Arm's Length Bargaining ..................... 10

    C.   The Settlement Provides Substantial Benefit To The Settlement Class ............................ 12

        1.   The Benefit To The Settlement Class Is Substantial, Particularly When Compared To What Class Members Could Have Recovered At Trial ................................. 12

        2.   The Recovery For The Settlement Class Is Reasonable In Comparison To Comparable Settlements ............................. 13

        3.   The Costs, Risks, And Delay Of Trial ......................................... 14

        4.   Effectiveness Of The Proposed Distribution Method ................... 15

        5.   Terms Of Attorneys' Fees .......................................................... 15

        6.   There Are No Supplemental Agreements ..................................... 16

    D.   Settlement Class Members Are Treated Equitably Under The Settlement ....................... 16

    E.   Additional *Churchill* Factors Favor Approval ...................................... 16

        1.   The Strength Of Plaintiffs' Case ................................................. 16

        2.   Class Counsels' Experience And Views ...................................... 17

        3.   The Presence Of A Governmental Participant ............................. 17

        4.   The Reaction Of The Class To The Settlement ............................ 18

VI.   THE SETTLEMENT CLASS SATISFIES RULE 23 ...................................... 19

VII.  CONCLUSION………………………………..……………………………...22

1

**TABLE OF AUTHORITIES**

2

**Cases**                                                                                   **Page(s)**

3

*In re Abbott Labs. Norvir Anti-Trust Litig.*,

4
    No. C 04-1511 CW, 2007 WL 1689899 (N.D. Cal. June 11, 2007) .........................................21

5

*Adams v. Inter-Con Sec. Sys. Inc.*,
    No. C-06-5428 MHP, 2007 WL 3225466 (N.D. Cal. Oct. 30, 2007) .......................................11

6

*Adoma v. Univ. of Phoenix, Inc.*,

7
    913 F. Supp. 2d 964 (E.D. Cal. 2012) ...................................................................................16

8

*Allen v. Similasan Corp.*,

9
    306 F.R.D. 635 (S.D. Cal. 2015) ..........................................................................................21

10

*In re Anthem, Inc. Data Breach Litig.*,
    327 F.R.D. 299 (N.D. Cal. 2018) .........................................................................................21

11

*In re Bluetooth Headset Products Liability Litigation*,

12
    654 F.3d 935 (9th Cir. 2011) ...............................................................................................19

13

*In re Checking Account Overdraft Litig.*,
    307 F.R.D. 630 (S.D. Fla. 2015) ..........................................................................................21

14

*Churchill Vill., L.L.C. v. Gen. Elec.*,

15
    361 F.3d 566 (9th Cir. 2004) .......................................................................................1, 5, 9, 16

16

*Class Plaintiffs v. City of Seattle*,

17
    955 F.2d 1268 (9th Cir. 1992) .............................................................................................14

18

*Edenborough v. ADT, LLC*,
    No. 16-cv-02233-JST, 2019 WL 4164731 (N.D. Cal. Jul. 22, 2019) .......................................20

19

*Garner v. State Farm Mut. Auto. Ins.*,

20
    No. CV 08 1365 CW (EMC),

21
    2010 WL 1687832 (N.D. Cal. April 22, 2010) .......................................................................19

22

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998)..........................................................................................14, 19

23

*In re Hyundai & Kia Fuel Economy Litigation*,

24
    926 F.3d 539 (9th Cir. 2019)....................................................................................19, 20, 21, 22

25

*Keil v. Lopez*,

26
    862 F.3d 685 (8th Cir. 2017)..............................................................................................18

27

*Lane v. Facebook, Inc.*,
    696 F.3d 811 (9th Cir. 2012)................................................................................................9

28

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998)...........................................................................17

*In re Lithium Ion Batteries Antitrust Litig.*,
    No. 4:13-md-02420-YGR (MDL),
    2019 WL 3856413 (N.D. Cal. Aug. 16, 2019)..................................................20

*McKnight v. Uber Techs., Inc.*,
    No. 14-CV-05615-JST, 2019 WL 3804676 (N.D. Cal. Aug. 13, 2019) ...................20

*Molski v. Gleich*,
    318 F.3d 937 (9th Cir. 2003)...........................................................................17

*Moore v. Verizon Commc'ns Inc.*,
    No. C 09-1823, 2013 WL 4610764 (N.D. Cal. Aug. 28, 2013) ...........................18

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ................................................................10, 12

*In Re Nucoa Real Margarine Litig.*,
    No. CV-10-00927-MMM, 2012 WL 12854896 (C.D. Cal. June 12, 2012) ............12

*Officers for Justice v. Civil Serv. Comm'n of S. F.*,
    688 F.2d 615 (9th Cir. 1982).............................................................................15

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2007) ............................................................17

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015).........................................................................9, 18

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ..........................................................................................6

*Reed v. 1–800 Contacts, Inc.*,
    2014 WL 29011 (S.D. Cal. Jan. 2, 2014) ...........................................................12

*Rodriguez v. West Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009)..........................................................................8, 19

*Sadowska v. Volkswagen Grp. of Am., Inc.*,
    No. CV 11-00665, 2013 WL 9600948 (C.D. Cal. Sept. 25, 2013) .......................11

*Schaffer v. Litton Loan Servicing, LP*,
    No. CV-05-07673 MMM (JCx)
    2012 WL10274679 (C.D. Cal. Nov. 13, 2012) ....................................................14

*Schunchardt v. Law Office of Rory W. Clark*,
    314 F.R.D. 673 (N.D. Cal. 2016)......................................................................17

iii

*Silber v. Mabon*,
    18 F.3d 1449 (9th Cir. 1994) ............................................................6

*Six (6) Mexican Workers v. Arizona Citrus Growers*,
    904 F.2d 1301 (9th Cir.1990) ..........................................................18

*In re Synocor ERISA Litig.*,
    516 F.3d 1095 (9th Cir. 2008) ..........................................................8

*Vathana v. Everbank*,
    No. 09-CV-02338-RS, 2016 WL 3951334 (N.D. Cal. July 20, 2016) ......................14

*Zepeda v PayPal, Inc.*,
    No. cv-10-2500-SBA, 2017 WL 1113293 (N.D. Cal. Mar. 24, 2017) ......................18

**Statutes**

28 U.S.C. § 1715(b) ..............................................................................17

Cal. Bus. & Prof. Code § 17500, *et seq.* ........................................................2

Cal. Bus. & Prof. Code § 17200, *et seq.* ........................................................2

Cal. Civ. Code § 1781(d) and (e) ................................................................7

Cal. Civ. Code §1542 ............................................................................5

Cal. Civ. Code § 1750, *et seq.* .................................................................2

**Other Authorities**

Fed. R. Civ. P. 23(a) and (b) ...........................................................2, 19, 22

Fed. R. Civ. P. 23(e) ..................................................................... *passim*

Fed. R. Civ. P. 23(f) ......................................................................2, 10

**ISSUE TO BE DECIDED**

Whether the Court should grant final approval of the proposed Settlement.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

When Plaintiffs moved for preliminary approval of the class action Settlement,[1] they addressed each of the "*Churchill* factors" that would apply at the final approval stage, along with the requirements for final approval under Fed. R. Civ. P. 23(e). The Court considered these factors before granting preliminary approval on June 20, 2019.

