United States District Court
Northern District of California

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

|  |  |
|---|---|
| THEODORE BROOMFIELD, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CRAFT BREW ALLIANCE, INC.,<br><br>Defendant. | Case No.  17-cv-01027-BLF<br><br>**ORDER (1) GRANTING PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS AND CLASS REPRESENTATIVE SERVICE AWARDS AND (2) GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>[Re: ECF 121,136] |

In this putative class action, Plaintiffs Theodore Broomfield and Simone Zimmer (together, "Plaintiffs") allege that the packaging of certain Kona Brewing Co., Inc. ("Kona") brand beer (sold in six- and twelve-packs) deceived consumers into believing that Kona beer is brewed in Hawaii.  *See generally* First Am. Consol. Class Action Compl. ("FACC"), ECF 65.  Plaintiffs sued Defendant Craft Brew Alliance, Inc., the producer, marketer, and seller of Kona beer, and bring seven causes of action for violation of common law and California law.

Two motions are before the Court: (1) Plaintiffs' Motion for Attorneys' Fees and Costs and Class Representative Service Awards, *see* Fees Mot., ECF 121; and (2) Plaintiffs' Motion for Final Approval of Class Action Settlement, *see* Appr. Mot., ECF 136.  The Court heard argument on December 19, 2019.  For the reasons discussed below and those stated on the record at the hearing, the motions are GRANTED.

## I.    BACKGROUND

### A.    Facts

Defendant Craft Brew Alliance, Inc. ("CBA") is the sixth largest craft brewing company in

the United States and, in 2010, CBA acquired Kona.  FACC ¶¶ 16, 18.  Prior to being acquired by CBA, Kona began brewing beer in Hawaii in 1994.  FACC ¶ 16.  The Kona brand includes a variety of beers that reference Kona's Hawaiian origins, including the following products at issue in the FACC: Longboard Island Lager, Big Wave Golden Ale, Fire Rock Pale Ale, Wailua Wheat Ale, Hanalei Island IPA, Castaway IPA, Lemongrass Luau, and Pipeline Porter.  FACC ¶¶ 22, 26-73.

Although Kona has a Hawaii-based brewery that makes and sells draft beer in Hawaii, all of Kona's bottled and canned beer, as well as its draft beer sold outside of Hawaii, is brewed in Oregon, Washington, New Hampshire, Tennessee, and Colorado.  FACC ¶¶ 1, 3, 19-20.  The packaging for each variety of Kona branded beer is adorned with its own Hawaii-related images, including a map of Hawaii, Hawaiian words, orchid flowers, volcanoes, palm trees, surfers, canoes, waterfalls, and hula dancers to match the theme of the beer being marketed and sold.  *See* FACC ¶¶ 26-73.  Each type of beer has its own slogan printed on the handle of the six-pack, such as "Thirst's Up!" for Long Board Island Lager, "Catch a Wave!" for Big Wave Golden Ale, "Go with the Flow" for Fire Rock Pale Ale, and "Paradise Found" for Wailua Wheat Ale.  FACC ¶¶ 30, 35, 40, 45.  Each bottle has "Liquid Aloha" embossed on the front as well as an image of the Hawaiian Islands.  FACC ¶ 26.  Furthermore, each twelve-pack has an image of the Hawaiian Islands with a mark on the location of the Kona Brewing Company Brewery on the Big Island. FACC ¶ 26.  Plaintiffs also allege that CBA acknowledged through public statements and documents that CBA intended to create the impression that Kona beers are brewed in Hawaii and imported to the continental United States.  FACC ¶ 74; *see* FACC ¶¶ 75-78.

**B.    Procedural History**

This putative class action was commenced on February 28, 2017.  ECF 1.  On April 7, 2017, the Consolidated Class Action Complaint (the "Consolidated Complaint") was filed against CBA; the Consolidated Complaint consolidated two cases: *Cilloni v. Craft Brew Alliance, Inc.*, No. 5:17-cv-01027-BLF (N.D. Cal. filed Feb. 8, 2017), and *Broomfield v. Kona Brewing Co.*, No. 3:17-cv-01159-MEJ (N.D. Cal filed Mar. 6, 2017).  ECF 15.  On April 28, 2017, CBA moved to dismiss the Consolidated Complaint.  ECF 16.  On September 1, 2017, the Court granted in part

United States District Court
Northern District of California

and denied in part CBA's motion to dismiss, and Plaintiffs were given leave to amend certain claims the Court dismissed. ECF 44.

On December 15, 2017, Plaintiffs filed the First Amended Consolidated Class Action Complaint (the "FACC"). ECF 65. The FACC asserts seven causes of action for: (1) violation of California Consumer Legal Remedies Act, Cal. Civil Code §§ 1750, *et seq*.; (2) violation of California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*.; (3) violation of California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq*.; (4) common law fraud; (5) intentional misrepresentation; (6) negligent misrepresentation; (7) and unjust enrichment and common law restitution. FACC ¶¶ 110-89.

On September 25, 2018, the Court granted Plaintiffs' Motion for Class Certification and certified the action for Rule 23(b)(2) and 23(b)(3) purchasers of any six- or twelve-pack of Longboard Island Lager, Hanalei IPA, Castaway IPA, Big Wave Golden Ale, Lemongrass Luau, Wailua Wheat, Fire Rock Pale Ale, and Pipeline Porter. Class Cert. Order, at 36-37, ECF 94. In addition, the Court also appointed Theodore Broomfield and Simone Zimmer as class representatives, and appointed Faruqi & Faruqi, LLP and The Wand Firm, P.C. as Class Counsel. Class Cert. Order, at 37.

On October 22, 2018, CBA filed a Rule 23(f) petition for permission to appeal the Court's Class Certification Order. ECF 102. Plaintiffs opposed. Decl. of Timothy J. Peter ("Peter Decl.") ¶ 6, ECF 137. On January 24, 2019, the parties participated in a day-long mediation session with Bruce A. Edwards of JAMS. Peter Decl. ¶ 7. The parties did not reach settlement during this mediation, but they continued outside settlement discussions. Peter Decl. ¶ 8. On February 1, 2019, the Ninth Circuit denied CBA's Rule 23(f) petition. ECF 104. On February 15, 2019, CBA filed a petition for a hearing *en banc* of the Ninth Circuit's denial of its Rule 23(f) petition. Peter Decl. ¶ 6. The parties agreed to stay reconsideration of CBA's petition for rehearing *en banc* pending the settlement approval process. Peter Decl. ¶ 6. The parties participated in a second, twelve-hour mediation session with Mr. Edwards on March 6, 2019, and reached a settlement in principle during this session and executed the Settlement Agreement on May 23, 2019. Peter Decl. ¶ 8; *see* Peter Decl., Ex. A, Settlement Agr., ECF 137-1.

On June 14, 2019, the Court granted Plaintiffs' Motion for Preliminary Approval of Class Action Settlement.  Order Granting Prelim. Appr. ("Prelim. Appr. Order"), ECF  120.  On September 2, 2019, Plaintiffs filed a Motion for Attorney Fees and Costs and Class Representative Service Awards.  *See* Fees Mot., ECF 121.  On October 28, 2019, Plaintiffs filed their Motion for Final Approval of Class Action Settlement.  *See* Appr. Mot., ECF 136.

### C.    Settlement Agreement, Allocation Plan, and Notice Plan

In its order preliminarily approving the Settlement Agreement, the Court approved the Settlement Class, for settlement purposes only, which is defined as: "All Persons who purchased any four-pack, six-pack, twelve-pack or twenty-four-pack of Kona Beers in the United States, its territories, or at any United States military facility, during the Class Period."  Prelim. Appr. Order 3.  The Class Period is from February 28, 2013, through June 14, 2019, *see* Settlement Agr. ¶ 40, and Kona Beers is defined as:

> [A]ll 4-pack, 6-pack, 12-pack, or 24-pack of Longboard Island Lager, Hanalei IPA, Castaway IPA, Big Wave Golden Ale, Lemongrass Luau, Wailua Wheat, Fire Rock Pale Ale, Pipeline Porter, Lavaman Red Ale, Koko Brown Ale, Kua Bay IPA, Gold Cliff IPA, Kanaha Blonde Ale, Liquid Aloha Variety Pack, Island Hopper Variety Pack, Happy Mahalo Variety Pack, and Wave Rider Tandem Pack.  Excluded from this definition are all Kona Beers that are sold without packaging (i.e., loose bottles, loose cans, and draft beer).

Prelim. Appr. Order 3-4.

Under the Settlement Agreement, CBA agreed to provide monetary relief to members of the Settlement Class that submitted a timely and valid Claim Form as follows: $1.25 per unit for four-pack Kona Beers; $1.25 per unit for six-pack Kona Beers; $2.00 per unit for twelve-pack Kona Beers; and $2.75 per unit for twenty-four-pack Kona Beers.  Settlement Agr. ¶ 77(a).  Claimants who submit sufficient proof of purchase and verification that he or she was over 21 years old at the time of purchase may claim a maximum recovery of $20 per Settlement Class Member.  Settlement Agr. ¶¶ 77(b), 82.  Claimants who verify that he or she was over the age of 21 years old at time of purchase and attest to his or her purchase of Kona Beers under penalty of perjury, but do not submit sufficient proof of purchase, may claim a maximum recovery of $10 per

United States District Court
Northern District of California

Settlement Class Member.  Settlement Agr. ¶¶ 77(c), 82.  In addition, Settlement Class Members residing in the same household who each submit a Claim Form are only entitled to a collective maximum payment of $10 or $20 per household, depending on whether sufficient proof of purchase was submitted.  Settlement Agr. ¶ 77.

Additionally, under the Settlement Agreement, CBA agreed to provide certain injunctive relief.  *See* Settlement Agr. ¶ 78.  Namely, no later than March 2020 or 30 days after the Court enters an order and final judgment (if no appeal is taken) (the "Effective Date"), CBA agreed to change its business practices by including "a conspicuous statement on all consumer-facing Kona Beer packaging on a panel other than the bottom of the package that lists each location where Kona Beers are brewed or lists the location or locations at which a particular Kona Beer is brewed, for a minimum of four years after the Effective Date."  Settlement Agr. ¶ 78(a).  Moreover, for at least four years after the Effective Date, CBA's General Counsel or other designee agreed to meet annually with CBA's marketing department to ensure CBA's compliance with the Settlement Agreement.  Settlement Agr. ¶ 77(b).

The Settlement Agreement also contains a class-wide release.  Specifically, the Settlement Agreement states that Plaintiffs, each Settlement Class Member that does not submit a valid and timely request for exclusion, and any person claiming by or through such Settlement Class Member releases any claim "that is, has been, could reasonably have been, or in the future might reasonably be asserted . . . against the Released Parties arising out of the allegations in the complaint."  Settlement Agr. ¶¶ 66-68, 124.  Released Parties includes, among other things, CBA, its affiliates, and its employees.  Settlement Agr. ¶ 67.

The Court preliminarily approved, and the Settlement Administrator CPT Group, Inc. ("CPT") and the parties complied with, the following notice process: settlement website notice, toll-free telephone support, direct notice via email or mail, print publication notice, and internet publication notice.  Settlement Agr. ¶ 93; *see* Decl. of Ani S. Sarich ("Sarich Decl."), ECF 138.  Of the approximately 7,800,000 potential Settlement Class Members, Plaintiffs estimate that the notice plan reached an estimated 91.43% of the targeted Class Members.  Sarich Decl. ¶¶ 21, 34.  The deadline to submit a Claim Form or objection was October 7, 2019: two persons timely and

1  validly excluded themselves from the Settlement Class, two objections were timely filed, and

2  159,065 Class Members submitted a Claim Form.  Sarich Decl. ¶ 24.

3          After CPT removed fraudulent and duplicative claim forms, there were 143,078 valid

4  Claim Forms.  Supp. Decl. of Ani S. Sarich ("Supp. Sarich Decl.") ¶ 3, ECF 142.  Of those valid

5  forms, 142,879 Settlement Class Members submitted Claim Forms without sufficient proof of

6  purchase and 199 submitted Claim Forms with sufficient proof of purchase.  Supp. Sarich Decl.

7  ¶ 11.  After grouping valid claims by physical address (because all individuals living in the same

8  household are deemed to be a single Settlement Class Member), the total amount to be paid by

9  CBA to the Settlement Class Members is $1,332,386.25.  Supp. Sarich Decl. ¶ 12.

10          On December 19, 2019, the Court held a hearing on the motions.  There were two timely

11  objections: one by Eric Michael Lindberg (the "Lindberg Objection"), *see* Lindberg Obj.,

12  ECF 130, and the other by Edward W. Orr (the "Orr Objection"), *see* Orr Obj., ECF 134.  Both

13  objectors, or their representatives, appeared at the hearing.

## II.    MOTION FOR FINAL APPROVAL OF SETTLEMENT

15          To grant final approval of the class action settlement, the Court must determine that (1) the

16  class meets the requirements for certification under Federal Rule of Civil Procedure 23, and (2) the

17  settlement reached on behalf of the class is fair, reasonable, and adequate.

### A.    The Class Meets the Requirements for Certification under Rule 23

#### i.        Applicable law

20  A class action is maintainable only if it meets the four requirements of Rule 23(a):

> (1)    the class is so numerous that joinder of all members is
>         impracticable;

> (2)    there are questions of law or fact common to the class;

> (3)    the claims or defenses of the representative parties are
>         typical of the claims or defenses of the class; and

> (4)    the representative parties will fairly and adequately protect
>         the interests of the class.

27  Fed. R. Civ. P. 23(a).  In a settlement-only certification context, the "specifications of the Rule –

28  those designed to protect absentees by blocking unwarranted or overbroad class definitions –

United States District Court
Northern District of California

demand undiluted, even heightened, attention." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

In addition to satisfying the Rule 23(a) requirements, "parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Id.* at 614. Plaintiffs seek certification under Rule 23(b)(3), *see* Appr. Mot. 20, which requires that (1) "questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### ii.  **Discussion**

The Court concluded that these requirements were satisfied when it granted preliminary approval of the class action settlement. *See generally* Prelim. Order. The Court is not aware of any new facts which would alter that conclusion. However, the Court reviews the Rule 23 requirements again briefly, as follows.