The Settlement now comes before the Court again, this time for final approval. Through the Settlement, Plaintiffs have achieved their two central goals of this litigation. First, each Class Member who submitted a valid Claim Form will recover more than the full value of his or her damages on a per-product basis stemming from the challenged conduct. Second, the Settlement requires CBA to implement meaningful changes to the packaging of Kona Beers that will mitigate the likelihood of consumer confusion that they are brewed in Hawaii. After completing the robust Court-approved notice plan, which provided notice to an estimated 91.43% of the Class, the response of the Class has been overwhelmingly positive. Out of a Class comprised of several million persons, only two Class Members have submitted Objections and only two Class Members have validly opted out of the Settlement, further underscoring the fairness of the Settlement.

For these reasons, and others explained below, the Settlement not only satisfies Rule 23's "fair, reasonable, and adequate" standard, but it is an outstanding result for the Class and should be finally approved by the Court.

## II. RELEVANT PROCEDURAL BACKGROUND

Before commencing this action, Class Counsel conducted a thorough pre-suit investigation. Declaration of Timothy J. Peter ("Peter Decl.") at ¶¶ 3-4. On April 7, 2017, Plaintiffs filed a Consolidated Class Action Complaint challenging CBA's packaging and

---

[1] Unless otherwise defined, capitalized terms used herein have the same meaning as defined in the Settlement Agreement.

marketing of the Kona Beers as being brewed in Hawaii when they are brewed in the continental United States. ECF No. 15. After the Court denied in part and granted in part CBA's Motion to Dismiss (ECF No. 44), on December 15, 2017, Plaintiffs filed a First Amended Consolidated Class Action Complaint ("FAC"), which is the operative complaint in this action. ECF No. 65. The FAC asserts the following causes of action: (1) violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*, (2) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*, (3) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*, (4) common law fraud, (5) intentional misrepresentation, (6) negligent misrepresentation, and (7) unjust enrichment. *Id.* On December 29, 2017, CBA filed an Answer to the FAC. ECF No. 66.

On September 25, 2018, the Court granted Plaintiffs' Motion for Class Certification, certifying: (1) a damages Class of California purchasers of six- and twelve-packs of Kona Beers pursuant to Rule 23(b)(3), and (2) an injunctive relief Class of California purchasers of six- and twelve-packs of Kona Beers pursuant to Rule 23(b)(2). ECF No. 94 ("Class Certification Order"). The law firms of Faruqi & Faruqi, LLP and the Wand Law Firm, P.C. were appointed as Class Counsel and Plaintiffs were appointed as Class Representatives. *Id.*

On October 22, 2018, CBA filed a Rule 23(f) petition for interlocutory appeal of the Class Certification Order, which Plaintiffs timely opposed. Peter Decl. at ¶ 6. On February 1, 2019, the Ninth Circuit denied CBA's Rule 23(f) petition. ECF No. 104. On February 15, 2019, CBA filed a Petition for Rehearing *en banc* of the Ninth Circuit's denial of its Rule 23(f) petition. The Parties agreed to postpone the Petition pending the settlement approval process by filing a joint motion to stay resolution of CBA's request for reconsideration *en banc*, which the Ninth Circuit granted. *Id.*

On January 24, 2019, the Parties participated in a full day mediation session with Bruce A. Edwards, an experienced mediator at JAMS in San Francisco, California. *Id.* at ¶ 7. The Parties did not reach settlement during this mediation but continued to engage in settlement discussions. *Id.* On March 6, 2019, the Parties participated in a second mediation session with Mr. Edwards, at the conclusion of which the Parties were able to reach a settlement in principle. *Id.* at ¶¶ 7-8. In

the subsequent weeks, the Parties continued to finalize the terms of the Settlement Agreement, and executed the final form on May 23, 2019.  Peter Decl. at ¶ 9, Ex. A. ("Settlement Agreement").

On May 23, 2019, Plaintiffs filed a Motion for Preliminary Approval. ECF No. 115. After holding a hearing on the motion on June 13, 2019, the Court granted the motion on June 14, 2019. ECF No. 120 ("Preliminary Approval Order").

On September 2, 2019, Plaintiffs filed a Motion for Attorneys' Fees and Costs and Class Representative Service Awards ("Fee Motion").  ECF No. 121.

On October 7, 2019, Eric Michael Lindberg filed an Objection.  ECF No. 130.  And on October 17, 2019, the Court Clerk filed an Objection that it received from Edward W. Orr.  ECF No. 134.

## III.    THE SETTLEMENT TERMS

The material terms of the Settlement which the Court preliminarily approved are summarized below.

### A.    The Settlement Class

The Settlement Class is comprised of and Settlement Class Members are defined as:

> All Persons who purchased any four-pack, six-pack, twelve-pack or twenty-four pack of Kona Beers in the United States, its territories, or at any United States military facility, during the Class Period.[2]

Preliminary Approval Order at ¶ 6.

For the purposes of this definition, individuals living in the same household shall be deemed to be a single Class Member.  *Id.*  Excluded from the Settlement Class are: (a) CBA's employees, officers and directors, (b) distributors, retailers or re-sellers of Kona Beers, (c) governmental entities, (d) persons who timely and properly exclude themselves from the Settlement Class as provided herein, (e) the Court, the Court's immediate family, and Court staff, and (f) counsel of record for the Parties, and their respective law firms.  *Id.*

---

[2] The Class Period is from February 28, 2013 through June 14, 2019 (the date of Preliminary Approval).  Settlement Agreement at ¶ 40.