First, as to the Rule 23(a) prerequisites, the Court has no difficulty in concluding that the proposed class is too numerous because the nationwide class consists of approximately 7,800,000 Settlement Class Members. *See* Sarich Decl. ¶¶ 21; *Littlejohn v. Ferrara Candy Co*., No. 318CV00658AJBWVG, 2019 WL 2514720, at *3 (S.D. Cal. June 17, 2019) (finding numerosity satisfied where defendants sales numbered in the "hundreds of thousands"). The commonality requirement is also met because questions of law and fact common to the Settlement Class predominate over individualized questions. For example, Plaintiffs allege that all Settlement Class Members were exposed to CBA's representations on the packaging of Kona Beers, which Plaintiffs allege are deceptive and material. Appr. Mot. 21. Numerous courts have recognized that a claim alleging that all consumers were exposed to misrepresentations on a product's packaging is sufficient to satisfy the commonality requirement because it raises a common question of whether the packaging would mislead a reasonable consumer. *See e.g.*, *In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1096-97 (C.D. Cal. 2015) ("There is no question that all class members were exposed to the product packaging; this suffices to show commonality."); *In re ConAgra Foods, Inc*., 302 F.R.D. 537, 569 (C.D. Cal. 2014) ("Because all

7

United States District Court
Northern District of California

1  class members were exposed to the statement and purchased Wesson Oil products, there is a

2  common core of salient facts.").

3      Plaintiffs' claims are also typical of the claims of the Settlement Class because all claims

4  arise from the same alleged misrepresentations on the packing of Kona Beers.  *See Hanlon v.*

5  *Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) (concluding that typicality requires only that

6  claims of class representatives be "reasonably co-extensive with those of absent class members").

7  Finally, to determine Plaintiffs' adequacy, the Court "must resolve two questions: (1) do the

8  named plaintiffs and their counsel have any conflicts of interest with other class members and (2)

9  will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"

10 *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (internal quotation marks and

11 citation omitted).  The Court has no reservations regarding the abilities of Class Counsel or their

12 zeal in representing the class, and the record discloses no conflict of interest that would preclude

13 Plaintiffs from acting as class representatives.  Peter Decl. ¶¶ 3-6, 8; *see* Appr. Mot. 10-11.

14     Second, with respect to Rule 23(b)(3), the "predominance inquiry tests whether proposed

15 classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem*, 521 U.S. at

16 623.  Here, all Settlement Class Members were exposed to the alleged misrepresentations on the

17 packaging of Kona Beers and issues of reliance, materiality, and state of mind are common to the

18 Settlement Class.  *See Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1095 (N.D. Cal. 2018)

19 ("[C]laims under the UCL, FAL, and CLRA [are] ideal for class certification because they will not

20 require the court to investigate class members' individual interaction with the product.");

21 *Brickman v. Fitbit, Inc.*, No. 3:15-CV-02077-JD, 2017 WL 5569827, at *6 (N.D. Cal. Nov. 20,

22 2017) (finding "common law claims [for fraud, negligent misrepresentation, and quasi-

23 contract/unjust enrichment] are also good candidates for class treatment in that they focus in

24 significant part on the falsity of the defendant's statements, and the defendant's knowledge of

25 falsity or assertion of a falsehood without reasonable grounds"); *see also* Class Cert. Order 15-22.

26 Moreover, given this commonality, and the number of potential class members, the Court

27 concludes that a class action is a superior mechanism for adjudicating the claims at issue.

28

### iii.    Conclusion

Accordingly, the Court concludes that the requirements of Rule 23 are met and that certification of the Settlement Class for settlement purposes is appropriate.

## B.    The Settlement is Fundamentally Fair, Adequate, and Reasonable

Federal Rule of Civil Procedure 23(e) "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Hanlon*, 150 F.3d at 1026. In the Ninth Circuit, courts use a multi-factor balancing test to analyze whether a given settlement is fair, adequate, and reasonable. That test includes the following factors, known as the *Churchill* factors:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and view of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015) (quoting *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)); *see also Hanlon*, 150 F.3d at 1026-27 (listing same factors).

Recent amendments to Rule 23 require the district court to consider a similar list of factors before approving a settlement, including whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3);

United States District Court
Northern District of California

9

1       (D) the proposal treats class members equitably relative to each other.

2 Fed. R. Civ. P. 23(e)(2).

3       In the Advisory Committee notes to the amendment, the Advisory Committee states that

4 "[c]ourts have generated lists of factors to shed light" on whether a proposed class-action

5 settlement is "fair, reasonable, and adequate." Advisory Committee Notes to 2018 Amendments,

6 Fed. R. Civ. P. 23(e)(2) ("2018 Advisory Notes"). The notes of the Advisory Committee explain

7 that the enumerated, specific factors added to Rule 23(e)(2) are not intended to "displace" any

8 factors currently used by the courts, but instead aim to focus the court and attorneys on "the core

9 concerns of procedure and substance that should guide the decision whether to approve the

10 proposal." *Id.*; *cf. United States v. Vonn,* 535 U.S. 55, 64 n.6 (2002) ("[T]he Advisory Committee

11 Notes provide a reliable source of insight into the meaning of a rule . . . ."). Accordingly, the

12 Court applies the framework set forth in Rule 23 with guidance from the Ninth Circuit's

13 precedent, bearing in mind the Advisory Committee's instruction not to let "[t]he sheer number of

14 factors" distract the Court and parties from the "central concerns" underlying Rule 23(e)(2).

15       "[A]n even higher level of scrutiny for evidence of collusion or other conflicts of interest

16 than is ordinarily required under Rule 23(e)" if approval is sought "[p]rior to formal class

17 certification." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F. 3d 935, 946-47 (9th Cir. 2011).

18 The Court determines that *Bluetooth* does not apply to this case because the Court previously

19 certified a class. *See generally* Class Cert. Order. Thus, the Court need not subject the Settlement

20 Agreement to a higher level of scrutiny as required by *In re Bluetooth. See Allen v. Bedolla*, 787

21 F.3d 1218, 1224 (9th Cir. 2015) ("That procedural burden is more strict when a settlement is

22 negotiated absent class certification.").

23           **i.**        **Adequacy of Notice**

24       "Adequate notice is critical to court approval of a class settlement under Rule 23(e).

25 *Hanlon,* 150 F.3d at 1025. For the Court to approve a settlement, "[t]he class must be notified of a

26 proposed settlement in a manner that does not systematically leave any group without notice."

27 *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco,* 688 F.2d 615, 624

28 (9th Cir. 1982) (citation omitted).

United States District Court
Northern District of California

The Court previously approved the parties' proposed notice procedures, *see* Prelim. Appr. Order ¶¶ 9-12, and in its motion for final approval, Plaintiffs state that the notice plan was successfully implemented, *see* Appr. Mot. 6-7.  Through direct notice, and digital, social, and mobile media, Plaintiffs represent that their notice plan resulted in approximately 91.43% of Settlement Class Members receiving notice, and courts have found that such a rate complies with Rule 23.  *See Free Range Content, Inc. v. Google, LLC*, No. 14-CV-02329-BLF, 2019 WL 1299504, at *6 (N.D. Cal. Mar. 21, 2019) ("Notice plans estimated to reach a minimum of 70 percent are constitutional and comply with Rule 23." (brackets and internal quotation marks omitted)); *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 586 (N.D. Cal. 2015) (finding notice plan consistent with Rule 23 where at least 96% of class received notice).  Indeed, this notice plan was effective enough to reach two individuals incarcerated in Texas state prison.  *See* ECF 126, 127, 135.

Class Counsel has also represented that this notice plan resulted in 143,078 valid Claim Forms being filed, Supp. Sarich Decl. ¶ 3, which is a claims rate of about two percent, *see* Appr. Mot. 18.  While such a claims rate may seem low, "[s]ettlements of large class action suits have been approved even where less than five percent of the class files claims."  *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1306 (9th Cir. 1990); *see Moore v. Verizon Commc'ns Inc.*, No. C 09-1823 SBA, 2013 WL 4610764, at *8 (N.D. Cal. Aug. 28, 2013) (approving consumer class action settlement with 3% claims rate).

In light of these actions and the Court's prior order granting preliminary approval, the Court finds that the parties have provided sufficient notice to the Settlement Class Members.

### ii.   Rule 23(e)/*Churchill* Factors

#### a.   *Adequate representation, arm's length negotiation, extent of completed discovery, and stage of proceedings*

Turning to the Rule 23(e) factors, the Court first considers whether "the class representatives and class counsel have adequately represented the class" and whether "the proposal was negotiated at arm's length."  Fed. R. Civ. P. 23(e)(2)(A)-(B).  These considerations overlap with certain *Churchill* factors, such as the non-collusive nature of negotiations, the extent

United States District Court
Northern District of California

United States District Court
Northern District of California

1    of discovery completed, and the stage of proceedings.  *See Churchill*, 361 F.3d at 575.

2            As discussed above when certifying the class, the Court finds that Plaintiffs and Class

3    Counsel have adequately represented the class.  In its Preliminary Approval Order, the Court

4    found no evidence of a conflict between class representatives or Class Counsel and the rest of the

5    Settlement Class.  Prelim. Appr. Order ¶ 7.  No evidence to the contrary has emerged.  Similarly,

6    the Court found that Class Counsel has vigorously prosecuted this action through extensive motion

7    practice – including a motion to dismiss, a motion for class certification, a petition for permission

8    to appeal the Class Certification Order, and an *en banc* petition for rehearing before the Ninth

9    Circuit that is currently stayed.  Appr. Mot. 2, 15.  After their initial, day-long mediation session,

10   the parties also exchanged documents and information regarding their respective positions. *See*

11   Peter Decl. ¶ 7.  Furthermore, in its Motion for Final Approval, Class Counsel included

12   information regarding settlement outcomes of analogous cases, *see* Appr. Mot 13-24; Peter Decl.

13   ¶¶ 16-21, further indicating that Class Counsel had adequate information from which to negotiate

14   the settlement, *see* 2018 Advisory Notes.  Lastly, the Court finds that Class Counsel has continued

15   to represent the class diligently by complying with the notice plan and settlement procedures.

16           Plaintiffs likewise have actively participated in the prosecution of this case.  For example,

17   Plaintiffs provided information for the complaints and other pleadings, communicated regularly

18   with counsel, reviewed and responded to written discovery, produced documents, prepared and sat

19   for depositions, and reviewed and approved the proposed settlement.  *See* Fees Mot. 16-17; Fees

20   Mot., Decl. of Theodore Broomfield ("Broomfield Decl.") ¶¶ 5-6, ECF 121-7; Fees Mot., Decl. of

21   Simone Zimmer ("Zimmer Decl.") ¶¶ 5-6, ECF 121-8.  The Court, therefore, finds the adequacy

22   of representation weighs in favor of approval.

23           Additionally, settlement in this case took place after the initiation of discovery and was the

24   product of arm's-length negotiations between experienced counsel with the aid of a respected

25   mediator.  Appr. Mot. 10-11.  "[T]he Court notes that a presumption of correctness is said to

26   attach to a class settlement reached in arm's-length negotiations between experienced capable

27   counsel after meaningful discovery." *Free Range Content, Inc*., 2019 WL 1299504, at *6

28   (brackets and internal quotation marks omitted).

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

    *b. Strength of Plaintiffs' case, and costs, risks, and delay of trial and appeal*

   In assessing "the costs, risks, and delay of trial and appeal," Fed R. Civ. P. 23(e)(2)(C)(i), courts in the Ninth Circuit evaluate "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; [and] the risk of maintaining class action status throughout the trial." *Hanlon*, 150 F.3d at 1026. "Approval of a class settlement is appropriate when plaintiffs must overcome significant barriers to make their case." *Hendricks v. Starkist Co*, No. 13-CV-00729-HSG, 2016 WL 5462423, at *4 (N.D. Cal. Sept. 29, 2016). "Additionally, difficulties and risks in litigating weigh in favor of approving a class settlement," and "[g]enerally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Id.*

   Here, Plaintiffs faced significant obstacles in this case, including needing to survive a motion to dismiss and a Rule 23(f) petition for permission to appeal the Court's Class Certification Order. Plaintiffs would have faced similar risks at trial. As Plaintiffs explain in their motion, these obstacles include maintaining class certification, prevailing on summary judgment, surviving *Daubert* motions, establishing liability, proving damages, and prevailing at trial and on appeal. Appr. Mot. 14; *see Hendricks*, 2016 WL 5462423, at *4-5 (finding factor weighs in favor of approval where "[p]laintiff would be required to successfully move for class certification, survive summary judgment, and receive a favorable verdict capable of withstanding a potential appeal."). Furthermore, throughout the course of this litigation, CBA has vigorously defended against Plaintiffs claims, and the Court has narrowed the claims through the motion to dismiss phase. Appr. Mot. 2, 14-15; ECF 44.

   Accordingly, the Court finds that this factor weighs in favor of approval.

    *c. Effectiveness of any proposed distribution method, terms of attorneys' fees, and supplemental agreements*

   Next, the Court must consider "the effectiveness of any proposed method of distributing relief to the class," "the terms of any proposed award of attorney's fees," and "any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv). As discussed

1    in more detail below, the Court finds that the proposed award of attorneys' fees is reasonable.  In

2    addition, there are no supplemental agreements, Appr. Mot. 16, and, as the Court preliminarily

3    approved, the proposed distribution method is effective because it is "fair, reasonable and

4    adequate," *Hefler v. Wells Fargo & Co*., No. 16-CV-05479-JST, 2018 WL 6619983, at *12 (N.D.

5    Cal. Dec. 18, 2018) (finding "[a]pproval of plan of allocation of settlement proceeds in class

6    action [to be] governed by the same standards of review applicable to approval of the settlement as

7    a whole."); *see* Prelim. Appr. Order ¶ 9.

8       Here, under the proposed distribution method, Settlement Class Members could receive

9    monetary compensation by only submitting a Claim Form with answers to basic questions about

10    class membership, and their purchase of Kona Beer, and verification that they were at least 21

11    years old at the time of purchase.  Appr. Mot. 15; Settlement Agr. ¶ 77.  Proof of purchase is not

12    required for Settlement Class Members to recover.  Settlement Agr. ¶ 77.  Additionally,

13    Settlement Class Members can decide whether to receive payment in the form of a check,

14    electronic payment, or direct deposit.  Appr. Mot. 15.  "The Court finds that 'it is reasonable to

15    allocate the settlement funds to class members based on the extent of their injuries or the strength

16    of their claims on the merits.'"  *In re Illumina, Inc. Sec. Litig.,* No. 3:16-CV-3044-L-MSB, 2019

17    WL 6894075, at *8 (S.D. Cal. Dec. 18, 2019) (brackets omitted) (quoting *In re Omnivision Techs.,*

18    *Inc*., 559 F.Supp.2d 1036, 1045 (N.D. Cal. 2008)).