Kona Beers are defined as:all 4-pack, 6-pack, 12-pack, or 24-packs of Longboard Island Lager, Hanalei IPA, Castaway IPA, Big Wave Golden Ale, Lemongrass Luau, Wailua Wheat, Fire Rock Pale Ale, Pipeline Porter, Lavaman Red Ale, Koko Brown Ale, Kua Bay IPA, Gold Cliff IPA, Kanaha Blonde Ale, Liquid Aloha Variety Pack, Island Hopper Variety Pack, Happy Mahalo Variety Pack, Wave Rider Tandem Pack. Excluded from the definition is all Kona beer that is sold without packaging (i.e., loose bottles, loose cans, and draft beer).  Preliminary Approval Order at ¶ 6.

**B.    Monetary Benefit For The Settlement Class**

Each Settlement Class Member who submits a timely and valid Claim Form will receive a monetary payment based on the number and type of eligible purchases made during the Class Period, as follows:

| Type of Unit Purchased | Amount Per Unit |
|---|---|
| 4-pack Kona Beers | $1.25 |
| 6-pack Kona Beers | $1.25 |
| 12-pack Kona Beers | $2.00 |
| 24-pack Kona Beers | $2.75 |

Settlement Agreement at ¶ 77(a).

Based on the foregoing per unit values, Settlement Class Members residing in the same household (i.e., the same mailing address) will be eligible to recover up to a maximum of $20 per household if they submit Proof of Purchase and up to $10 per household without Proof of Purchase, provided they were 21 years or older at the time of the purchase.  *Id.* at ¶ 77(b), (c).

**C.    Injunctive Relief For The Settlement Class**

Under the Settlement, no later than March 2020, or thirty calendar days after the Effective Date, whichever is later, CBA shall make the following changes to its business practices:

To the extent permitted by law and/or regulation, CBA shall include a conspicuous statement on all consumer-facing Kona Beer packaging on a panel other than the bottom of the package that lists each location where the Kona Beers are brewed or lists the location or locations

4

at which a particular Kona Beer is brewed, for a minimum of four years after the Effective Date. Settlement Agreement at ¶ 78(a).  An exemplar mock-up of the new packaging is attached to the Settlement Agreement as Exhibit 7.  *Id.*  In addition, for a minimum of four years after the Effective Date, CBA's General Counsel or his or her designee shall conduct annual meetings with CBA's marketing department to review and comply with the injunctive terms of this Settlement. *Id.* at ¶ 78(b).

### D.    Release Of Settlement Class Members' Claims

The Parties have negotiated a class-wide release that is tailored to the allegations in this Action. Upon the Effective Date of the Settlement, Plaintiffs, as well as any Settlement Class Member who has not submit a valid and timely Request for Exclusion shall release the following claims against CBA and the other Released Parties:

> Any claim, cross-claim, liability, right, demand, suit, matter, obligation, damage, restitution, disgorgement, loss or cost, attorneys' fee, cost or expense, action or cause of action, of every kind and description that the Releasing Party had or has, including assigned claims, whether in arbitration, administrative, or judicial proceedings, whether as individual claims or as claims asserted on a class basis or on behalf of the general public, whether known or unknown, asserted or unasserted, suspected or unsuspected, latent or patent, that is, has been, could reasonably have been or in the future might reasonably be asserted by the Releasing Party in the Action against any of the Released Parties arising out of the allegations in the complaints filed in the Action ("Released Claims") Excluded from the Released Claims is any claim for alleged bodily injuries arising after the Effective Date of this Settlement Agreement.

*Id.* at ¶ 66.

This release includes a waiver of Section 1542 of the California Civil Code and any law of any state or territory of the United States, federal law or principle of common law, or of international or foreign law, that is similar, comparable or equivalent to Section 1542 of the California Civil Code.  *Id.* at ¶¶ 124-26.

## IV.    CLASS NOTICE HAS BEEN PROPERLY DISSEMINATED

### A.    Class Notice Documents

In the Ninth Circuit, notice is satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come

5

forward and be heard." *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citation omitted). Here, the Class notice documents consist of a Summary Notice and a Long Form Notice. Declaration of Ani Sarich ("Sarich Decl."), ¶¶ 8-9, Exs. A-B, respectively. These notice documents adequately apprised Class Members of the material terms of the Settlement and enabled them to make an informed decision about how to proceed under the Settlement. They are also written in simple, straightforward language in full compliance with paragraph 3 of the Northern District of California's Procedural Guidance for Class Action Settlements ("Settlement Guidelines"). The Court approved these notice documents in granting preliminary approval. Preliminary Approval Order at ¶ 9.

### B.   The Notice Plan Was Successfully Implemented

Rule 23(e)(1) requires "notice [of a class settlement] in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e); *see also* Settlement Guidelines at ¶ 3.  While Rule 23 requires that reasonable efforts be made to reach all class members, it does not require that each individual actually receive notice. *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) ("The notice must be the best practicable, reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.") (internal citations and quotations omitted). Here, the Notice Plan reached approximately 91.43% of the Class and it fully complied with the terms of the Settlement (*see* Settlement Agreement at ¶ 93), the Settlement Guidelines, the Court's Preliminary Approval Order, and the requirements of Rule 23(e) and due process.

The Notice Plan commenced on July 7, 2019 and was completed on September 16, 2019. Sarich Decl. at ¶ 5.  Combined, direct mail notice and publication notice via media, including print and Internet banner ads and social media, reached 91.43% of the target audience, *i.e.*, people who have purchased Kona Beers during the Class Period, which is consistent with CPT's prior estimates. *Id.* at ¶¶ 21, 35.  Only two Class Members filed Objections and only two persons submitted valid requests for exclusion. *Id.* at ¶ 24.  Details regarding the implemented Notice Plan are described below.

1.      <u>Settlement Website</u>: On July 3, 2019, CPT created an interactive Settlement Website (www.konabeersettlement.com) which included, *inter alia*, links to the Long Form Notice, the Summary Notice, the Claim Form, the Settlement Agreement and Exhibits, relevant filings and orders, and information relating to filing a claim, objecting to the Settlement, opting out of the Settlement, other deadlines relating to the Settlement, and instructions on how to access the case docket via PACER or in person at any of the Court's locations. Additional pertinent filings were updated as they became available; for example, Plaintiffs' Fee Motion was filed on September 2, 2019 (Labor Day) and was uploaded to the Settlement Website the following day. Sarich Decl. at ¶ 8.