19       This factor, therefore, weighs in favor of approval.

20          *d.  Equitable treatment of class members relative to each other*

21       Rule 23 also requires consideration of whether "the proposal treats class members

22    equitably relative to each other."  Fed. R. Civ. P. 23(e)(2)(D).  Consistent with this instruction, the

23    Court considers whether the proposal "improperly grant[s] preferential treatment to class

24    representatives or segments of the class."  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078,

25    1079 (N.D. Cal. 2007) (citation omitted).

26       Under the Settlement Agreement, all Class Members who submit timely and valid claims

27    will receive payments based on their alleged claims and whether they submit sufficient proof of

28    purchase and age verification.  Settlement Agr. ¶ 77.  The Court finds that the method of

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

1    distribution is equitable and class representatives do not receive preferential treatment.  Although

2    the class representatives seek service awards, the service awards (as discussed below) are

3    reasonable and do not constitute inequitable treatment of class members.  *See Rodriguez v. W.*

4    *Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009).

5           This factor weighs in favor of approval.

6               e.  *Settlement amount*

7           "The relief that the settlement is expected to provide to class members is a central

8    concern," though it is not enumerated among the factors of Rule 23(e).  2018 Advisory Notes.

9    Thus, the Court considers "the amount offered in the settlement."  *Hanlon,* 150 F.3d at 1026.

10   "Crucial to the determination of adequacy is the ratio of 'plaintiffs' expected recovery balanced

11   against the value of the settlement offer.'"  *In re Extreme Networks, Inc. Sec. Litig*., No. 15-CV-

12   04883-BLF, 2019 WL 3290770, at *9 (N.D. Cal. July 22, 2019) (quoting *In re Tableware,* 484 F.

13   Supp. 2d at 1080).  However, "[i]t is well-settled law that a cash settlement amounting to only a

14   fraction of the potential recovery does not per se render the settlement inadequate or unfair."

15   *Officers for Justice*, 688 F.2d at 628.

16          Here, Class Members can receive between $1.25 to $2.75 per unit purchased, for a

17   maximum of $10 without proof of purchase or $20 with proof of purchase.  Settlement Agr. ¶ 77.

18   This per-unit monetary relief represents a 12.7% price premium per-product that Plaintiffs argue

19   could have been obtained at trial.  Appr. Mot. 12.  "And while monetary relief was available to

20   only those class members who submitted [valid] claims, the use of a claims process is not

21   inherently suspect."  *Poertner v. Gillette Co*., 618 F. App'x 624, 628 (11th Cir. 2015); *see* 4

22   William B. Rubenstein, *Newberg on Class Actions* § 12:18 (5th ed. 2011) (noting that "a claiming

23   process is inevitable" in certain settlements such as those involving "defective consumer products

24   sold over the counter").  Moreover, Class Members are able to participate in the settlement

25   without proof that they purchased any Kona Beers.  *See also Johnson v. Gen. Mills, Inc.,* No.

26   SACV 10-00061-CJC, 2013 WL 3213832, at *3 (C.D. Cal. June 17, 2013) (finding settlement that

27   allowed recovery without proof of purchase to be "a good result for the class").  Other courts have

28   found similar recoveries to be fair and reasonable.  *See, e.g.*, *Marty v. Anheuser-Busch Cos.*, No.

13-CV-23656-JJO, 2015 WL 10858371, at *2 (S.D. Fla. Oct. 22, 2015) (approving settlement providing for $.50 to $1.75 per unit for multi-bottle packs of beer, capped at $50 per Settlement Class Household with proof of purchase or $12 without proof of purchase). Furthermore, the Settlement Agreement also provides for injunctive relief. Settlement Agr. ¶¶ 78-79. Specifically, CBA has agreed to change the packaging on Kona Beers for at least four years to list where Kona Beers are brewed or list where a particular Kona Beer is brewed. Settlement Agr. ¶ 78. In addition, CBA's general counsel, or a designee, will meet with CBA's marketing department each year to review and comply with the terms of the Settlement. Settlement Agr. ¶ 78.

Accordingly, this factor weighs in favor of approval.

### f. Counsel's experience

The Court also considers "the experience and views of counsel." *Hanlon,* 150 F. 3d at 1026. Class Counsel has extensive experience representing plaintiffs and classes in complex litigation and consumer class actions. Appr. Mot. at 17; *see* Peter Decl. ¶¶ 22-24. That Class Counsel advocate in favor of settlement weighs in favor of approval. *See Free Range Content, Inc.*, 2019 WL 1299504, at *7 ("Class counsel's views that the settlement is a good one is entitled to significant weight.").

## C.    Objections

"[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (citation omitted). After receiving notice of the proposed settlement, the Settlement Class in this suit has been nearly silent. Of the more than 7 million potential Settlement Class Members who are estimated to have received notice, only two filed objections. The lack of objections here favors approval of the Settlement. *See, e.g., Churchill Village*, 361 F.3d at 577 (affirming settlement approval with 45 objections out of 90,000 notices); *Rodriguez v. W. Pub'g Corp.*, 563 F.3d 948 (9th Cir. 2009) (affirming settlement approval with 54 objections out of 376,000 notices); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1043 (approving settlement with 3 objections out of 57,630 notices).

**D.    Conclusion**

For the foregoing reasons, and after considering the record as a whole, the Court finds that the notice of the proposed settlement was adequate, and the settlement is fair, adequate, and reasonable.  Accordingly, Plaintiffs' Motion for Final Approval of Settlement is GRANTED.

**III.    MOTION FOR ATTORNEYS' FEES AND COSTS AND CLASS REPRESENTATIVE SERVICE AWARDS**

Plaintiffs seek an award of attorney's fees in the amount of $2,570,026.41 pursuant to the California Consumers Legal Remedies Act ("CLRA") and Cal Civ. Code § 1021.5, reimbursement of litigation expenses in the amount of $329,973.59, and a service award of $5,000 for each of the two class representatives.  Fees Mot. 3-17.  The Court also considers the reasonableness of the Settlement Administrator's requested costs.

**A.    Attorneys' Fees**

**i.    Legal Standard**

"While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount."  *In re Bluetooth*, 654 F.3d at 941 (internal citations omitted).  Courts utilize two methods for evaluating attorney fees: (1) the lodestar method; and (2) the percentage of recovery method.  *See Hanlon*, 150 F.3d at 1029.

Under the lodestar method, attorneys' fees are "calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer."  *In re Bluetooth*, 654 F.3d at 941.  The lodestar figure is "presumptively reasonable" and may be increased or decreased by a multiplier that reflects factors such as "the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment."  *Id.* at 942 (internal quotation marks omitted).  The foremost consideration is the benefit obtained for the class.  *Id.*  "Thus, where the plaintiff has achieved 'only limited success,' counting all hours expended on the litigation – even those reasonably spent – may produce an 'excessive amount,' and the Supreme Court has instructed district courts to instead 'award only

17

that amount of fees that is reasonable in relation to the results obtained.'" *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434-36 (1983)).

Under the percentage-of-recovery method, attorneys are awarded fees in the amount of a percentage of the common fund recovered for the class. *Id.* Courts applying this method "typically calculate 25% of the fund as the benchmark for a reasonable fee award, providing adequate explanation in the record of any special circumstances justifying a departure," *id.* (internal quotation marks omitted), and "20-30% [i]s the usual range," *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).

### ii. Discussion

"[W]here the authorization for fees is statutory, a lodestar and multiplier analysis with a percentage-of-the-fund cross-check is appropriate." *Edwards v. Nat'l Milk Producers Fed'n*, No. 11-CV-04766-JSW, 2017 WL 3616638, at *7 (N.D. Cal. June 26, 2017); *see In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 949 ("One way that a court may demonstrate that its use of a particular method or the amount awarded is reasonable is by conducting a cross-check using the other method."). The lodestar method is therefore appropriate here because the Settlement does not establish a common fund and consumer statutes at issue provide a basis in the law for an award of attorneys' fees. *See In re Bluetooth*, 654 F.3d at 941 ("The 'lodestar method' is appropriate in class actions . . . , where the relief sought – and obtained – is often primarily injunctive in nature and thus not easily monetized.").

Here, Plaintiffs seek $2,570,026.41 in attorneys' fees for 3,298.45 hours of work and a 1.42 multiplier. Fees Mot. 1, 8-11. The Court addresses the reasonableness of Plaintiffs' request below.

#### a. Hourly rate

When determining an attorney's reasonable hourly rate, courts weigh the "experience, skill, and reputation of the attorney requesting fees," and compare the requested rates to prevailing market rates of the relevant community. *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210-11 (9th Cir. 1986), *op. am. on denial of reh'g*, 808 F.2d 1373 (9th Cir. 1987); *see also Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). The relevant community is typically the forum in which

United States District Court
Northern District of California

1    the district court sits.  *Camacho v. Bridgeport Fin., Inc*., 523 F.3d 973, 979 (9th Cir. 2008).  Here,

2    the relevant community is the Northern District of California.  To determine the prevailing market

3    rate, courts may rely on attorney affidavits as well as "decisions by other courts awarding similar

4    rates for work in the same geographical area by attorneys with comparable levels of experience."

5    *Trujillo v. Orozco, No.* 5:17-cv-00566-EJD, 2018 WL 1142311, at *2 (N.D. Cal. Mar. 2, 2018);

6    *see also United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

7        Class Counsel submitted a detailed itemization of attorneys' fees and costs.  *See* Decl. of

8    Timothy J. Peter for Fees Mot. ("Peter Fees Decl.") ¶¶ 17-22, ECF 121-1; Decl. of Aubry Wand

9    for Fees Mot. ("Wand Fees Decl.") ¶¶ 14-23, ECF 121-6.  Class Counsel's hourly rates for

10   attorneys at Farqui & Faruqi LLP ("Farqui & Farqui") range from $375 to $400 per hour for

11   paralegals, $400 to $450 per hour for associates, and $475 to $825 per hour for partners, Peter

12   Fees Decl. ¶ 22; and Class Counsel's hourly rate for the sole practitioner at The Wand Firm, P.C.

13   is $600 per hour, Wand Fees Decl. ¶ 18.  Class Counsel's rates for the attorneys are reasonable

14   and comparable to the fees generally charged by attorneys with similar experience, ability, and

15   reputation for work on similar matters in this judicial district.  *See, e.g., Superior Consulting*

16   *Servs., Inc. v. Steeves-Kiss*, No. 17-cv-06059-EMC, 2018 WL 2183295, at *5 (N.D. Cal. May 11,

17   2018) ("[D]istrict courts in Northern California have found that rates of $475 to $975 per hour for

18   partners and $300 to $490 per hour for associates are reasonable."); *Gutierrez v. Wells Fargo*

19   *Bank, N.A.*, No. C 07-05923 WHA, 2015 WL 2438274, at *5 (N.D. Cal. May 21, 2015) (finding

20   reasonable rates for Bay Area attorneys of $475 to $975 for partners and $300 to $490 for

21   associates); *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010) (finding no

22   abuse of discretion in awarding fees at 2008 hourly rates of $875 for a partner and $425 for a fifth-

23   year associate).

24        The Court finds, however, that Plaintiffs have not demonstrated that the hourly rates for

25   paralegals are reasonable.  In the Northern District of California, the hourly rate for paralegals

26   ranges from $80 to $490 per hour.  *See Hefler*, 2018 WL 6619983, at *14 (finding hourly rate

27   ranging from $245 to $350 reasonable for paralegals, given blended hourly rate of $406); *In re*

28   *Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig*., No. 2672 CRB (JSC),

2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (finding hourly rate of $80 to $490 for paralegals reasonable, given blended hourly rate of $529).  Courts that award rates toward the higher end of this range do so based on the experience of the paralegals.  *See, e.g.*, *Wilson v. Red Robin Int'l, Inc.*, No. 17-CV-00685-BLF, 2018 WL 5982868, at *3 (N.D. Cal. Nov. 14, 2018) (finding hourly rates of $120 to $175 reasonable where paralegals had 5 to 13 years of paralegal experience); *700 Valencia St. LLC v. Farina Focaccia & Cucina Italiana, LLC*, No. 15-CV-04931-JCS, 2018 WL 783930, at *4 (N.D. Cal. Feb. 8, 2018) (finding hourly rate of $335 to $350 per hour for paralegals with over 20 years of legal assistance reasonable, and $335 reasonable for paralegal with 10 years of experience); *Rodriguez v. Barrita*, 53 F. Supp. 3d 1268, 1279 (N.D. Cal. 2014) (awarding $175 for paralegal with "over a decade" of experience, and fees of $135 for a paralegal "with far less experience"); *Blackwell v. Foley*, 724 F. Supp. 2d 1068, 1085 (N.D. Cal. 2010) (awarding $165 for paralegal with five years' experience).  Plaintiffs have not offered an explanation for the paralegals' requested rate.  The Court, therefore, reduces the hourly rate for paralegals to $250.  *See In re Lenovo Adware Litig.*, No. 15-MD-02624-HSG, 2019 WL 1791420, at *9 (N.D. Cal. Apr. 24, 2019) (finding rate of $150 and $225 per hour for paralegals reasonable given complexity of multi-district litigation); *Nitsch v. DreamWorks Animation SKG Inc.*, No. 14-CV-04062-LHK, 2017 WL 2423161, at *9 (N.D. Cal. June 5, 2017) (finding rate of $290 per hour for paralegal reasonable).

Plaintiffs seek compensation for 276.5 hours of paralegal hours committed to this case.  At the requested rates of $375 and $400 per hour, Plaintiffs seek $103,800 in attorneys' fees for the work of paralegals.  *See* Peter Fees Decl. ¶ 22.  At the reduced rate of $250 per hour, the lodestar is $69,125 in attorneys' fees for the work of paralegals.  Accordingly, the Court will reduce the lodestar by $34,675 – the difference between the fees requested based on the requested rates and reduced rate.

### b. Reasonableness of hours

The Court next considers the reasonableness of the hours expended.  A court cannot "uncritically" accept a plaintiff's representations; rather, it must assess the reasonableness of the hours requested.  *Sealy, Inc. v. Easy Living, Inc.*, 743 F.2d 1378, 1385 (9th Cir. 1984).  In making

1    this determination, a court can reduce hours when documentation is inadequate, or when the

2    requested hours are redundant, excessive, or unnecessary.  *Hensley*, 461 U.S. at 433-34.  The

3    moving party bears the burden of providing relevant documentation.  *Id.* at 433.  Upon examining

4    the documentation, a court should then exclude from the initial lodestar calculation any hours that

5    are not reasonably expended.  *Id.* at 434.