2.      <u>Toll-Free Telephone Support</u>: On July 3, 2019, CPT established a toll-free telephone support system to provide Settlement Class Members with (a) general information about the Action and Settlement; (b) frequently asked questions and answers; and (c) information relating to filing a claim, objecting to the Settlement, opting out of the Settlement, and other deadlines relating to the Settlement. *Id.* at ¶ 6.

3.      <u>Direct Notice Via U.S. Mail</u>: Because CBA merely produces Kona Beers and does not sell directly to consumers, as a general matter, it did not have contact information for most potential Class Members. However, CBA did have such information for approximately 742 potential Class Members, and thus, on July 8, 2019, CPT caused the Summary Notice to be sent via First Class U.S. Mail to these individuals. *Id.* at ¶¶ 17-19.

4.      <u>Print Publication Notice</u>: On August 24, 2019 for home delivery, and August 27, 2019 for sales on U.S. news-stands, CPT published the Summary Notice in print in National Geographic Magazine for a period of one month.    Sarich Decl., ¶ 16.    National Geographic Magazine is a national magazine with an estimated circulation of 2,648,853 individuals. *Id.*  Publication in National Geographic Magazine reached 16.42% of the Target Audience, and based on the market research and class definition, National Geographic had the highest circulation and best reach for the target audience for the lowest cost. *Id.* Starting on July 7, 2019, CPT published the Summary Notice in print in the San Jose Mercury News Newspaper

one day per week for a period of four consecutive weeks in compliance with the CLRA, Cal. Civ. Code § 1781(d) and (e).  *Id.*

     5.   <u>Internet And Social Media Publication Notice</u>: On July 8, 2019 CPT issued an informational press release about the Settlement to PR Newswire.  *Id.* at ¶ 13.  The press release included the Settlement Website address so that Settlement Class Members could easily access information about the Action and Settlement.  *Id.*  The Settlement Administrator also purchased internet and social media banner notice ads which allowed access to the Settlement Website through an embedded hyperlink contained within the banner notice ad.  *Id.* at ¶ 14.  These banner ads were first posted on July 8, 2019 and continued until September 16, 2019 (a period of ten weeks from the date of first publication).  *Id.*

     6.   <u>Total Reach</u>: CPT's outreach efforts described above reflect an appropriate, highly-targeted, and contemporary way to provide notice to the Class. Through a multi-media channel approach to notice, which employed direct notice, print, digital, social and mobile media, an estimated 91.43% of targeted Class Members were reached by the Notice Plan. The efforts used in this Notice Plan are based on the highest modern communication standards, reasonably calculated to provide notice, and consistent with best practicable court-approved notice programs in similar matters, as well as the Federal Judicial Center's guidelines concerning appropriate reach.  *Id.* at ¶ 34.

     7.   <u>Settlement Administration Costs</u>

     To date, CPT's actual costs for providing notice and for settlement administration total $407,601.89.  *Id.* at ¶ 33.  Pursuant to the Settlement, and subject to the Court's approval, CBA shall pay CPT these costs.  *Id.*; Settlement Agreement at ¶ 72.

## V.   **THE SETTLEMENT MERITS FINAL APPROVAL**

     "[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned."  *In re Synocor ERISA Litig.*, 516 F.3d 1095, 1011 (9th Cir. 2008).  A proposed class action settlement may be approved if the Court, after allowing absent class members an opportunity to be heard, finds that the settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  When assessing a proposed settlement, "the court's intrusion

upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (internal quotation omitted).  Further, the Ninth Circuit has recognized, "[a]s our precedents have made clear, whether a settlement is fundamentally fair within the meaning of Rule 23(e) is different from the question whether the settlement is perfect in the estimation of the reviewing court." *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (citation omitted).

Rule 23(e) requires a court, in making a determination about the adequacy of a proposed settlement, to consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

In addition, the Ninth Circuit has often used the "*Churchill* factors" when determining whether to approve a class action settlement:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and view of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015) (quoting *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)).  Although the Court has preliminarily found these factors are satisfied, below Plaintiffs explain why the Settlement passes

both procedural and substantive muster under the Rule 23 and *Churchill* factors, and merits final approval.

**A.      Plaintiffs And Class Counsel Have Adequately Represented The Settlement Class**

Under Rule 23(e)(2)(A), the Court should consider whether "the class representatives and class counsel have adequately represented the class." In granting class certification, the Court concluded that Plaintiffs and Class Counsel are adequate. Class Certification Order at p. 12. This finding was reiterated by the Court when it preliminarily approved the Settlement. Preliminary Approval Order at ¶ 7. As Plaintiffs and Class Counsel have diligently represented the Class, and will continue to do so throughout the settlement process, this requirement is satisfied.

**B.      The Settlement Was Reached After Informed, Arm's Length Bargaining**

Under Rule 23(e)(2)(B), the Court should consider whether "the [proposed settlement] was negotiated at arm's length." As discussed below, this "procedural" factor weighs in support of preliminary approval.

***First***, Class Counsel negotiated this Settlement based on sufficient information. Class Counsel conducted extensive investigative work prior to bringing suit. Peter Decl. at ¶¶ 3-4. The Parties engaged in extensive motion practice and discovery before participating in any settlement discussions. Among other things, Plaintiffs' counsel took two Rule 30(b)(6) depositions relating to CBA's advertising and sales practices, served and responded to several rounds of written discovery, reviewed tens of thousands of pages of documents, and retained well-qualified experts in the fields of consumer surveys and economics to proffer opinions on threshold issues of deception, materiality, and damages. *Id.* at ¶ 5. Moreover, while Plaintiffs ultimately obtained class certification, it was vigorously contested by CBA, as evidenced by the numerous depositions of the parties and their expert witnesses, CBA's thorough opposition brief, and its post-certification motion for reconsideration and Rule 23(f) petition to appeal, all of which occurred before the Parties reached this Settlement. *Id.* at ¶¶ 5-6. Even after the Parties began settlement negotiations, they continued to exchange documents and information regarding their respective positions. *Id.* at ¶ 7. Thus, Plaintiffs and Class Counsel were well-apprised of the salient legal

10

and factual issues before reaching the decision to settle this matter. *Id.* at ¶ 10; *see also Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) ("A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case.") (quotation omitted).