6        A court may adjust the lodestar amount upon consideration of twelve factors set forth in

7    *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir. 1975), *abrogated on other grounds*

8    *by City of Burlington v. Dague*, 505 U.S. 557 (1992).  These factors include the following:

> (1) the time and labor required, (2) the novelty and difficulty of the question
> involved, (3) the skill requisite to perform the legal service properly, (4) the
> preclusion of other employment by the attorney due to acceptance of the case, (5)
> the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations
> imposed by the client or the circumstances, (8) the amount involved and the results
> obtained, (9) the experience, reputation, and ability of the attorneys, (10) the
> "undesirability" of the case, (11) the nature and length of the professional
> relationship with the client, and (12) awards in similar cases.

*Delta City Drywall*, 2011 WL 13243837, at *5 (citing *Kerr*, 526 F.2d at 69).  When determining

whether to adjust fees, "[t]he district court should discuss only those *Kerr* factors that are relevant

to the court's decision."  *Id.* (quoting *D'Emanuele v. Montgomery Ward & Co.*, 904 F.2d 1379,

1386 (9th Cir. 1990)) (internal quotation marks omitted).

18        Here, Class Counsel has submitted an itemized list of the attorney and paralegal hours

19   spent on investigating, prosecuting, and settling the Class's claims, *see* Wand Fees Decl. ¶ 18;

20   Peter Fees Decl. ¶ 22; Peter Fees Decl., Ex. D ("Faruqi Fee Chart"), ECF 121-5, and Class

21   Counsel, after a request from the Court, supplemented this information for attorneys Benjamin

22   Heikali, Timothy Peter, and Aubry Wand, *see* Supp. Decl. of Aubry Wand ("Supp. Wand Decl."),

23   ECF 148; Supp. Decl. of Timothy J. Peter ("Supp. Peter Decl."), ECF 149; Supp. Decl. of

24   Benjamin Heikali ("Supp. Heikali Decl."), ECF 150.  Class Counsel seeks compensation for

25   3,558.55 hours of attorney and paralegal time committed to this case.  Wand Fees Decl. ¶ 14; Peter

26   Fees Decl. ¶ 19; Supp Wand Decl. ¶ 11; Supp. Peter Decl. at 12-13; Supp. Heikali Decl. at 11-12.

27   The Court has independently reviewed these hours and finds them generally to be reasonable with

28   the following noted exceptions.

United States District Court
Northern District of California

The billing records submitted by Plaintiffs show that three partner-level attorneys (Heikali, Peter, and Wand) performed most of the work on this case. The Court recognizes that Wand is a solo practitioner, but also that Faruqi & Faruqi has associates and paralegals. The Court makes the following reductions based on the reasonable time requested for tasks and based on the duplication of efforts among Heikali, Peter, and Wand.

Plaintiffs request fees for Heikali, Peter, and Wand based on the hours they spent on the following categories of work:

| Category of Work | Timothy Peter | Benjamin Heikali | Aubry Wand |
|---|---|---|---|
| (1) Per-complaint investigations and complaints | 49.4 | 59.5 | 79.5 |
| (2) Case management documents and work | 18 | 37.3 | 37.5 |
| (3) Written discovery, document production and review, depositions, and expert work | 144.6 | 110.7 | 446.6[1] |
| (4) Opposition to motion to dismiss and reconsideration of motion to dismiss order | 77.6 | 59.8 | 67.2 |
| (5) Motion for class certification | 30.5 | 78.5 | 177.9 |
| (6) Opposition to Rule 23(f) petition | 23.9 | 52.6 | 42.1 |
| (7) Motion for preliminary approval of settlement | 29.1 | 52.3 | 41.1 |
| (8) Motion for attorney's fees and costs and service awards | 10.6 | 14.3 | 23.3 |
| (9) Motion for final approval of settlement | 0 | 4.2 | 21.2 |
| (10) Settlement efforts | 68.5 | 106 | 81.8 |
| (11) Communication with opposing counsel and third parties | 6.5 | 16.4 | 40.5 |
| (12) Client communication | 1.2 | 8.5 | 38.2 |
| (13) Travel time | 24 | 30 | 28 |

---

[1] In his summary chart, Wand states that he expended 451.6 hours on the third category; however, in his detailed chart Wand states that he only expended 446.6 hours on the third category. Supp. Wand Decl. ¶¶ 6, 8(c). The Court uses the total from the detailed chart as the hours Wand states he spent on each sub-category add up to 446.6 hours.

| (14) Miscellaneous | 2.7 | 3.5 | 67.9 |
|---|---|---|---|
| (15) Post-September 2, 2019 work | 75.5 | 89.5 | 95.1 |
| **Total Hours per Attorney** | **568.1** | **723.1** | **1292.9** |

*See* Supp. Peter Decl. ¶ 5; Supp. Heikali Decl. ¶ 5; Supp. Wand Decl. ¶ 6.

### 1.   Category 1

For the first category of work (pre-complaint investigations and complaints), the Court finds that Plaintiffs seek an unreasonable amount of hours for Peter, Heikali, and Wand for routine tasks.  Indeed, of the 232.4 hours spent on the pre-complaint investigations and complaints category of work, only 12% of those hours were expended by associates and paralegals.  The Court, therefore, reduces the hours for these attorneys by 10 hours for Peter, by 15 hours for Heikali, and by 15 hours for Wand.  Thus, the reduced hours for Peter is 39.4 hours, for Heikali is 44.5 hours, and for Wand is 64.5 hours.  Based on the requested hours of 49.4 hours for Peter, 59.5 hours for Heikali, and 79.5 hours for Wand and the requested rates, Plaintiffs seek $116,492.50 in fees for Peter, Heikali, and Wand.  With the reduced hours of 39.4 hours for Peter, 44.5 hours for Heikali, and 64.5 hours for Wand and the requested rates, the Court awards $91,867.50 in fees for Peter, Heikali, and Wand.  Accordingly, the Court reduces the lodestar by $24,625 – the difference between the requested fees and the awarded fees.

### 2.   Category 2

For the second category of work (case management documents and work), the Court finds that Plaintiffs seek compensation for a duplication of work.  The Court, therefore, reduces the number of hours by 5 hours for Wand and 8 hours for Heikali.  Thus, the reduced hours for Heikali is 29.3 hours and for Wand is 32.5 hours.  Based on the requested hours of 18 hours for Peter, 37.3 hours for Heikali, and 37.5 hours for Wand and the requested rates, Plaintiffs seek $56,547.50 in fees for Peter, Heikali, and Wand.  Based on the reduced hours of 18 hours for Peter, 29.3 hours for Heikali, and 32.5 hours for Wand and the requested rates, the Court awards $48,947.50 in fees for Peter, Heikali, and Wand.  Accordingly, the Court reduces the lodestar by $7,600 – the difference between the requested fees and the awarded fees.

### 3. Category 3

For the third category of work (written discovery, document production and review, depositions, and expert work), the Court finds that Plaintiffs seek compensation for an unreasonable amount of hours and for a duplication of work. For example, Peter, Heikali, and Wand together spent 706.9 hours of the 964.65 hours attorneys and paralegals spent on this category of work. Plaintiffs request 67.9 hours for Wand and 21.9 hours for Peter for time spent each attorney spent on document review. The Court finds that this amount is unreasonable and reduces this amount by 17.9 hours for Wand and 6.9 hours for Peter. Therefore, for document review, the Court will award Wand for 60 hours of work and Peter for 15 hours of work.

The Court also reduces the hours for Peter and Heikali for time they spent on Plaintiffs' depositions and expert depositions as it appears to be duplicative work. For Peter, Plaintiffs request 24.2 hours for time spent on Plaintiffs' depositions and 66.3 hours for time spent on expert depositions. The Court reduces this request by 12 hours for Plaintiffs' depositions and 26.3 hours for expert depositions. Thus, the Court will award Peter for 12.2 hours spent on Plaintiffs' depositions and for 40 hours spent on expert depositions. For Heikali, Plaintiffs request 25.2 hours for time spent on Plaintiffs' depositions and 37.3 hours for time spent on expert depositions. The Court reduces this request by 12 hours for Plaintiffs' depositions and 17.3 hours for expert depositions. Thus, the Court will award Heikali for 13.2 hours spent on Plaintiffs' depositions and 20 hours spent on expert depositions.

Accordingly, the reduced hours for the third category of work is as follows: 99.4 hours for Peter, 81.4 hours for Heikali, and 428.7 hours for Wand.

Based on the requested hours of 144.6 hours for Peter, 110.7 hours for Heikali, and 446.6 hours for Wand and the requested rates, Plaintiffs seek $432,832.50 in fees for Peter, Heikali, and Wand. Based on the reduced hours of 99.4 hours for Peter, 81.4 hours for Heikali, and 428.7 hours for Wand and the requested rates, the Court awards $373,605 in fees for Peter, Heikali, and Wand. Accordingly, the Court reduces the lodestar by $59,227.50 – the difference between the requested fees and the awarded fees.

### 4.   Category 4

For the fourth category of work (opposition to motion to dismiss and reconsideration of motion to dismiss order), the Court finds that the hours requested by Peter and Heikali are unreasonable.  It appears that Wand spent 55.6 hours drafting the opposition to the motion to dismiss, while Peter spent 38.5 hours and Heikali spent 24 hours editing the opposition to the motion to dismiss.  There is no need for two editors from Faruqi & Faruqi to spend a combined 62.5 hours editing the draft opposition to the motion to dismiss, which is more time than Wand spent drafting the opposition brief.  The Court, therefore, reduces the hours spent by Peter and Heikali on editing by 18 hours for Peter and by 24 hours for Heikali.  Thus, the hours requested for the fourth category of work for Peter is 59.6 hours and for Heikali is 35.8 hours.  Based on the requested hours of 77.6 hours for Peter, 59.8 hours for Heikali, and 67.2 hours for Wand and the requested rates, Plaintiffs seek $129,025 in fees for Peter, Heikali, and Wand.  Based on the reduced hours of 59.6 hours for Peter, 35.8 hours for Heikali, and 67.2 hours for Wand and the requested rates, the Court awards $102,625 in fees for Peter, Heikali, and Wand.  Accordingly, the Court reduces the lodestar by $26,400 – the difference between the requested fees and the awarded fees.

### 5.   Categories 5 through 14

The Court has reviewed the hours expended on tasks listed in categories 5 through 14, and finds the number of hours spent on these categories of work to be reasonable.  The Court awards the amounts requested in those categories based on the requested hours.

### 6.   Category 15

In their supplemental declarations, Peter, Heikali, and Wand also request fees for time spent on this case after September 2, 2019 – when Plaintiffs submitted their initial request for attorney fees and costs.  *See* ECF 121.  Peter seeks compensation for an additional 75.5 hours for an additional lodestar of $52,850.  Supp. Peter Decl. at 12-13.  Heikali seeks compensation for an additional 89.5 hours for an additional lodestar of $51,462.  Supp. Heikali Decl. at 11-12.  Wand seeks compensation for an additional 96.6 hours for an additional lodestar of $57,060.  Supp. Wand Decl. ¶¶ 11-13.

United States District Court
Northern District of California

The Court recognizes that Plaintiffs' counsel is required to attend to many final details in fully responding to the last controversies that arise in a class action settlement, but the hours requested appear duplicative and unnecessary given the descriptions of tasks performed.  The Court, therefore, reduces the requested hours for work after September 2, 2019, by 25 hours for Peter, by 35 hours for Heikali, and by 40 hours for Wand.  Thus, the reduced hours for work completed after September 2, 2019, is as follows: 50.5 hours for Peter, 54.5 hours for Heikali, and 55.1 hours for Wand.

Based on the requested hours of 75.5 hours for Peter, 89.5 hours for Heikali, and 95.1 hours for Wand and the requested rates, Plaintiffs seek $161,372.50 in fees for Peter, Heikali, and Wand.  Based on the reduced hours of 50.5 hours for Peter, 54.5 hours for Heikali, and 55.1 hours for Wand and the requested rates, the Court awards $99,747.50 in fees for Peter, Heikali, and Wand.  Accordingly, the Court reduces the lodestar by $61,625 – the difference between the requested fees and the awarded fees.

### c.  Lodestar calculation

Based on the requested rates and hours, including the hours added in the supplemental declarations of Peter, Heikali, and Wand, Plaintiffs request a lodestar of $2,025,176.25.  Supp. Wand Decl. ¶ 13; *see* Fees Mot. 1; Supp. Peter Decl. at 12-13; Supp. Heikali Decl. at 11-12.  The Court reduces the lodestar by $34,675 based on the reduced hourly rate for paralegals; by $24,625 based on the reduced hours for the first category of work; by $7,600 based on the reduced hours for the second category of work; by $59,227.50 based on the reduced hours for the third category of work; by $26,400 based on the reduced hours for the fourth category of work, and by $61,625 based on the fifteenth category of work.  In total, then, the Court reduces the requested lodestar by $214,152.50.  The adjusted total lodestar is therefore $1,811,023.75.

### d.  Lodestar multiplier

Plaintiffs request a 1.42 multiplier of their lodestar.  At the outset, the Court notes that "[m]ultipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation." *Van Vranken v. Atl. Richfield C*o., 901 F. Supp. 294, 298 (N.D. Cal. Aug. 15, 1995).  Nevertheless, a multiplier of 1.42 is not appropriate here where partner-level attorneys

26

completed a substantial amount of the work on the case, and Class Counsel is already being overcompensated for their work – even with the reductions in hours this Court has already made. While Class Counsel displayed skill in achieving a significant benefit for the Class in this case, their skill has already been factored into their hourly rates. *See Quevedo v. New Albertsons, Inc*, No. SACV131160JLSJPRX, 2015 WL 10939716, at *6 (C.D. Cal. May 27, 2015) ("[W]hile [the] attorneys displayed skill in presenting this case, their skill is already factored into their hourly rates."). Class Counsel is entitled to some multiplier, however, given the contingent nature of the fee award, the benefit they achieved for the Class, and financial resources they committed to prosecuting this case without any guarantee or reimbursement. Fees Mot. 15; Peter Fees Decl. ¶¶ 26-27; Wand Fees Decl. ¶¶ 24, 26. "It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases." *In re Wash. Pub. Power Supply Sys. Sec. Litig*., 19 F.3d 1291, 1299 (9th Cir. 1994). Having considered the foregoing factors, the Court concludes that a 1.25 multiplier is sufficient to compensate Class Counsel for the risks they incurred and results they achieved.