**Second**, the close involvement of Bruce A. Edwards, Esq. of JAMS, an experienced class action mediator, throughout the settlement negotiation process underscores the procedural fairness of the Settlement. *See Adams v. Inter-Con Sec. Sys. Inc.*, No. C-06-5428 MHP, 2007 WL 3225466, at *3 (N.D. Cal. Oct. 30, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."). Here, the settlement negotiations were at arm's length and, although conducted in a professional manner, were adversarial. Declaration of Bruce Edwards, ECF No. 115-3 at ¶ 6. The Parties first participated in a full-day mediation session with Mr. Edwards on January 24, 2019, but were unable to reach a settlement. *Id.* at ¶ 4. After several rounds of conference calls with Mr. Edwards, the Parties agreed to participate in a second mediation session on March 6, 2019. After negotiating for approximately 12 hours at the second mediation session, the Parties were finally able to reach agreement regarding the principle terms of this Settlement. *Id.*

**Third**, the Parties negotiated Class Counsel's attorneys' fees and costs and the class representative service awards only *after* reaching agreement on the monetary and injunctive relief for the Class. *Id.* at ¶ 5; Peter Decl. at ¶ 8. Moreover, this Settlement is not contingent on the award of attorneys' fees and costs or the class representative service awards, Settlement Agreement at ¶¶ 109, 113, which is indicative of a fair and arm's-length settlement process. Adv. Cmte. Note R. 23 to 2018 Amendment (courts may look at "the treatment of any award of attorneys' fees, with respect to both the manner of negotiating the fee award and its terms."); *Sadowska v. Volkswagen Grp. of Am., Inc.*, No. CV 11-00665, 2013 WL 9600948, at *8 (C.D. Cal. Sept. 25, 2013) (approving settlement and finding agreement on fees and expenses reasonable where "[o]nly after agreeing upon proposed relief for the Class Members, did the parties discuss attorneys' fees, expenses, and costs").

**C.**    **The Settlement Provides Substantial Benefit To The Settlement Class**

Rule 23(e)(2)(C) "focus[es] on what might be called a 'substantive' review of the terms of the proposed settlement."  Adv. Cmte. Note R. 23 to 2018 Amendment.  In determining whether "the relief provided for the Class is adequate," the Court should consider "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)."  Fed. R. Civ. P. 23(e)(2)(C).  As discussed below, all of these substantive considerations are satisfied here.

1.    The Benefit To The Settlement Class Is Substantial, Particularly When Compared To What Class Members Could Have Recovered At Trial

Under the Settlement, each Class Member who submits a timely and valid Claim Form will receive compensation ranging from $1.25-$2.75 per product (up to an aggregate amount of $10 without Proof of Purchase and $20 with Proof of Purchase). This relief is clearly reasonable when weighed against the damages recoverable if Plaintiffs were to prevail at trial on their claims, as the foregoing monetary relief negotiated on behalf of the Settlement Class is *more than* the damages on a per-product basis that Class Members could have recovered at trial.  Peter Decl. at ¶ 14.  More specifically, based on expert analysis of the sales and financial data produced in the litigation, Plaintiffs determined that the per-product recovery afforded to Class Members under this Settlement represents more than the 12.7% price premium per-product that could have ultimately been obtained at trial.  *Id.*; Declaration of Stefan Boedeker, ECF No. 79-14 at ¶ 144. This is an excellent recovery for the Class.  *See In Re Nucoa Real Margarine Litig.*, No. CV-10-00927-MMM (AJWx), 2012 WL 12854896, at *13 (C.D. Cal. June 12, 2012) (granting final approval and noting "[e]ven though class members will receive slightly less than the full purchase price, and recover for a limited number of purchases, therefore, their recovery from the settlement might well be significantly more than they would receive if they prevailed at trial.")  In any event, "it is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial."  *Nat'l*

*Rural Telecomms. Coop.*, 221 F.R.D. at 527 (citing *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998)); *Reed v. 1–800 Contacts, Inc.*, 2014 WL 29011, at *6 (S.D. Cal. Jan. 2, 2014) (granting final approval where settlement represented 1.7% of possible recovery).

The programmatic changes that CBA is required to implement under the Settlement also provide substantial benefit to the Settlement Class. CBA has agreed to include a conspicuous statement on all consumer-facing Kona Beer packaging that lists each location where the Kona Beers are brewed or lists the location or locations at which a particular Kona Beer is brewed. This statement will mitigate any potential consumer confusion that the Kona Beers are brewed in Hawaii. Indeed, courts in other false advertising beer origin cases have recognized significant value derived from substantially similar injunctive relief. *See Marty v. Anheuser-Busch Cos., LLC*, No. 13-cv-23656, ECF No. 171 (holding that "injunctive changes such as label modifications represent a benefit to the class and should be considered when approving a class settlement," and collecting cases in accord) (decision attached as Ex. D to the Peter Decl. at ¶ 19); *Suarez v. Anheuser-Busch Cos., LLC*, No. 13-033620-CA-01 (Nov. 30, 2018) (approving settlement agreement in Japanese beer-mislabeling class action where there were labeling changes clarifying that the beer was not brewed in Japan) (decision attached as Ex. F to the Peter Decl. at ¶ 21); *Shalikar v. Asahi Beer, U.S.A., Inc.*, No. No. BC702360, Order Granting Preliminary Approval (same) (decision attached as Ex. B to the Peter Decl. at ¶ 16).

2.    The Recovery For The Settlement Class Is Reasonable In Comparison To Comparable Settlements

Settlements in similar false advertising beer cases also serve as a useful benchmark to assess the reasonableness of this Settlement. *See* Adv. Cmte. Note R. 23 to 2018 Amendment ("[T]he nature and amount of discovery in this or other cases, or the actual outcomes of other cases…may indicate whether counsel negotiating on behalf of the class had an adequate information base.") This Settlement is comparable to benefits in similar false geographic origin beer settlements. For example, in *Marty*, a class action challenging the origin of Beck's beer, the court approved a class-wide settlement which included: (1) monetary benefits ranging from $0.10 to $1.75 per unit depending on which beer size was purchased; and (2) injunctive relief in the form

1    of label changes that inform consumers where Beck's beer is brewed.  Peter Decl. at ¶ 19.

2    Notably, the plaintiffs' expert in *Marty* had calculated that the monetary benefit under the

3    settlement was approximately 33% to 50% of the recovery plaintiffs could have achieved at trial.

4    *Id.* at ¶ 20, Ex. E.  Moreover, in accordance with the Settlement Guidelines at ¶ 11, this Settlement

5    is also comparable to the settlement reached by Class Counsel in *Shalikar v. Asahi Beer USA, Inc.*,

6    No. BC702360 and *In re Scotts EZ Seed Litigation*, No. 12-cv-4727, both consumer class actions

7    settled on a claims-made basis.  Peter Decl. at ¶¶ 16-18, Exs. B and C.