The Court then multiplies the adjusted total lodestar of $1,811,023.75 by the 1.25 multiplier for a total fee award of $2,263,779.69.

### e. Percentage cross-check

Finally, as a cross-check, the percentage of recovery analysis confirms the reasonableness of the requested attorneys' fees. Courts applying this method "typically calculate 25% of the fund as the benchmark for a reasonable fee award, providing adequate explanation in the record of any special circumstances justifying a departure." *In re Bluetooth*, 654 F.3d at 942 (internal quotation marks omitted). The constructive fund to conduct this cross-check may include settlement administration costs, litigation expenses, and the allotment for attorneys' fees in its valuation of a constructive fund for its percentage of recovery cross-check analysis because this is the "total amount defendants were willing to spend to settle the case." *In re Bluetooth*, 654 F.3d at 945 (including allotment for attorneys' fees, incentive awards, *cy pres* award, and other fees in constructive common fund for percentage of recovery cross-check); *see Corzine v. Whirlpool*

1    *Corp.*, No. 15-CV-05764-BLF, 2019 WL 7372275, at *12 (N.D. Cal. Dec. 31, 2019) (including

2    attorneys' fees, costs, and incentive award in valuation of settlement for cross-check purposes); *In*

3    *re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 953 ("The district court did not abuse its

4    discretion in calculating the fee award as a percentage of the total settlement fund, including notice

5    and administrative costs, and litigation expense.").

6         Moreover, "Ninth Circuit precedent requires courts to award class counsel fees based on

7    the total benefits being made available to class members rather than the actual amount that is

8    ultimately claimed." *Patel v. Trans Union, LLC*, No. 14-CV-00522-LB, 2018 WL 1258194, at *6

9    (N.D. Cal. Mar. 11, 2018); *accord Miller v. Ghirardelli Chocolate Co.*, No. 12-CV-04936-LB,

10   2015 WL 758094, at *5 (N.D. Cal. Feb. 20, 2015); *see Stern v. Gambello*, 480 F. App'x 867, 870

11   (9th Cir. 2012) ("[N]or was it error to consider, in cross-checking the fees against the recovery, the

12   potential recovery rather than the claims actually made."); *Williams v. MGM-Pathe Commc'ns*

13   *Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) ("We conclude that the district court abused its

14   discretion by basing the fee on the class members' claims against the fund rather than on a

15   percentage of the entire fund or on the lodestar."). *But see Reyes v. Bakery & Confectionery*

16   *Union & Indus. Int'l Pension Fund*, 281 F. Supp. 3d 833, 860 (N.D. Cal. 2017) (basing fee award

17   on "the actual value of the common fund"). That is, the amount of the constructive fund against

18   which the Court compares the lodestar method is based on the gross value of the settlement – not

19   the net value.

20        The Ninth Circuit has made clear, however, that "because of the danger that parties will

21   overestimate the value of injunctive relief in order to inflate fees, courts must be particularly

22   careful when ascribing value to injunctive relief for purposes of determining attorneys' fees, and

23   avoid doing so altogether if the value of the injunctive relief is not easily measurable." *Roes, 1-2*

24   *v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1055 (9th Cir. 2019); *see Staton v. Boeing Co.*, 327 F.3d

25   938, 974 (9th Cir. 2003) ("Precisely because the value of injunctive relief is difficult to quantify,

26   its value is also easily manipulable by overreaching lawyers seeking to increase the value assigned

27   to a common fund."). Indeed, the Ninth Circuit has held "that only in the unusual instance where

28   the value to individual class members of benefits deriving from injunctive relief can be accurately

1    ascertained may courts include such relief as part of the value of a common fund for purposes of

2    applying the percentage method of determining fees." *Staton*, 327 F.3d at 974.  Here, because the

3    value of injunctive relief is not easy to quantify, the Court does not consider the estimated value of

4    injunctive relief, which is estimated to be between $24 and $52 million, in its percentage of

5    recovery analysis.  Boedeker Decl. ¶ 18.

6           Thus, in conducting this percentage of recovery cross-check, the Court will compare the

7    requested fees to the sum of the amount of potential recovery, settlement administration costs,

8    litigation expenses, and allotment for attorneys' fees.  Because of the uncapped nature of the

9    claims process, it is difficult to estimate the amount of potential recovery.  A conservative estimate

10   for cross-check purposes is $10 million: CBA had the "unconditional right, but not the obligation,

11   to terminate th[e] Settlement Agreement" if more than 1 million claims were filed and the

12   maximum recovery for those Claim Forms without proof of purchase was $10.  Settlement Agr.

13   ¶ 77(d).  The total constructive fund is thus $13,295,000, which includes $10 million in potential

14   recovery, $395,000 for settlement administration costs, and $2,900,000 in attorneys' fees and

15   litigation costs.  Fees Mot. 12-13.  The Court's award of $2,263,779.69 in attorneys' fees

16   represents 17% of the value of the Settlement.  As this is less than the Ninth Circuit's 25%

17   benchmark, *see In re Bluetooth*, 654 F.3d at 942, the Court finds that Plaintiffs' request for

18   attorneys' fees in the amount of $2,263,779.69 is reasonable.  Even if the Court were to consider

19   the claims to be valued only at $7 million, the fee request would still fall within the Ninth Circuit

20   benchmark.

21                 *f.*    Conclusion

22          Based on the record, the Court approves an award of attorneys' fees in the amount of

23   $2,263,779.69.

24         **B.    Litigation Expenses**

25          Plaintiffs seek $329,973.59 in litigation expenses, and the Court is satisfied with Plaintiffs'

26   request for litigation expenses.  An attorney is also entitled to "recover as part of the award of

27   attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying

28   client."  *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (internal quotation marks and citation

United States District Court
Northern District of California

29

United States District Court
Northern District of California

1   omitted).  Class Counsel have submitted an itemized list of expenses by category of expenses

2   incurred.  *See* Wand Fees Decl. ¶ 26; Peter Fees Decl. ¶ 27; Fees Mot. 14-15.  The Court has

3   reviewed the list and finds the expenses to be reasonable.  Accordingly, the Court approves an

4   award in the requested amount of $329,973.59.

5       **C.    Service Award**

6           Plaintiffs request a service award in the amount of $5,000 for each of the two class

7   representatives.  Service or incentive awards "are discretionary . . . and are intended to compensate

8   class representatives for work done on behalf of the class, to make up for financial or reputational

9   risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a

10  private attorney general."  *Rodriguez*, 563 F.3d at 958-59 (internal citation omitted).  "Incentive

11  awards typically range from $2,000 to $10,000."  *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D.

12  245, 267 (N.D. Cal. 2015).  Service awards as high as $5,000 are presumptively reasonable in this

13  district.  *See, e.g.*, *Camberis v. Ocwen Loan Serv. LLC*, Case No. 14-cv-02970-EMC2015 WL

14  7995534, at *3 (N.D. Cal. Dec. 7, 2015).

15          Here, each class representative expended considerable effort on behalf of the class.  For

16  example, the class representatives actively participated in the litigation over the past two years,

17  provided information for the complaints and other pleadings, regularly communicated with Class

18  Counsel for two years to obtain a settlement, reviewed and responded to written discovery,

19  produced documents, prepared and sat for depositions, and reviewed and approved the proposed

20  settlement.  *See* Fees Mot. 16-17; Broomfield Decl. ¶¶ 5-6; Zimmer Decl. ¶¶ 5-6.  Moreover, each

21  class representative put their name on the complaint, which received media coverage.  Fees

22  Mot. 16; Peter Fees Decl. ¶ 30.  Given the time and assistance the class representatives put into the

23  case and the success of the recovery, a service award in the amount of $5,000 is reasonable.  *See*

24  *Hayes v. MagnaChip Semiconductor Corp.*, No.14-cv-01160-JST, 2016 WL 6902856 at *10 (N.D.

25  Cal. Nov. 21, 2016) (noting $5,000 service awards are presumptively reasonable in the Ninth

26  Circuit); *In re Am. Apparel S'holder Litig.*, No. CV 10-06352 MMM, 2014 WL 10212865, at *34

27  (C.D. Cal. July 28, 2014) (awarding service award of $6,600 in securities class action).

28          The Court concludes that the requested $5,000 award for each of the two class

1   representatives is appropriate in this case.

2       **D.   Settlement Administrator Costs**

3       The Court also holds that it is appropriate to award CPT its costs.  The Agreement

4   contemplates that "CBA shall pay the Settlement Notice and Administration Costs, which are

5   currently estimated to be $395,000."  Settlement Agr. ¶ 72.  As of October 25, 2019, CPT's costs

6   total $407,601.89, Sarich Decl., Ex. J, ECF 138-10; Appr. Mot. 8, and CBA has already paid CPT

7   $180,950, *see* Sarich Decl. ¶ 33.  Given the somewhat complex nature of the allocation plan, the

8   Court approves the awarding of costs to CPT in an amount not to exceed $395,000.

9   **IV.   OBJECTIONS**

10      Two objections were filed.  "An objector to a proposed settlement agreement bears the

11  burden of proving any assertions they raise challenging the reasonableness of a class action

12  settlement."  *In re Linkedin User Privacy Litig*., 309 F.R.D. 573, 583 (N.D. Cal. 2015) (citing

13  *United States v. Oregon*, 913 F.2d 576, 581 (9th Cir. 1990).  The Court address each objection in

14  turn.

15      **A.   The Orr Objection**

16      Mr. Orr filed his objection on October 7, 2019, and argues that the Settlement Agreement

17  should not be approved because the settlement website is not compliant with the Americans with

18  Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*., and therefore "the settlement prevent[ed]

19  numerous handicapped people from proper access."  Orr Obj. ¶¶ 2, 7, 24, ECF 134.  Specifically,

20  Mr. Orr argues that he is visually impaired and uses screen reader software to read and navigate

21  websites.  Orr. Obj. ¶ 1.  Mr. Orr argues that the settlement website was not compatible with his

22  screen reader software, or other access-related technologies, and therefore he was not able to

23  submit a claim online.  Orr Obj. ¶¶ 3-5.  He was, however, able to submit a claim via mail with

24  "extensive help from non-handicapped persons."  Orr. Obj. ¶ 8.  Mr. Orr, furthermore, argues that

25  he sent a letter to the Settlement Administrator regarding these accessibility problems, and the

26  Settlement Administrator neither responded nor corrected the problems.[2]  Orr Obj. ¶¶ 20-23.

27

28  _____

[2] Class Counsel and CPT have both represented that they have no record of communications from
Mr. Orr.  *See* Orr Resp. 3-4.

United States District Court
Northern District of California

1    Plaintiffs submitted a response to the Orr Objection, arguing that the settlement website

2    does not fall within the purview of the ADA, the settlement website implements reasonable

3    modifications to provide effective communication with visually impaired persons, and, even if the

4    settlement website needed to comply with the ADA and assuming it did not, the Settlement

5    Agreement should still be finally approved.  Pls.' Resp. to Orr Obj. ("Orr Resp.") 1-5, ECF 141.

6    "The ADA as a whole is intended to provide a clear and comprehensive national mandate

7    for the elimination of discrimination against individuals with disabilities."  *Robles v. Domino's*

8    *Pizza, LLC*, 913 F.3d 898, 904 (9th Cir. 2019) (internal quotation marks omitted).  Accordingly,

9    the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in

10    the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or

11    accommodations of any place of public accommodation by any person who owns, leases (or leases

12    to), or operates a place of public accommodation."  42 U.S.C. § 12182(a).  The ADA goes on to

13    list "private entities [that] are considered public accommodations . . . if the operations of such

14    entities affect commerce."  *Id.* § 12181(7) (listing, for example, inns, motels, restaurants,

15    museums, places of education, sales or rental establishments, and places of exercise or recreation

16    as places of public accommodation).  In addition, "the ADA mandates that places of public

17    accommodation . . . provide auxiliary aids and services to make visual materials available to

18    individuals who are blind."  *Robles*, 913 F.3d at 905.  Therefore, websites of places of public

19    accommodations must comply with the ADA because the "inaccessibility of [a place's] website

20    . . . impedes access to the goods and services of [the place of public accommodation]."  *Id.*

21    (holding that website for Domino's pizza must comply with ADA).

22    First, the settlement website is operated by CPT, and CPT, a settlement administration

23    company, *see* Prelim. Appr. Order ¶ 10, is not an entity that is an enumerated place of public

24    accommodation under the ADA.

25    Second, "the ADA only covers 'actual, physical places where goods or services are open to

26    the public, and places where the public gets those goods or services,' [so] there ha[s] to be 'some

27    connection between the good or service complained of and an actual physical place.'"  *Robles*, 913

28    F.3d at 905 (quoting *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 113-14 (9th Cir.

United States District Court
Northern District of California

2000).  Here, CPT does not have a physical place that offers goods or services.  Even if CPT has a physical office, Mr. Orr does not contest the accessibility of that physical office and the complained of website was not a good or service offered by CPT's physical office.  *See Weyer*, 198 F.3d at 114-15 (holding insurance company administering disability policy is not place of public accommodation under ADA because there was no nexus between the policy and insurance company's physical office); *id.* (finding context of ADA's definition of public accommodation "suggestions that some connection between the good or service complaint of an actual physical place is required").

The Court notes that, even if the website were required to comply with the ADA, it likely met these requirements as the website contains a UserWay Website Accessibility Widget, which was implemented to increase compliance with the Web Content Accessibility Guidelines, the Authoring Tool Accessibility Guidelines, and the ADA.  Orr Resp., Sarich Decl. ¶ 8, ECF 141-2.

Accordingly, the Court OVERRULES the Orr Objection.