8              3.    The Costs, Risks, And Delay Of Trial

9              Consistent with Fed. R. Civ. P. 23(e)(2)(C)(i), courts in the Ninth Circuit evaluate "the

10   strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further

11   litigation; [and] the risk of maintaining class action status throughout the trial[.]"  *Hanlon v.*

12   *Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).  Thus, the recovery obtained for Settlement

13   Class should also be balanced against the time, expense, and risk associated with extensive

14   litigation and trial. Generally, the principal risks to be assessed are the difficulties and

15   complexities of proving liability and damages.  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268,

16   1291–92, 94 (9th Cir. 1992) (approving settlement based on uncertainty of claims and avoidance

17   of summary judgment).

18             Here, in considering whether to enter into the Settlement, Plaintiffs and Class Counsel

19   considered the significant risks of maintaining class certification, establishing liability, proving

20   damages at trial, and the likely duration of post-trial motions and appeals.  Peter Decl. at ¶ 23; *see*

21   *also Schaffer v. Litton Loan Servicing, LP*, No. CV-05-07673 MMM (JCx) 2012 WL10274679, at

22   *11 (C.D. Cal. Nov. 13, 2012) ("Estimates of a fair settlement figure are tempered by factors such

23   as the risk of losing at trial, the expense of litigating the case, and the expected delay in recovery

24   (often measured in years)."); *Vathana v. Everbank*, No. 09-CV-02338-RS, 2016 WL 3951334, at

25   *2 (N.D. Cal. July 20, 2016) ("All in all, the risk at trial would have been great, and while the total

26   recovery for some plaintiffs may seem modest, it is far better than $0 that might have resulted.")

27             More specifically, CBA contests liability, as well as the propriety of certification, and is

28   prepared to vigorously defend against Plaintiffs' claims absent this Settlement. This is evidenced

by the extensive record in this case, including an *en banc* petition on file (but stayed pending this Settlement) in the Ninth Circuit filed by CBA. And even if the Ninth Circuit were to deny CBA's *en banc* petition, CBA would likely file a motion for summary judgment and *Daubert* motions as to Plaintiffs' experts, all before Plaintiffs could present this case for trial. If *Daubert* motions were granted, there is the possibility that the litigation classes would be de-certified. Finally, even if Plaintiffs prevailed at trial, and any appeals were resolved in Plaintiffs' favor, payment to Class Members would likely be delayed for several years.  Peter Decl. at ¶¶ 23-24; *see also Officers for Justice v. Civil Serv. Comm'n of S. F.*, 688 F.2d 615, 625 (9th Cir. 1982), *cert denied*, 495 U.S. 1217 (1983) (recognizing the possibility that a judgment after a trial, when discounted, might not reward class members for their patience and the likely delay reflected in the "track record" for large class actions).  In sum, when the risks of further litigation, the uncertainties involved in maintaining class certification, the burdens of proof necessary to establish liability, the probability of appeal of a favorable judgment, and the likely delay in any payments to the Class are balanced against the timely relief that will be afforded to the Class under the Settlement, it is clear that the Settlement amount is fair, adequate, and reasonable.  Peter Decl. at ¶ 24.

### 4.    Effectiveness Of The Proposed Distribution Method

Under Rule 23(e)(2)(C)(ii), the Court should consider "the effectiveness of [the] proposed method of distributing relief to the class." Here, Settlement Class Members who sought monetary compensation under the Settlement were only required to submit a Claim Form with basic questions about class membership, their purchases of Kona Beer, and affirmation that they were at least 21 at the time of purchase.  Settlement Agreement at ¶ 36, Ex. 1.  All payments to Settlement Class Members will be in the form of a check, electronic payment, or direct deposit, whichever option the Settlement Class Member so chooses.  *Id.* at ¶ 91; *see also* Settlement Guidelines at ¶ 3 (Class Counsel should consider "distributions to class members via direct deposit.")   This procedure is claimant-friendly, efficient, cost-effective, proportional and reasonable.

### 5.    Terms Of Attorneys' Fees

Under Rule 23(e)(2)(C)(iii), the Court should consider "the terms of any proposed award of attorney's fees, including timing of payment." As detailed in their Fee Motion, Plaintiffs'

1  request for attorneys' fees and costs is reasonable under the lodestar method with a percentage of

2  the fund crosscheck. Plaintiffs' lodestar has continued to increase since then, particularly in light

3  of the need to respond to two Objections to the Settlement.

4  6.    There Are No Supplemental Agreements

5  Rule 23(e)(2)(C)(iv) and 23(e)(3) require identification of all agreements. There are no

6  agreements between Plaintiffs and CBA other than this Settlement Agreement. Peter Decl., ¶ 25.

7  **D.    Settlement Class Members Are Treated Equitably Under The Settlement**

8  The Court should also consider whether "the [settlement] proposal treats class members

9  equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). This factor is intended to ensure

10  that a proposed settlement does not include "inequitable treatment of some Class Members vis-a-

11  vis others." Adv. Cmte. Note R. 23 to 2018 Amendment. Here, the Settlement Agreement

12  provides equal relief to all Class Members, as each Class Member will be eligible to recover the

13  same relief.[3] The injunctive relief also equally benefits each member of the Settlement Class.

14  **E.    Additional *Churchill* Factors Favor Approval**

15  In addition to the foregoing Rule 23(e) requirements discussed above, courts also consider

16  the "*Churchill*" factors at final approval. Because several of the *Churchill* factors overlap with the

17  requirements of Rule 23(e), Plaintiffs only address the following below: (1) the strength of

18  plaintiffs' case, (2) the experience and views of counsel, (3) the presence of a governmental

19  participant, and (4) reaction of the class members to the proposed settlement.

20  1.    The Strength Of Plaintiffs' Case

21  The first factor to consider is the strength of Plaintiffs' case. This evaluation entails

22  "objectively" considering "the strengths and weaknesses inherent in the litigation and the impact

23  of those considerations on the parties' decisions to reach [a settlement]." *Adoma v. Univ. of

24  Phoenix, Inc.*, 913 F. Supp. 2d 964, 975 (E.D. Cal. 2012). Plaintiffs believe they have built a

25  _____

26  [3] The Settlement does provide class representative service awards to Plaintiffs in an amount of up
   to $5,000 each. Settlement Agreement at ¶ 112. But as explained in Plaintiffs' Fee Motion, these

27  modest payments are reasonable and appropriate.