### B.    The Lindberg Objection

Mr. Lindberg filed his objection on October 7, 2019, and he states that he purchased at least 5 twelve-packs of Kona Beers during the Class Period, for which he submitted a Claim Form online.  Lindberg Obj. 1.  Mr. Lindberg appeared at the December 19, 2019 hearing by and through his counsel.  Lindberg Obj. 1.  Mr. Lindberg argues that the Court should not approve the Settlement Agreement based on the following objections: (1) the Settlement Agreement is not fair, reasonable or adequate because it does not permit Class Members residing in the same household to submit independent claims and because it releases the claims of persons in the same household who did not individually submit a claim; (2) the claims-made process requires an age certification that is incongruent with the Settlement Agreement's release of claims; (3) *Bluetooth* applies and all the *Bluetooth* factors are present; (4) Class Counsel and Plaintiffs cannot adequately represent the Settlement Class as required by Federal Rules of Civil Procedure 23(a)(4) and (g)(4); (5) Class Counsel have not provided unredacted evidence of the Settlement Agreement's value when compared to the Settlement Class's potential recovery at trial; (6) Plaintiffs are the primary beneficiaries of the settlement; (7) Class Counsel's attorneys fee request is excessive; (8) Class

United States District Court
Northern District of California

Counsel requests costs to which they are not entitled; and (9) the Settlement Agreement violates Federal Rule of Civil Procedure 23(h).  Lindberg Obj. 3-24.  Mr. Lindberg also "requests the opportunity to depose and cross-examine any witness presenting evidence in support of the Settlement Agreement."  Lindberg Obj. 1.

Plaintiffs responded to the Lindberg Objection, contesting each reason Mr. Lindberg has put forth as to why the Court should not approve the Settlement Agreement.  *See* Pls.' Resp. to Lindberg Obj. ("Lindberg Resp."), ECF 140.

At the outset, the Court notes that Mr. Lindberg's objections raise questions that the Court would ordinarily raise itself.  The Court never just accepts settlements and, in granting final approval of a settlement, the Court will put the settlement at issue through a rigorous analysis.  Mr. Lindberg will not be rewarded for simply picking the low hanging fruit.

The Court now addresses each of Mr. Lindberg's objections below.

### i.    The household limit

The Settlement Agreement states that "Settlement Class Members residing in the same household (i.e., the same mailing address) who each submit a Claim Form shall only be entitled to a collective payment of $10 or $20 per household, depending on whether Proof of Purchase is submitted."  Settlement Agr. ¶ 77.  In addition, the Settlement Agreement provides that Releasing Parties (defined as "Plaintiffs, each Settlement Class Member that does not submit a timely and valid Request for Exclusion, and any Person claiming by or through such Settlement Class Member") release CBA and other "Released Parties" from the "Released Claims."  Settlement Agr. ¶¶ 66-68, 120, 124-26.

Mr. Lindberg argues that the Settlement Agreement's release is overbroad because the Settlement Agreement prevents two co-habiting class members from submitting independent claims – even though a household's composition may change between the time of injury and submission of a Claim Form (up to six years later) – so a Class Member's claims may be released even if they do not submit a claim.  Lindberg Obj. 3.  Plaintiffs respond that Mr. Lindberg does not have standing to object to the household limit because he is not harmed by household limit, all Class Members can submit a Claim Form regardless of whether they reside in the same household

United States District Court
Northern District of California

1   as another Class Member, and the household limit is necessary and appropriate to deter fraud.

2   Lindberg Resp. 1-3.

3       Mr. Lindberg does not have standing to object to the household limit.  Objectors must

4   establish Article III standing to object, which requires an injury, caused by the defendant, that is

5   redressable.  *See Glasser v. Volkswagen of Am., Inc*., 645 F.3d 1084, 1088 (9th Cir. 2011).  In the

6   class action context, "the objecting class member must be 'aggrieved' by the [settlement

7   provision]."  *Id.*  "If modifying the [settlement provision] would not 'actually benefit the objecting

8   class member,' the class member lacks standing because his challenge to the [settlement

9   provision] cannot result in redressing any injury."  *Id.* (quoting *Knisley v. Network Assocs., Inc.*,

10  312 F.3d 1123, 1126 (9th Cir.2002)) (finding objector challenge fee award did not have standing);

11  *see Wolford v. Gaekle (In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.)*, 33 F.3d 29, 30

12  (9th Cir. 1994) ("Simply being a member of a class is not enough to establish standing. One must

13  be an aggrieved class member.").

14      While Mr. Lindberg has shown that he is a class member because he has been harmed by

15  CBA's conduct, he has not shown that he has been injured by the Settlement Agreement's

16  household limit provision such that modifying the household limit provision would redress any

17  injury.  *See* Lindberg Obj. at 3 (failing to explain how he was injured by household limit

18  provision); *see also Custom LED, LLC v. eBay, Inc*, No. 12-CV-00350-JST, 2014 WL 2916871, at

19  *6 (N.D. Cal. June 24, 2014) ("[T]o be an aggrieved class member, an individual must fall within

20  the class definition and also must have been injured by the defendant's conduct.").  In *Low v.

21  Trump Univ*., *LLC*, the objector challenged the lack of opportunity to opt out at the settlement

22  stage.  246 F. Supp. 3d 1295, 1305 (S.D. Cal. 2017), *aff'd*, 881 F.3d 1111 (9th Cir. 2018).  The

23  Court found that the objector did not have standing because the objector "ha[d] not shown how

24  allowing for a further opportunity to opt out would redress any injury."  *Id.*  As in *Low*, Mr.

25  Lindberg has not shown how changing the household limit provision would address any injury.

26  Indeed, it is not clear how Mr. Lindberg was injured by the household limit provision because Mr.

27  Lindberg submitted a valid Claim Form and no other Claim Forms were submitted from the same

28  address as Mr. Lindberg.  Lindberg Resp., Decl. of Ani S. Sarich ("Sarich Obj. Decl.") ¶¶ 3-4,

United States District Court
Northern District of California

1    ECF 140-10; *see Glasser*, 645 F.3d at 1088 ("If modifying the fee award would not actually

2    benefit the objecting class member, the class member lacks standing because his challenge to the

3    fee award cannot result in redressing any injury."); *Low*, 246 F. Supp. 3d at 1305; *Brown v. Hain*

4    *Celestial Grp., Inc.*, No. 3:11-CV-03082-LB, 2016 WL 631880, at *10 (N.D. Cal. Feb. 17, 2016)

5    (finding objector lacks standing to challenge monetary relief element of settlement because

6    objector has not showed how he was aggrieved by this element or how he would actually benefit

7    from changing this part of the settlement).  Mr. Lindberg, therefore, lacks standing to challenge

8    the household limit provision.

9            Even if Mr. Lindberg had standing, the household limit provision does not mean that the

10   Settlement Agreement is not fair, reasonable, or adequate.  First, the household limit does not

11   prevent co-habiting Class Members from submitting independent Claim Forms; rather, the

12   provision only limits their amount of recovery.  *See* Settlement Agr. ¶ 77 ("Settlement Class

13   Members residing in the same household (i.e., the same mailing address) *who each submit a Claim*

14   *Form* shall only be entitled to a collective maximum payment of $10 or $20 per household,

15   depending on whether Proof of Purchase is submitted . . . ." (emphasis added)).  Second, courts in

16   this circuit have approved settlements with household caps as a means to prevent fraud.  *See, e.g.*,

17   *Woodard v. Labrada*, No. EDCV1600189JGBSPX, 2019 WL 6998775, at *9 (C.D. Cal. Oct. 7,

18   2019) (approving settlement with household limit provision); *Eashoo v. Iovate Health Scis.*

19   *U.S.A., Inc.*, No. CV1501726BROPJWX, 2016 WL 6205785, at *8 (C.D. Cal. Apr. 5, 2016)

20   (same); *Fulford v. Logitech, Inc.*, Case No. 08-cv-2041-MMC (N.D. Cal. Mar. 5, 2010) at 10

21   (overruling objection to household limit); *see also* Sarich Obj. Decl. ¶ 5.

22           Accordingly, the Court OVERRULES Mr. Lindberg's objection as to the household limit

23   provision.

24           **ii.    Age certification requirement**

25           For a Claim Form to be valid, the Settlement Agreement requires claimants to "bear an

26   attestation by the Settlement Class Member . . . that he/she was over 21 years old at the time of

27   purchase(s) of the claimed Kona Beers."  Settlement Agr. ¶¶ 77(b), (c), 82.  Because members of

28   the Settlement Class are bound by the Settlement Agreement's release regardless of age, Mr.

1    Lindberg argues that some claimants are unable to benefit from the Settlement Agreement because

2    they must release their claims against CBA but are not able to submit a valid Claims Form, even if

3    they were misled.  Lindberg Obj. 4.  In particular, Mr. Lindberg points to individuals who can

4    legally purchase alcohol under the age of 21, such as those living in the U.S. Virgin Islands and

5    Puerto Rico.  Lindberg Obj. 4.  Plaintiffs respond that the age certification requirement is

6    necessary because the legal drinking age in all 50 states is 21, Mr. Lindberg lacks standing to

7    challenge this provision, and no person in the U.S. Virgin Islands or Puerto Rico objected to this

8    provision.  Lindberg Resp. 4.

9        The Court agrees that Mr. Lindberg has not established that he has standing to challenge

10   the age verification provision.  Mr. Lindberg has not argued that he was under 21 years old at the

11   time of purchase, nor has he argued that he was from the U.S. Virgin Islands or Puerto Rico.

12   Therefore, it is not clear how Mr. Lindberg was harmed by the provision.  Moreover, even if he

13   was harmed, Mr. Lindberg has not shown that modifying the age certification provision will

14   redress any such harm.  *See Glasser*, 645 F.3d at 1088 ("If modifying the fee award would not

15   actually benefit the objecting class member, the class member lacks standing because his

16   challenge to the fee award cannot result in redressing any injury."); *Low*, 246 F. Supp. 3d at 1305.

17       Even if Mr. Lindberg had standing, the Court finds that the Settlement Agreement is still

18   fair, adequate, and reasonable.  First, the age certification provision is necessary to ensure that

19   only those who are legally allowed to purchase Kona Beers received compensation under the

20   Settlement Agreement.  *See Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 589 (2001) ("[E]very

21   State prohibits the sale of alcohol to those under age 21.")

22       Second, "the question whether a settlement is fundamentally fair within the meaning of

23   Rule 23(e) is different from the question whether the settlement is perfect in the estimation of the

24   reviewing court."  *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012)); *see Mendoza v.

25   Hyundai Motor Co., Ltd*, No. 15-CV-01685-BLF, 2017 WL 342059, at *10 (N.D. Cal. Jan. 23,

26   2017) ("It would not be fair to the class as a whole to set aside an otherwise fair settlement

27   because it does not address unique and difficult to prove hardships suffered by only a few

28   members of the class."); *Hendricks*, 2016 WL 5462423, at *6 ("That a more favorable result for

United States District Court
Northern District of California

1    some Class Members could potentially have been reached is not a sufficient reason to reject an

2    otherwise fair and reasonable settlement." (internal quotation marks omitted)).

3         According to Plaintiffs, only 12 six-packs were sold in the U.S. Virgin Islands during the

4    Class Period and only 17,253 six-packs were sold in Puerto Rico.  Lindberg Resp. 4.  Using U.S.

5    census data, Plaintiffs estimated that only one 18- to 20-year-old in the U.S. Virgin Islands and

6    five 18- to 20-year-olds in Puerto Rico were prevented from submitting valid Claim Forms due to

7    the age certification requirement.  Lindberg Resp. 4.  Such an effect is therefore de minimis, and

8    just because the Settlement Agreement does not provide a payout for every conceivable purchaser

9    of Kona Beers does not make the Settlement Agreement unfair, inadequate, or unreasonable.  *See*

10   *In re TD Ameritrade Account Holder Litig.*, No. C 07-2852 SBA, 2011 WL 4079226, at *9 (N.D.

11   Cal. Sept. 13, 2011) ("The possibility that the Settlement does not provide for a payout to every

12   conceivable accountholder who in some way may have been affected by the data breach does not

13   establish that the Settlement is unfair or unreasonable.").

14        The Court, therefore, OVERRULES Mr. Lindberg's objection as to the age certification

15   requirement.

16              iii.    **Application of *Bluetooth* and the *Bluetooth* factors**

17        In *In re Bluetooth Headset Prod. Liab. Litig.*, the Ninth Circuit stated that "a settlement

18   agreement . . . negotiated *prior* to formal class certification . . . must withstand an even higher

19   level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required

20   under Rule 23(e) before securing the court's approval as fair."  654 F.3d 935, 946 (9th Cir. 2011).

21   "[C]ourts therefore must be particularly vigilant not only for explicit collusion, but also for more

22   subtle signs," such as when counsel receives a disproportionate amount of the settlement, the

23   agreement has a clear sailing provision, or the fees not awarded revert back to defendants.  *Id.*

24        Mr. Lindberg argues that all three *Bluetooth* factors are present, and therefore the Court

25   should not approve the Settlement Agreement.  Lindberg Obj. 5-10.  First, Mr. Lindberg argues

26   that Class Counsel receives a disproportionate amount of the total constructive settlement fund

27   because Class Counsel is seeking $2,570,026.41 in attorneys' fees and CBA is only paying the

28   Settlement Class a total of $1,332,386.25.  Lindberg Obj. 6-7; *see* Fees Mot. 1; Sarich Supp. Decl.

United States District Court
Northern District of California

¶ 12.  Second, Mr. Lindberg argues that the Settlement Agreement contains a "clear sailing provision because CBA agrees not to object to Class Counsel's request for attorneys' fees if it is less than $2,900,000.  Lindberg Obj. 7-9.  Lastly, Mr. Lindberg argues that the Settlement Agreement contains a "kicker clause" because any reduction in attorneys' fees, costs, or incentive awards reverts back to CBA.  Lindberg Obj. 9-10.

Plaintiffs counter that the *Bluetooth* analysis does not apply here because the Court already granted class certification and, in any event, the Settlement Agreement is not unfair or collusive under *Bluetooth*.  Lindberg Resp. 6-9.

The Court agrees with Plaintiffs that it need not go through the *Bluetooth* analysis.  As the Ninth Circuit has made clear, the "procedural burden" under Rule 23(e) "is more strict when a settlement is negotiated *absent* class certification."  *Allen*, 787 F.3d at 1224 (emphasis added); *see Bluetooth*, 654 F.3d at 946 (describing higher level of scrutiny for "settlement agreement . . . negotiated *prior* to formal class certification").  This is true even if the class certified prior to settlement is narrower than the class certified for settlement purposes.  For example, in *Kumar v. Salov N. Am. Corp.*, No. 14-CV-2411-YGR, 2017 WL 2902898, at *4 (N.D. Cal. July 7, 2017), *aff'd*, 737 F. App'x 341 (9th Cir. 2018), the settlement agreement was negotiated after the court certified a California class.  For settlement purposes, the court certified a nationwide class.  *Id.* The court, in overruling an objection that it should go through the *Bluetooth* analysis, stated that the analysis was not necessary because the California class was already certified, the court "undertook a thorough analysis of the evidence and claims in the context of the class certification motion," and "[t]he nature of the claims and class certification factors do[] not differ significantly as between the California Class certified and the Nationwide Class in the settlement."  *Id.*

The same is true here.  The Court previously certified two California classes prior to the Settlement Agreement: one for purchasers of any six-pack of Kona Beer during the Class Period, and the other for purchasers of any twelve-pack of Kona Beer during the Class Period.  Class Cert. Order 36-37.  In certifying these classes, the Court undertook a thorough analysis of the evidence and claims.  *See* Class Cert. Order 7-36.  The nature of the claims and the class certification factors, furthermore, do not differ significantly between the certified California classes and the

nationwide class in the Settlement.  Therefore, the Court need not conduct a *Bluetooth* analysis.