28

strong case for liability. As detailed in their class certification papers and discussed briefly above, Plaintiffs believe the evidence shows that CBA engaged in deceptive advertising regarding the brewing location of Kona Beers. Plaintiffs are also confident in their damages theory, as they certified a litigation damages class based in part on expert opinions from two highly qualified expert witnesses. Liability and damages in this case are not ironclad, however. Putting aside CBA's pending *en banc* petition, absent this Settlement, CBA likely will file a motion for summary judgment raising various affirmative defenses, as well as *Daubert* motions as to Plaintiffs' expert witnesses. Finally, almost all class actions involve a high level of risk, expense, and complexity, which is one reason that judicial policy so strongly favors resolving class actions through settlement. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998). In short, despite Plaintiffs' confidence in their case, the risks of continued litigation militates in favor of final approval of the Settlement.

### 2.    Class Counsels' Experience And Views

Class Counsel are experienced in litigating consumer class actions, and have a nuanced understanding of the legal and factual issues involved in this case. Class Counsel fully endorse the Settlement as fair, adequate, and reasonable. Peter Decl. at ¶ 24. Accordingly, this factor weighs in favor of final approval. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007) ("The recommendations of plaintiffs' counsel should be given a presumption of reasonableness.") (quotation omitted).

### 3.    The Presence Of A Governmental Participant

Under the Class Action Fairness Act ("CAFA"), a defendant participating in a proposed class action settlement is required to serve upon the appropriate state official of each State in which a class member resides and the appropriate federal official a notice of the proposed settlement. *See* 28 U.S.C. § 1715(b). CBA has complied with the notice requirements of CAFA by providing notice of the Settlement to the United States' Attorney General and the Attorneys General of all fifty states, on June 3, 2019. Declaration of Tammy B. Webb at ¶¶ 3-4. To date, no governmental participant has objected. Peter Decl. at ¶ 28. As such, this factor weighs in favor of final approval. *See Schunchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 685 (N.D. Cal.

1   2016) (where no government official lodged any objection after receiving notice of proposed class

2   action settlement, "this factor favors the Settlement Agreement.").

3   ### 4.    The Reaction Of The Class To The Settlement

4   In evaluating the fairness, adequacy, and reasonableness of settlement, courts also consider

5   the reaction of the class to the settlement.  *See Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003);

6   *see also* Settlement Guidelines – Final Approval at ¶ 1.  Here, 159,065 Class Members have

7   submitted Claim Forms.  Sarich Decl. at ¶ 24.  Using this figure, the claims rate is approximately

8   two percent.[4] This is consistent with the estimated claims rate of between 1% - 7% (78,000 to

9   546,000 Claims out of an estimated 7,800,000 Class Members) set forth in Plaintiffs' Preliminary

10  Approval Motion, ECF No. 115 at p. 4, and supports final approval of the Settlement.[5] Based on

11  the circumstances here, where the Kona Beers are relatively inexpensive products, a claims rate of

12  two percent is reasonable. For example, in *Keil v. Lopez*, 862 F.3d 685 (8th Cir. 2017), a consumer

13  class action settlement involving mislabeled pet food, the Eighth Circuit held that the settlement

14  was fair even where three percent of the class submitted claims: "a claim rate as low as 3 percent

15  is hardly unusual in consumer class actions and does not suggest unfairness."  *Id.* at 697.  This is

16  because "[e]ven if 97 percent of the class did not exercise their right to share in the fund, their

17  opportunity to do so was a benefit to them."  *Id.*  Courts in the Ninth Circuit also regularly approve

18  settlements with similar claims rates in consumer class actions.  *See*, *e.g.*, *Six (6) Mexican Workers*

19  *v. Arizona Citrus Growers*, 904 F.2d 1301, 1306 (9th Cir.1990) ("Settlements of large class action

20  suits have been approved even where less than five percent of the class files claims") (citing 2

21  Newberg on Class Actions at Appendix 8–2, §§ 8.44–45); *In re Online DVD-Rental Antitrust*

22  *Litig.*, 779 F.3d at 945 (same); *Zepeda v PayPal, Inc.*, No. cv-10-2500-SBA, 2017 WL 1113293,

23  at *16 (N.D. Cal. Mar. 24, 2017) (granting final approval where only 2.8% of the "Claims Class"

---

24  [4] CPT is still in the process of determining the validity of some of the Claim Forms.  Sarich Decl.
25  at ¶¶ 29-30.  Plaintiffs will file a supplemental declaration from CPT by on or before December
26  12, 2019 (one week before the Final Approval Hearing) providing the Court with the final number
    of valid Claims.

27  [5] While the precise Class size is unknown, CPT estimated there were 7.8 million Class Members.

28

submitted claims); *Moore v. Verizon Commc'ns Inc.*, No. C 09-1823 SBA, 2013 WL 4610764, at *8 (N.D. Cal. Aug. 28, 2013) (approving class action settlement with 3% claim rate).

Moreover, the alternative to the proposed Settlement is trial. Even if Plaintiffs prevailed at trial and CBA was ordered to pay full damages in accordance with Plaintiffs' damages model, a claims procedure would still be necessary to distribute the funds. Given the comprehensive notice plan implemented under the Settlement, and the fact that the compensation provided under the Settlement exceeds the amount recoverable on a per-product basis, there is no reason to believe that the claims rate after trial would be any higher than the claims rate here.

Finally, only two Class Members – Eric Michael Lindberg and Edward W. Orr – have filed Objections. These Objections raise a few critiques with the Settlement. For example, Mr. Lindberg argues, among other things, that there are issues with the age verification and the Settlement is collusive under *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935 (9th Cir. 2011). By no later than November 14, 2019 (35 days before the Final Approval Hearing), *see* Settlement Agreement at ¶ 99, Plaintiffs will file responses to these Objections, and therefore, the issues raised therein are not briefed here. In any event, because these Objections should be overruled for the reasons that will be articulated in Plaintiffs' forthcoming responses, and given the small number of exclusions and objections, which collectively represent far less than 0.01 percent of the Class, the response of the Class supports final approval.  *See Hanlon*, 150 F.3d at 1027 ("[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness."); *Rodriguez*, 563 F.3d at 967 (finding a favorable reaction to the settlement by the class where, out of 376,301 putative class members, only fifty-four submitted objections."); *Garner v. State Farm Mut. Auto. Ins.*, No. CV 08 1365 CW (EMC), 2010 WL 1687832, *15 (N.D. Cal. April 22, 2010) (an opt-out rate of 0.4 percent supported "the fairness of the Settlement").