Accordingly, the Court OVERRULES Mr. Lindberg's objection that the Settlement Agreement is unfair and collusive under *Bluetooth*.

### iv.    Class Counsel's and Class Representatives' representation of the Settlement Class

Mr. Lindberg argues that Class Counsel "rendered itself unable to adequately represent the Class as required by Federal Rule of Civil Procedure 23(g)(4)" by agreeing to the Settlement Agreement.  Lindberg Obj. 10.  Moreover, Mr. Lindberg argues that Plaintiffs "have shown themselves not to be trustworthy Class Representatives as required by Rule 23(a)(4)" and are inadequate representatives of the Settlement Class because they "allowed this money-grab to occur" and "[p]resumably . . . agreed to the collusive Settlement Agreement because they hope to be paid $5,000 each."  Lindberg Obj. 11.  Mr. Lindberg then states that the Court "should reconsider its prior order granting certification of the California Class, deny final approval of the Settlement Agreement, and consider dismissing the case unless new class members *and new lawyers* seek to continue representing the Class in the fair manner that Rule 23 requires."  Lindberg Obj. 11.  Plaintiffs respond that Mr. Lindberg provides no authority to support his position and argue that the Court should dismiss "Mr. Lindberg's frivolous attempt to replace Plaintiffs and Class Counsel."  Lindberg Resp. 10.

The Federal Rules of Civil Procedure require that class representatives "fairly and adequately protect the interests of the class," Fed. R. Civ. P. 23(a)(4), and that class counsel "fairly and adequately represent the interests of the class," Fed. R. Civ. P. 23(g)(4).   Mr. Lindberg has not proved that either rule has been violated.  *See In re Linkedin*, 309 F.R.D. at 583 (placing burden on objector to prove any challenge to class action settlement).  Mr. Lindberg relies on the *Bluetooth* factors for the proposition that the Settlement Agreement has "obvious indicia of self-dealing."  Lindberg Obj. 10.  As stated above, the *Bluetooth* analysis does not apply here and therefore those factors are not indicia of self-dealing as Mr. Lindberg argues, and Mr. Lindberg does not provide any additional evidence or support for his challenge to the adequacy of Class Counsel or Plaintiffs' representation.

Furthermore, Mr. Lindberg does not offer any legal support for his arguments, and the cases he cites are either inapposite or do not stand for the stated proposition.  For example, Mr. Lindberg cites *Lobatz v. U.S. W. Cellular of Cal., Inc*., for the proposition that "class counsel breached their fiduciary duty to the class when they 'agreed to accept excessive fees and costs to the detriment of class plaintiffs.'"  Lindberg Obj. 10 (quoting *Lobatz v. U.S. W. Cellular of Cal., Inc*., 222 F.3d 1142, 1147 (9th Cir. 2000)).  The quote, however, is a summary of an objector's argument, and the court concluded from this argument only that the objector had standing.  *Lobatz*, 222 F.3d at 1147.  Mr. Lindberg's other cases are equally inapplicable, and Mr. Lindberg has not shown how they apply to the instant case.  *See* Lindberg Obj. 10-12 (citing one Second Circuit case, one case from the Southern District of New York, and two cases from the Ninth Circuit without analysis); *see, e.g.*, *Gallego v. Northland Grp. Inc*., 814 F.3d 123, 129 (2d Cir. 2016) (in assessing whether Rule 23(b)(3)'s superiority requirement was met, stating that "[d]enial of certification was within the range of permissible decisions where it appeared that the intended result of the settlement was mass indifference, a few profiteers, and a quick fee to clever lawyers" (internal quotation marks omitted)).

Accordingly, the Court OVERRULES Mr. Lindberg's objection as to the adequacy of Class Counsel and Plaintiffs' representation.

### v.    Evidence in support of Settlement Agreement

Mr. Lindberg next argues that Class Members cannot make "an informed decision about whether they agree with [Class Counsel's] estimate" that compensation from the Settlement Agreement exceeds the damages the Settlement Class may have received at trial because the evidence is "excessively redacted."  Lindberg Obj. 11.  Specifically, Mr. Lindberg argues that Mr. Peter has not stated that "he has personal knowledge of [the] evidence" included in his declaration and it is "unlikely" his statements would be admissible at trial.  Lindberg Obj. 11.  In addition, Mr. Lindberg argues that Class Counsel is deceptive by not stating that the total recovery under the Settlement Agreement exceeds the likely recovery at trial.  Lindberg Obj. 12.  Therefore, Mr. Lindberg argues, Plaintiffs have not met their burden of proof that the Settlement is good for the Class because "they have not presented *any* evidence bearing on that consideration."  Lindberg

United States District Court
Northern District of California

Obj. 12.

Plaintiffs oppose, arguing that Mr. Lindberg does not object to the compensation the Settlement provides, "Mr. Peter made his declaration under oath and swore to having personal knowledge of its contents," Mr. Lindberg only speculates as to the size of total recovery, and Mr. Lindberg ignores how fairness of the settlement amount is evaluated and that the fact-finder could have determined that there was no price premium (thereby eliminating recovery at trial). Lindberg Resp. 10-11.

Mr. Lindberg only challenges the evidence used to support the value of the Settlement, and not the Settlement amount itself. The Court finds these challenges are without merit. First, Class Counsel submitted the declaration of economic expert Stefan Boedeker to support their valuation of the Settlement. *See* Decl. of Stefan Boedeker ("Boedeker Decl."), ECF 121-9. In his declaration, Mr. Boedeker explains his analysis and methodology for calculating the average economic loss to consumers nationwide who purchased Kona Beer. Boedeker Decl. ¶ 8. Sales data, such as CBA's actual and projected annual revenue, was redacted from the Boedeker Declaration. *See generally* Boedeker Decl. The Court allowed these narrowly tailored redactions because the "confidential and competitively sensitive information could be used to the disadvantage of [CBA]." ECF 124, at 2. As the Court previously found, these redactions are not excessive, as Mr. Lindberg argues, and the Settlement Class can make an informed decision about whether they agree with this estimate based on the publicly filed version of the Boedeker Declaration.

Second, Mr. Peter declared that he had personal knowledge of the information contained in his declaration and that he would be prepared to competently testify under oath if called as a witness. Peter Decl. ¶ 1; *see* Decl. of Timothy Peter for Prelim. Appr. of Settlement, ¶ 1, ECF 116; *see also Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1018 (9th Cir. 1990) ("That Rule 56(e)'s requirements of personal knowledge and competence to testify have been met may be inferred from the affidavits themselves.").

Lastly, Mr. Lindberg speculates that the Settlement only provides for a fraction of the damages alleged in the First Amended Consolidated Class Action Complaint. Whether a

1   settlement is fair, however, does not depend on whether the Settlement exceeds the amount of

2   damages alleged in a complaint.  Indeed, "[i]t is well-settled law that a cash settlement amounting

3   to only a fraction of the potential recovery will not per se render the settlement inadequate or

4   unfair." *Officers for Justice*, 688 F.2d at 628; *accord Linney v. Cellular Alaska P'ship*, 151 F.3d

5   1234, 1242 (9th Cir. 1998); *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc*., 221 F.R.D.

6   523, 527 (C.D. Cal. 2004).

7       Accordingly, the Court OVERRULES Mr. Lindberg's objection as to the evidence

8   available to support the Settlement's value.

9           vi.   **Plaintiffs' representation of Settlement Class**

10      The Settlement proposes that each Class Representative receive a $5,000 service award.

11  Mr. Lindberg objects to these service awards because it allows Plaintiffs to receive more than 500

12  times what absent Class Members receive, and because the service awards are conditional in that

13  they are only paid if the Settlement is approved.  Lindberg Obj. 12-13.  Plaintiffs oppose, arguing

14  that $5,000 service awards are presumptively reasonable in this district, there is no conflict

15  because the service awards are not conditioned on Plaintiffs' approval of the Settlement, and Mr.

16  Lindberg's challenge is misplaced because the relevant inquiry focuses on facts such as Plaintiffs'

17  time and effort devoted to the litigation and settlement.  Lindberg Resp. 11-14.

18      The Court agrees with Plaintiffs.  First, the service awards are not conditional as in

19  *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1163-66 (9th Cir. 2013), and do not create a

20  conflict of interest.  In *Radcliffe*, the service awards were conditioned on the representatives'

21  approval of the Settlement.  *Id.*  That is not the case here.  *See* Settlement Agr. ¶¶ 113-14; *Sheikh*

22  *v. Tesla, Inc*., No. 17-CV-02193-BLF, 2018 WL 5794532, at *6 (N.D. Cal. Nov. 2, 2018) (finding

23  no *Radcliffe* conflict of interest where settlement contained no provision conditioning service

24  award on class representatives approving settlement).  The payment of service awards is only

25  conditioned on the Court's approval, Settlement Agr., ¶ 114, and therefore there is no conflict of

26  interest in providing Plaintiffs with service awards.

27      Second, the Ninth Circuit has approved settlements with service awards of $5,000 where

28  the recovery of the individual class members is comparable or even less than is at issue here.  *See,*

United States District Court
Northern District of California

*e.g.*, *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 942-43, 947-48 (approving $5,000 incentive awards where class members would receive roughly $12 in gift cards or cash); *Sheikh*, 2018 WL 5794532, at *6 (overruling objection to service award because individual class members received only 0.5% to 5% of class representatives' $4,800 incentive award). And, as stated above, Plaintiffs have devoted considerable time and effort to the litigation and settlement. *See* Broomfield Decl. ¶¶ 5-6; Zimmer Decl. ¶¶ 5-6.

Accordingly, the Court OVERRULES Mr. Lindberg's objection as to the service awards.

### vii. Attorneys' fees

Next, Mr. Lindberg objects to the requested attorneys' fees. He argues for a net-based analysis; that is, Mr. Lindberg argues that Class Counsel should only receive 25% of the actual amount that the Settlement Class receives from the Settlement. Lindberg Obj. 14-16. In addition, Mr. Lindberg argues that "Class Counsel seeks a very large lodestar with minimal documentation" and that the injunctive relief is illusory. Lindberg Obj. 16-21.

Plaintiffs oppose and contend that the requested attorneys' fees are reasonable under the lodestar and percentage methods. Lindberg Resp. 13-18. Specifically, Plaintiffs argue that they have provided sufficient documentation, consideration of gross settlement is appropriate, consideration of the value of injunctive relief is appropriate, and, even if injunctive relief is not considered, the Settlement is still appropriate. Lindberg Resp. 13-18.

First, Mr. Lindberg argues that, in conducting the percentage of recovery cross-check, the Court should only consider the amount of money the Settlement Class actually receives – that is, Mr. Lindberg argues for a net-based analysis. Lindberg Obj. 14-16. Additionally, Mr. Lindberg argues that litigation expenses and Settlement Administrator fees should not be included in this analysis. Lindberg Obj. 14-16. According to Mr. Lindberg, using a gross analysis would encourage Class Counsel and CPT to inflate their costs and fees, which are not a benefit to the Settlement Class. Lindberg Obj. 15-16. The Court disagrees.

As stated above, the Ninth Circuit requires the Court to award attorneys' fees "based on total benefits being made available to class members rather than the actual amount that is ultimately claimed." *Patel*, 2018 WL 1258194, at *6; *see Zepeda v. PayPal, Inc.*, No. C 10-1668

United States District Court
Northern District of California

1    SBA, 2017 WL 1113293, at *22 (N.D. Cal. Mar. 24, 2017) ("[T]here is no bright-line rule

2    requiring that a court calculate a fee award based on a net settlement fund."); *In re Carrier IQ,*

3    *Inc., Consumer Privacy Litig.*, No. 12-MD-02330-EMC, 2016 WL 4474366, at *6 (N.D. Cal. Aug.

4    25, 2016) ("[T]he Ninth Circuit clearly allows basing the percentage method on the gross

5    settlement fund.").  In calculating a constructive fund for percentage of recovery cross-check

6    purposes, the Ninth Circuit and courts in this district have included attorneys' fees, settlement

7    administration costs, and litigation expenses.  *See In re Online DVD-Rental Antitrust Litig.*, 779

8    F.3d at 953; *In re Bluetooth*, 654 F.3d at 945.  The Ninth Circuit, furthermore, has "repeatedly

9    held 'that the reasonableness of attorneys' fees is not measured by the choice of the

10   denominator.' " *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 953 (quoting *Powers v.*

11   *Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000)).

12        Mr. Lindberg cites no authority for his argument that attorneys' fees should not be

13   included in the constructive fund, and the Court is not persuaded by Mr. Lindberg's authority for

14   excluding settlement administration costs.  Lindberg Obj. 15-16.  Mr. Lindberg only cites one case

15   from this district, and he otherwise relies on cases from other circuits.  In the case from this

16   district, *Myles v. AlliedBarton Sec. Servs., LLC*, the district court relied on a Seventh Circuit case

17   to conclude that the fees paid to the settlement administrator did not constitute a benefit to the

18   class members.  No. 12-CV-05761-JD, 2014 WL 6065602, at *5 (N.D. Cal. Nov. 12, 2014).  But,

19   as Mr. Lindberg recognizes, "the Seventh Circuit *requires* a net-based analysis."  Fees Mot. 15.