## VI.    THE SETTLEMENT CLASS SATISFIES RULE 23

CBA does not oppose certification of the Settlement Class for settlement purposes. Settlement Agreement at ¶¶ 118-19.  Moreover, the Court has already found that the Settlement Class meets the requirements of Rule 23 and preliminarily certified it for settlement purposes

under Rule 23(a) and (b)(3).  Preliminary Approval Order at ¶¶ 5-7.  As the facts pertinent to the Court's Rule 23 analysis have not changed since then, Plaintiffs do not reargue them here. However, after Plaintiffs filed their Motion for Preliminary Approval, the Ninth Circuit issued its much anticipated *en banc* decision in *In re Hyundai & Kia Fuel Economy Litigation*, 926 F.3d 539, 569 (9th Cir. 2019) ("*Hyundai*"),[6] which provides support for certification of the proposed nationwide Settlement Class for two reasons.

First, *Hyundai* makes clear that district courts in the Ninth Circuit do not need to conduct a choice of law analysis in the settlement context unless a party or objector raises the issue. Specifically, the *Hyundai* court held "[n]o objector argued that differences between the consumer protection laws of all fifty states precluded certification of a settlement class. Consequently, neither the district court nor class counsel were obligated to address choice-of-law issues beyond those raised by the objectors, and we will not decertify a class action for lack of such analysis." *Hyundai*, 926 F.3d at 562.  The *Hyundai* court further reasoned that "[i]n settlement cases, such as the one at hand, the district court need not consider trial manageability issues" when considering the prospect of applying the separate laws of different jurisdictions.  *Id.* at 563.  Here, neither CBA nor the two Objectors contend that certification of the proposed nationwide settlement class is improper based on choice-of-law issues or any minor variations in state laws. Thus, under *Hyundai*, the Court need not address this issue here.  *See*, *e.g.*, *In re Lithium Ion Batteries Antitrust Litig.*, No. 4:13-md-02420-YGR (MDL), 2019 WL 3856413, at *4, (N.D. Cal. Aug. 16, 2019) ("While this Court previously performed a choice of law analysis with respect to the litigation class, it is not obligated to do for the settlement class . . . The Ninth Circuit recently rejected the need to do so in the settlement context, holding that '[t]he prospect of having to apply the separate laws of dozens of jurisdictions present[s] a significant issue for trial manageability,' but need not be considered in the settlement context.") (citing *Hyundai*, 926 F.3d at 563)); *McKnight v. Uber Techs., Inc.*, No. 14-CV-05615-JST, 2019 WL 3804676, at *5 (N.D. Cal. Aug. 13, 2019)

---

[6] Plaintiffs filed a notice of this opinion on June 10, 2019, ECF No. 117, and thus, the Court did have the benefit of considering *Hyundai* before granting preliminary approval.

1  (following *Hyundai* and holding that "[t]he *en banc* decision does not require class counsel or the

2  district court to address choice-of-law issues beyond those raised by objectors.") (quotation

3  omitted); *Edenborough v. ADT, LLC*, No. 16-cv-02233-JST, 2019 WL 4164731, at *2 (N.D. Cal.

4  Jul. 22, 2019) (same).

5        Second, to the extent the Court considers the issue, any minor variations in state laws do

6  not preclude class certification of the nationwide settlement class because common questions of

7  law and fact still predominate. Plaintiffs allege that the challenged representations on the Kona

8  Beers' packaging – to which all Settlement Class Members nationwide have been exposed – are

9  deceptive and material. These common issues would drive resolution of the case.  *See Allen v.*

10  *Similasan Corp.*, 306 F.R.D. 635, 644 (S.D. Cal. 2015) (holding that whether defendant's

11  marketing of the products would deceive a reasonable consumer "is an objective test, and as such

12  is a common question determine on a class-wide basis, and it is a question that drives the

13  resolution of this case.").  Indeed, pre-*Hyundai*, courts have certified nationwide classes on the

14  grounds that any minor variations between the states' unjust enrichment laws did not preclude

15  certification.  *See*, *e.g.*, *In re Abbott Labs. Norvir Anti-Trust Litig.*, No. C 04-1511 CW, 2007 WL

16  1689899, at *9 (N.D. Cal. June 11, 2007) (certifying nationwide class and holding that the

17  "variations among some States' unjust enrichment laws do not significantly alter the central issue

18  or the manner of proof"); *In re Checking Account Overdraft Litig.*, 307 F.R.D. 630, 647 (S.D. Fla.

19  2015) ("There is general agreement among courts that the "'minor variations in the elements of

20  unjust enrichment under the laws of the various states . . . are not material and do not create an

21  actual conflict.'").

22        More importantly, *Hyundai* itself makes clear that any "idiosyncratic differences between

23  state consumer protection laws" does not defeat predominance when "the claims revolve[] around

24  a common nucleus of facts."  *Hyundai*, 926 F.3d at 563 (quotation omitted); *see also In re Anthem,*

25  *Inc. Data Breach Litig.*, 327 F.R.D. 299, 313 (N.D. Cal. 2018) (certifying nationwide settlement

26  class and holding that "the idiosyncratic differences between state consumer protection laws are

27  not sufficiently substantive to predominate over the shared claim.").  In *Hyundai*, the "the crux of

28  each consumer's claim is" that the company "misrepresented the company's product" in its

advertising. *Id.* at 559. The facts are analogous here. This case revolves around materially identical representations made nationwide on the Kona Beers' packaging, and as such, common questions of materiality and deception – uniformly applicable to the Settlement Class – predominate over any minor variation in state consumer protection laws. Thus, "'the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately." *Hyundai*, 926 F.3d at 558-59 (citing *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)).

In sum, the Court need not address the issue of any minor variations in state laws, but to the extent it does, Plaintiffs' claims present common questions applicable to Settlement Class Members nationwide, rendering class certification appropriate.

## VII.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Final Approval of the Settlement.

DATED: October 28, 2019            **FARUQI & FARUQI, LLP**


By: */s/ Timothy J. Peter*
     Timothy J. Peter
     Benjamin Heikali
     Joshua Nassir


**THE WAND LAW FIRM, P.C.**
Aubry Wand

*Attorneys for Plaintiffs and the Settlement Class*