20   And, as the Seventh Circuit recognized, its position that settlement administrator costs should not

21   be included conflicts with the position of the Ninth Circuit.  *See Redman v. RadioShack Corp.*,

22   768 F.3d 622, 630 (7th Cir. 2014).  Accordingly, because the Court is bound by the Ninth Circuit,

23   it does not follow the Seventh Circuit and includes settlement administration costs in its

24   constructive fund valuation.  *See Staton*, 327 F.3d at 975 ("We conclude that where the defendant

25   pays the justifiable cost of notice to the class – but not, as here, an excessive cost – it is reasonable

26   (although certainly not required) to include that cost in a putative common fund benefiting the

27   plaintiffs for all purposes, including the calculation of attorneys' fees.").  The Court, furthermore,

28   does not find that Class Counsel inflated their litigation costs to increase their fees.  Indeed, the

1    Court found that the requested attorneys' fees were reasonable under the lodestar method, which

2    does not take into account litigation expenses.

3          Second, Mr. Lindberg argues that Class Counsel's lodestar is excessive, and any multiplier

4    is not justified.  Lindberg Obj. 16-18.  Specifically, Mr. Lindberg argues that Class Counsel has

5    not provided an explanation to justify the hours billed, Class Counsel cannot justify their rates and

6    so the U.S. Attorney's Office Fee Matrix (the "Laffey Mattrix") should be used, and Plaintiffs

7    have not justified the application of a multiplier.  Lindberg Obj. 16-18.

8          The Court disagrees.  Per the Court's standing orders, Plaintiffs have provided charts

9    summarizing the hours expended on the major tasks of the case, and, at the Court's request, Class

10   Counsel also supplemented these charts with additional information.  *See, e.g.* Peter Fees Decl.

11   ¶¶ 17-22; Wand Fees Decl. ¶¶ 14-23; Supp. Wand Decl. ¶¶ 5-12; Supp. Peter Decl. at 2-13; Supp.

12   Heikali Decl. at 2-12.[3]  In addition, "[t]he Ninth Circuit has questioned the reliability of the Laffey

13   matrix, describing it as an unreliable measure of fees, particularly for legal markets on the west

14   coast." *Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877, 899-900 (C.D. Cal. 2016); *see Prison*

15   *Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010) ("[J]ust because the Laffey

16   matrix has been accepted in the District of Columbia does not mean that it is a sound basis for

17   determining rates elsewhere, let alone in a legal market 3,000 miles away. It is questionable

18   whether the matrix is a reliable measure of rates even in Alexandria, Virginia, just across the river

19   from the nation's capital.").

20         The Court, furthermore, finds that the multiplier of 1.25 in this case is fair and reasonable,

21   as Class Counsel achieved a significant benefit for the class, litigated on a purely contingent basis,

22   and committed substantial financial resources to prosecuting this case without a guarantee of

23   reimbursement.  Importantly, Class Counsel vigorously prosecuted this case through extensive

24   motion practice, including a motion to dismiss, motion for class certification, a petition for

25   permission to appeal the Class Certification Order, and an *en banc* petition for rehearing before the

26   Ninth Circuit, which is currently stayed.  Moreover, a multiplier of 1.25 is modest compared to

27

28   [3] The type of supplementation requested here is common and not made in response to or in
     consideration of Mr. Lindberg's objection.

1    other approved multipliers in similar cases in the Ninth Circuit that are often in the range of 2.0 to

2    4.0.

3        Lastly, the Court does not address Mr. Lindberg's argument that injunctive relief is illusory

4    because the Court did not consider the value of the injunctive relief in finding that Class Counsel's

5    requested attorneys' fees are reasonable.

6        Accordingly, the Court OVERRULES Mr. Lindberg's objections as to Class Counsel's

7    attorneys' fees.

8            **viii.    Costs**

9        Next, Mr. Lindberg argues that Class Counsel seeks reimbursement for costs that are

10   prohibited by California Code of Civil Procedure § 1033.5, and Mr. Lindberg argues that Mr.

11   Boedeker's expenses for his declaration included in the Fees Motion are not reimbursable.

12   Lindberg Obj. 21-22. Specifically, Mr. Lindberg argues that a $6,757.73 expense from Farqui &

13   Farqui and a $630 expense from The Wand Law Firm are prohibited by § 1033.5(b). Lindberg

14   Obj. 21. Plaintiffs oppose, arguing that they do not seek reimbursement for Mr. Boedeker's

15   declaration, § 1003.5(b) does not apply, and, even if § 1033.5(b) does apply, the Court has the

16   discretion to allow these costs. Lindberg Resp. 18-19.

17       First, Class Counsel do not seek reimbursement for any costs related to Mr. Boedeker's

18   declaration in support of the Fees Motion. *See* Decl. of Timothy J. Peter for Lindberg Resp.

19   ("Lindberg Peter Decl.") ¶ 8, ECF 140-1. Therefore, Mr. Lindberg's objection as to this expense

20   is without merit.

21       Second, it appears that § 1033.5(b) does not apply, and Mr. Lindberg has provided no

22   evidence to the contrary. "Since the awarding of costs here is procedural, not substantive, federal

23   law governs." *Drumm v. Morningstar, Inc*., 695 F. Supp. 2d 1014, 1027 (N.D. Cal. 2010); *see*

24   *Champion Produce, Inc. v. Ruby Robinson Co*., 342 F.3d 1016, 1022 (9th Cir. 2003) ("An award

25   of standard costs in federal district court is normally governed by Federal Rule of Civil Procedure

26   54, even in diversity cases."); *Carr v. Tadin, Inc*., 51 F. Supp. 3d 970, 984 (S.D. Cal. 2014)

27   (same). Under Rule 23(h), the Court "may award reasonable attorney's fees and nontaxable costs

28   that are authorized by law or the parties' agreement." And, under the Settlement Agreement, CBA

United States District Court
Northern District of California

47

1    has agreed to pay "an award of attorneys' fees and costs, including expert fees and costs, in an

2    amount not to exceed $2,900,000.00." Settlement Agr. ¶¶ 106-10.

3         Accordingly, Plaintiffs may seek the requested costs. Therefore, the Court OVERRULES

4    Mr. Lindberg's objections to Plaintiffs' request for costs.

5         **ix.    Compliance with Rule 23(h)**

6         Finally, Mr. Lindberg argues that the Settlement Agreement "violates Federal Rules of

7    Civil Procedure 23(h) by impermissibly delegating distribution of attorneys' fees to the attorneys

8    themselves without review by the Court or the Class." Lindberg Obj. 22. Specifically, Mr.

9    Lindberg relies on a Fifth Circuit case, *In re High Sulfar Content Gasoline Prods. Liabs. Litig.*,

10   517 F.3d 220 (5th Cir. 2008), and a Third Circuit case, *Diet Drugs Prods. Liab. Litig.*, 401 F.3d

11   143 (3d Cir. 2005), for his argument that the Settlement "relieves the Court of its responsibility to

12   determine attorneys' fees and allocates it to a group of attorneys who themselves have a large

13   stake in the outcome of those proceedings." Lindberg Obj. 22-23. Mr. Lindberg also argues that

14   Class Counsel violates Rule 23(e) because Class Counsel has failed to disclose any fee splitting

15   agreement as required by Rule 23(e). Lindberg Obj. 23.

16        Plaintiffs, on the other hand, argue that they do not violate Rule 23(e) or Rule 23(h)

17   because neither requires the disclosure of a fee splitting arrangement between Class Counsel.

18   Lindberg Resp. 19. Plaintiffs also distinguish the instant case from *In re High Sulfur* and *Diet*

19   *Drugs*, and argue that they have complied with the requirements of Rule 23(e). Lindberg

20   Resp. 19-20.

21        "In a certified class action, the court may award reasonable attorney's fees and nontaxable

22   costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Rule 23(h)

23   requires the following procedure for the award of attorneys' fees:

24

25       (1) A claim for an award must be made by motion under Rule 54(d)(2),
         subject to the provisions of this subdivision (h), at a time the court
26       sets. Notice of the motion must be served on all parties and, for
         motions by class counsel, directed to class members in a reasonable
27       manner.

28       (2) A class member, or a party from whom payment is sought, may

48

United States District Court
Northern District of California

object to the motion.

    (3) The court may hold a hearing and must find the facts and state its legal conclusions under Rule 52(a).

    (4) The court may refer issues related to the amount of the award to a special master or a magistrate judge, as provided in Rule 54(d)(2)(D).

Fed. R. Civ. P. 23(h).  In addition, under Rule 23(e)(3), "[t]he parties seeking approval must file a statement identifying any agreements made in connection with the proposal."  Fed. R. Civ. P. 23(e)(3).

In addition, "[f]ormal fee allocation is unnecessary . . . where a limited number of firms are involved and there is no indication of any disagreement among the firms regarding fee allocation." *Edwards*, 2017 WL 3616638, at *10; *see* Newberg on Class Actions § 15:23 (5th ed. 2019) ("Fee allocation procedures . . . may be unused in many cases involving but a few class counsel.  It is typical in such cases that the lawyers can decide among themselves how to split the aggregate fee. If so, courts will tend to defer to that self-allocation and there is no need for formal judicial involvement.").

Here, formal fee allocation is unnecessary as there are only two law firms involved, the amount of fees requested by each firm is well documented, and there is no indication of any disagreement between those firms regarding fee allocation.  *See also Edwards*, 2017 WL 3616638, at *10 (overruling objection "to an award of fees without an order allocating those fees among Plaintiffs' counsel" for same reasons); *Presley v. Carter Hawley Hale Profit Sharing Plan*, No. C9704316SC, 2000 WL 16437, at *2 (N.D. Cal. Jan. 7, 2000) (awarding aggregate fees to "be paid to [lead counsel] for distribution among Class Counsel in accordance with the terms of their agreement and the terms of the Agreement").

This case is distinguishable from *In re High Sulfur*.  In that case, the district court appointed a five-member Fee Committee to allocate the fee award among approximately 32 law firms and 79 attorneys.  *In re High Sulfur*, 517 F.3d at 224.  The Fifth Circuit found that "[f]or all practical purposes the five-member Fee Committee controlled the allocation of attorneys' fees in this case," and "the district court abdicated its responsibility to ensure that the individual awards

1    recommended by the Fee Committee were fair and reasonable." *Id.* at 227.  "Instead of closely

2    scrutinizing the Fee Committee's allocation, the court rubber-stamped the committee's

3    recommendation." *Id.* at 229.  In particular, the Fifth Circuit was concerned because the record

4    offered little substantiation that the court actually reviewed the individual fee awards, the court set

5    forth no factual findings to support its awards of individual attorneys' fees, and the district court

6    sealed the record for the ex parte hearing reviewing the fees.  *Id.* at 229-30.  The Fifth Circuit

7    stated that "[i]t is one thing for all attorneys to come to an agreement about dividing up fees, and

8    quite another for five attorneys to declare how an award will cover themselves and seventy-four

9    other attorneys with no meaningful judicial supervision or review." *Id.* at 234.

10        By contrast, the instant case involves only two law firms and a public record of each firm's

11    hours and billing rates.  The Court's hearing to review the requested fees was open to the public

12    and on the record, and, unlike in *In re High Sulfur*, the hearing was not an ex parte hearing –

13    which is "plainly unauthorized" – and objectors and attorneys were given notice and an

14    opportunity to be heard.  *Id.* at 231 (stating that Rule 23(h) permits, but does not require a hearing,

15    and because a hearing was held, non-Fee Committee members were entitled to notice and an

16    opportunity to be heard).  The Court, furthermore, has closely scrutinized the motion for attorneys'

17    fees.  *See id.* (noting that Fifth Circuit has allowed allocation of fee award for distribution by

18    counsel where court scrutinizes allocation of fee award); *Longden v. Sunderman*, 979 F.2d 1095,

19    1099 (5th Cir. 1992) ("The district court acted well within its discretion in awarding an aggregate

20    sum to the Susman Attorneys that was based on their collective efforts, leaving apportionment of

21    that sum up to the Susman Attorneys themselves.").

22        Mr. Lindberg's reliance on Judge Ambro's concurring opinion in *Diet Drugs*, a Third

23    Circuit case, is similarly unavailing as that case dealt with 27 different law firms in a multi-district

24    litigation case, and some of the law firms contested the fee distribution.  *See* 401 F.3d at 167-68,

25    172-73.  As stated above, this case only involves two law firms and neither law firm objects to the

26    fee distribution.

27        Lastly, Mr. Lindberg argues that there is a "probable violation" of Rule 23(e) because it is

28    "unimaginable that the firms . . .  do not have an agreement about whether and how much they

would be paid." Lindberg Obj. 23. Mr. Lindberg, however, has not provided any evidence of an agreement, *see In re Linkedin User Privacy Litig*., 309 F.R.D. at 583 ("An objector to a proposed settlement agreement bears the burden of proving any assertions they raise challenging the reasonableness of a class action settlement." (internal quotation marks omitted)); he merely speculates that such an agreement exists. Indeed, Class Counsel has stated that there are no other agreements between Plaintiffs or Class Counsel and CBA. Peter Decl. ¶ 25.

Accordingly, the Court OVERRULES Mr. Lindberg's objection as to the allocation of attorneys' fees. The Court will retain jurisdiction to adjudicate disputes relating to attorneys' fees that are raised within 90 days after the claims administrator provides the final report regarding the disbursement of the settlement funds, by which time Class Counsel should have reached agreement or realized that disputes exist and brought them before the Court.

## V.   ORDER

For the reasons discussed above,

(1)   Plaintiff's Motion for Final Approval of Class Action Settlement is GRANTED; and

(2)   Plaintiffs' Motion for an Award of Attorneys' Fees and Costs and Class Representative Service Awards is GRANTED. Plaintiffs are awarded attorneys' fees in the amount of $2,263,779.69, costs and expenses in the amount of $329,973.59, and service awards for each of the two class representatives in the amount of $5,000.

(3)   The Settlement Administrator costs are APPROVED in an amount not to exceed $395,000.

Without affecting the finality of this Order and accompanying Judgment in any way, the Court retains jurisdiction over (1) implementation and enforcement of the Settlement Agreement until each and every act agreed to be performed by the parties pursuant to the Settlement Agreement has been performed; (2) any other actions necessary to conclude the Settlement and to administer, effectuate, interpret, and monitor compliance with the provisions of the Settlement Agreement; (3) all parties to this action and Settlement Class members for the purpose of

United States District Court
Northern District of California

implementing and enforcing the Settlement Agreement; and (4) disputes relating to attorneys' fees that are raised within 90 days after the claims administrator provides the final report regarding the disbursement of the settlement funds.

Within 21 days after the distribution of the settlement funds and payment of attorneys' fees, the parties shall file a Post-Distribution Accounting in accordance with this District's Procedural Guidance for Class Action Settlements.

**IT IS SO ORDERED.**

Dated: February 5, 2020

BETH LABSON FREEMAN
United States District Judge